1   DANIEL J. BERGESON, SBN 105439
    dbergeson@be-law.com
2   ADAM C. TRIGG, SBN 261498
    atrigg@be-law.com
3   JAIDEEP VENKATESAN SBN 211386
    jvenkatesan@be-law.com
4   REBECCA KAUFMAN SBN 199534
    rkaufman@be-law.com
5   BERGESON LLP
    111 N. Market Street, Suite 600
6   San Jose, California 95113
    Telephone: (408) 291-6200
7   Facsimile: (408) 297-6000

8   Attorneys for Specially Appearing
    Defendant
9   PROTON MANAGEMENT LTD.

10

11              UNITED STATES DISTRICT COURT

12        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

| | |
|---|---|
| 14  ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN, a Delaware corporation,, | Case No. 2:24-cv-8280 |
| 15 | **DEFENDANT PROTON'S SPECIAL APPEARANCE TO OPPOSE PLAINTIFF'S *EX PARTE* APPLICATIONS FOR A TEMPORARY RESTRAINING ORDER WITHOUT NOTICE, AN ORDER THAT PLAINTIFFS MAY SERVE DEFENDANTS VIA EMAIL AND AN ORDER FOR EXPEDITED DISCOVERY** |
| 16              Plaintiff, | |
| 17        v. | |
| 18  PROTON MANAGEMENT LTD., a British Virgin Islands corporation; THOMAS PATRICK FURLONG; ILIOS CORP., a California corporation; MICHAEL ALEXANDER HOLMES; RAFAEL DIAS MONTELEONE; SANTHIRAN NAIDOO; ENRIQUE ROMUALDEZ; and LUCAS VASCONCELOS, | |
| 19 | |
| 20 | |
| 21 | Judge:   Hon. Wesley L. Hsu |
| 22 | Complaint filed: September 27, 2024 |
| 23              Defendants. | |

24

25

26

27

28

---

DEFENDANT PROTON'S SPECIAL APPEARANCE TO OPPOSE TO *EX PARTE* APPLICATIONS, Case No. 2:24-cv-8280

1
2

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

3   I.    INTRODUCTION ................................................................................ 1

4   II.   FACTUAL & PROCEDURAL BACKGROUND ........................................ 4

5   III.  ARGUMENT .................................................................................... 6

6       A.    This Court lacks specific personal jurisdiction over Proton and
              therefore may not issue the ex parte TRO. .............................. 6
7
        B.    Ex parte relief for a TRO is not warranted or necessary. ...................... 9
8
             1.    Misappropriation.............................................................. 9
9
             2.    Preservation of Evidence. ............................................. 10
10
    IV.   SERVICE BY EMAIL IS NOT WARRANTED.......................................... 12

11  V.    CONCLUSION .............................................................................. 14

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Active Sports Lifestyle U.S. v. Apparel Prods. Servs. Global*
    No. CV 20-020056 PA, 2020 U.S. Dist. LEXIS 153782 (C.D. Cal.
    July 2, 2020) ................................................................................. 12

*Amazon.Com Inc. v. Awns*,
    No. C22-402-MLP, 2023 U.S. Dist. LEXIS 61770 (W.D. Wash.
    Apr. 7, 2023)................................................................................. 11

*Amba Mktg. Sys. Inc. v. Jobar Int'l, Inc.*,
    551 F.2d 784 (9th Cir. 1977) ......................................................... 6

*Comet Techs. USA Inc. v. Beuerman*,
    No. 18-CV-01441-LHK, 2018 U.S. Dist. LEXIS 224356 (N.D. Cal.
    Mar. 15, 2018) .............................................................................. 10

*Deo Sung Hi Tech., Ltd. v. Gthunder*,
    No. CV 18-7884 PSG, 2019 U.S. Dist. LEXIS 238431 (C.D. Cal.
    Apr. 17, 2019)............................................................................... 12

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*,
    840 F.2d 685 (9th Cir. 1988) ......................................................... 5

*Folke v. City of Los Angeles*,
    No. 2:21-cv-03038-SPE-E, 2022 U.S. Dist. LEXIS 235498 (C.D.
    Cal. Aug. 11, 2022) ....................................................................... 5

*Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co*,
    2018 U.S. Dist. LEXIS 62367 (S.D. Cal.)...................................... 1

