GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

MATTHEW P. KANNY (SBN 167118)
*MKanny@goodwinlaw.com*
AARON S. THOMPSON (SBN 272391)
*AThompson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
520 Broadway, Suite 500
Santa Monica, CA  90401-2449
Tel.: +1 424 436 3001
Fax: +1 424 316 3280

*Attorneys for Specially Appearing*
*Defendants Thomas Patrick Furlong,*
*Ilios Corp., Michael Alexander Holmes,*
*Rafael Dias Monteleone, Santhiran*
*Naidoo, Enrique Romualdez, And Lucas*
*Vasconcelos*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN, a Delaware corporation,<br><br>        Swan,<br><br>    v.<br><br>PROTON MANAGEMENT LTD., a British Virgin Islands corporation; THOMAS PATRICK FURLONG; ILIOS CORP., a California corporation; MICHAEL ALEXANDER HOLMES; RAFAEL DIAS MONTELEONE; SANTHIRAN NAIDOO; ENRIQUE ROMUALDEZ; and LUCAS VASCONCELOS,<br><br>        Defendants. | Case No. 2:24-cv-8280-WLH-E<br><br>**SPECIALLY APPEARING DEFENDANTS THOMAS PATRICK FURLONG, ILIOS CORP., MICHAEL ALEXANDER HOLMES, RAFAEL DIAS MONTELEONE, SANTHIRAN NAIDOO, ENRIQUE ROMUALDEZ, AND LUCAS VASCONCELOS'S OPPOSITION TO MOTION TO COMPEL INDIVIDUAL DEFENDANTS TO RETURN PLAINTIFF'S LAPTOPS**<br><br>Judge:  Hon. Wesley L. Hsu |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND ..............................................................................3

    A.    Swan, Tether, and 2040 Energy ..............................................................3

    B.    The Individual Defendants Were Independent Contractors, Not Employees, of Swan, Who Worked for the Benefit of 2040 Energy. ...4

    C.    The Consulting Agreements Require Arbitration. .................................5

    D.    The Laptops At Issue Were Not "Company-Issued;" Rather, the Individual Defendants Purchased Their Own Personal Laptops for 2040 Energy Business. ................................................................................6

    E.    The Consulting Agreements and Information Security Policy Do Not Specify Who Owns The Laptops. ...........................................................7

    F.    As a Result of Swan's Cash Crisis, Lack of Transparency, and Mismanagement, the Individual Defendants Resign. ...........................8

    G.    Defendants Offer A Reasonable Solution To the Laptop Issue.............8

III.  ARGUMENT .......................................................................................................9

    A.    The Court Should Deny Swan's Motion to Compel as the Merits of Swan's Claims About Ownership, and Swan's Request for an Order Returning the Laptops, Are Subject to Binding Arbitration.................9

    B.    Swan's Motion to Compel Is Premature and Procedurally Defective. 11

    C.    To the Extent Swan Seeks a Preliminary Injunction for the Return of the Laptops, the Court Should Reject It On the Merits. ......................11

    D.    Swan's Motion Ignores Significant Data Issues ...................................16

    E.    The Individual Defendants and the Court Have Offered a Reasonable and Commonly Used Solution That Balances Both Parties' Interests.17

IV.   CONCLUSION .................................................................................................17

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Brave Quest Corp.*,
No. 2:23-CV-09581-SB-MAR, 2024 WL 3206986 (C.D. Cal. May 10, 2024) ........................................................................................................ 11

*Apex Sys., LLC v. Sperber*,
2024 WL 2789458 (S.D. Cal. May 16, 2024) ............................................. 12, 13

*ARB Labs Inc. v. Woodard*,
2019 WL 332404 (D. Nev. Jan. 25, 2019) ............................................. 12, 13, 14

*Benedict v. Hewlett-Packard Co.*,
2014 WL 234218 (N.D. Cal. Jan. 21, 2014) ............................................. 12, 13

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .................................................................... 10

*Clean Energy v. Applied LNG Techs., USA, LLC*,
No. SA CV 08-746 AHS RNB, 2008 WL 4384179 (C.D. Cal. Sept. 3, 2008) .................................................................................................... 12

*Digital Alpha Advisors, LLC v. Ladak*,
2023 WL 6521029 (D. Nev. Sept. 15, 2023) ............................................. 12, 13

*Edwards Lifesciences Corp. v. Launey*,
2023 WL 4680774 (C.D. Cal. June 12, 2023)............................................. 12, 13

*Gauntlett v. Ill. Union Ins. Co.*,
2011 WL 5191808 (N.D. Cal. Nov. 1, 2011)................................................. 13

*Hilderman v. Enea TekSci, Inc.*,
551 F. Supp. 2d 1183 (S.D. Cal. 2008) ..................................................... 12, 14

*Holmes v. Petrovich Dev. Co.*,
191 Cal. App. 4th 1047 (2011)................................................................... 14

*Laub v. Horbaczewski*,
331 F.R.D. 516 (C.D. Cal. 2019) ............................................................. 15, 17

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ........................................................................ 10

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ......................................................................................... 10

*TBG Ins. Servs. Corp. v. Superior Court*,
    96 Cal. App. 4th 443 (2002) ......................................................................... 14

