TIMOTHY A. DELANGE (CA State Bar No. 190768)
tdelange@wmd-law.com
DAVID H. WOLLMUTH (*pro hac vice forthcoming*)
dwollmuth@wmd-law.com
WOLLMUTH MAHER & DEUTSCH, LLP
500 Fifth Avenue
New York, NY 10110
Telephone: (212) 382-3300

*Attorneys for Plaintiff*
*ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN*[1]

## IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN, <br><br> Plaintiff, <br><br> vs. <br><br> PROTON MANAGEMENT LTD., a British Virgin Islands corporation; THOMAS PARTRICK FURLONG; ILIOS CORP., a California Corporation; MICHAEL ALEXANDER HOLMES, RAFEL DIAS MONTELONE; ENRIQUE ROMUALDEZ; and LUCAS VASCONCELOS, <br><br> Defendants. | Case No. 2:24-cv-8280-MWC-E <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN PARTIAL OPPOSITION TO THE MOTION OF GIBSON, DUNN & CRUTCHER LLP TO WITHDRAW AS COUNSEL FOR PLAINTIFF** <br><br> Date:  January 10, 2025 <br> Time: 1:30 p.m. <br> Place:  Courtroom 6A <br> Judge: Hon. Michelle Williams Court <br><br> Action Filed: September 25, 2024 |

---

[1] The law firm of Wollmuth Maher & Deutch LLP appears for Plaintiff in this action solely for purposes of assisting Plaintiff in responding to the motion of Gibson, Dunn & Crutcher LLP to withdraw as Plaintiff's counsel of record. Dkt. No. 69.

-i-                                        *PRINTED ON RECYCLED PAPER*

*PLAINTIFF'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE MOTION OF GIBSON DUNN & CRUTCHER LLP TO WITHDAW AS COUNSEL FOR PLAINTIFF*

# **<u>TABLE OF CONTENTS</u>**

**Page**

PRELIMINARY STATEMENT .......................................................................... 1

BACKGROUND............................................................................................ 3

APPLICABLE LEGAL ETHICS ..................................................................... 8

ARGUMENT ................................................................................................ 15

I.     GIBSON MAY WITHDRAW ONLY ON CONDITION THAT IT IS DISQUALIFIED FROM REPRESENTING TETHER AND ITS AFFILIATES ..................................................................................... 15

II.    SWAN WILL BE PREJUDICED UNLESS GIBSON IS DISQAULIFIED FROM REPRESENTING TETHER AND ITS AFFILIATES ..................................................................................... 19

CONCLUSION ............................................................................................ 20

*Printed on Recycled Paper*

## TABLE OF AUTHORITIES

**Cases**                                                                                       Page(s)

*Barton v. District of Columbia*,
   209 F.R.D. 274 (D.D.C. 2002) ........................................................................16

*Bd. of Trs. of Leland Stanford Jr. Univ. v. Zhang*,
   659 F. Supp. 3d 1061 (N.D. Cal. Mar. 6, 2023).................................10, 14, 17

*California Earthquake Auth. v. Metro. W. Sec., LLC*,
   712 F. Supp. 2d 1124 (E.D. Cal. 2010) ..........................................................17

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
   264 F. Supp. 2d 914 (N.D. Cal. 2003)..............................................................15

*City of El Paso v. Salas-Porras*,
   6 F. Supp. 2d 616 (W.D. Tex. 1998) ...............................................................13

*de Jesus Rosario v. Mis Hijos Deli Corp.*,
   491 F. Supp. 3d 8 (S.D.N.Y. 2020) .................................................................16

*Estate of Falco*,
   188 Cal. App. 3d 1004 (Cal. App. Ct. 1987)....................................................16

*Flatt v. Superior Ct.*,
   9 Cal. 4th 275 (1994) ....................................................................................9, 15

*Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*,
   2021 WL 927359 (S.D. Cal. Mar 11, 2021) ....................................................17

*Gould, Inc. v. Mitsui Min. & Smelting Co.*,
   738 F. Supp. 1121 (N.D. Ohio 1990) ..............................................................14

*In re Cnty. of Los Angeles*,
   223 F.3d 990 (9th Cir. 2000) .............................................................................8

*Laskowitz v. Shellenberger*,
   107 F. Supp. 397 (S.D. Cal. 1952) ..................................................................17

*Netlist, Inc. v. SK hynix Inc.*,
   2016 WL 8905079 (C.D. Cal. Dec. 5, 2016)....................................10, 16, 17

**PRINTED ON RECYCLED PAPER**

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys.*,
   20 Cal 4th 1135 (1999) ................................................................................ 14

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 8

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*,
   6 Cal. 5th 59 (2018) ........................................................................ 12, 13, 18

*State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*,
   72 Cal. App. 4th 1422 (Cal. Ct. App. 1999) ................................................ 19

*Tanedo v. East Baton Rouge Par. Sch. Bd.*,
   2014 WL 12642004 (C.D. Cal. Apr. 28, 2014) ............................................ 16

*Truck Ins. Exch. v. Fireman's Fund Ins. Co.*,
   6 Cal. App. 4th 1050 (1992) ........................................................................ 10

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*,
   98 F. Supp. 3d 1074 ...................................................................................... 8


**Rules**

CA Rule 1.0.1 ..................................................................................................... 13

CA Rule 1.16 ...................................................................................................... 15

CA Rule 1.16(a)(2) ............................................................................................ 15

CA Rule 1.16(b)(6) ............................................................................................ 16

CA Rule 1.3 ........................................................................................................ 14

CA Rule 1.7 ............................................................................................... 9, 11, 17

CA Rule 1.7(a) ..................................................................................................... 9

CA Rule 5.6(a)(2) ............................................................................................... 14

*PRINTED ON RECYCLED PAPER*

D.C. Rule 1.4 ..................................................................................12

D.C. Rule 1.7...............................................................................11, 13


