| | |
|---|---|
| 1 | TIMOTHY A. DELANGE (CA State Bar No. 190768) |
| | tdelange@wmd-law.com |
| 2 | DAVID H. WOLLMUTH (*pro hac vice forthcoming*) |
| | dwollmuth@wmd-law.com |
| 3 | WOLLMUTH MAHER & DEUTSCH, LLP |
| | 500 Fifth Avenue |
| 4 | New York, NY 10110 |
| | Telephone: (212) 382-3300 |

*Attorneys for Plaintiff*
ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN

**IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN, | Case No. 2:24-cv-8280-MWC-E |
| Plaintiff, | **DECLARATION OF JUAN PABLO ALBAN IN SUPPORT OF PLAINTIFF'S PARTIAL OPPOSITION TO THE MOTION OF GIBSON, DUNN & CRUTCHER LLP TO WITHDRAW AS COUNSEL FOR PLAINTIFF** |
| vs. | |
| PROTON MANAGEMENT LTD., a British Virgin Islands corporation; THOMAS PARTRICK FURLONG; ILIOS CORP., a California Corporation; MICHAEL ALEXANDER HOLMES, RAFEL DIAS MONTELONE; ENRIQUE ROMUALDEZ; and LUCAS VASCONCELOS, | Date: January 10, 2025 |
| | Time: 1:30 p.m. |
| | Place: Courtroom 6A |
| | Judge: Hon. Michelle Williams Court |
| Defendants. | Action Filed: September 25, 2024 |

1

DECLARATION OF JUAN PABLO ALBAN IN SUPPORT OF PLAINTIFF'S PARTIAL
OPPOSITION TO THE MOTION OF GIBSON, DUNN & CRUTCHER LLP
TO WITHDRAW AS COUNSEL FOR PLAINTIFF

# DECLARATION OF JUAN PABLO ALBÁN

I, Juan Pablo Albán, declare and state as follows:

1. I am the General Counsel for Electric Solidus, Inc. ("Swan"). I have had this role since June 2024.

2. I worked with Swan's CEO, Cory Klippsten, to advise him and Swan relating to the events that resulted in this action.

3. I am an attorney duly licensed to practice law before all courts of the State of California. I became a member of the California State Bar in December 2001. I attended Dartmouth College and Harvard Law School.

4. Before serving as the General Counsel for Swan, I held several positions as an attorney, including as a Co-Founder of Stuart Albán Law PC, General Counsel & EVP at Brener International Group, and Associate at Quinn Emanuel and Skadden Arps.

5. As Swan's General Counsel, I knew it was imperative for Swan to hire a top-tier law firm to ascertain our rights and to potentially bring litigation against Tether and its associates.

6. I worked with Mr. Klippsten to advise him and Swan with regard to retaining a law firm. In August and September 2024, we initiated and ran a process to locate the best firm for Swan's needs.

7. We ultimately selected Gibson, Dunn & Crutcher LLP ("Gibson") based on its proposed strategy, and its reputation for competence and loyalty.

8. The Gibson EL describes its representation of Swan as follows: "to provide legal services to Swan in connection with a dispute with Tether and certain of its affiliates, and certain former employees and consultants of Swan arising from the theft of Swan's bitcoin mining business, employees, trade secrets, and intellectual property (the 'Tether Litigation')."

9. On October 25, 2024, one of the Gibson partners working for Swan

DECLARATION OF JUAN PABLO ALBAN IN SUPPORT OF PLAINTIFF'S PARTIAL OPPOSITION TO THE MOTION OF GIBSON, DUNN & CRUTCHER LLP TO WITHDRAW AS COUNSEL FOR PLAINTIFF

in the Tether Litigation, Matthew D. McGill, telephoned Mr. Klippsten and told him in words or substance that Gibson was about to hire a lateral attorney whose current client presented a conflict with the Firm's representation of Swan and the firm's "senior management" had directed him to urge Swan to find replacement counsel. Mr. McGill did not identify the lateral attorney but did identify Tether as the new client that caused the conflict.

10. We came to understand within a few days through news reports and public information that the attorney that Mr. McGill referred to was named Barry Berke, who was hired by Gibson from Kramer Levin Naftalis & Frankel LLP ("Kramer Levin").

11. It is now apparent that during the entire time we were involved with Gibson – from our first interview forward – Gibson was recruiting Mr. Berke prior to his departure from Kramer Levin.

12. I understand that Mr. Berke, was and is one of Tether's regular outside litigation attorneys, and was actively representing Tether during the period Gibson was recruiting him from Kramer Levin.

13. On November 5, 2024, I spoke with Mr. McGill and he stated that Gibson had not yet onboarded Tether as a client but that it intended to do so. Mr. McGill also stated in words or substance that Gibson sought to obtain a waiver from Tether so Gibson could continue to represent Swan, and that if both Tether and Swan had given waivers, Gibson could have continued to represent Swan.

14. To me, this indicated that Tether had declined Gibson's request to provide a waiver and Gibson clearly recognized that there was an impermissible conflict of interest based on Gibson's dual representation of Swan and Tether.

15. Gibson's request for a waiver also put Tether on express notice in the middle of Swan's settlement negotiations with Swan that Gibson was looking to drop Swan as a client. That severely prejudiced Swan in those negotiations.

16. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of December 2024, at Pasadena, California.

By: _____
    Juan Pablo Albán