TIMOTHY A. DELANGE (CA State Bar No. 190768)
tdelange@wmd-law.com
DAVID H. WOLLMUTH (*pro hac vice forthcoming*)
dwollmuth@wmd-law.com
WOLLMUTH MAHER & DEUTSCH, LLP
500 Fifth Avenue
New York, NY 10110
Telephone: (212) 382-3300

*Attorneys for Plaintiff*
ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN

IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN,<br><br>Plaintiff,<br><br>vs.<br><br>PROTON MANAGEMENT LTD., a British Virgin Islands corporation; THOMAS PARTRICK FURLONG; ILIOS CORP., a California Corporation; MICHAEL ALEXANDER HOLMES, RAFEL DIAS MONTELONE; ENRIQUE ROMUALDEZ; and LUCAS VASCONCELOS,<br><br>Defendants. | Case No. 2:24-cv-8280-MWC-E<br><br>**DECLARATION OF CORY KLIPPSTEN IN SUPPORT OF PLAINTIFF'S PARTIAL OPPOSITION TO THE MOTION OF GIBSON, DUNN & CRUTCHER LLP TO WITHDRAW AS COUNSEL FOR PLAINTIFF**<br><br>Date: January 10, 2025<br>Time: 1:30 p.m.<br>Place: Courtroom 6A<br>Judge: Hon. Michelle Williams Court<br><br>Action Filed: September 25, 2024 |

1

## DECLARATION OF CORY KLIPPSTEN

I, Cory Klippsten, declare and state as follows:

1. I am the founder and current Chief Executive Officer of Electric Solidus, Inc. ("Swan").

2. Before receiving a Master of Business Administration from the University of Chicago Booth School of Business, I worked at Microsoft and Morgan Stanley, and later worked at Google and McKinsey.

3. I have always been passionate about technology. I have helped fund and advise more than 60 early-stage tech companies and am a partner of multiple Bitcoin-focused venture capital firms, such as Bitcoiner Ventures, El Zonte Capital, and The Bitcoin Opportunity Fund.

### SWAN'S BACKGROUND

4. In June 2019, I founded Electric Solidus, Inc. as a Bitcoin gifting service; its first product was called "GiveBitcoin."

5. In January 2020, Yan Pritzker and I rebranded the Company as Swan Bitcoin, and shifted from a Bitcoin-gifting service to a financial services platform that educates and helps individuals, businesses, and retail traders purchase, save, and invest in Bitcoin and related products and services through an accessible and user-friendly interface.

6. After several years of success, Swan decided to pursue opportunities in Bitcoin mining to further supplement Swan's Bitcoin business. We created a new Institutional division in January 2023, with a primary focus on developing financial services for capital providers and operators in Bitcoin mining.

### SWAN'S RELATIONSHIP WITH TETHER
### AND THE 2040 ENERGY VENTURE

7. To expand further into the Bitcoin mining industry, in or around June 5, 2023, I contacted Tether about providing capital for DAME, which is a Bitcoin

2

mining cite in Tasmania, Australia.

8. Tether, a cryptocurrency company, had invested in Swan before under the name "BFX Ventures Limited." Tether created and maintains a "stablecoin" (Tether tokens) that ties its value 1:1 to the U.S. dollar. Tether accepts dollars from customers to buy Tether Tokens and represents that it maintains those funds in escrow, in safe, liquid investments like U.S. Treasuries. Tether keeps the returns from those investments, which amount to billions of dollars a year.

9. On July 28, 2023, Swan and Tether, through its subsidiary Zettahash Inc., signed a Shareholders Agreement (along with an individual who originally helped to facilitate the relationship) creating a new joint-venture known as 2040 Energy Ltd. ("2040 Energy") to govern Tether's financial investment in the new Bitcoin mining project with Swan.

10. 2040 Energy was a funding vehicle; it did not contract with employees or consultants. Swan's mining employees and consultants operated 2040 Energy and engaged with business vendors and partners (including equipment vendors and datacenter mining hosts) using the Swan brand.

11. I serve 2040 Energy as a director and was its CEO (as well as Swan's CEO), overseeing both 2040 Energy and Swan's mining team and operations. Tether appointed the other two directors on the 2040 Energy Board.