*Getz v. Boeing Co.*,
    654 F.3d 852 (9th Cir. 2011) ...................................................... 6, 7

*Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck
    Drivers*,
    415 U.S. 423 (1974) ...................................................................... 8

ii

*Johnson v. Comm'n on Presidential Debates*,
 No. SACV-12-1600 FMO, 2014 WL 12597805 (C.D. Cal. Jan. 6,
 2014) ........................................................................................................... 1

*Licea v. Caraway Home Inc.*,
 655 F. Supp. 3d 954 (C.D. Cal. 2023) ....................................................... 6

*Lonati v. Soxnet, Inc.*,
 No. CV 20-5539-GW-JPRx, 2021 U.S. Dist. LEXIS 263356 (C.D.
 Cal. Sept. 20, 2021) ................................................................................. 12

*Microsoft Corp. v. Buy More, Inc.*,
 703 F. App'x 476 (9th Cir. 2017) ........................................................ 11, 12

*OOO Brunswick Rail Mgmt. v. Sultanov*,
 No. 5:17-cv-00017-EJD, 2017 U.S. Dist. LEXIS 2343 (N.D. Cal.
 Jan. 6, 2017) ............................................................................................. 10

*Pebble Beach Co. v. Caddy*,
 453 F.3d 1151 (9th Cir. 2006) ................................................................... 7

*Prevail Legal Inc. v. Gordon*,
 No. 20-cv-07173-BLF, 2021 U.S. Dist. LEXIS 92675 (N.D. Cal.
 May 14, 2021) ............................................................................................ 7

*Reno Air Racing Ass'n., v. McCord*,
 452 F.3d 1126 (9th Cir. 2006) .......................................................... 8, 9, 10

*Rio Props., Inc. v. Rio Int'l Interlink*,
 284 F.3d 1007 (9th Cir. 2002) ............................................................ 11, 12

*Ryan v. Editions Ltd. West, Inc.*,
 786 F.3d 754 (9th Cir. 2015) ..................................................................... 9

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ..................................................................... 6

*Thomas v. Cadence Capital Invs. LLC*,
 No. 2:22-cv-07944-SPG-SK, 2022 U.S. Dist. LEXIS 240203 (C.D.
 Cal. Nov. 3, 2022) ...................................................................................... 5

*Thomas v. Starz Entm't LLC*,
 No. 2:15-cv-09239-CAS(AFMx), 2016 U.S. Dist. LEXIS 93177
 (C.D. Cal. Jul. 11, 2016) ............................................................................ 8

iii

*Thunder Studios, Inc. v. Kazal*,
  No. CV 17-00871-AB, 2017 U.S. Dist. Lexis 233877 (C.D. Cal.
  May 26, 2017) ................................................................................................. 11

*United States Olympic Comm. v. Does*,
  No. C 08-03514 JSW, 2008 U.S. Dist. LEXIS 60498 (N.D. Cal. July
  25, 2008) ......................................................................................................... 6

*Vines of Argentina, LLC v. Argentina*,
  No. 2:22-cv-1619, 2024 U.S. Dist. LEXIS 165563 (W.D. Wash.
  Sept. 13, 2024) ............................................................................................... 11

*Viral DRM LLC v. Onyshchuk*,
  No. 3:23-cv-04300-JSC, 2024 U.S. Dist. LEXIS 8726 (N.D. Cal.
  Jan. 17, 2024) .................................................................................................. 5

*WeWork Cos. Inc. v. WePlus (Shanghai) Tech. Co.*,
  No. 5:18-cv-04543-EDJ, 2019 U.S. Dist. LEXIS 5047 (N.D. Cal.
  Jan. 10, 2019) ................................................................................................ 12

*Will Co. v. Ka Yeung Lee*,
  47 F.4th 917 (9th Cir. 2022) ........................................................................... 6

*Winters v. Jordan*,
  2010 U.S. Dist. LEXIS 72682 (E.D. Cal.) (Jul. 20, 2010) ............................. 9

*Zepeda v. U.S. Immigr. & Naturalization Serv.*,
  753 F.2d 719 (9th Cir. 1983) ...................................................................... 5, 8

**Statutes**

18 U.S.C. § 1836(b)(3)(A) ................................................................................. 8

Defend Trade Secrets Act .................................................................................... 8

UTSA .................................................................................................................. 8

**Other Authorities**

Fed. R. Civ. P. 4 ................................................................................................. 5

Federal Rule of Civil Procedure 4(f)(3) ........................................................... 11

iv

Defendant Proton Management Ltd. ("Proton"), which has not been served with the Complaint, hereby specially appears[1] to oppose Plaintiff Electric Solidus, Inc. d/b/a Swan Bitcoin's ("Swan") ex parte applications for a temporary restraining order ("TRO"), an order to serve Proton and its co-defendants via email, and an order to take expedited discovery.