*Textile Unlimited, Inc. v. A..BMH & Co.*,
    240 F.3d 781 (9th Cir. 2001) ........................................................................ 12

*United States v. Greiner*,
    235 F. App'x 541 (9th Cir. 2007) ................................................................ 13

*United States v. Ziegler*,
    474 F.3d 1184 (9th Cir. 2007) ...................................................................... 13

*Voorhies v. Greene*,
    139 Cal. App. 3d 989 (Cal. Ct. App. 1983) ................................................. 10

*Waymo LLC v. Uber Techs., Inc.*,
    2017 WL 2123560 (N.D. Cal. May 15, 2017) .............................................. 14

**Statutes**

Cal. Code Civ. Proc., § 525 et seq. ....................................................................... 10

**Other Authorities**

Federal Rule of Civil Procedure 34 ..................................................................... 11

Federal Rule of Civil Procedure 26(f) ................................................................. 11

1   Defendants Thomas Patrick Furlong, Michael Alexander Holmes, Ilios
2   Corporation ("Ilios"), Rafael Dias Monteleone, Santhiran Naidoo, Enrique
3   Romualdez, and Lucas Vasconcelos (collectively referred to herein as the
4   "Individual Defendants") submit this Opposition to Plaintiff Electric Solidus, Inc.
5   d/b/a Swan Bitcoin's ("Plaintiff" or "Swan") Motion to Compel Return Of Laptops
6   (ECF No. 53, the "Motion to Compel" or "Motion").

7   **I.    <u>INTRODUCTION</u>**

8   At every turn, Swan attempts to vilify the Individual Defendants and wrongly
9   paint them as secretly leaving in the middle of the night with Swan's alleged trade
10  secrets, which to this day Swan refuses to identify with particularity (because there
11  are none). But its misleading narrative fails to acknowledge the truth: Swan was
12  on the brink of financial collapse, Swan's actions and lack of transparency had
13  destroyed its relationship with 2040 Energy's ███████ shareholder, and the
14  Individual Defendants were left with no choice but to resign from the failing entity.

15  In filing this Motion, Swan incorrectly claims that it is entitled to the return
16  of the Individual Defendants' personal laptops, and is yet again seeking expedited
17  relief, relying on non-existent procedure and warped facts and law. In doing so,
18  Swan seeks a merits determination on its conversion claim for less than $15,000
19  worth of equipment in the form of a motion to compel discovery. Indeed, Swan's
20  Motion and the conversion claim seek the exact same relief—*i.e.*, the return of the
21  laptops. This is a dispute that should be decided by an arbitrator pursuant to a
22  binding arbitration provision in the Parties' consulting agreements, and not this
23  Court. *See* ECF Nos. 53-3-53-8, § 12.A (this section is the arbitration provision in
24  the consulting agreements between Swan and Furlong, Ilios (Holmes' consulting
25  company),[1] Monteleon, Naidoo, Romualdez, and Vasconcelos, referred to herein
26  collectively as the "Consulting Agreements"). Further, granting what is really a

27

28  ───────────────
    [1] Swan engaged Holmes indirectly through by Ilios as an independent consultant.

disguised motion for preliminary injunction ordering the return of the laptops to Swan (and not preserving the status quo) is inappropriate at this procedural juncture, particularly given that Swan withdrew its motion for preliminary injunction, and that it contravenes California law.  Swan's Motion should be denied for these several reasons and more, as detailed herein.

First, this issue must be reserved for arbitration.  The Consulting Agreements provide that all disputes and claims arising from their relationship would be submitted to binding arbitration.  While there is a narrow carve-out for "injunctive relief" as to specific, limited matters (*id.* § 12.D), the return of the laptops is not one of them.  Even the mere question of arbitrability of this issue must be determined by an arbitrator and not the Court.  *See id.* § 12.A.

Second, Swan's Motion is premature and procedurally defective.  By filing a Motion to Compel, Swan tries to characterize the issue as a discovery dispute requiring immediate resolution.  But Swan cites no rule, authority, or standard permitting its requested relief.  Indeed, Swan has not even served any discovery— and its *ex parte* requests for expedited discovery were already denied, twice.  To be sure, discovery is not even open yet, and even if it was, Swan would only be entitled to copying and inspection, not wholesale *possession and ownership*, of the Individual Defendants' laptops.

Third, reserving all rights relating to the arbitrability of this dispute and to compel arbitration, if the Court considers Swan's Motion, it should reject it on the merits.  In effect, Swan's Motion to Compel is really a motion for preliminary injunction in disguise.  But Swan fails to establish the elements necessary for preliminary injunctive relief—indeed, it does not even address them.  Swan fails to prove that it will succeed on its conversion claims—that is, that it owns the laptops at issue (it does not).  The laptops were not "company issued," as Swan baldly suggests.  To the contrary, the Individual Defendants purchased the laptops on their own terms and for their own use as independent contractors.  Swan also fails to

1    prove why it is purportedly entitled to their return or how it is harmed—let alone

2    irreparably harmed—if the Court does not order their immediate return.  Indeed,

3    there is an adequate remedy at law (monetary damages); the laptops in question are

4    not in the possession of the Individual Defendants but are being preserved by third

5    party discovery vendors; and the Individual Defendants have already proposed a

6    reasonable solution that would provide Swan with access to the laptops while at the

7    same time protecting the Individual Defendants' (and potential third parties')

8    private, personal and/or confidential information.  The balance of the harms clearly

9    warrants denial of Swan's disguised motion for preliminary injunction.  In any

10   event, once again, Swan's Motion implicates a merits question on the ultimate issue

11   of its conversion claim, which must be reserved for arbitration.