**Other Authorities**

ABA Formal Opinion 489....................................................... 11-12

D.C. Legal Ethics Opinion 272 ......................................................10

D.C. Legal Ethics Opinion 273 ................................................10, 12

D.C. Ethics Opinion 309 .........................................................13, 14

L.R. 83-2.2.2 ..................................................................................16

L.R. 83-2.3.4 ..................................................................................17

L.R. 83-3.1.2 ....................................................................................9

Restatement of the Law Governing Lawyers 3d § 132 ....................11

*PLAINTIFF'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE MOTION OF*
*GIBSON DUNN & CRUTCHER LLP TO WITHDAW AS COUNSEL FOR PLAINTIFF*

Plaintiff Electric Solidus, Inc. d/b/a Swan Bitcoin ("Swan") respectfully submits this Memorandum of Points and Authorities in partial opposition to the motion of Gibson, Dunn & Crutcher LLP ("Gibson") to withdraw as Swan's counsel in this action, together with the supporting attorney declaration of Timothy A. DeLange, Esq. (the "DeLange Decl.") and the declarations of Swan's Chief Executive Officer and General Counsel, Cory Klippsten ("Klippsten Decl.") and Juan Pablo Albán ("Albán Decl."), respectively.

## **PRELIMINARY STATEMENT**

Contrary to Gibson's assertions in this motion to withdraw, there was never any "breakdown" in its attorney-client relationship with Swan until Gibson attempted to abandon Swan to represent Tether – the very company that had tried to put Swan out of business. Swan's efforts to protect itself from Gibson's unethical quest to represent Tether cannot possibly be good cause for withdrawal. In fact, to prevent Gibson from profiting from its own wrongdoing, and under crystal clear California law, Gibson's motion for withdrawal should be granted *only* on condition that Gibson be disqualified from representing Tether and its affiliates on other matters until the natural resolution of this "Tether Litigation" (as defined in the Gibson engagement letter).

Swan has secured alternative counsel to prosecute this matter, and it has repeatedly offered to resolve this motion by voluntarily substituting such counsel if Gibson would agree to meet its ethical obligations. Gibson has steadfastly refused and has improperly insisted that it should be free to represent Tether so long as the matter is not "substantially related" to this litigation. The "substantially related" test, however, *is completely irrelevant*. That test would apply only if Swan were a former client. Because Swan has been and is today a current client, any attempt to represent a new client (Tether) with adverse interests is *per se* unethical, *whether related or not*. And under fundamental

*Printed on Recycled Paper*

California law, Gibson cannot render Swan a former client for conflicts purposes merely by discharging Swan to represent Tether.

To prevail on this motion, Gibson bears the burden of demonstrating "good cause" for withdrawal. It relies solely on the arbitration that Swan filed *in response to a conflict that Gibson willfully created* to serve its own financial interests. ***Gibson*** has indeed caused a "complete breakdown of the attorney-client relationship," Gibson Mot. at 2 (Dkt. No. 69-1), but that cannot qualify as good cause for its unconditional withdrawal. Instead, when a law firm creates a conflict with an existing client by taking on a second, adverse one, the firm can withdraw as counsel for the first client, but only if the lawyer is barred from representing the new client until the original matter for which the lawyer was retained is complete.

Under settled California Supreme Court precedent and a host of other decisions, in this "Hot Potato" scenario disqualification of the law firm from representing the would-be more lucrative client is ***mandatory – imposition of a lesser remedy involving ethical walls or the like is not permissible***. The disqualification remedy is imposed because of the lawyer's *per se* violation of the duty of loyalty; it is not tied to demonstrated prejudice or damages to the betrayed client, Swan,[2] but rather to integrity of the legal profession in the eyes

---

[2] Swan has, however, been substantially prejudiced, see Point II, *infra* and Klippsten Decl. ¶¶ 33-35, and has filed an arbitration against Gibson to recover these damages. Under the terms of the Gibson-Swan engagement letter, the parties' commercial disputes are subject to arbitration in the District of Columbia before JAMS pursuant to JAMS's Comprehensive Arbitration Rules and Procedures. Swan commenced its arbitration against Gibson on November 25, 2023. A copy of the arbitration demand (without its own exhibits) is annexed as Exhibit D to the DeLange Declaration. Gibson has not responded as of this writing. JAMS Rule 24(e) allows for recourse to a Court for interim or provisional relief. On November 22, 2024, Swan filed an action for preliminary injunctive relief in aid of arbitration in California State Court *Electric Solidus, Inc. v. Gibson, Dunn & Crutcher, LLP*, Case No. 24STCV30895 (CA Superior Ct., L.A. County) (the "CA State Court Action"); Klippsten Decl. ¶ 31. A copy of Swan's amended complaint against Gibson in the CA State Court Action (the

**PRINTED ON RECYCLED PAPER**

*PLAINTIFF'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE MOTION OF GIBSON DUNN & CRUTCHER LLP TO WITHDAW AS COUNSEL FOR PLAINTIFF*

of clients and the public generally. Bedrock ethical principles demand that Gibson's withdrawal be accompanied by an order disqualifying Gibson from representing Tether on any matter until the matters for which Swan retained Gibson are complete. As a court of equity, this Court has indisputable power to grant such an order to protect Swan and the legal profession as a whole. The Court should do so.

## **BACKGROUND**

Interested third-party Tether controls the world's most traded cryptocurrency. Tether "tokens" are sometimes referred to as "stablecoins" because their value is pegged to a sovereign currency like the U.S. Dollar. Klippsten Decl. ¶ 8. One of Swan's businesses was to "mine" a different, but also well-known cryptocurrency – Bitcoin – that is not tied or pegged to a sovereign currency. As of this writing, one Bitcoin is worth over $100,000.