12. By 2024, Swan's mining operations were a success by any measure. 2040 Energy's value had soared, and by July 2024, Swan's hard work had expanded our mining operation's capacity to just under twelve exahashes, meaning that it was performing nearly twelve quintillion computations per second to ensure secure processing of transactions on the Bitcoin network. By July 2024, it was mining approximately one of every fifty Bitcoin worldwide.

13. In early August 2024, I learned that Swan's consultants and employees working on Swan's mining business conspired with Tether and others

3

DECLARATION OF CORY KLIPPSTEN IN SUPPORT OF PLAINTIFF'S PARTIAL OPPOSITION TO THE MOTION OF GIBSON, DUNN & CRUTCHER LLP TO WITHDRAW AS COUNSEL FOR PLAINTIFF

to steal Swan's business relationships, and the trade secrets, assets and employees underpinning Swan's mining business. The scheme allowed Tether and the co-conspirators to establish a new, copycat mining company, Proton Management Ltd. ("Proton"), and shift operation of 2040 Energy away from Swan to that new entity.

## SWAN HIRED GIBSON AFTER CAREFUL CONSIDERATION

14. I decided it was imperative that we hire a top-tier law firm to ascertain our rights and to potentially bring litigation against Tether and its associates and co-conspirators.

15. In August and September 2024, we invited Gibson, Dunn & Crutcher LLP ("Gibson") to compete against several law firms to prosecute Swan's legal claims against Tether and its co-conspirators.

16. One of the most important considerations to me and Swan was that Swan have a conflict-free advisor and strategist in whom Swan could confide its most important litigation and business strategies. It was imperative to Swan that the firm it retained have no involvement with Tether, as Tether is a very well-heeled adversary known for its extremely aggressive and sometimes questionable business tactics. Gibson assured Swan that it was conflict-free and the best possible firm for the assignment.

17. We ultimately selected Gibson based on its proposed strategy, reputation for competence and loyalty.

18. Gibson presented me with an engagement letter (the "Gibson EL") that it drafted, which I signed. The engagement letter with Gibson is dated September 18, 2024.

19. The Gibson EL describes the representation it would provide to Swan as follows: "to provide legal services to Swan in connection with a dispute with Tether and certain of its affiliates, and certain former employees and consultants of Swan arising from the theft of Swan's bitcoin mining business, employees, trade

4

DECLARATION OF CORY KLIPPSTEN IN SUPPORT OF PLAINTIFF'S PARTIAL OPPOSITION TO THE MOTION OF GIBSON, DUNN & CRUTCHER LLP TO WITHDRAW AS COUNSEL FOR PLAINTIFF

secrets, and intellectual property (the 'Tether Litigation')."

20. Gibson represented to Swan that it had checked its "computerized conflict of interest index" and was ethically positioned to represent Swan in the Tether Litigation.

21. Through discussions concerning the engagement letter and the scope of Gibson's representation, and the engagement letter itself, I understood that Gibson would represent Swan in litigation against Tether and its associates, until the Tether Litigation had finally resolved.

## GIBSON FILED A LAWSUIT ON SWAN'S BEHALF

22. In September 2024, Gibson filed a federal action on behalf of Swan against Tether's associates in a case captioned, *Electric Solidus, Inc. d/b/a Swan Bitcoin v. Proton Management, Ltd. et al.*, Case No. 2:24-cv-8280 (C.D. Cal., Western Div., filed September 25, 2024).

23. Swan relied on Gibson for strategy and advocacy in the Tether Litigation. We also shared confidences with Gibson about Swan's interests in the joint venture and about a potential global resolution of Swan's and Tether's differences.

## GIBSON ATTEMPTS TO DROP SWAN AS A CLIENT IN FAVOR OF TETHER

24. On October 25, 2024, – less than ten days after Gibson had delivered to Tether's counsel at Winston & Strawn the options of settlement or increased litigation – one of the Gibson partners working for Swan in the Tether Litigation, Matthew D. McGill, telephoned me and told me in words or substance that Gibson was about to hire a lateral attorney whose current client presented a conflict with Gibson's representation of Swan and the firm's "senior management" had directed me to urge Swan to find replacement counsel. Mr. McGill did not identify the

lateral attorney but did identify Tether as the new client that caused the conflict.

25. I came to understand within a few days through news reports and public information that the attorney that Mr. McGill referred to was named Barry Berke, who was hired by Gibson from Kramer Levin Naftalis & Frankel LLP ("Kramer Levin").