## I.    INTRODUCTION

Plaintiff Swan's ex parte applications for a TRO is fatally flawed for several reasons. As more fully set forth below, Swan's filings appear to be nothing more than "litigation by ambush" to disparage its former employees and contractors in order to gain leverage in its dispute with Tether, a respected cryptocurrency institution that invested in Swan and separately provided all the funding for a separate an entity called 2040 Energy Ltd. ("2040 Energy") in which Swan owns a minority stake, according to the allegations in the Complaint. Amidst increasing mismanagement by Swan's executive team, which negatively impacted 2040's ongoing operations and future growth, resulting in mass layoffs, the Individual Defendants[2] resigned from Swan in August 2024. Thereafter, 2040 Energy engaged Proton, a British Virgin Islands Business Company with its headquarters in Tortola British Virgin Islands, to temporarily maintain the operational and administrative

---

[1] A defendant does not waive service or jurisdiction by appearing to oppose an ex parte temporary restraining order (TRO). *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co*, 2018 U.S. Dist. LEXIS 62367, *4-5 (S.D. Cal.) (defendants did not waive any arguments relating to insufficient service by appearing to dispute the methods of service); *Johnson v. Comm'n on Presidential Debates*, No. SACV-12-1600 FMO (ANx), 2014 WL 12597805, at *4 (C.D. Cal. Jan. 6, 2014) (jurisdiction not waived when defendant filed a response to a TRO application, specifically noting that it reserved the right to contest personal jurisdiction, and then timely raised the personal jurisdiction issue in its first motion or responsive pleading).

[2] The Individual Defendants are Defendants Thomas Patrick Furlong ("Furlong"), Michael Alexander Holmes ("Holmes"), Ilios Corporation ("Ilios"), Rafael Dias Monteleone ("Monteleone"), Santhiran Naidoo ("Naidoo"), Enrique Romualdez ("Romualdez"), and Lucas Vasconcelos ("Vasconcelos").

functions of 2040 Energy, in which Swan owns a minority stake.  Thus, even if there were jurisdiction over Proton (there is none) Swan has suffered no damage by Proton's activities.  Additionally, while Proton adamantly denies that it uses any of Swan's supposed proprietary information or trade secrets, it is highly questionable whether *any* of the information identified in Swan's complaint actually belongs to Swan as opposed to 2040 Energy, or even constitutes proprietary information and/or trade secrets.

Nevertheless, despite knowing of Proton's engagement to perform 2040 Energy's operational functions as early as August 13, 2024, Swan negotiated its dispute with Tether for more than six weeks.  In an apparent attempt to gain leverage in those negotiations, has now filed this suit and ex parte applications against Proton in this Court, which does not have personal jurisdiction over Proton, and without any attempt to serve the complaint or any intention to even notify the defendants.  The Court should deny Swan's applications because there is no personal jurisdiction over Proton.  Additionally, Swan has not established that email service is necessary here.

Swan does not have a mining business of its own.  Rather, as Swan admits in its complaint and publicly, what Swan has called its mining business is really just the separate entity called 2040 Energy, which is fully funded by Tether, according to Swan's own complaint.  2040 Energy *is not* controlled by Swan, although Swan maintains a minority stake in the business.  Through the work and ingenuity of the Individual Defendants, 2040 Energy successfully developed mining operations.

However, unrelated to the 2040 entity and its operations, Swan's financial position was so precarious that it had to conduct a large round of layoffs in July 2024.  As further admitted in the Complaint, the Individual Defendants left Swan in early August and began working for Proton, which was subsequently engaged to continue the 2040 Energy operations.  That is, Proton is continuing to preserve and enhance the value of 2040 Energy, in which Swan has a minority financial stake.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT PROTON'S SPECIAL APPEARANCE TO OPPOSITION TO EX PARTE APPLICATIONS, Case No. 2:24-cv-8280

1  Far from damaging Swan, Proton is enhancing the value of its minority stake in

2  2040 Energy.