12         <u>Fourth</u>, Swan's Motion ignores significant data concerns.  Swan fails to

13   address that it may not even own the data it seeks on the laptops, because the

14   Individual Defendants used the laptops to manage bitcoin mining for 2040 Energy

15   Ltd. ("2040 Energy"), in which ███████████████████.  Thus, to the

16   extent that the laptops contain any purported confidential information, it is owned

17   by *2040 Energy*—not Swan.  Further, several of the Individual Defendants are

18   located in jurisdictions subject to the General Data Protection Regulation

19   ("GDPR"), which raises serious concerns regarding the disclosure of private data.

20         The Individual Defendants and the Court have already proposed a solution

21   that would provide Swan with the information it actually seeks while protecting the

22   interests of all those involved.  The fact that Swan does not like that proposal does

23   not justify the instant Motion.  For these reasons, the Court should deny Swan's

24   Motion in its entirety, and order a discovery vendor/special master to be assigned

25   for the preservation of the laptops for purposes of litigation.

26   **II.    FACTUAL BACKGROUND**

27         **A.    Swan, Tether, and 2040 Energy**

28         In or around June 2023, Swan—a bitcoin financial services company—

1  entered into a Shareholder Agreement creating a bitcoin mining arrangement with a

2  cryptocurrency company called Tether, through Tether's subsidiary Zettahash Inc.

3  ECF No. 22 ("Compl.") ¶¶ 58-60.[2]  Exhibits attached to Swan's now-denied *ex*

4  *parte* application for a temporary restraining order ("TRO") (ECF No. 25-2, the "*Ex*

5  *Parte* Application") show that those parties created an entity called 2040 Energy to

6  operate, ███████████████████████████████████████████

7  ███████  Swan holds  ████████████████████████████

8  ████████████████████████████████████████████████████

9  ████████  .  Compl. ¶ 61.  At the outset, Swan ran the day-to-day operations of

10 2040 Energy (*id.*) until it resigned following allegations of its breach of the

11 Shareholder Agreement.  2040 Energy subsequently ████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████  .  ECF No. 25-3 (Ex. C to Samplin Decl.)

14 (describing ████████).  There is no evidence that Swan has or ever had a mining

15 business outside of its equity position in 2040 Energy.

16    **B.    The Individual Defendants Were Independent Contractors, Not**

17       **Employees, of Swan, Who Worked for the Benefit of 2040 Energy.**

18       After Tether and Swan created 2040 Energy, Swan engaged multiple

19 independent contractors (including the Individual Defendants) via Consulting

20 Agreements to run 2040 Energy's mining operations.[3]  *See* Declaration of Scott

21 Kisser in support of Plaintiff's Motion to Compel ("Kisser Decl.," ECF No. 53-1),

22 Exs. 2-7.  Among other things, the Consulting Agreements state:

23       "The Company desires to retain Consultant as an independent
         contractor to perform consulting services for the Company. . . ."
24
         *Independent Contractor.* It is the express intention of the Company and
25

26 ─────────────────────
   [2] While the Individual Defendants reference certain allegations from Swan's
27 Complaint, they do so purely for the purpose of this Opposition and do not concede
   their veracity.

28 [3] The Consulting Agreements are substantively identical for the issues before the
   Court.

Consultant that Consultant perform the Services as an independent contractor to the Company. Nothing in this Agreement shall in any way be construed to constitute Consultant as an agent, employee or representative of the Company.

Consulting Agreements, at Introduction; *id.,* at § 8.A.  The Consulting Agreements also required the Individual Defendants to furnish their own "tools and materials" to complete their work.  *See id.*, at § 8.A (section titled "Independent Contractor" requiring each "[c]onsultant . . . to furnish . . . all tools and materials necessary to accomplish" the objects of the agreement).

Pursuant to the Consulting Agreements, at no time were the Individual Defendants acting as employees of Swan.  And neither the Consulting Agreements nor any other documentation (all of which Swan drafted) state that the laptops in question are owned by Swan.

## C.    The Consulting Agreements Require Arbitration.

The Consulting Agreements require Swan to arbitrate nearly all disputes, and they delegate the issue of arbitrability to JAMS.  The Consulting Agreements state:

> CONSULTANT AGREES THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE . . . ARISING OUT OF, RELATING TO, OR RESULTING FROM THE CONSULTANT'S CONSULTING OR OTHER RELATIONSHIP WITH THE COMPANY OR THE TERMINATION OF THE CONSULTANT'S CONSULTING OR OTHER RELATIONSHIP WITH THE COMPANY, INCLUDING BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION. . ."

Consulting Agreements, § 12.A (formatting in original).