The adversity between Swan and Tether is documented in the Gibson-authored complaint herein. Page one of Gibson's Engagement Letter and accompanying Terms of Retention drafted by Gibson and executed by Swan (the "Gibson Engagement Letter"; DeLange Decl. Ex. A), aptly refers to this and other disputes with Tether and its affiliates arising from the theft of Swan's bitcoin mining business as the "Tether Litigation." Accordingly, we cite the complaint as "TL Cmplt."

Briefly summarized, Tether was Swan's financing partner in a Bitcoin mining joint venture called "2040 Energy," in which both were equity owners and Swan was the operator. TL Cmplt. ¶¶ 58-62. Bitcoins are "mined" at great expense in terms of human labor, computer power and energy by teams of professionals overseeing millions of complex computerized calculations per second. TL Cmplt. ¶¶ 35-36. In the Summer of 2024, Swan's contractors and

---

"St. Ct. Cmplt.") is annexed to the DeLange Declaration as Exhibit E (again omitting its own exhibits).

*PRINTED ON RECYCLED PAPER*

*PLAINTIFF'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE MOTION OF GIBSON DUNN & CRUTCHER LLP TO WITHDAW AS COUNSEL FOR PLAINTIFF*

employees managing 2040 Energy conspired with Tether to steal Swan's business relationships globally, and the trade secrets, assets and employees Swan had contributed to the joint venture and to operate the joint venture through the new entity, the first-named Defendant herein Proton Management Ltd. TL Cmplt. ¶¶ 63-123.

In August and September 2024, Swan invited Gibson to compete against several law firms that Swan was interviewing to be its attorney to prosecute its trade secret theft and other legal claims against Tether and its co-conspirators. Klippsten Decl. ¶¶ 14-16. Swan ultimately selected Gibson based on its proposed strategy, and its reputation for competence and loyalty. *Id.* ¶ 17. The parties executed the Gibson Engagement Letter, dated September 18, 2024 (also drafted by Gibson) that described the representation as follows: "to provide legal services to Swan in connection with a dispute with Tether and certain of its affiliates, and certain former employees and consultants of Swan arising from the theft of Swan's bitcoin mining business, employees, trade secrets, and intellectual property (the 'Tether Litigation')." DeLange Decl. Ex. A; Klippsten Decl. ¶¶ 18-19. Gibson represented to Swan that it had checked its "computerized conflict of interest index" and was ethically positioned to represent Swan in the Tether Litigation. Klippsten Decl. ¶¶ 16, 20.

Gibson filed the complaint in this Tether Litigation on September 25, 2024 and began to prosecute the case on Swan's behalf on an expedited basis. Klippsten Decl. ¶ 22. As evidenced in the complaint, Tether was an integral part of the conspiracy at the heart of the dispute in the Tether Litigation. *See, e.g.*, TL Cmplt. ¶¶ 5, 7-9, 73, 76. The complaint also states that Swan was actively investigating Tether's involvement in the underlying dispute and may bring a lawsuit against Tether directly. *Id.* ¶ 108 n.8. Swan not only relied on Gibson for strategy and advocacy in the Tether Litigation, but Swan also shared confidences with Gibson about Swan's interests in the joint venture and about a

PRINTED ON RECYCLED PAPER

potential global resolution of Swan's and Tether's differences. Klippsten Decl. ¶ 23.

Unbeknownst to Swan, while it was interviewing, selecting, and strategizing with Gibson for the purposes of this and other matters in which it is adverse to Tether, Gibson itself was interviewing and making offers to Barry Berke, then of Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"). Mr. Berke, who was and is one of Tether's regular outside litigation attorneys, was actively representing Tether in another matter as a current client at Kramer Levin and, upon information and belief, intended to continue to represent Tether as a current client once he joined Gibson. In an article in The American Lawyer, dated October 30, 2024 (DeLange Decl. Ex. B), Mr. Berke reveals that Gibson approached him "over time to join them" and the Managing Partner of Gibson, Barbara Becker, describes the lengthy interview process for Mr. Berke, including the fact that "Berke and his colleagues met with more than 50 Gibson Dunn partners to ensure that everyone was mutually excited about the move," presumably over a period that began prior to Gibson's engagement with Swan. *Id.* Mr. Berke told The American Lawyer, "We expect that all of our clients will continue to be represented by us." *Id.*

On October 25, 2024 – shortly after Gibson had delivered to Tether's outside counsel options of settlement or increased litigation – one of the Gibson attorneys for Swan in this Tether Litigation, Matthew D. McGill, telephoned Swan's CEO, Cory Klippsten, and told him in words or substance that Gibson was about to hire a lateral attorney whose current client presented a conflict with Gibson's representation of Swan and the firm's "senior management" had directed him to urge Swan to find replacement counsel in the Tether Litigation. Mr. McGill did not identify the lateral attorney but did identify Tether as the new client that caused the conflict. Klippsten Decl. ¶ 24.

*PRINTED ON RECYCLED PAPER*

On October 30, 2024, Gibson announced that Mr. Berke and other partners of Kramer Levin were joining Gibson as partners. As of this writing, Mr. Berke's biography appears on the Gibson website: https://www.gibsondunn.com/lawyer/berke-barry-h/. Mr. Berke immediately caused the docket in a case in which he was representing Tether to reflect his new firm and address. DeLange Decl. Ex. C; *see also* Klippsten Decl. ¶¶ 24-30; Albán Decl. ¶¶ 9-14. On November 5, 2024, Mr. McGill of Gibson spoke with Swan's General Counsel, Mr. Albán. Mr. McGill indicated that Gibson had sought a waiver of the conflict from Tether to allow the firm to continue to represent Swan in this matter, but that Tether had refused. Albán Decl. ¶ 13. Tether obviously knew the import of Gibson's waiver request and it was apparently willing to leverage its influence to induce Gibson to unethically drop Swan or, if Gibson refused, to forego making Gibson its counsel of choice.