26. It is now apparent that during the entire time we were involved with Gibson – from our first interview forward – Gibson was recruiting Mr. Berke prior to his departure from Kramer Levin.

27. I understand that Mr. Berke, was and is one of Tether's regular outside litigation attorneys, and was actively representing Tether during the period Gibson was recruiting him from Kramer Levin.

28. On October 30, 2024, Gibson announced that Mr. Berke and other partners of Kramer Levin were joining Gibson as partners. As of this writing, Mr. Berke's biography appears on the Gibson website: https://www.gibsondunn.com/lawyer/berke-barry-h/.

29. It is my understanding that Mr. Berke caused the docket in a case in which he is representing Tether, *Tiger Mines New York, Inc. v. Tether Holdings Limited et al.*, to reflect his new firm as Gibson. I understand that matter has since resolved. I also read a press report quoting Mr. Berke as stating that *all* of his clients would be following him to Gibson.

30. It was shocking that the law firm that we hired to bring claims against Tether and its co-conspirators was dropping us as a client to represent Tether.

31. On November 22, 2024, Swan commenced an action in California State Court to enjoin Gibson from representing Tether pending arbitration. We also filed an arbitration on November 25, 2025.

32. On November 24, 2024, Gibson filed a motion to withdraw as counsel for Swan in this action, with a notice date of January 10, 2025.

# SWAN HAS BEEN AND CONTINUES TO BE HARMED

33. Gibson's representation of Tether would greatly harm Swan for many reasons:

    a. Swan shared its most sensitive commercial secrets and litigation strategies with Gibson, including both its Bitcoin mining plans and the facts underlying its claims and likely defenses it will confront in litigation. Swan also identified to Gibson extremely confidential industry witnesses that are essential to Swan's case. Gibson then interviewed them and knows their identity. Gibson took the lead in developing the legal strategy it had begun to implement. If Tether obtains any of this information, it could be catastrophic to Swan.

    b. Because the Tether Litigation includes trade secret, technology, and software theft, timely tracking down the stolen materials was important to Swan. A swift and sound discovery plan was crucial. Swan entrusted Gibson with its plan for obtaining the evidence necessary to prove its case. If Tether obtains any of this information, it could lead to spoliation and other material adverse effects for Swan.

    c. Tether and Swan had already engaged in preliminary settlement discussions. Gibson took the lead on behalf of Swan. Swan entrusted Gibson with its settlement strategy, including how it believes the dispute should be resolved and its bottom line for a resolution. If Tether obtained that information, Swan will be greatly prejudiced and suffer unquestionable irreparable harm.

    d. A company's reputation in the Bitcoin market is critical. Gibson's motion to withdraw has already provoked potential questions from Swan's counterparties and damaged Swan's standing in the Bitcoin community. Allowing Gibson to flip sides and represent Tether would unfairly and unnecessarily deepen that harm.

    e. The mere fact that Gibson courted Mr. Berke (and thus Tether)

7

DECLARATION OF CORY KLIPPSTEN IN SUPPORT OF PLAINTIFF'S PARTIAL OPPOSITION TO THE MOTION OF GIBSON, DUNN & CRUTCHER LLP TO WITHDRAW AS COUNSEL FOR PLAINTIFF

while simultaneously representing Swan prejudiced settlement negotiations with Tether, and Swan's litigation strategy in general.

34. I understand Gibson indicates it may put in place a screen for the attorneys who worked on the Tether Litigation. That does not resolve my concerns. Gibson's decision to dump Swan like a "hot potato" is, in my view, shocking misconduct. I have no confidence that a Gibson screen will be effective, and I certainly will have no way of knowing whether it has been effective. Mr. Berke's appearance for Gibson on behalf of Tether on the docket for *Tiger Mines New York, Inc. v. Tether Holdings Limited et al.*, whether intentional or not, suggests worrisome carelessness. At this point, Gibson's promises offer me no comfort. If even a small amount of our information ends up in Tether's hands, it could be extremely harmful to Swan.

35. I believe I have good reason to fear that if Gibson is willing to jettison Swan for a more lucrative client, its promises about an ethical wall are hollow.

36. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of December 2024, at Calabasas, California.

By: _____
Cory Klippsten