3      While the questionable damages and ownership of the information identified

4  in the complaint raise serious doubts as to the propriety of granting injunctive relief

5  without full opportunity to address these issues, as an initial matter, Swan's ex parte

6  applications should be denied in their entirety because this Court lacks personal

7  jurisdiction over Proton—which is incorporated in the British Virgin Islands. Proton

8  intends to file a motion to dismiss for lack of personal jurisdiction upon being

9  properly served with the Complaint. At minimum, this Court should withhold any

10  ruling on Swan's application for a TRO until after jurisdiction is established.

11  Moreover, this Court should not grant Swan's request for an order to serve Proton

12  via email because the request is premature and is not necessitated by the facts and

13  circumstances of this case.

14  **II.    <u>FACTUAL & PROCEDURAL BACKGROUND</u>**

15      According to the allegations in the Complaint, which Proton does not admit,

16  Swan and Tether created 2040 Energy in 2023.  (¶¶ 58-59.)[3]  According to the

17  Complaint, Tether provided all of the funding for 2040 Energy, while Swan

18  employees and contractors operated the mining operations, with Swan maintaining a

19  minority stake in the business (¶¶ 60, 61, 107.)

20      Amidst financing difficulties, and layoffs (Trigg Decl., Ex. A), the individual

21  employees and contractors supporting the 2040 Energy operations resigned from

22  Swan in early August 2024.  On August 13, 2024, after previously telling Swan it

23  was in breach of its obligations to 2040 Energy and providing a period to cure the

24  breach, Tether informed Swan that Proton Management Ltd. would continue the

25  2040 Energy operational and administrative functions through the individuals that

26  left Swan.  (¶ 104.)  At that time Swan did not contact Proton or the Individual

27

28  [3] All ¶ references are to the Complaint.

4

1  Defendants to claim that they were engaging in any wrongdoing.  Instead, Swan

2  engaged in negotiations with Tether regarding their dispute **for more than six**

3  **weeks**.  (¶¶ 102-112, 115-116.)

4       Then, on September 25, 2024, Swan filed its Complaint and ex parte

5  applications for a TRO to restrain Proton and its co-defendants from using alleged

6  confidential and proprietary information, compel Proton's co-defendants to return

7  Swan laptops, and preserve relevant evidence.  The applications also sought an order

8  allowing for service of the Complaint via email and to take expedited discovery.

9  Swan apparently did not intend to even inform any of the defendants of the

10  Complaint or its ex parte applications, as it sought to have the applications granted

11  without notice.[4]

12       However, once the case was assigned to Hon. Wesley L. Hsu, whose standing

13  order requires notice of ex parte applications, the next day, on September 26, 2024,

14  Swan sent an email to Proton to notify it about the Complaint and pending ex parte

15  applications.  (Dkt #18.)  **This was the first contact Swan made with Proton**

16  **regarding Swan's claims despite possessing Proton's contact information**.

17  (Trigg Decl. ¶ 2.)  Before sending the email on September 26, Swan never informed

18  Proton about the pending litigation, never asked it to accept service of the

19  Complaint, never sent a demand letter regarding the alleged misappropriation of

20  confidential information and intellectual property, never made a demand that Proton

21  preserve documents, and never discussed participating in expedited discovery.  (*Id.*)

22       On September 26, 2024, counsel for Proton contacted counsel for Swan to

23  inform her that Bergeson LLP would be representing defendants for the purpose of

24

25  _____

26  [4] In its haste to file the documents on September 25, 2024, Swan applied insufficient
    redactions such that purportedly confidential information was clearly visible under

27  the attempted redactions, and Swan also failed to redact the personal addresses and
    emails of the Individual Defendants.  Swan has since corrected those mistakes in the

28  docket.