The Consulting Agreements further state:

> **CONSULTANT AGREES TO ARBITRATE ANY AND ALL COMMON LAW AND/OR STATUTORY CLAIMS UNDER LOCAL, STATE, OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, . . . CLAIMS RELATING TO . . . [THE] RELATIONSHIP WITH THE COMPANY, AND CLAIMS OF BREACH OF CONTRACT, . . . CONSULTANT ALSO AGREES TO ARBITRATE ANY AND ALL DISPUTES ARISING OUT OF OR RELATING TO THE INTERPRETATION OR APPLICATION OF THIS AGREEMENT TO ARBITRATE. . . . CONSULTANT HEREBY EXPRESSLY AGREES TO WAIVE, AND DOES WAIVE, ANY RIGHT TO A TRIAL BY JURY.**

<u>CONSULTANT FURTHER UNDERSTANDS THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH CONSULTANT</u>.

*Id.* at § 12.A (Capital letters and bold in original) (underline emphasis added); *see also* § 12.B (specifying JAMS as arbitration tribunal).

The Consulting Agreements permit a party to "petition the court for injunctive relief" <u>only</u> where a violation of an agreement "regarding intellectual property, confidential information, or noninterference" is alleged. *Id.* at § 12.D (Capital letters in original). This narrow exception to arbitration does not include merits determinations or injunctive relief for the return of personal property.

Swan ***conceded*** in its Complaint that:

> In contracts with Swan, [the Individual Defendants] agreed to arbitrate claims related to their consulting relationships with Swan. [] However, those agreements state that Swan may seek injunctive relief in court for *violations of any agreement regarding intellectual property, confidential information, or noninterference.* Swan anticipates pursuing additional claims against Defendants Furlong, Holmes/Ilios, Monteleone, Naidoo, Romualdez, and Vasconcelos in arbitration.

Compl. at 4, fn. 1 (emphasis added).

**D.    The Laptops At Issue Were Not "Company-Issued;" rather, the Individual Defendants Purchased Their Own Personal Laptops for 2040 Energy Business.**

There is no evidence that Swan directly purchased, delivered, or supplied any laptops to the Individual Defendants, nor did Swan require any specific type of laptop be purchased to perform 2040 Energy business. To the contrary, the evidence establishes that the Individual Defendants bought their *own* laptops *(see* Kisser Decl., Exs. 8-14), which they used for work, the benefit of 2040 Energy, and for personal purposes. Each Individual Defendant purchased a type and model of laptop of their own choosing based on their own personal preferences. *Id.*

**E.    The Consulting Agreements and Information Security Policy Do Not Specify Who Owns The Laptops.**

Neither the Consulting Agreements nor the Information Security Policy identified by Swan describes ownership issues relating to equipment independent contractors use for work.  The Consulting Agreements merely state, in relevant part, that consultants are required to furnish their own "tools and materials" necessary to perform their work.  *See* Kisser Decl., Exs. 1, 2-8.  Nothing in the Agreements indicates that any of these "tools or materials" would somehow become the property of the Company.  Swan also does not submit any evidence that any of the Individual Defendants actually received, reviewed, or agreed to the Information Security Policy or when it was in effect.  *Id.* ¶ 2 (stating only that "Swan maintains company policies" and "[a]ll contractors have access to these policies.").

And while it appears that Swan decided to reimburse the Individual Defendants for the purchase of their laptops (in some cases up to $1,700),[4] there is no indication in any of the paper drafted by Swan that this reimbursement meant that Swan thus now owned the laptops, as opposed to it merely reimbursing the Individual Defendants for expenses relating to the performance of consulting services.  It appears that Swan also reimbursed the Individual Defendants for Swan "swag" (*e.g.*, clothing with Swan's logo).  *See* Kissler Decl., Ex. 9 (reimbursing Individual Defendant Romualdez for "[s]wag purchase[s]").  And unlike many employment agreements, the Consulting Agreements do not warn consultants that they should not expect privacy on their laptops and say nothing about the Individual Defendants use of these devices.  *See generally,* Consulting Agreements.

---

[4] It is unclear from the evidence submitted by Swan whether the reimbursement of $1,700 applied to all of the Individual Defendants, or only Mr. Furlong.  *See, e.g.*, Mot. at fn. 3 (acknowledging Furlong exceeded budget).  Regardless, because most of the Individual Defendants believed the laptops were their own personal property, many purchased laptops that cost more than $1,700, *see, e.g.,* ECF No. 53-15 ($2,176.41), 53-11 ($2,500), and some also purchased and downloaded software and other tools on their laptops that was not reimbursed by Swan.

**F.      As a Result of Swan's Cash Crisis, Lack of Transparency, and Mismanagement, the Individual Defendants Resign.**

By at least April 2024, Swan experienced a liquidity crisis.  In or about July 2024, Swan publicly announced layoffs across many functions and that it would be shutting down its managed mining operations.  *See* ECF No. 30-2 ("Fondo First Decl."), Ex. A.  Fearing bankruptcy, and concerned about Swan's actions and lack of transparency to 2040 Energy and third-parties, the Individual Defendants resigned from Swan.