Swan retained the law firm of Wollmuth Maher & Deutsch LLP ("WMD") to advise it of its rights vis-à-vis Gibson. By letter dated November 6, 2024, WMD informed Gibson that Swan would not consent to waive the conflict. The letter further demanded that Gibson either disassociate itself from Mr. Berke and other laterals representing Tether or that they and Gibson withdraw from representing Tether during the pendency of this action. St. Ct. Cmplt. (DeLange Decl. Ex. E) at ¶ 22.

Even though the November 6 letter requested a response by November 8, Gibson stalled and delayed (in the face of repeated follow-up inquiries from WMD) in providing any substantive response until two weeks later. By letter dated November 20, 2024, Gibson noted that Gibson Engagement Letter contains a prospective conflict of interest waiver and claimed that Swan waived any conflict of interest created by Berke's bringing Tether to Gibson as a client.[3] *Id.*

---

[3] Gibson also claimed in its November 20 letter that the Gibson Engagement Letter limits the "scope" of the Swan engagement to a preliminary injunction

*PLAINTIFF'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE MOTION OF GIBSON DUNN & CRUTCHER LLP TO WITHDAW AS COUNSEL FOR PLAINTIFF*

¶¶ 23-28. The waiver set forth in the Gibson Engagement Letter expressly discusses "concurrent" representation conflicts – meaning continued representation of both Swan and Tether. Nowhere does it suggest that Gibson was allowed to terminate Swan following the creation of a conflict by Gibson. Moreover, the waiver is entirely general, it does not provide a single example of what types of conflicts might arise and does not identify a single client, let alone Tether. Gibson was aware of Mr. Berke's representation of Tether at the time it was inducing Swan to hire it for the purposes of the Tether Litigation. As the ethics rules discussed below make clear, Gibson was obligated to inform Swan of the potential conflict *at the time it asked Swan for the advance waiver*. Having failed to obtain Swan's informed consent, Gibson cannot rely upon that waiver now.

On November 22, 2024, Swan commenced a California state court action for preliminary injunctive relief prohibiting Gibson from representing Tether pending arbitration. On November 24, 2024, Gibson filed the instant motion to withdraw as counsel for Swan in this Tether Litigation.

On December 19, 2024, the Hon. Curtis A. Kin of Department 86 (Writs and Receivers) of Los Angeles Superior Court heard Swan's application for a temporary restraining order ("TRO") and expedited discovery in the State Court Action.[4] Swan annexes the December 19, 2024 transcript as Exhibit G to the DeLange Declaration. The Superior Court denied the application on the ground

---

application that purportedly concluded on October 5, 2024. Swan replied that argument was frivolous in the face of the Gibson Engagement Letter, which is plain that the engagement is for the entire "Tether Litigation." Gibson no longer relies upon this limited scope argument in its motion to withdraw.

[4] This was Swan's second application for a TRO. Swan's first application was denied on procedural grounds because Swan did not file the application with the Writs and Receivers department. Swan then refiled the TRO, which bounced between two other departments before finally being sent to Judge Kin. The judge in the second department, the Hon. Stephen Goorvitch, held an initial hearing, but ultimately declined to rule on the matter, and sent the application to Judge Kin. A true and correct copy of the transcript of the hearing before Judge Goorvitch is attached to the DeLange Declaration as Ex. F.__

*PLAINTIFF'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE MOTION OF
GIBSON DUNN & CRUTCHER LLP TO WITHDAW AS COUNSEL FOR PLAINTIFF*

that Swan had failed to "make an affirmative factual showing of irreparable harm" in the face of a Gibson declaration that it had no intent to represent Tether imminently. DeLange Decl. Ex. G at p. 4. The Court also cited the above-referenced "advance waiver" in the Gibson Engagement Letter as supporting Gibson's argument that it had the right to represent Tether on any matter not substantially related to this case and suggested that that the conflict issues raised now would be better decided "in the context of that [future] case or particular representation." *Id*. at p. 5. After hearing counsel for both sides, the Court stated that even if Swan's duty of loyalty argument "is correct . . . it still wouldn't affect the outcome here today." *Id.* at p. 26.

Swan believes that the Superior Court erred in conditioning affirmative relief for Swan on proof of the imminence of Gibson's taking on a specific Tether representation and, for the reasons discussed below, the State Court further erred in referencing the potential validity and applicability of the advance waiver in the Gibson Engagement Letter.

## APPLICABLE LEGAL ETHICS[5]

Gibson filed the Tether Litigation in this Court, and federal courts in California apply the California State Rules of Professional Conduct. *See W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1080, 1084 n.7 (C.D. Cal. 2015) (citing *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 967 (9th Cir. 2009) and *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000)). The Local Rules of this Court expressly adopt the standards of

---

[5] The Terms of Retention annexed to the Gibson Engagement Letter provide that disputes with Swan are governed under the law of the District of Columbia. DeLange Decl. Ex. A at ¶ 21. The ethical principles involved in this motion are so fundamental that there is no conflict between California and District of Columbia rules: both require that any withdrawal be conditioned on Gibson's disqualification from representing Tether. We refer to the California Rules of Professional Conduct as the "CA Rules" and to Opinions of the Bar as "CA Formal Opinion" with the relevant Opinion number. We refer to the District of Columbia Professional Conduct Rules as the "D.C. Rules" and to Opinions of the Bar as "D.C. Legal Ethics Opinion" with the relevant Opinion number.

professional conduct contained in the "State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto." L.R. 83-3.1.2.

Gibson's motion to withdraw implicates the duty of loyalty, not the duty of confidentiality. Gibson has most flagrantly violated what is known as the "Hot Potato" Rule, which flows from CA Rule 1.7 entitled "Conflict of Interest: Current Clients." CA Rule 1.7(a) provides that "a lawyer shall not, without informed written consent from each client . . . represent a client if the representation is directly adverse to another client in the same *or a separate matter*." (emphasis added).