DEFENDANT PROTON'S SPECIAL APPEARANCE TO OPPOSITION TO EX PARTE APPLICATIONS, Case
No. 2:24-cv-8280

specially appearing to oppose the ex parte applications.  (Trigg Decl. ¶ 3.)  On the call, counsel for Swan stated that Swan had intended to proceed without notice, but when the case was assigned to Judge Hsu, whose standing order requires notice, Swan decided to send defendants email notice of its court filings.  (*Id.*)

## III.    ARGUMENT

### A.    This Court lacks specific personal jurisdiction over Proton and therefore may not issue the ex parte TRO.

An ex parte application for a TRO cannot be used against a party over whom the court has no jurisdiction. *See Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Viral DRM LLC v. Onyshchuk*, No. 3:23-cv-04300-JSC, 2024 U.S. Dist. LEXIS 8726, at *1 (N.D. Cal. Jan. 17, 2024) (denying motion for preliminary injunction because the plaintiff "failed to meet its burden of demonstrating the Court has personal jurisdiction over [the d]efendants"). And, regardless, if the application is made on an ex parte basis, it is well-established that a federal court must have both personal jurisdiction over the parties and subject matter jurisdiction over the claim to issue an injunction, including a TRO.  Without such jurisdiction, a court is powerless to proceed with any adjudication, including granting injunctive relief.  *See Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc*., 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."); *Zepeda v. United States Immigration & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.")  In *Thomas v. Cadence Capital Invs. LLC*, No. 2:22-cv-07944-SPG-SK, 2022 U.S. Dist. LEXIS 240203 (C.D. Cal. Nov. 3, 2022), the court denied the plaintiff's ex parte application for a TRO because it lacked jurisdiction over the party against whom the plaintiff sought the injunction. *See also Folke v. City of Los Angeles*, No. 2:21-cv-03038-

6

SPE-E, 2022 U.S. Dist. LEXIS 235498, at *5-6 (C.D. Cal. Aug. 11, 2022) (the court denied a TRO application due to lack of jurisdiction over the defendant); *United States Olympic Comm. v. Does*, No. C 08-03514 JSW, 2008 U.S. Dist. LEXIS 60498, at *1-2 (N.D. Cal. July 25, 2008) (same).

The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction:

(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (*citing Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  To establish whether a defendant "purposefully directed" his activities toward the forum state, defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Will Co. v. Ka Yeung Lee*, 47 F.4th 917, 922 (9th Cir. 2022) (quoting *Schwarzenegger*, 374 F.3d at 803)).

Personal jurisdiction over a foreign defendant cannot be based solely on bare allegations in the complaint. *Amba Mktg. Sys. Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).  The plaintiff bears the burden of establishing jurisdiction and must make a prima facie showing of jurisdictional facts.  *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 961-962 (C.D. Cal. 2023).  Mere allegations are insufficient if contradicted by specific denials from the defendant.  *See Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) ("speculative allegations of attenuated jurisdictional contacts" will not support jurisdiction).  Personal

7

jurisdiction claims based on attenuated and speculative allegations do not warrant jurisdictional discovery. *Id.*; *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).

Here, Proton has not yet been served with the Complaint, and therefore this Court lacks jurisdiction to issue injunctive relief against it. Even if Swan could serve Proton, Proton is not subject to personal jurisdiction, general or specific. Swan's Complaint does not include a single allegation in support of general jurisdiction but instead attempts to hang its hat on specific jurisdiction over Proton using the following conclusory allegations: (1) Proton "purposefully directed unlawful activities toward California," (¶ 26) and (2) co-defendant Michael Alexander Holmes, resides in Los Angeles and "on information and belief" he caused Proton's incorporation documents to be filed in the British Virgin Islands. (Complaint, ¶ ¶ 82, 85). Swan cannot meet its burden.

The conclusory claim that Proton "[p]urposely directed unlawful activities" does not sufficiently describe wrongful acts or Proton's involvement.  Even if it were true that Proton downloaded confidential trade secrets belonging to Swan—it has not—Swan has not, and cannot, allege that Proton facilitated, orchestrated, or participated in the theft of confidential and proprietary information by former Swan employees—i.e., Proton did not participate in an activity in California that can establish personal jurisdiction.  *See Prevail Legal Inc. v. Gordon*, No. 20-cv-07173-BLF, 2021 U.S. Dist. LEXIS 92675 (N.D. Cal. May 14, 2021) (allegations that defendants knew plaintiff located in California and improperly downloaded plaintiff's proprietary information from server in California insufficient to establish personal jurisdiction over defendants).