**G.      Defendants Offer A Reasonable Solution To The Laptop Issue.**

After the litigation commenced, the Individual Defendant's counsel diligently worked with the Individual Defendants to retrieve the laptops from their possession and preserve them with their discovery vendors, Consilio LLC and FTI Consulting, for this litigation.  Declaration of Matthew P. Kanny filed concurrently herewith ("Kanny Decl."), ¶ 2.  As reported at the October 11, 2024 status conference, as of that date, all of the Individual Defendants' laptops were retrieved from the Individual Defendants (who no longer have access to them) and are now in the possession of counsel's discovery vendors.  During the course of the retrieval and as discussed at the status conference, counsel learned that several of the laptops contain personal, private and confidential information of the Individual Defendants, as well as potentially 2040 Energy information.  Therefore, the Individual Defendants have been reluctant to simply turn over the laptops to Swan and have attempted to meet and confer with Swan regarding the issue.[5]

At the October 11, 2024 status conference, the Individual Defendants proposed a process that would ensure that any potential Swan information on the

---

[5] Immediately upon the Individual Defendants' counsel's engagement, counsel reached out to Swan's counsel to meet and confer regarding the preservation of the laptops for litigation purposes.  Swan refused to negotiate a resolution that would permit access to the laptops while at the same time preserve the Individual Defendant's private information.  *See* ECF No. 37-1 ("Fondo Second Decl."), ¶ 2.

laptops is preserved and that the Individual Defendants' privacy rights are protected.  This process included utilizing a third-party vendor to forensically image the laptops and filter information that is personal and/or highly sensitive financial information, for example, while providing the rest to the Parties for use in the litigation.  ECF No. 50 ("Oct. 11, 2024 Hr'g Tr.") at 24:1-23.  Swan objected, largely based on its purported concern about a third-party deciding what is private versus Swan information.  At the status conference, the Court suggested that this concern could easily be addressed by appointing the vendor as a special master and having them create a log of any information that is not provided to the Parties—and once Swan receives the log, it could object and challenge the designation. *Id.* at 24:11-23; 26:3-16.  The Individual Defendants agreed to the Court's suggestion, but Swan refused and requested additional briefing on the issue. *Id.* at 26:17-18.

## III.   ARGUMENT

### A.   The Court Should Deny Swan's Motion to Compel as the Merits of Swan's Claims About Ownership, and Swan's Request for an Order Returning the Laptops, are Subject to Binding Arbitration.[6]

By its Motion, Swan improperly seeks a determination of a merits question that goes to the heart of its conversion claim—ownership of the laptops.  But the Parties have already agreed that such a dispute must be resolved solely through arbitration.  *See* Section II.C, *supra*; Consulting Agreements §§ 12.A and 12.D. The Court should reject Swan's attempt to skirt this binding arbitration clause.

First, pursuant to the Consulting Agreements, all disputes under the Consultant Agreements must be submitted to arbitration; Swan has already admitted as much in its Complaint.  *See* Section II.C, *supra*.  Here, Swan's Motion

---

[6] In addition to asserting arbitration as a basis for this Court to deny Swan's Motion to Compel, the Individual Defendants also assert that all such issues should be compelled to arbitration and will be moving to compel arbitration of all arbitrable claims in connection with its upcoming response to Swan's Complaint.  By opposing Swan's Motion to Compel, the Individual Defendants do not waive and specifically reserve all rights relating to compelling arbitration.

1    seeks the same relief sought by Swan's conversion claim—the return of the

2    Individual Defendants' laptops.  *See* Compl., ¶¶ 173-176; Prayer for Relief, ¶ C.

3    Whether the Individual Defendants are liable for conversion turns on who owns the

4    laptops in question.  Thus, fundamental merits questions as to ownership would

5    need to be decided to resolve Swan's Motion.  But these are the precise types of

6    issues that must be submitted to arbitration.

7           Second, while there is a narrow injunctive relief carveout in the Consulting

8    Agreements, it is limited to claims alleging a violation of any agreement regarding

9    *intellectual property, confidential information, or noninterference.*[7]  In its Motion,

10   Swan seeks the physical return of the laptops themselves, not the return of

11   intellectual property nor confidential information.  *See* Mot. at 2 (Court should

12   "compel the prompt return" of the laptops).  While it tries to claim that the

13   Consulting Agreements require their return, Swan also does not allege breach of

14   contract based on the Individual Defendants' retention of the laptops, nor does it

15   seek specific performance of any obligation to return, which too would be subject

16   to arbitration.  Compl. ¶¶ 38-47.  The fact that this dispute is limited to physical

17   property is evident because Swan admits it does not know whether any of its

18   alleged "confidential" or trade secret information exists on the laptops.  *See* Mot. at

19   1 (claiming laptops "almost certainly" "contain *evidence*" of alleged

20   misappropriation; not confidential information itself).

21          Third, any question relating to the arbitrability of this dispute is one for

22   JAMS, not this Court.  Where, as here (Consulting Agreements, § 12.A), an

23   arbitration provision delegates the issue of arbitrability, the Court must refer the

---

[7] Not including the return of personal property in the limited injunctive relief carve
out in the Consulting Agreements makes perfect sense given that, under California
law, a preliminary injunction is not a permissible remedy for the return of personal
property under a claim of conversion. Cal. Code Civ. Proc., §§ 525 et seq.;
*Voorhies v. Greene*, 139 Cal. App. 3d 989, 996 (Cal. Ct. App. 1983) (finding "nor
is [injunctive relief] a proper remedy for recovering possession of personal
property") (quoting *San Antonio Water Co. v. Bodenhamer & Sierra Water &
Power Co.*, 133 Cal. 248, 251 (1901)).

question to arbitration. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)
(parties delegated arbitrability to the arbitrator); *Caremark, LLC v. Chickasaw
Nation*, 43 F.4th 1021, 1034 (9th Cir. 2022) (same); *Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201, 1209 (9th Cir. 2016) (same); *Acosta v. Brave Quest Corp.*, No.
2:23-CV-09581-SB-MAR, 2024 WL 3206986, at *5 (C.D. Cal. May 10, 2024)
(finding parties manifested mutual intent to arbitrate arbitrability).