No ethical screen between firm attorneys working for adverse clients can remedy a Rule 1.7(a) violation; the remedy of disqualification from the second representation is "a per se or 'automatic' one" except where the attorney could not have foreseen the adversity between the existing client and the prospective one. *Flatt v. Superior Ct.*, 9 Cal. 4th 275, 284, 297 (1994). As the Supreme Court of California explained in the *Flatt*, it is the duty of loyalty, not the duty of confidentiality that controls:

> The reason for such a rule is evident, even (or perhaps especially) to the nonattorney. A client who learns that his or her lawyer is also representing a litigation adversary, *even with respect to a matter wholly unrelated to the one for which counsel was retained*, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship.
>
> **It is for that [loyalty] reason, and not out of concerns rooted in the obligation of client confidentiality**, that courts and ethical codes alike prohibit an attorney from simultaneously representing two client adversaries, even where the substance of the representations are unrelated.

*Id.* at 285 (emphasis added).

The "Hot Potato" corollary to CA Rule 1.7(a) provides that the lawyer cannot even *attempt* to get around Rule 1.7(a)'s prohibition against concurrent representations of adverse clients in separate matters by artfully staggering the

*PLAINTIFF'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE MOTION OF GIBSON DUNN & CRUTCHER LLP TO WITHDAW AS COUNSEL FOR PLAINTIFF*

two representations – that is, by withdrawing from representing an existing client like Swan while the other adverse client, Tether, is waiting in the wings. The Rule applies even "when no concurrent representation exists, but 'a lawyer . . . abandon[s] a current client for a prospective one[.]" *Bd. of Trs. of Leland Stanford Jr. Univ. v. Zhang*, 659 F. Supp. 3d 1061, 1071 (N.D. Cal. Mar. 6, 2023) (citing *Netlist, Inc. v. SK hynix Inc.*, 2016 WL 8905079, at *5 (C.D. Cal. Dec. 5, 2016)); *see also Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1056-57 (1992) (law firm's withdrawal from its representation of Client 1 prior to motion to disqualify firm from representing adverse new Client 2 does not allow law firm to claim California's "less severe former representation standard . . . rather than the standard governing concurrent representation.") (citation omitted).

D.C. Legal Ethics Opinion 273, entitled "Ethical Considerations of Lawyers Moving from One Private Law Firm to Another," is directly on point. It states that "with respect to clients who accompany a lawyer to a new firm[,]" – *i.e.*, in this case, Mr. Berke's bringing Tether to Gibson – "[t]he new firm [Gibson] must treat each of those representations as new ones for it, testing its ability to undertake those representations [*i.e.*, of Tether] against the requirements of Rules 1.7 [for Gibson current clients, like Swan] and 1.9 [for Gibson's former clients]." *See* D.C. Legal Ethics Opinion 273, *available at* https://www.dcbar.org/for-lawyers/legal-ethics/ethics-opinions-210-present/ethics-opinion-273.[6]

---

[6] *See also* D.C. Legal Ethics Opinion 272, entitled "Conflicts of Interests: 'Hot Potato,'" *available at* https://www.dcbar.org/for-lawyers/legal-ethics/ethics-opinions-210-present/ethics-opinion-272 (where the law firm "affirmatively undertake[s] action – such as initiating a law firm merger" (or in this case, hiring a partner from another firm) – "which create[s]" the conflict "we . . . strongly agree that *the important values of client loyalty and confidence of the public in the bar preclude an interpretation of the rules that would enable a lawyer or a law firm to abandon a client during an active representation in anticipation of pursuing another, perhaps more lucrative, conflicting representation*") (emphasis added).

*PRINTED ON RECYCLED PAPER*

The Restatement of the Law Governing Lawyers 3d § 132 is also in full accord. Comment c states that a client like Swan becomes a "former client" for disqualification purposes if the "lawyer is ***not motivated primarily by a desire to represent the new client***" and the representation of the existing client ends in the normal course of events. The comment continues:

> If a lawyer is approached by a prospective client seeking representation in a matter adverse to an existing client, the present-client conflict may not be transformed into a former-client conflict by the lawyer's withdrawal from the representation of the existing client. ***A premature withdrawal violates the lawyer's obligation of loyalty to the existing client*** and can constitute a breach of the client-lawyer contract of employment.

*Id.* (citation omitted) (emphasis added).

That Gibson foresaw the conflict and intentionally created it is manifest. There is no question that Swan formally engaged Gibson as of September 18, 2024. Mr. Berke did not join Gibson until October 30, 2024, at the earliest. Gibson, like most large law firms, has a department that is "responsible for [the] daily review and analysis of conflicts and other issues related to firm acceptance of new clients, new matters *and lateral attorneys* . . . ." *See* https://www.gibsondunn.com/job/director-conflicts-attorney/ (emphasis added). As part of its lateral interview process, under CA and D.C. Rule 1.7 Gibson was required to inform itself of Mr. Berke's and his team's current clients at Kramer Levin and, given Mr. Berke's express intention to bring those clients to Gibson, to test them for conflicts against Gibson's current client list, including Swan.

Similarly, while Mr. Berke was still at Kramer Levin, he was required to inform Tether under American Bar Association ("ABA") Model Rule 1.4 (Communications) and ABA Formal Opinion 489, of his prospective new affiliation with Gibson. *See* ABA Formal Opinion 489 at 2, *available at* https://www.americanbar.org/content/dam/aba/administrative/news/2019/12/ab

*Printed on Recycled Paper*

a_formal_opinion_489.pdf. Indeed, according to D.C. Legal Ethics Opinion 273, the communication had to specifically address "any conflict of interest matters affecting its [Tether's] representation at the new firm [Gibson]. *See* D.C. Legal Ethics Opinion 273 (citing Rule 1.4 on a lawyer's duty of communication with a client before moving to another law firm).