And, the vague allegation that Mr. Holmes caused Proton's incorporation documents to be filed likewise sheds no light on whether Proton had minimum contacts with California. The act of "causing documents to be filed" could mean anything, including acts so innocuous and tenuous they could never support personal

8

jurisdiction. Because Swan has failed to make a prima facie showing that Proton is subject personal jurisdiction in California, this Court may not issue injunctive relief against it. *Zepeda*, 753 F.2d at 727.

### B.   Ex parte relief for a TRO is not warranted or necessary.

Even if this Court determines Proton is subject to its jurisdiction for the purpose of a TRO, the ex parte application should be denied.  It has long been recognized that "[e]x parte temporary restraining orders . . . run[] counter" to the notion that underlies "our entire jurisprudence"—that there be no court action "before reasonable notice and an opportunity to be heard has been granted both sides of a dispute."  *See Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Accordingly, **there are "very few circumstances justifying the issuance of an ex parte TRO**." *Reno Air Racing Ass'n., v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (emphasis added) (explaining that ex parte orders are only proper when "notice to the defendant would render fruitless the further prosecution of the action").

### 1.   Misappropriation.

Injunctive relief against Proton's use of Swan's alleged confidential and proprietary information is unwarranted. Allegations that an employee's retaining materials is not sufficient evidence of trade secret misappropriation.  The Defend Trade Secrets Act authorizes courts to grant injunctive relief to prevent *actual or threatened* trade secret misappropriation. 18 U.S.C. § 1836(b)(3)(A) (emphasis added). Mere possession of trade secrets by departing employees cannot establish actual or threatened misappropriation.  *Thomas v. Starz Entm't LLC*, No. 2:15-cv-09239-CAS(AFMx), 2016 U.S. Dist. LEXIS 93177, at *16-17 (C.D. Cal. Jul. 11, 2016) ("generalized concerns and assertions that an individual 'could' misappropriate trade secrets after changing jobs cannot give rise to a reasonable suspicion of an UTSA violation").  Here, while there are specific allegations relating to the alleged theft of Swan's supposed trade secrets, there are only vague and

9

allegations and generalized speculation that Proton itself is using, or plans to use, the information.

Injunctive relief is also not necessary. Courts have consistently held that injunctions must be specific and not simply command a party to obey the law. *See Brady v. United of Omaha Life Ins*. Co., 902 F. Supp. 2d 1274, 1284 (N.D. Cal. 2012) ("Broad language in an injunction that essentially requires a party to obey the law in the future is not encouraged and may be struck from an order for injunctive relief.") (citation omitted); *Winters v. Jordan*, 2010 U.S. Dist. LEXIS 72682, *43 (E.D. Cal.) (Jul. 20, 2010) (the court noted that blanket injunctions to obey the law are disfavored and should be dismissed). Here, the proposed TRO, which has extremely broad misappropriation language, is unnecessary because it simply commands Proton to obey the law. And Proton is already doing so.

### 2.    Preservation of Evidence.

Swan seeks an ex parte order from this court that "Defendants are hereby required to immediately take steps to preserve all evidence relevant to the Complaint." The order is not necessary given preservation is mandated by law. *Ryan v. Editions Ltd. West, Inc*., 786 F.3d 754, 766 (9th Cir. 2015) (A party's duty to preserve begins when it has "some notice that the [evidence is] potentially relevant to the litigation.") Moreover, the order is not warranted given there are no allegations suggesting that Proton has destroyed, or would destroy, evidence.

"To justify an ex parte proceeding [on destruction of evidence grounds], the applicant must do more than assert that the adverse party would dispose of evidence if given notice." *Reno Air*, 452 F.3d at 1131 (internal quotation marks and citation omitted). Instead, "[p]laintiffs must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing . . . [and] **must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders** or that

persons similar to the adverse party have such a history." *Id*. (internal quotation omitted) (emphasis added).

Here, Swan failed to, and cannot, make the required showing that Proton or its co-defendants have a history of destroying evidence or violating court orders, which is required to justify an ex parte TRO. Instead, Swan merely "anticipates that Defendants will seek to further cover their tracks and evade detection, given their track record of concealment and deceit." Swan does not offer specific facts regarding defendants' alleged "concealment and deceit," because there are none. Moreover, **Swan fails to make a single allegation that Proton or its co-defendant disposed of evidence or violated court orders**. (*See, e.g.,* Declarations of Yan Pritzker and Cory Klippsten (Doc. 11-1; 11-2)). Instead, the gist of Swan's allegations is that Proton's co-defendants (and *not* Proton) downloaded proprietary information from a California server, including intellectual property, that Proton is using outside of California to the detriment of Swan—but these allegations, which Proton strongly contests, do not suggest that Proton or its co-defendants are likely to destroy evidence or defy this Court.