For these reasons, the Court should deny Swan's Motion to Compel so that
these issues may be raised in arbitration and resolved by an arbitrator.

### B. Swan's Motion to Compel Is Premature and Procedurally Defective.

Swan's Motion to Compel identifies no standard for the Court to consider in
ruling on Swan's Motion; it simply frames its request as a "Motion to Compel" the
return of the laptops and expects the Individual Defendants and Court to figure out
the applicable standard.  To the extent Swan is seeking a discovery motion, it
improperly seeks to compel physical discovery before even holding a Rule 26(f)
conference.  And Swan seeks to compel physical discovery before it has even
propounded a single discovery request.  This is obviously improper.  Moreover, the
Federal Rules of Civil Procedure do not entitle Swan to wholesale *possession* of the
Individual Defendants' property in any event.  Indeed, pursuant to Federal Rule of
Civil Procedure 34, Swan is only entitled to the copying or inspection of certain
relevant data from the laptops—not the laptops themselves.  Finally, it also appears
that Swan is actually seeking summary adjudication of a merits issue relating to
who owns the laptops, which not only should be resolved in arbitration, but is also
improperly raised in a thinly disguised discovery motion.  For these reasons,
Swan's Motion to Compel is premature and procedurally defective.

### C. To the Extent Swan Seeks a Preliminary Injunction for the Return of the Laptops, the Court Should Reject It On the Merits.

Regardless of the title of its Motion, it appears what Swan is actually seeking

is a preliminary injunction on its conversion claim for the return of the laptops.[8] But as discussed above, Swan's request is both (i) subject to binding arbitration and should not be decided by this Court (*see* Sections II.C. and III.A., *supra*), and (ii) improper given that a preliminary injunction is not an appropriate remedy in a conversion claim (*see* fn. 7, *supra*). But even if the Court were to consider the merits of Swan's request, and reserving all rights to compel arbitration, Swan makes no attempt to demonstrate that it would meet the requirements for a preliminary injunction.

A properly noticed motion (which this is not) seeking preliminary injunctive relief requires "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiffs; and (4) advancement of the public interest." *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980)). "The party seeking a preliminary injunction has the burden of persuasion by a 'clear showing' on each of the factors necessary to obtain the requested relief and also must not have an adequate remedy at law." *Clean Energy v. Applied LNG Techs., USA, LLC*, No. SA CV 08-746 AHS RNB, 2008 WL 4384179, at *5 (C.D. Cal. Sept. 3, 2008) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972, (1997), for the proposition that "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of

---

[8] None of the cases cited by Swan involve a motion to compel, and most involve dispositive motions, preliminary injunction motions, or temporary restraining orders; none support Swan's argument that it is entitled to these laptops by way of its Motion to Compel. *See, e.g., Apex Sys., LLC v. Sperber*, 2024 WL 2789458 (S.D. Cal. May 16, 2024); *Edwards Lifesciences Corp. v. Launey,* 2023 WL 4680774 (C.D. Cal. June 12, 2023); *ARB Labs Inc. v. Woodard*, 2019 WL 332404 (D. Nev. Jan. 25, 2019); *Benedict v. Hewlett-Packard Co.*, 2014 WL 234218 (N.D. Cal. Jan. 21, 2014); *Digital Alpha Advisors, LLC v. Ladak*, 2023 WL 6521029 (D. Nev. Sept. 15, 2023); *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1204 (S.D. Cal. 2008).

1    persuasion.")).  Swan fails to meet each prong.[9]

2        <u>First</u>, Plaintiff fails to establish a strong likelihood of success on the merits—

3    that is, that Swan owns and is entitled to the laptops.  To the contrary, the evidence

4    it submitted suggests otherwise.  The Individual Defendants purchased their *own*

5    laptops as *independent contractors*, not employees, of Swan, under circumstances

6    demonstrating that they would own the laptops.  *See* Section II.D-E, *supra*.  As

7    noted in the Consulting Agreements, the Individual Defendants were required to

8    use their own tools and equipment in performing their work.  While Swan baldly

9    claims that the laptops are Swan's property and that Individual Defendants have no

10   privacy interest here, these assertions are not supported by the facts,[10] and not one

11   of its cited cases supports those propositions.  In fact, none of Swan's cited cases

12   involves an independent contractor relationship or disputes of ownership.  Rather,

13   all of them involve an employer-employee relationship where the employer

14   provided the computers, the parties did not dispute who owned the computers, and

15   in some cases it was alleged that confidential information was on the computers.[11]

16   _____

17   [9] This Court has already rejected Swan's *Ex Parte* Application seeking a TRO, which included a request to return the laptops.  ECF No. 40.  And Swan has now withdrawn its pending preliminary injunction motion, which also included a request to return the laptops.  ECF No. 55.  By filing this Motion to Compel, which is really a motion for preliminary injunction, Swan is engaging in piecemeal litigation, and its Motion should denied for that reason as well.