Gibson informed Tether of the looming conflict with Swan and asked for Tether's consent to it, which Tether refused. The only party *not* consulted was Swan. Instead, in violation of CA and D.C. Rule 1.4, Gibson kept Swan in the dark about the looming conflict that it had created until five days before Gibson announced Mr. Berke's joining the firm. Even then, Gibson did not give Swan any specifics other than the existence of a conflict involving Tether and that Gibson's management hoped Swan would choose replacement counsel. Gibson admitted to Swan's CEO and General Counsel that the only reason that it wanted to terminate Swan as a client was to take on Tether and that Gibson had first asked Tether to waive the conflict but had declined. *See* Albán Decl. ¶¶ 13-15.

Gibson never even asked Swan to waive the Tether conflict in other matters and California Supreme Court precedent also prevents Gibson from relying upon the "advance waiver" and withdrawal provisions of its engagement letter to allow Gibson to withdraw unconditionally from the Tether Litigation. In *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 84 (2018), the California Supreme declared a law firm's entire engagement letter void for procuring an advance waiver from the client without first disclosing information regarding conflicts with another client, *known to the firm at the time*, that would be material to the first's client's decision on the advance waiver. It stated:

> Whether the client is an individual or a multinational corporation with a large law department, the duty of loyalty demands that an attorney or law firm provide the client all material information in the attorney or firm's possession. … [A] prospective client does

not have access to a law firm's list of other clients, and cannot check for itself whether the firm represents adverse parties . . . .

*Id*. at 86.

Here, based on Gibson's own statements to the press, Swan strongly suspects that the Court's investigation will show that, at the time Gibson induced Swan to sign the advance waiver in the Gibson Engagement Letter on September 18, 2024, Gibson (i) had actual knowledge of its advanced negotiations with the Berke Group at Kramer Levin, (ii) had or was ethically required to run conflicts checks on Berke's current clients' including Tether, and (iii) was not only able, but required to make disclosure to Swan that upon realization of the material risk of Berke's joinder with Gibson, Tether would be Gibson's current client adverse to Swan. Having failed to make that disclosure, under *Sheppard, Mullin*, the advance waiver is void for lack of "informed consent." *See also* CA Rule 1.0.1 (e) ("'Informed consent' means a person's agreement to a proposed course of conduct ***after the lawyer has communicated and explained*** (i) the relevant circumstances and (ii) ***the material risks, including*** any actual and ***reasonably foreseeable adverse consequences*** of the proposed course of conduct.") (emphasis added).

The law of the District of Columbia, the jurisdiction governing the Gibson Engagement Letter and the advance waiver contained therein, is the same. As stated in D.C. Ethics Opinion 309 ("Advance Waivers of Conflicts of Interest"):

> [T]he lawyer must make full disclosure of facts of which she is aware, and *hence **cannot seek a general waiver where she knows of a specific impending adversity unless that specific instance also is disclosed.** See* D.C. Rule 1.7, comment [19]; *City of El Paso v. Salas-Porras*, 6 F. Supp. 2d 616, 625-26 (W.D. Tex. 1998). A corollary of this rule is that if the lawyer cannot disclose the adversity to one client because of her duty to maintain the confidentiality of another party's information, ***the lawyer cannot seek a waiver and hence may not accept the second representation***. D.C. Rule 1.7, comment [19] ("If a lawyer's obligation to one or another client or to others or some other consideration precludes making . . . full disclosure to all affected parties, that fact alone precludes undertaking the representation at issue").

*PRINTED ON RECYCLED PAPER*

*See* D.C. Legal Ethics Opinion 309, *available at* https://www.dcbar.org/for-lawyers/legal-ethics/ethics-opinions-210-present/ethics-opinion-309 (emphasis added). The firm's failure to disclose to Swan a "specific impending adversity" with Tether renders the Swan waiver a nullity and the firm is "preclude[d] from undertaking the representation at issue" of Tether.

In this litigation, C.A. Rule 1.3 imposes a duty on Gibson to represent Swan "with commitment and dedication to the interests of the client," not its own interests in bringing on a lucrative new client via a lateral attorney hire. *See also* ABA Rule 1.3, Comment 1 ("A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor."). California endorses the "general rule of disqualification" that "'courts should not allow a law firm to profit from a conflict of interest which it created. This is the potential result when a law firm discards a less profitable relationship in contemplation of taking on a more profitable, conflicting representation.'" *Truck*, 6 Cal. App. 4th at 1059 (quoting *Gould, Inc. v. Mitsui Min. & Smelting Co.*, 738 F. Supp. 1121, 1127 (N.D. Ohio 1990)).

Finally, Gibson cannot rely on CA Rule 5.6(a)(2) and the general freedom of a client to retain counsel of its choosing to escape the consequences of the conflict it created between Swan and Tether when the firm hired Berke. That argument "misunderstand[s] the balance of interests at play." *Bd. of Trs. of Leland Stanford Jr. Univ.*, 659 F. Supp. 3d at 1071. The duty of loyalty that Gibson owed its first client, Swan, and the "'public trust in the . . . integrity of the bar'" outweighs any interest that Tether may have in following Berke to Gibson – at least for the duration of this lawsuit. *Id.* (quoting *People ex rel Dep't of Corps. v. SpeeDee Oil Change Sys.*, 20 Cal. 4th 1135, 1145 (1999)).