The alleged facts before this Court are easily distinguished from those in the cases cited by Swan wherein the courts granted ex parte applications for a TRO. In *OOO Brunswick Rail Mgmt. v. Sultanov,* No. 5:17-cv-00017-EJD, 2017 U.S. Dist. LEXIS 2343, at *3, 7 (N.D. Cal. Jan. 6, 2017), a TRO was granted after former employees sent confidential information to third parties, then deleted the sent messages and emptied the trash folder, and refused to return a company issued laptop and mobile phone. In *Comet Techs. USA Inc. v. Beuerman*, No. 18-CV-01441-LHK, 2018 U.S. Dist. LEXIS 224356, at *4 (N.D. Cal. Mar. 15, 2018), a TRO was issued after a defendant lied in his exit interview about both downloading confidential data and that he was leaving to work for plaintiff's competitor. **Here, there is not a single allegation that: Proton or its co-defendants tried to cover their tracks after allegedly downloading information, they lied to Plaintiff**

11

1    **about downloading information, or they have already destroyed information.**

2    Because Swan offered no allegations indicating Proton and its co-defendants will

3    destroy evidence or fail to follow an order of this Court, the ex parte application

4    should not be granted.

5    **IV.    SERVICE BY EMAIL IS NOT WARRANTED**

6        To establish service under alternative means under Federal Rule of Civil

7    Procedure 4(f)(3), the plaintiff must meet three requirements: (1) the requested

8    means of service "must not be prohibited by international agreement"; (2) it "must

9    comport with constitutional notions of due process"; and (3) "the facts and

10    circumstances of the present case *necessitate*[] the district court's intervention." *Rio*

11    *Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015-1016 (9th Cir. 2002)

12    (emphasis added). It is within "the discretion of the district court to balance the

13    limitations of email service against its benefits in any particular case." *Id.* at 1018;

14    *Microsoft Corp. v. Buy More, Inc.*, 703 F. App'x 476, 480 (9th Cir. 2017).

15        Plaintiff has not established that the circumstances here *necessitate* service

16    via email.  While a plaintiff seeking the court's permission to serve under Federal

17    Rule of Civil Procedure 4(f)(3) "need not have attempted *every* permissible means

18    of service of process before petitioning the court for alternative relief," *Rio Props*,

19    284 F.3d at 1016, in nearly all cases cited by Swan, the plaintiff made at least *some*

20    effort to serve process under traditional means.  *Thunder Studios, Inc. v. Kazal*, No.

21    CV 17-00871-AB (SSx), 2017 U.S. Dist. Lexis 233877, at *4-5 (C.D. Cal. May 26,

22    2017) (authorizing alternative service where plaintiff made multiple attempts at

23    service by a licensed process server in defendant's home country for nearly two

24    months); *Amazon.Com Inc. v. Awns*, No. C22-402-MLP, 2023 U.S. Dist. LEXIS

25    61770, at *5 (W.D. Wash. Apr. 7, 2023) (authorizing alternative service where

26    plaintiff diligently attempted to locate the defendants' addresses and was unable to

27    do so); *Vines of Argentina, LLC v. Argentina*, No. 2:22-cv-1619, 2024 U.S. Dist.