20   [10] Indeed, Swan concedes that it does not own the laptops in the discovery it improperly sought in connection with its already-denied Renewed *Ex Parte* Application for Expedite Discovery when it drew a distinction between laptops "issued to YOU by SWAN," and laptops "for which SWAN reimbursed YOU," the latter of which it only sought to inspect and image.  ECF No. 43-4 (Declaration of Illissa Samplin in Support of Plaintiff's Renewed *Ex Parte* Application), Ex. B, RFP 5.

24   [11] *See, e.g.*, *United States v. Ziegler*, 474 F.3d 1184, 1191 (9th Cir. 2007) (indicted employee filed motion to suppress); *United States v. Greiner*, 235 F. App'x 541, 542 (9th Cir. 2007) (indicted employee filed motion to suppress evidence from work computer); *Apex Sys., LLC v. Sperber*, 2024 WL 2789458, at *7 (S.D. Cal. May 16, 2024) (ownership of device not contested where laptop was "issued" to employee); *see generally ARB Labs Inc. v. Woodard*, 2019 WL 332404 (D. Nev. Jan. 25, 2019) (no dispute that employee's laptop belonged to employer); *Benedict v. Hewlett-Packard Co.*, 2014 WL 234218, at *2 (N.D. Cal. Jan. 21, 2014) (employee copied employer data from employer-issued laptop and failed to return

1    Those facts are not the case here.

2    Moreover, the fact that Swan may have provided the Individual Defendants

3    with some reimbursement to help cover the expense of these laptops is of no

4    consequence.  As explained above, none of the documents submitted by Swan

5    address who owns the laptops in question, and the evidence shows that each

6    Individual Defendant purchased a laptop of their own choice and used the laptops

7    for both 2040 Energy business and for personal purposes.  Further, the fact that

8    Swan reimbursed the Individual Defendants for "Swan swag" (*see* Section II.E,

9    *supra*) shows that any reimbursement had nothing to with ownership.  Swan cites

10   only one district court opinion from the United State District Court of Nevada

11   where an *employee* paid for a laptop, was reimbursed, was forced to return it, but

12   that case is distinguishable.  There, the Court considered the return of the laptop in

13   an employee-employer context, where the employee made no claim of ownership—

14   he merely claimed that he did not need to return the laptop because the employer

15   had materially breached the employment agreement.  *See ARB Labs Inc.*, 2019 WL

16   332404, at *3.  Swan fails to cite any support for the argument that an independent

17   contractor like Individual Defendants, under the circumstances present here, who

18   simply received money for expenses, must return whatever that money paid for.

19

20   data to employer); *Digital Alpha Advisors, LLC v. Ladak*, 2023 WL 6521029, at
     *3–4 (D. Nev. Sept. 15, 2023) (temporary restraining order granted in part ordering
21   employee to return company-provided computer where employee did not claim
     ownership of computer); *Edwards Lifesciences Corp. v. Launey*, 2023 WL
22   4680774, at *1 (C.D. Cal. June 12, 2023) (court issued temporary restraining order
     ordering employee to return property belonging to employer); *Gauntlett v. Ill.*
23   *Union Ins. Co.*, 2011 WL 5191808, at *9-10 (N.D. Cal. Nov. 1, 2011) (denying
     motion of summary judgment and holding that employer can review employee's
24   work account emails on work computer); *Hilderman v. Enea TekSci, Inc.*, 551 F.
     Supp. 2d 1183, 1203-1204 (S.D. Cal. 2008) (employer had express policy for
25   employees to purchase laptop upon termination indicating employer owned the
     laptops ); *Holmes v. Petrovich Dev. Co.*, 191 Cal. App. 4th 1047, 1069 (2011) (no
26   issue of ownership asserted by employee); *TBG Ins. Servs. Corp. v. Superior Court*,
     96 Cal. App. 4th 443, 446-447 (2002) (employer directly purchased computer for
27   employee and no issue of ownership asserted by employee); *Waymo LLC v. Uber*
     *Techs., Inc.*, 2017 WL 2123560 (N.D. Cal. May 15, 2017) (lawsuit against former
28   employee and no issue of laptop ownership asserted by former employee).

And all of the cases cited by Swan relating to the right of privacy in company-owned equipment involve an employee-employer relationship, not an independent contractor relationship. *See* fn. 11, *supra.* And notably, while Swan claims that its Information Security Policy makes clear that "no guarantee of privacy" is afforded on company-owned equipment, nowhere does that policy state that the laptops in question are "company-owned." Nor has Swan submitted any evidence that any of the Individual Defendants received, read or agreed to that policy. *Cf.* Kisser Decl., ¶¶ 2-3, Ex. 1. And the Consulting Agreements are silent on ownership and the Individual Defendants' right to privacy when using them.