*PRINTED ON RECYCLED PAPER*

## ARGUMENT

### I.    GIBSON MAY WITHDRAW ONLY ON CONDITION THAT IT IS DISQUALIFIED FROM REPRESENTING TETHER AND ITS AFFILIATES

This Court's Local Rule 83-2.3.2 prohibits attorney withdrawal except by order of the Court upon good cause shown. Thus, unlike the TRO proceedings in the CA State Court Action where Swan bore a heavy burden, the burden to show good cause justifying withdrawal is squarely on Gibson. Rule 83-2.3.2 does not define good cause, but CA Rule 1.16 (Declining or Terminating Representation) does. Gibson satisfies *none* of the criteria of CA Rule 1.16. In fact, once Gibson entered into the attorney-client relationship with Swan by agreement dated September 18, 2024, the Rule required Gibson to advise Berke and Tether that the firm could not advise Tether on any matter during the pendency of Swan's Tether Litigation because any Tether representation, even if unrelated, "will result in violation of [Rule 1.7] of these Rules or the State Bar Act." *See* CA Rule 1.16(a)(2).[7]

Obviously, the fact that Gibson "senior management" later decided that it was more lucrative for the firm to be able to represent Tether in other matters than to represent Swan in this one is not "good cause" for withdrawal. Again, a law firm may not profit from a conflict of interest that it created by withdrawing from a less lucrative representation to advance a more valuable one. *See Flatt*, 9 Cal. 4th at 288 ("So inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it."). So too, it cannot be that Swan's asserting Gibson's loyalty breach in arbitration constitutes

---

[7] Tether and its affiliates are treated as one client for conflict-of-interest purposes as it relates to Swan. *See Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 919-25 (N.D. Cal. 2003) (law firm disqualification from representing a new client adverse to an existing one extends to corporate affiliates that have a "relatively direct financial relationship" and "common management" with the putative new client).

-15-    *Printed on Recycled Paper*

*PLAINTIFF'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE MOTION OF GIBSON DUNN & CRUTCHER LLP TO WITHDAW AS COUNSEL FOR PLAINTIFF*

"good cause" for unconditional withdrawal. That would be pure "bootstrapping." Gibson's cases citing lawsuits and relationship "breakdowns" between clients and lawyers as a basis for withdrawal are inapposite. Swan does not oppose Gibson's withdrawal; it merely asks for what the law already requires: preventing Gibson from profiting from its own wrongdoing while this litigation continues with substitute counsel.

There is no question that this Court is empowered to impose conditions on Gibson's withdrawal. *See*, *e.g.*, *Estate of Falco*, 188 Cal. App. 3d 1004, 1014 (Cal. App. Ct. 1987) ("To protect the best interests of the client, a trial court should have broad discretion in allowing attorneys to withdraw."); *de Jesus Rosario v. Mis Hijos Deli Corp.*, 491 F. Supp. 3d 8, 10 (S.D.N.Y. 2020) ("It well-settled, however, that a court has 'considerable discretion in deciding a motion for withdrawal of counsel' and can impose conditions before allowing counsel to do so."); *Barton v. District of Columbia*, 209 F.R.D. 274, 277-78 (D.D.C. 2002) (conditioning attorney withdrawal on completion of upcoming briefing); *Tanedo v. East Baton Rouge Par. Sch. Bd.*, 2014 WL 12642004, at *1 (C.D. Cal. Apr. 28, 2014) (granting motion to withdraw subject to certain conditions regarding substitution of counsel).

The only avenue for Gibson's withdrawal in this case is under CA Rule 1.16(b)(6) – "the client knowingly and freely assents to the termination of the representation." Swan is prepared to do so only on the condition that Gibson is disqualified from representing Tether in any capacity for the pendency of this litigation. Imposition of such a condition is not only Swan's right; it is this Court's duty. Where, as here, "California law mandates automatic disqualification, the Court may not substitute a more lenient remedy." *Netlist*, 2016 WL 8905079, at *4.[8]

---

[8] This Court's Local Rule 83-2.2.2 (organization, such as a corporation, cannot appear without an attorney) provides another reason that Gibson must obtain

Gibson claims that CA Rule 1.7 does not apply because it "does not currently represent Tether" and that it never made an "appearance" on behalf of Tether in the case that Mr. Berke brought from his former firm to Gibson, which settled "only a handful of days after Mr. Berke joined Gibson." Hewett Declaration, Dkt. 69-8 at ¶ 5. That is specious both in law and fact. First and foremost, the "Hot Potato" Rule was violated on October 25, 2024 when Gibson told Swan's CEO that it wanted to drop Swan to be *able* to take on Tether as a client *prospectively*. It does not matter for Rule 1.7 disqualification purposes *when* Tether will be "officially" or "formally" onboarded by Gibson.

In any event, Gibson began the impermissible concurrent representation five days later, on October 30, 2024, the day that Berke joined Gibson, *regardless* of whether there was a formal litigation appearance by Gibson on behalf of Tether or even an active Tether matter for Berke or others at Gibson to bill that day. "[U]nder California's automatic disqualification rule, firms have been disqualified even when they performed *no* legal services during the period of concurrent representation." *Netlist*, 2016 WL 8905079, at *5 (citing *California Earthquake Auth. v. Metro. W. Sec., LLC*, 712 F. Supp. 2d 1124, 1127-28 (E.D. Cal. 2010)); *see also Bd. of Trs. of Leland Stanford Jr. Univ.*, 659 F. Supp. 3d at 1068 ("[N]either the amount of work of performed during the concurrent representation, the length of the concurrent relationship, nor the fact that the lawyer's relationship with one of the adverse parties may have terminated after a period of concurrent representation are relevant to the question of whether Rule 1.7 has been violated.").

---

Swan's consent to withdrawal. The withdrawing attorney for an organization must not only notify the client of its inability to proceed *pro se* (L.R. 83-2.3.4) but must also work with the client to arrange for "qualified replacement counsel to substitute in as counsel of record." *Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 2021 WL 927359, at *2 (S.D. Cal. Mar 11, 2021) (citing *Laskowitz v. Shellenberger*, 107 F. Supp. 397, 398 (S.D. Cal. 1952)). Swan is prepared to work with Gibson on such a substitution as soon as Gibson is disqualified from representing Tether and its affiliates until the natural conclusion of this matter.