28    LEXIS 165563, at *3–4 (W.D. Wash. Sept. 13, 2024) (authorizing alternative

12

service only after staying case to allow time for service under Hague Convention
and plaintiff diligently attempted service for 21 months); *Active Sports Lifestyle U.S.
v. Apparel Prods. Servs. Global* No. CV 20-020056 PA (JCx), 2020 U.S. Dist.
LEXIS 153782, at *2-3 (C.D. Cal. July 2, 2020) (authorizing alternative service
where plaintiffs attempted to serve defendant under the Hague Convention for
several months and attempted service through court clerk); *see also Microsoft Corp.*,
703 Fed. Appx. at 480 (affirming service by alternative means where plaintiff
"presented the district court with evidence that it diligently attempted to serve
[defendant] in the United States before filing the motion for alternative service").
This is true even for cases of "urgency" Plaintiff relies on.  *Lonati v. Soxnet, Inc.*,
No. CV 20-5539-GW-JPRx, 2021 U.S. Dist. LEXIS 263356, at *5-6 (C.D. Cal.
Sept. 20, 2021) (authorizing alternative service where plaintiff attempted to serve
defendant via the Hague Convention but had not received confirmation after over a
year); *Deo Sung Hi Tech., Ltd. v. Gthunder*, No. CV 18-7884 PSG (MAAx), 2019
U.S. Dist. LEXIS 238431, at *2 (C.D. Cal. Apr. 17, 2019) (authorizing alternative
service where "Plaintiffs explained that despite their due diligence, they have not yet
been able to serve Defendant" for months after complaint filed).[5]

Indeed, in *Rio*, the Ninth Circuit determined that the circumstances of that
case necessitated alternative service where the plaintiff "presented the district court
with its inability to serve an elusive international defendant, striving to evade
service of process."  *Rio Props*, 284 F.3d at 1016.

---

[5] While the Plaintiff in *WeWork Cos. Inc. v. WePlus (Shanghai) Tech. Co.,* No.
5:18-cv-04543-EDJ, 2019 U.S. Dist. LEXIS 5047 (N.D. Cal. Jan. 10, 2019) does not
appear to have attempted to serve the defendant, there the court determined that the
allegations demonstrated defendants were actively deceiving consumers, thereby
damaging plaintiff's reputation, but here Swan has alleged only that Proton is
continuing to manage the operational and administrative functions for 2040 Energy
re, thereby *enhancing* the value of the entity in which Swan owns a minority equity
stake.  Compl. ¶¶ 104, 107.

13

1      Here, Plaintiff has not even attempted to serve Proton or any other defendant

2 by *any* traditional means (not even the one defendant residing in California), let

3 alone established that it will be unable to do so.  To the contrary, despite knowing

4 the defendants, communicating with them within the last two months, and having

5 their physical addresses, it appears that Swan was going to attempt to sue the

6 defendants, obtain a TRO and expedited discovery without notice to defendants, and

7 then get court approval to serve via email the complaint, a TRO, and expedited

8 discovery all before ever even notifying any of the defendants.  Indeed, counsel for

9 Swan admitted as much.  (Trigg Decl. ¶ 3.)

10 **V.**    **CONCLUSION**

11      Swan's ex parte applications should be denied because of lack of jurisdiction

12 over Proton. Their applications are also unwarranted and premature. At the very

13 least, this Court should continue the hearing on Swan's applications until after

14 jurisdiction over Proton is established.  Additionally, the Court should deny Swan's

15 application for alternative service.

16 Dated:  September 30, 2024      BERGESON LLP

17

18

19 By: _____

20           Adam C. Trigg

20 Attorneys for Defendant PROTON

21 MANAGEMENT LTD.

22

23

24

25

26

27

28

14

**<u>CERTIFICATE OF SERVICE</u>**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Santa Clara, State of California.  My business address is 111 N. Market Street, Suite 600, San Jose, CA 95113.

On September 30, 2024, I served true copies of the following document(s) described as:

**DEFENDANT PROTON'S SPECIAL APPEARANCE TO OPPOSE PLAINTIFF'S *EX PARTE* APPLICATIONS FOR A TEMPORARY RESTRAINING ORDER WITHOUT NOTICE, AN ORDER THAT PLAINTIFFS MAY SERVE DEFENDANTS VIA EMAIL AND AN ORDER FOR EXPEDITED DISCOVERY**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 30, 2024, at San Jose, California.

_____
Annette S. Hogue

15

# SERVICE LIST

**Attorneys for Plaintiff**
**ELECTRIC SOLIDUS, INC. d/b/a**
**SWAN BITCOIN**

Harris M. Mufson (*pro hac vice forthcoming*)
hmufson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel:   212-351-4000

Matthew D. McGill (*pro hac vice forthcoming*)
mmcgill@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Tel:   202-955-8500

Ilissa Samplin SBN 314018
isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel:   213-229-7000

Christine Demana (*pro hac vice forthcoming*)
cdemana@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
Tel:   214-698-3100

DEFENDANT PROTON'S SPECIAL APPEARANCE TO OPPOSITION TO EX PARTE APPLICATIONS, Case No. 2:24-cv-8280