Second, Swan identifies no reason why money damages for the value of the laptops (which is approximately $15,000) is not an adequate remedy at law if it prevails on its conversion claim, especially since Swan has not submitted any evidence that there is any potentially confidential information on them. And even if there were, because the Individual Defendants no longer possess the laptops, any purported confidential information on them cannot be used. Further, to the extent Swan wants access to the laptops to conduct a forensic analysis, the Individual Defendants have already offered a solution that would allow Swan to conduct such an analysis, but Swan rejected it. Simply put, Swan cannot establish that it will be harmed, let alone irreparably harmed, if the Court does not grant Swan's request to require the Individual Defendants to send the laptops to Swan.

Third, the public interest and balance of harms weighs in favor of the Individual Defendants. The solution proposed by Individual Defendants—use of a discovery vendor/special master to allow the appropriate copying and inspection of relevant data—would prevent harm to both Parties. But if Swan's current demand is granted, there is a significant risk that the Individual Defendants' privacy interests could be unfairly impacted (whether inadvertently or otherwise). If turned over, Swan would have unfettered access to the devices, including those on which personal information may be stored. The potential harm this would create

outweighs whatever need Swan has for the physical laptops, considering the public interest in protecting a person's privacy and personally identifiable information is significant. *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019) (noting "[f]ederal courts recognize a constitutional right to privacy encompassing a right to nondisclosure of one's personal information"). This is especially the case when there is a reasonable alternative that mitigates this risk. In addition, as explained further below, Swan's Motion ignores significant data issues, which weigh heavily in favor of denying Swan's Motion.

For these reasons, to the extent the Court considers the merits of Swan's disguised motion for a preliminary injunction, and reserving all rights regarding the arbitrability of these issues, the Individual Defendants respectfully submit that Swan's Motion should be denied.

### D.    Swan's Motion Ignores Significant Data Issues.

Swan's position ignores considerable privacy concerns relating to obtaining the laptops and the data on those laptops. For one, given that the Individual Defendants were working for the benefit of 2040 Energy, much of the data on the laptops (if any) likely belongs to 2040 Energy, not Swan. In its Motion, Swan fails to prove otherwise or that it has any continuing right to any data. In addition, Swan's request for the return of the laptops potentially implicates GDPR compliance issues. Counsel for the Individual Defendants have not reviewed the contents of the laptops given the pending dispute before the Court. Therefore, it is not possible to know whether some data on the laptops might be subject to GDPR. Swan seems to argue that since it allegedly owns the laptops, there is no issue under the GDPR because essentially there is no transfer. Mot. at fn. 4. But whether Swan owns the laptops remains a merits issue that cannot be resolved until the Court makes a final determination. And Swan cannot waive away these GDPR concerns.

**E.    The Individual Defendants and the Court Have Offered a Reasonable and Commonly Used Solution That Balances Both Parties' Interests.**

As noted above, the Individual Defendants and the Court have already offered a reasonable solution to the situation. *See supra* Section II.G.  Per the Court's suggestion, it could appoint a vendor to act as a special master to image the laptops for preservation purposes and evaluate the data on the laptops. *Id.*  This approach would allow discovery to proceed and protect everyone involved.  The special master can provide Swan with whatever data it might be entitled to on the laptops, while simultaneously placing appropriate restrictions on Swan's access to other of the Individual Defendants' or third party data.  As the Court suggested, the special master can also provide a log of data it is not producing to Swan, and Swan has every right to challenge the designation. *Id.*  This provides a mechanism to reduce the likelihood of future issues arising, yet still permits the parties to present disputes to the Court in the event the Parties disagree on what data belongs to who.

Swan baselessly argues that this proposal would be a lengthy, expensive process, but it puts forward no evidence for that argument.  The Court should deny its Motion as there exists a reasonable solution that balances both Parties' interests.

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Compel should be denied.

Respectfully submitted,

Dated:  October 22, 2024

By:  */s/ Matthew P. Kanny*
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
MATTHEW P. KANNY (SBN 167118)
*MKanny@goodwinlaw.com*
AARON S. THOMPSON (SBN 272391)
*AThompson@goodwinlaw.com*
**GOODWIN PROCTER** LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Specially Appearing
Defendants Thomas Patrick Furlong,
Ilios Corp., Michael Alexander Holmes,
Rafael Dias Monteleone, Santhiran
Naidoo, Enrique Romualdez, And Lucas
Vasconcelos*

# L.R. 11-6.2 CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for Defendants Thomas Patrick Furlong, Michael Alexander Holmes, Ilios Corporation, Rafael Dias Monteleone, Santhiran Naidoo, Enrique Romualdez, and Lucas Vasconcelos  certifies that this brief contains 5,816 words, which complies with the word limit of L.R. 11-6.1.

Dated:   October 22, 2024          By:   */s/ Matthew P. Kanny*
                                        GRANT P. FONDO (SBN 181530)
                                        *GFondo@goodwinlaw.com*
                                        MATTHEW P. KANNY (SBN 167118)
                                        *MKanny@goodwinlaw.com*
                                        AARON S. THOMPSON (SBN 272391)
                                        *AThompson@goodwinlaw.com*
                                        **GOODWIN PROCTER LLP**

                                        *Attorneys for Specially Appearing Defendants Thomas Patrick Furlong, Ilios Corp., Michael Alexander Holmes, Rafael Dias Monteleone, Santhiran Naidoo, Enrique Romualdez, And Lucas Vasconcelos*