*PRINTED ON RECYCLED PAPER*
*PLAINTIFF'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE MOTION OF
GIBSON DUNN & CRUTCHER LLP TO WITHDAW AS COUNSEL FOR PLAINTIFF*

Tether had been Berke's long-time client at Kramer Levin. For ethics purposes, the attorney-client relationship between Berke and Tether continued (and was imputed to Berke's new firm, Gibson, on October 30, 2024) *unless* those parties expected that their attorney-client relationship was terminated upon Berke's joining Gibson. As the California Supreme Court stated in a case which Gibson represented the losing law firm:

> [W]here a law firm and client have had a long-term course of business calling for occasional work on discrete assignments, courts have generally held the fact that the firm is not performing any assignment on a particular date and may not have done so for some months – or even years – does not necessarily mean the attorney-client relationship has been terminated. . . . The central question is whether the client would reasonably understand that the representation has terminated . . . .

*Sheppard, Mullin*, 6 Cal. 5th at 82-83; *see also id.* at 81 (distinguishing between a "dormant" current client and a truly "former" client). That neither Mr. Berke nor Tether considered their attorney-client relationship terminated upon Mr. Burke's move to Gibson is demonstrated beyond cavil by the fact that Gibson sought a Tether waiver authorizing Gibson's continued representation of Swan – as Gibson partner McGill told Swan's General Counsel on November 5, 2024. Albán Decl. ¶¶ 13-15.

The <u>American Lawyer</u> article also proves the opposite of a hiatus in Berke's relationship with Tether. Mr. Berke told The American Lawyer, "We expect that all of our clients will continue to be represented by us." DeLange Decl. Ex. B.[9] Gibson not only expected Berke and his other lateral colleagues to

---

[9] Gibson admits that, as soon as Berke joined Gibson, Berke changed his firm affiliation for federal Electronic Case Filing purposes so that it became public record on the docket of *Tiger Mines New York Inc. v. Tether Holdings Limited et al.*, No. 1:24-cv-05905-VEC (S.D.N.Y.) that the firm was counsel to Tether. [Hewett Decl., Dkt. 69-8 at ¶ 5]. Gibson argues instead that it never made an "appearance" in that case and that it was closed "a handful of days after Mr.

continue to represent Tether in litigation and government investigation matters as they arose, but the firm obviously hoped to broaden and deepen the relationship with the firm's attorneys.

In sum, this Court should not and, as a matter of California law, cannot grant Gibson's motion to withdraw from this Tether Litigation unless it is conditioned on Gibson's disqualification from representing Tether and its affiliates during these proceedings.

## II. SWAN WILL BE PREJUDICED UNLESS GIBSON IS DISQUALIFIED FROM REPRESENTING TETHER AND ITS AFFILIATES

Although Swan firmly maintains that Gibson's withdrawal motion must be evaluated under the duty of loyalty and not merely the duty of confidentiality, there is no question that Swan's confidentiality rights and business reputation will also be prejudiced if Gibson is not disqualified from representing Tether for the pendency of this litigation. As the Declarations of Swan's CEO and General Counsel make clear, Swan shared not only its litigation and settlement strategies with Gibson but also its commercial secrets around Bitcoin mining and plans to compete against Tether. *See* Klippsten Decl. ¶¶33(a)-(e), 34; Albán Decl. ¶ 15. Swan has no way to police its confidentiality rights if Gibson is allowed to represent Tether. As Mr. Klippsten justifiably states, "I believe I have good reason to fear that if Gibson is willing to jettison Swan for a more lucrative client, its promises about an ethical wall are hollow." Klippsten Decl. ¶ 35. Indeed, the very reason for the duty of loyalty is to completely negate a client's reason to fear disclosure of

---

Berke joined Gibson Dunn, as the result of the plaintiff filing a notice of voluntary dismissal." *Id.* A formal appearance in Court is not needed for an attorney-client relationship. Moreover, California cases hold that the "fortuity" of a settlement of the *Tiger Mines* matter does not cure the impermissible concurrent representation of Swan and Tether as of October 30, 2024 no matter how close in time that settlement occurred. *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1432-33 (Cal. Ct. App. 1999).

confidential information so that the client will feel comfortable sharing with the lawyer its most sensitive and confidential information. That is exactly what happened here and is yet another reason why Gibson should be prohibited from representing Tether and its affiliates until the present litigation ends.

## CONCLUSION

Swan consents to Gibson's withdrawal as its counsel only on condition that Gibson is disqualified from representing Tether or any of its affiliates, in any capacity or matter (litigation, investigatory, corporate or otherwise) for the pendency of this litigation. Swan is prepared to substitute new counsel in this litigation as part of the entry of such order of conditional withdrawal by Gibson.

DATED: December 20, 2024

Respectfully submitted,
WOLLMUTH MAHER & DEUTSCH LLP

By: */s/ Timothy A. DeLange*
    Timothy A. DeLange (CA State Bar No. 190768)

    David H. Wollmuth (*pro hac vice forthcoming*)
    tdelange@wmd-law.com
    dwollmuth@wmd-law.com
    500 Fifth Avenue
    New York, NY 10110
    Telephone: (212) 382-3300
    *Attorneys for Plaintiff Electric Solidus, Inc. d/b/a Swan Bitcoin*

PRINTED ON RECYCLED PAPER

## **L.R. 11-6.2 CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN, certifies that this brief contains 6,639 words, which complies with the word limit of L.R. 11-6.1.

DATED: December 20, 2024

Respectfully submitted,
WOLLMUTH MAHER & DEUTSCH LLP

By: */s/ Timothy A. DeLange*
Timothy A. DeLange (CA State Bar No. 190768)

*Attorneys for Plaintiff Electric Solidus, Inc. d/b/a Swan Bitcoin*

*PRINTED ON RECYCLED PAPER*

*PLAINTIFF'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO THE MOTION OF GIBSON DUNN & CRUTCHER LLP TO WITHDAW AS COUNSEL FOR PLAINTIFF*