1  GRANT P. FONDO (SBN 181530)
   *GFondo@goodwinlaw.com*
2  **GOODWIN PROCTER** LLP
   601 Marshall Street
3  Redwood City, CA 94063
   Tel: +1 650 752 3100
4  Fax: +1 650 853 1038

5  MATTHEW P. KANNY (SBN 167118)
   *MKanny@goodwinlaw.com*
6  AARON S. THOMPSON (SBN 272391)
   *AThompson@goodwinlaw.com*
7  **GOODWIN PROCTER** LLP
   520 Broadway, Suite 500
8  Santa Monica, CA  90401-2449
   Tel.: +1 424 436 3001
9  Fax: +1 424 316 3280

10 AMANDA H. RUSSO (SBN 319617)
   *ARusso@goodwinlaw.com*
11 **GOODWIN PROCTER LLP**
   601 South Figueroa Street, Suite 4100
12 Los Angeles, California 90017
   Tel.: +1 213 426 2500
13 Fax: +1 213 623 1673

14 *Attorneys for Defendants Thomas*
   *Patrick Furlong, Ilios Corp., Michael*
15 *Alexander Holmes, Rafael Dias*
   *Monteleone, Santhiran Naidoo, Enrique*
16 *Romualdez, and Lucas Vasconcelos*

17                    UNITED STATES DISTRICT COURT

18                    CENTRAL DISTRICT OF CALIFORNIA

19                          WESTERN DIVISION

20

21 ELECTRIC SOLIDUS, INC. d/b/a         Case No. 2:24-cv-8280-MWC-E
   SWAN BITCOIN, a Delaware
22 corporation,                         **INDIVIDUAL DEFENDANTS**
                                        **THOMAS PATRICK FURLONG,**
23            Swan,                      **ILIOS CORP., MICHAEL**
                                        **ALEXANDER HOLMES, RAFAEL**
24     v.                               **DIAS MONTELEONE,**
                                        **SANTHIRAN NAIDOO, ENRIQUE**
25 PROTON MANAGEMENT LTD., a            **ROMUALDEZ, AND LUCAS**
   British Virgin Islands corporation;  **VASCONCELOS'S**
26 THOMAS PATRICK FURLONG; ILIOS        **MEMORANDUM OF POINTS AND**
   CORP., a California corporation;     **AUTHORITIES IN SUPPORT OF**
27 MICHAEL ALEXANDER HOLMES;            **MOTION TO COMPEL**
   RAFAEL DIAS MONTELEONE;              **ARBITRATION AND, IN THE**
28 SANTHIRAN NAIDOO; ENRIQUE            **ALTERNATIVE, MOTION TO**
   ROMUALDEZ; and LUCAS

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

INDIVIDUAL DEFENDANTS' MEMORANDUM ISO MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

1 | VASCONCELOS, | **DISMISS THE COMPLAINT**

2 |     Defendants. | Date:   February 21, 2025
Time:  1:30 p.m.

3 | | Courtroom:  6A, 6th Floor
Judge:  Hon. Michelle Williams Court

4

5 | | Complaint Filed: Sept. 25, 2024
Complaint Corrected: Sept. 27, 2024

6

7 | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE
FILED UNDER SEAL**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................................1

II.    BACKGROUND .........................................................................................4

    A.    Swan, Tether, and 2040 Energy.....................................................4

    B.    The Individual Defendants' Consulting Agreements Expressly
Require Arbitration of All Claims and Disputes. ...........................5

    C.    As a Result of Swan's Cash Crisis, Lack of Transparency, and
Mismanagement, the Individual Defendants Resign.......................6

    D.    Plaintiff Files a Complaint Seeking to Adjudicate the Merits of Its
Claims in Violation of the Consulting Agreements. .......................7

III.   PROCEDURAL HISTORY – PLAINTIFF'S MULTIPLE REQUESTS
FOR IMMEDIATE RELIEF WERE ALL DENIED ..................................7

IV.    LEGAL STANDARD..................................................................................8

V.     ARGUMENT ..............................................................................................9

    A.    The Court Should Compel Arbitration and Stay Merits
Determinations and Related Proceedings........................................9

    B.    Alternatively, Rule 12(B)(6) Requires Dismissal of Counts I-III, V–
VII...................................................................................................16

VI.    CONCLUSION .........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019)...............................................................19

*Ambler v. BTAmericas Inc.*,
  964 F. Supp. 2d 1169 (N.D. Cal. 2013).................................................................11

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
  28 Cal. App. 5th 923 (2018)..................................................................................25

*Amyn, Inc. v. StarStone Specialty Ins. Co.*,
  No. CV 23-7924-KK-JPRX, 2024 WL 1600327 (C.D. Cal. Jan. 9,
  2024)........................................................................................................................8

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994)............................................................................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................9

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) .........................................................................................8, 16

*Baggett v. Hewlett-Packard Co*,
  No. SACV070667AGRNBX, 2009 WL 3178066 (C.D. Cal. Sept.
  29, 2009)................................................................................................................24

*Baldwin Tech. Co., Inc. v. Printers' Serv., Inc.*,
  No. 15 CIV. 07152 (GBD), 2016 WL 354914 (S.D.N.Y. Jan. 27,
  2016)......................................................................................................................14

*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1988)..................................................................................9

*Beasley v. Tootsie Roll Industries, Inc.*,
  No. RG21086723, 2021 WL 2719295 (Cal. Super. 2021)....................................23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................9

*Bernal v. Sw. & Pac. Specialty Fin., Inc.*,
  No. C 12-05797 SBA, 2014 WL 1868787 (N.D. Cal. May 7, 2014)................15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000)...............................................................................11

*Cir. City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001) ..............................................................................................10

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009) ........................................................ 2, 13, 14, 15

*Davis v. SEVA Beauty LLC*,
No. 17-CV-547 (TSZ), 2017 U.S. Dist. LEXIS 148434 (W.D.
Wash. Sept. 13, 2017) ........................................................................... 14

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985) ............................................................................... 8

*Delux Pub. Charter, LLC v. Cnty. of Orange*,
No. SACV202344JVSKESX, 2022 WL 3574442 (C.D. Cal. July
29, 2022) .............................................................................................. 20

*Destfino v. Kennedy*,
No. CVF081269LJODLB, 2009 WL 63566 (E.D. Cal. Jan. 8,
2009), *aff'd sub nom. Destfino v. Reiswig*, 630 F.3d 952 (9th Cir.
2011) ..................................................................................................... 24

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ......................................................... 14

*DXP Enters. v. Goulds Pumps Inc.*,
No. CIV.A. H-14-1112, 2014 WL 5682465 (S.D. Tex. Nov. 4,
2014) ..................................................................................................... 14

*Expedited Packages, LLC v. Beavex Inc.*,
No. CV1500721MMMAGRX, 2015 WL 13357436 (C.D. Cal.
Sept. 10, 2015) ..................................................................................... 25

*Farr v. Acima Credit LLC*,
No. 20-CV-8619-YGR, 2021 WL 2826709 (N.D. Cal. July 7, 2021) ......... 12, 13

*Fid. Fed. Bank, FSB v. Durga Ma Corp.*,
386 F.3d 1306 (9th Cir. 2004) .............................................................. 10

*Focused Impressions, Inc. v. Sourcing Grp., LLC*,
No. 19-CV-11307-ADB, 2020 WL 1892062 (D. Mass. Apr. 16,
2020) ..................................................................................................... 19

*Freecyclesunnyvale v. Freecycle Network, Inc.*,
No. C 06-00324CW, 2006 WL 870688 (N.D. Cal. Apr. 4, 2006) .................... 22

*Genasys Inc. v. Vector Acoustics, LLC*,
638 F. Supp. 3d 1135 (S.D. Cal. 2022) ................................................. 17

*Haliburton Int'l Foods, Inc. v. Marasco*,
No. EDCV201069JGBSHKX, 2020 WL 7872124 (C.D. Cal. Nov.
4, 2020) ................................................................................................. 18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ............................................................................... 15

*Ixchel Pharma, LLC v. Biogen, Inc.*,
930 F.3d 1031 (9th Cir. 2019) .............................................................. 21

*Kellwood Apparel, LLC v. Protrend Ltd.*,
No. CV 20-214-MWF, 2020 WL 13302669 (C.D. Cal. Mar. 5,
2020) ................................................................................................ 16, 19

*Kwasny Co. v. AcryliCon Int'l Ltd.*,
No. 09-13357, 2010 WL 2474788 (E.D. Mich. June 11, 2010) ........................ 13

*KWB & Assocs., Inc. v. Marvin*,
No. ED-CV-18-289-DMG, 2018 WL 5094927 (C.D. Cal. Apr. 18,
2018) ........................................................................................................ 9

*Lewis v. UBS Fin. Servs. Inc.*,
818 F.Supp.2d 1161 (N.D. Cal. 2011) ................................................................ 8

*Longo v. Longo*,
No. 8:20-CV-00829-AB-RAO, 2020 WL 7774925 (C.D. Cal. Nov.
12, 2020) ................................................................................................ 23

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) ............................................................................................ 2

*McGehee v. Coe Newnes/McGehee ULC*,
No. C 03-5145 MJJ, 2004 WL 2452855 (N.D. Cal. Feb. 10, 2004) ................. 24

*Mission Viejo Emergency Medical Associates v. Beta Healthcare Group*,
197 Cal. App. 4th 1146 (2011) ........................................................................ 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*,
460 U.S. 1 (1983) ........................................................................................ 8, 9

*Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*,
No. 09 Civ. 10509 (RMB), 2014 WL 562264 (E.D. Mich. Feb. 13,
2014) ........................................................................................................ 13

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ........................................................................ 16

*Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*,
218 F.3d 1085 (9th Cir. 2000) ........................................................................ 10

*Race Winning Brands, Inc. v. Gearhart*,
No. SACV 22-1446-FWS-DFM, 2023 WL 4681539 (C.D. Cal.
Apr. 21, 2023) ................................................................................................ 22

*Reeves v. Hanlon*,
33 Cal. 4th 1140 (2004) ................................................................................ 21

*Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*,
816 F. Supp. 213 (S.D.N.Y. 1993) ................................................................ 12

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ........................................................................................ 15

*Sebastian Int'l, Inc. v. Russolillo*,
162 F. Supp. 2d 1198 (C.D. Cal. 2001) ............................................................ 21

*Sevier v. Real Time Resols., Inc.*,
   No. 22-CV-06693-JSW, 2024 WL 68555 (N.D. Cal. Jan. 5, 2024) ................. 23

*Shulman v. Kaplan*,
   No. CV1905413ABFFMX, 2020 WL 2748022 (C.D. Cal. Jan. 28,
   2020) .............................................................................................................. 10

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ........................................................................... 8

*Smith v. Spizzirri*,
   601 U.S. 472 (2024) ....................................................................................... 16

*Soundgarden v. UMG Recordings, Inc.*,
   No. LACV1905449JAKJPRX, 2020 WL 1815855 (C.D. Cal. Apr.
   6, 2020) .......................................................................................................... 17

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................................ 9

*Synopsys, Inc. v. ATopTech, Inc.*,
   No. C 13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24,
   2013) .............................................................................................................. 20

*Tipton v. Airport Terminal Servs., Inc.*,
   No. CV1809503ABJEMX, 2019 WL 4231235 (C.D. Cal. June 25,
   2019) .............................................................................................................. 21

*Uber Techs. Pricing Cases*,
   46 Cal. App. 5th 963 (2020) ........................................................................... 23

*Unified Grocers, Inc. v. VM Int'l, Inc.*,
   No. EDCV192365MWFSHKX, 2020 WL 5370621 (C.D. Cal. Apr.
   8, 2020) .......................................................................................................... 17

*U.S. v. Ritchie*,
   342 F.3d 903, 908 (9th Cir. 2003) ................................................................... 5

*Veronica Foods Co. v. Ecklin*,
   No. 16-CV-07223-JCS, 2017 WL 2806706 (N.D. Cal. June 29,
   2017) .............................................................................................................. 19

*Voorhies v. Greene*,
   139 Cal. App. 3d 989 (Cal. Ct. App. 1983) ..................................................... 24

*Walters v. Luxottica of Am. Inc.*,
   No. 823CV01099FWSMAA, 2024 WL 661195 (C.D. Cal. Jan. 5,
   2024) .............................................................................................................. 10

*Warner Bros. Int'l Television Dist. v. Golden Channels & Co.*,
   No. CV0209326MMMSHSX, 2003 WL 27384425 (C.D. Cal. Mar.
   31, 2003) ........................................................................................................ 21

*Wise v. Experian Info. Sols., Inc.*,
  No. CV 23-5513-KK-RAOX, 2024 WL 2107716 (C.D. Cal. May 3, 2024) .................................................................................................. 8

*Wolsey, Ltd. v. Foodmaker, Inc.*,
  144 F.3d 1205 (9th Cir. 1998) .......................................................... 10

**Statutes**

9 U.S.C. § 1 ............................................................................................ 10

9 U.S.C. § 2 ..................................................................................... 8, 10

9 U.S.C. § 3 ............................................................................... 8, 14, 16

9 U.S.C. § 4 ............................................................................................. 8

18 U.S.C. § 1839(3)(B) ......................................................................... 17

18 U.S.C. § 1839(4) .............................................................................. 19

Cal. Code Civ. Proc., §§ 525 et seq. ................................................... 24

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .......................................... *passim*

JAMS Rule 11(b) ................................................................................... 16

Federal Rule of Civil Procedure Rules 12(b)(1), (3) ............................. 9

Federal Rules of Evidence, Rule 201 .................................................... 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants Thomas Patrick Furlong, Ilios Corporation, Michael Alexander Holmes, Rafael Dias Monteleone, Santhiran Naidoo, Enrique Romualdez, and Lucas Vasconcelos (collectively, the "Individual Defendants") hereby move for an order compelling Plaintiff Electric Solidus, Inc. d/b/a Swan Bitcoin ("Plaintiff" or "Swan", and with the Individual Defendants, the "Parties") to arbitrate the merits of its claims and stay merits determinations and related proceedings pending arbitration pursuant to the Federal Arbitration Act ("FAA") ("Motion to Compel"). Should the Court deny the Motion to Compel, the Individual Defendants alternatively move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    **INTRODUCTION**

By its Complaint, Swan attempts to vilify former independent consultants of Swan for resigning—wrongly painting them as secretly taking off with Swan's alleged trade secrets, which to date Swan hasn't defined (it cannot) with any degree of particularity. Yet, in doing so, Swan ignores the truth: the Individual Defendants resigned because Swan was on the brink of financial collapse and because of Swan's actions and lack of transparency with 2040 Energy—a Bitcoin mining business in which Swan ███████████████—and third parties. It also ignores that the Individual Defendants, while at Swan, were working with and for 2040 Energy and continue to do so, and that any alleged trade secrets taken belong to 2040 Energy, not Swan.

In retaliation, and in an effort to gain leverage in a dispute with ██████████ ███████████████, Swan filed its Complaint seeking temporary <u>and</u> permanent injunctive relief against the Individual Defendants that is directly contrary to the clear terms of the Parties' Consulting Agreements. The Parties agreed that "*any and all*" claims or disputes relating to the Consulting Agreements be arbitrated. *See* ECF No. 25-1, Complaint ("Compl"); ECF No. 53-1, Exs. 2-7 ("Consulting Agreements")

§§ 12.A, 12.B, 12.D.[1]  Swan's endeavor to adjudicate in Court the merits of its claims for a permanent injunction is an improper attempt to avoid its obligations to arbitrate any and all claims between the parties.

Under the FAA, Congress expressed a robust policy favoring arbitration in accordance with the terms of arbitration agreements like these.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995).  While a party may petition a court for injunctive relief in limited circumstances under the Consulting Agreements, they may not seek final determinations on the merits.  Indeed, courts have narrowly construed similar injunctive relief provisions to permit only temporary injunctive relief which is supplemental to arbitration.  *See, e.g.*, *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1285 (9th Cir. 2009).  Otherwise, parties, by seeking injunctive relief, could nullify the plain language of broad arbitration provisions.  Here, Swan tries to circumvent the arbitration provision of the Consulting Agreements by seeking an adjudication of the merits of the dispute as part of its claim for permanent injunctive relief, which is well beyond that which is permitted under the Consulting Agreements and applicable law.  And questions relating to arbitrability were delegated to an arbitrator to decide.  Thus, this Court should (i) compel Swan to arbitrate its claims, and (ii) stay merits determinations and related proceedings, pending arbitration.

In the alternative, should the Court deny the Individual Defendants' Motion to Compel, the Complaint should be dismissed under Rule 12(b)(6).

First, Swan fails to adequately allege crucial elements of its Defend Trade Secrets Act ("DTSA") claim (Count I).  Swan fails to describe—even at the most basic level—how its alleged trade secrets differ from matters of general knowledge in the field of Bitcoin mining.  It also does not plead facts demonstrating the requisite criteria for trade secret ownership.  This is particularly important given the work at issue was admittedly done on behalf of 2040 Energy for its mining business.  Swan

---

[1] The arbitration provisions in the Consulting Agreements are substantively identical.

cannot credibly claim, and has not alleged, that this information is its (sole) property, even assuming it could point to any specific trade secrets. This count further fails because Swan does not plead facts showing there is no adequate remedy at law, necessitating injunctive relief. In fact, it concedes that a license would be sufficient to remediate the alleged conduct. Compl. ¶ 112.

Second, Swan's breach of contract claim (Count II) fails for the same reasons as its DTSA claim.

Third, Swan's claim for tortious interference with contractual relations claim (Count III) against Holmes and Naidoo fails to allege an independently wrongful act as is required for tortious interference claims relating to at will contracts. Moreover, Swan (i) fails to adequately allege a breach of any non-compete provision in the third-party employee contracts at issue, and (ii) relies on a purported breach of a non-solicitation clause that is unenforceable under California law. Swan also alleges interference with former employee contracts that *already* occurred, which can only possibly be remedied by *money damages,* which is relief reserved for arbitration. And finally, Swan fails to plead facts justifying any forward-looking injunction for interference with as of yet unidentified employees' contracts.

Fourth, Swan's Unfair Competition Law ("UCL") claim (Count V)[2] fails because all of the predicate claims upon which it relies fail. Further, Swan cannot plead any actual injury, as it publicly announced it was leaving the mining business prior to the alleged misconduct here. Indeed, Swan does not allege that it currently operates or owns any mining operations, or intends to reenter the business.

Fifth, Swan's conversion claim (Count VI) fails to identify facts supporting ownership or a possessory interest in its independent contractors' laptops. In any event, the economic loss rule precludes the claim because, as Swan argues, its alleged right to the laptops arises out of contract, not tort. And Swan once again fails to plausibly allege an inadequate remedy at law on this claim.

---

[2] Count IV is not directed at any Individual Defendant.

1    <u>Finally</u>, Swan's civil conspiracy (Count VII) is not a viable claim under

2    California law and should be dismissed.  Alternatively, it should be dismissed as

3    Swan fails to allege the commission of an actual tort, the only claims to which this

4    type of liability attaches.

5         Accordingly, the Individual Defendants respectfully request that the Court

6    (i) compel Swan to arbitration and stay the action; or (ii) in the alternative, dismiss

7    the claims under Rule 12(b)(6).

8    **II.    <u>BACKGROUND</u>[3]**

9         **A.    Swan, Tether, and 2040 Energy.**

10        In or around June 2023, Swan—a bitcoin financial services company—entered

11   into a Shareholder Agreement creating a bitcoin mining arrangement with a

12   cryptocurrency company called Tether, through Tether's subsidiary, Zettahash Inc.

13   Compl. ¶¶ 58-60.  This agreement provided that Swan holds a ▓▓▓▓▓▓▓▓▓

14   ▓▓▓▓▓ in an entity they created called 2040 Energy and is entitled to ▓▓▓▓▓

15   ▓▓ ; Tether ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

16   ▓▓ .  *See id.* ¶¶ 59, 61.  Swan founder Cory Klippsten served as 2040 Energy's CEO.

17   *Id.* ¶ 60.  Swan initially ran daily operations of 2040 Energy (*id.*), as required by the

18   Shareholder Agreement, through several employees and independent contractors it

19   engaged solely for the benefit of 2040 Energy.  Swan did not control those employees

20   or independent contractors (*i.e.*, the Individual Defendants) that worked on 2040

21   Energy.  Rather, Swan is ▓▓▓▓▓▓▓▓▓ and, as of the filing of the Complaint,

22   no longer served as the operating partner for 2040 Energy.  Indeed, Klippsten

23   resigned as CEO of 2040 Energy following allegations that Swan materially breached

24   the Shareholder Agreement.  *Id.* ¶¶ 101-102; *see* Declaration of Ilissa Samplin (ECF

25   No. 25-3), Ex. B, ¶ 2.3 (describing "Initial Breach Notice").[4]  In an effort to save the

26   _____

27   [3] Reference to allegations from Swan's Complaint are purely for the purpose of this
     Motion, and the Individual Defendants do not concede their veracity.

28   [4] On August 9, 2024, Swan was also asked to provide assurances that Swan could

value of 2040 Energy's business for the benefit of the shareholders, including Swan (its shareholder position has not changed), 2040 Energy subsequently appointed Proton Management Ltd. ("Proton") to take over managing the assets of 2040 Energy. Compl. ¶ 116 (describing appointment).

### B. The Individual Defendants' Consulting Agreements Expressly Require Arbitration of All Claims and Disputes.

After the creation of 2040 Energy, Swan engaged the Individual Defendants through Consulting Agreements to help run 2040 Energy's mining operations. *See* Declaration of Scott Kisser (ECF No. 53-1), Exs. 2-7.[5]

The Consulting Agreements require Swan to arbitrate nearly all claims and disputes, and importantly delegate the issue of arbitrability to JAMS. The Agreements state:

> CONSULTANT AGREES THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE . . . ARISING OUT OF, RELATING TO, OR RESULTING FROM CONSULTANT'S CONSULTING OR OTHER RELATIONSHIP WITH THE COMPANY OR THE TERMINATION OF CONSULTANT'S CONSULTING OR OTHER RELATIONSHIP WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION.

Consulting Agreements § 12.A (formatting in original). They further state:

> **CONSULTANT AGREES TO ARBITRATE ANY AND ALL COMMON LAW AND/OR STATUTORY CLAIMS UNDER LOCAL, STATE, OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, . . . CLAIMS RELATING TO . . . [THE] RELATIONSHIP WITH THE COMPANY, AND CLAIMS OF BREACH OF CONTRACT, . . . CONSULTANT ALSO AGREES TO ARBITRATE ANY AND ALL DISPUTES ARISING OUT OF OR RELATING TO THE INTERPRETATION OR APPLICATION OF THIS AGREEMENT TO ARBITRATE. . . . CONSULTANT HEREBY EXPRESSLY AGREES TO WAIVE,**

---

continue operating 2040 Energy's mining operations, given the departures; but instead of providing those assurances, Klippsten resigned. *See* Samplin Decl., Ex. B, ¶ 2.3.

[5] The Individual Defendants request the Court take notice of the Consulting Agreements pursuant to the Federal Rules of Evidence, Rule 201, as they are referred to and form the basis of Swan's claims in the Complaint. Compl. ¶¶ 138-147; *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**AND DOES WAIVE, ANY RIGHT TO A TRIAL BY JURY.** CONSULTANT FURTHER UNDERSTANDS THAT <u>THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH CONSULTANT</u>.

*Id.* at § 12.A (underline emphasis added); *see also* § 12.B (specifying JAMS as arbitration tribunal).  Indeed, the Consulting Agreements state that:

EXCEPT AS PROVIDED BY THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE, AND FINAL REMEDY FOR ANY DISPUTE BETWEEN CONSULTANT AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THIS AGREEMENT, NEITHER CONSULTANT NOR THE COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.

*Id.* at § 12.C.  The Consulting Agreements also state that a party *may* petition the Court for injunctive relief.  *See* § 12.D.  More specifically, Section 12.D states:

THE PARTIES AGREE THAT ANY PARTY MAY ALSO PETITION THE COURT FOR INJUNCTIVE RELIEF WHERE EITHER PARTY ALLEGES OR CLAIMS A VIOLATION OF ANY AGREEMENT REGARDING INTELLECTUAL PROPERTY, CONFIDENTIAL INFORMATION OR NONINTERFERENCE.

*Id.*  There is no definition of "injunctive relief" in the Consulting Agreements.

In addition, Swan conceded in its Complaint that, "[i]n contracts with Swan, [Swan and the Individual Defendants] agreed to arbitrate claims related to their consulting relationships with Swan" and further noted that "Swan anticipates pursuing additional claims against Defendants Furlong, Holmes/Ilios, Monteleone, Naidoo, Romualdez, and Vasconcelos in arbitration." Compl. ¶ 9, n.1.

## C.    As a Result of Swan's Cash Crisis, Lack of Transparency, and Mismanagement, the Individual Defendants Resign.

By at least April 2024, Swan experienced a liquidity crisis and was on the verge of bankruptcy.  In July 2024, Swan publicly announced layoffs across many functions and that it would be shutting down its managed mining operations.  *See* Declaration of Grant Fondo (ECF No. 30-1), Ex. A.  Fearing imminent bankruptcy,

and concerned about Swan's actions and lack of transparency to 2040 Energy and third parties, the Individual Defendants resigned in early August 2024. As Swan publicly announced, it is no longer in the mining operations business. And there is no allegation or evidence it has or ever owned a mining business outside of its equity position in 2040 Energy.

> **D.    Plaintiff Files a Complaint Seeking to Adjudicate the Merits of Its Claims in Violation of the Consulting Agreements.**

Despite broadly agreeing to arbitrate all claims, approximately seven weeks after the Individual Defendants resigned, Swan filed a Complaint against the Individual Defendants and Defendant Proton seeking a temporary and permanent injunction, and damages against Proton only. *See* Compl. Prayer for Relief, ¶¶ A-F. By seeking a permanent injunction in Court against the Individual Defendants, as opposed to provisional relief only, Swan improperly attempts to adjudicate the merits of its claims, the same claims it *admits* it intends to assert in arbitration. And even if they could be adjudicated in Court (they cannot), such claims fail to state a claim for relief for the reasons discussed below in Section V.B., *infra*.

## III.    PROCEDURAL HISTORY – PLAINTIFF'S MULTIPLE REQUESTS FOR IMMEDIATE RELIEF WERE ALL DENIED

On September 25, 2024, Swan filed its Complaint and an *Ex Parte* Application for Temporary Restraining Order ("TRO") and OSC Re: Preliminary Injunction (ECF No. 8). A day later, it filed an *Ex Parte* Application for Expedited Discovery Order ("*Ex Parte* TRO Motion," at ECF No. 9). The Individual Defendants opposed both Applications. On October 4, 2024, the Court denied the *Ex Parte* TRO Motion "as plaintiff ha[d] failed to establish at least three of the four Winter factors," denied the request for expedited discovery, and set a hearing on Swan's motion for preliminary injunction for November 8, 2024. ECF No. 40. On October 9, 2024, Plaintiff tried, once again, to obtain an order for expedited discovery, but that request was denied, too. ECF Nos. 43, 54. On October 11, 2024, the Court held a status

conference.  On October 15, 2024, Plaintiff filed a "motion to compel" the return of the Individual Defendants' laptops (ECF No. 53), which the Individual Defendants opposed (ECF No. 58).  The Court denied that motion a few days later because Plaintiff failed to establish that it owned the laptops.  ECF No. 63.  On October 18, 2024, Swan withdrew its preliminary injunction motion and took the related November 8, 2024, hearing date off calendar; to date, it has not been rescheduled.

## IV.    <u>LEGAL STANDARD</u>

The FAA authorizes the Court to stay Plaintiff's claims in this case pending arbitration.  *See* 9 U.S.C. § 3; *Lewis v. UBS Fin. Servs. Inc.*, 818 F.Supp.2d 1161, 1165 (N.D. Cal. 2011) (citing 9 U.S.C. § 3).  Under the FAA, a written arbitration provision contained in a "contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Amyn, Inc. v. StarStone Specialty Ins. Co.*, No. CV 23-7924-KK-JPRX, 2024 WL 1600327, at *3 (C.D. Cal. Jan. 9, 2024).  The FAA reflects both the "liberal federal policy favoring arbitration" and "fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24 (1983).  "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms[.]"  *Concepcion*, 563 U.S. at 339.

To that end, the FAA requires courts to order arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement.  9 U.S.C. §§ 3, 4.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis original).  "The standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).  A party need only establish the parties' intent to arbitrate by a preponderance of the evidence.  *See Wise v. Experian Info. Sols., Inc.*,

No. CV 23-5513-KK-RAOX, 2024 WL 2107716, at *2 (C.D. Cal. May 3, 2024). Generally, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25.[6]

Alternatively, dismissal of a Complaint under Rule 12(b)(6) is warranted when there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," so the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must allow the court to reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). However, courts will not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

## V.    **ARGUMENT**

### A.    **The Court Should Compel Arbitration and Stay Merits Determinations and Related Proceedings.**

Pursuant to the FAA, the Court must compel arbitration and stay adjudication of the merits of Swan's claims and related proceedings given the clear and express arbitration provision in the Parties' Consulting Agreements. While there is a narrow carveout for adjudicating "injunctive relief" in Court, that carveout does not extend to permanent injunctions or merits determinations. When entering into the Consulting Agreements, the Parties agreed to arbitrate any and all claims arising out

---

[6] This Court has explained that a motion to compel arbitration is often viewed as a motion under Rules 12(b)(1), (3), and/or (6). *See KWB & Assocs., Inc. v. Marvin*, No. ED-CV-18-289-DMG (KKx), 2018 WL 5094927, at *9 (C.D. Cal. Apr. 18, 2018). Out of an abundance of caution, the Individual Defendants additionally move to compel under Rule 12(b)(1), (3), and/or (6).

of these agreement—Swan should not be permitted to circumvent its obligation.

### 1.    The FAA Governs Swan's Claims.

The FAA governs the arbitrability of Swan's claims in light of the Parties' express arbitration agreement. The FAA applies to all agreements "involving [interstate] commerce" (9 U.S.C. § 2), which the U.S. Supreme Court has interpreted broadly. *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001); *see also Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1089 (9th Cir. 2000); *Walters v. Luxottica of Am. Inc.*, No. 823CV01099FWSMAA, 2024 WL 661195, at *5 (C.D. Cal. Jan. 5, 2024); 9 U.S.C. § 1.

Here, the Parties entered into contracts (Consulting Agreements) "evidencing a transaction involving commerce" that transcend domestic and international bounds. Each of the Individual Defendants, some of whom were located outside of the United States, agreed to provide Swan various services related to 2040 Energy's bitcoin mining operations, a virtual currency traded in interstate commerce. Compl. ¶¶ 9, n.1, 10-14. The Consulting Agreements are thus within purview of the FAA. 9 U.S.C. § 2. And for such agreements, there is a "strong default presumption" that the FAA, not state law, applies. *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004) (citation and quotation marks omitted).[7]

### 2.    A Valid Arbitration Agreement Governs Swan's Claims.

Under the FAA, the Parties' valid and enforceable arbitration agreement covers each of Swan's claims and requires that they each be arbitrated. There is no question the Consulting Agreements include broad arbitration clauses. Consulting Agreements at § 12.A. Indeed, Swan relies on those Consulting Agreements in

---

[7] The California choice-of-law provision in the Agreements does not change that outcome. "A general choice-of-law clause within an arbitration provision" "does not trump the presumption that the FAA supplies the rules for arbitration." *Shulman v. Kaplan*, No. CV1905413ABFFMX, 2020 WL 2748022, at *5 (C.D. Cal. Jan. 28, 2020) (quoting *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269-70 (9th Cir. 2002)). There must be a clear intent to depart from the FAA, and failing to specifically mention California *arbitration* law applies means the FAA governs. *See Shulman*, 2020 WL 2748022 at *6; *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1212 (9th Cir. 1998).

bringing its claims and concedes the existence of the obligation to arbitrate. *See id.*; Compl. ¶ 9, n.1.[8]  Moreover, this dispute unquestionably falls squarely within the scope of the arbitration provision.  According to the Consulting Agreements' plain language, "any and all" claims or disputes arising from the Parties' Consulting Agreements must be submitted to arbitration.  The Parties thus expressly agreed that arbitration "shall be the sole, exclusive, and final remedy for any dispute between [Individual Defendants] and [Swan]."  Consulting Agreement, § 12.C.  Thus, the arbitrator, rather than the Court, has sole authority to resolve all disputes, including issuance of a permanent injunction.[9]

Here, Swan asserts causes of action for: (a) trade secret misappropriation, claiming that Individual Defendants stole its purported trade secrets; (b) breach of contract, alleging that Individual Defendants breached their Consulting Agreements; (c) tortious interference with contractual relations, in connection with alleged resignations and solicitation of certain employees at Swan; (d) UCL violations, allegedly arising from the Individual Defendants' misappropriation of confidential information; (e) conversion, claiming that the Individual Defendants never returned laptops allegedly used for Swan work; and (f) civil conspiracy to engage in these unlawful acts.  Each of these plainly "aris[es] out of, relat[es] to, or result[s] from the consultant[s'] consulting or other relationship with [Swan] or the termination of" that relationship.  Consulting Agreements at § 12.A.

Arbitration agreements are presumed to be valid, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000), unless "the party seeking to avoid arbitration" meets its "burden of demonstrating otherwise." *Ambler v. BTAmericas Inc.,* 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013); *Zoller,* 2021 U.S.

---

[8] Notably, while Swan has not initiated arbitration against the Individual Defendants, it has sent demand letters to *other* (non-party) former consultants and employees of Swan indicating an intent to initiate arbitration arising from this same dispute.

[9] As discussed below, the only exception to this is that a Court may issue temporary relief in order to preserve the parties' right to arbitrate.

App. LEXIS 10616, at *6; *Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* 197 Cal. App. 4th 1146, 1154 (2011).  Swan cannot do that here.

### 3.    The Limited Injunctive Relief Carveout in the Arbitration Agreements is Limited to Interim Relief Only.

In an apparent effort to try to avoid the clear terms of the Consulting Agreements' arbitration clause, Swan couches its claims as those seeking temporary <u>and</u> permanent injunctive relief only.  At the same time, Swan indicates its intent to seek "additional claims" in arbitration.  But Swan's claims for a permanent injunction conflict with the Agreements' broad arbitration clause and necessarily require merits determinations that are expressly reserved for the arbitrator to decide.

The arbitration clause here is unquestionably clear, requiring the Parties to arbitrate *any and all* claims or disputes relating to their respective relationships. While the clause permits a party to seek "injunctive relief," *see* § 12.D and Section II.B, *supra*, "injunctive relief" is undefined, and any reading of this provision must be limited to *preliminary* relief in aid of arbitration.  A broad interpretation that all claims for *permanent* injunctive relief are exempted would mean that final determinations on the merits of its claims could be decided in Court— notwithstanding the Parties' sweeping agreement to arbitrate any and all claims. Indeed, to issue a permanent injunction, the Court would need to decide the merits of Swan's claims, even though those very same issues are expressly reserved for the arbitrator.  This would effectively swallow the rule favoring arbitration, could lead to inconsistent results, and would have "a distinctly negative impact upon the arbitrability of disputes, in contravention of federal public policy." *Farr v. Acima Credit LLC*, No. 20-CV-8619-YGR, 2021 WL 2826709, at *4 (N.D. Cal. July 7, 2021) (rejecting interpretation that an equitable relief carveout applied to permanent relief where a broad arbitration provision existed because "absurd results [would] follow"); *Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*, 816 F. Supp. 213, 218 (S.D.N.Y. 1993) (rejecting a reading of an equitable relief carveout from a broad

mandatory arbitration clause that would allow seeking permanent injunctions in court); *see Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*, No. 09 Civ. 10509 (RMB), 2014 WL 562264, at *12 (E.D. Mich. Feb. 13, 2014) (explaining that interpretation of injunctive relief carveout to allow parties to seek permanent relief in court while arbitrating the same issues would mollify the arbitration clause).

Where, as here, there is a broad arbitration clause and an injunctive relief carveout, courts properly give meaning to both provisions—allowing the parties to seek preliminary relief where such relief will aid in the process of arbitration. *See, e.g.*, *Comedy Club, Inc.*, 553 F.3d at 1285 ("[I]t is [a] plausible and a permissible contract interpretation that the equitable claims exception [ ] was intended to apply only to claims designed to maintain the status quo between the parties"—in other words, providing "the ability to seek temporary equitable remedies in courts while arbitration was ongoing"); *Farr*, 2021 WL 2826709, at *6 (holding the "[equitable relief carveout] provision does not exempt *all* equitable claims but was intended to apply only to claims designed to maintain the status quo between the parties"); *see also Nexteer*, 2014 WL 562264, at *12 (limiting carve-out for injunctive relief from arbitration clause only to claims for preliminary injunctive relief in aid of arbitration); *Kwasny Co. v. AcryliCon Int'l Ltd.*, No. 09-13357, 2010 WL 2474788, at *7 (E.D. Mich. June 11, 2010) (dismissing injunctive relief claim because "the language in the Agreement preserving the parties' opportunity to seek injunctive relief cannot be viewed as overriding the parties' stated intent to arbitrate any disputes arising from the Agreement, but rather as supportive of this agreement to arbitrate").

This is particularly true when the parties' chosen language indicates that the injunctive relief carveout is "*ancillary* to the arbitration," as is the case here. *Comedy Club*, 553 F.3d at 1285. In *Comedy Club*, the Ninth Circuit held that an injunctive relief provision that permitted parties to "pursue equitable relief remedies" in court "*in addition to arbitration*," did not provide courts with jurisdiction over *all* equitable claims. *Id*. at 1281, 1285 (emphasis added). Instead, the court found that the

language of the provision indicated the parties' intent to exclude from arbitration certain equitable relief that was "ancillary to" and "in aid of arbitration." *Id.* at 1285. Affirming that equitable claims should generally be arbitrated, the Court reasoned "[i]f the parties intended to carve out an exception to arbitration for all equitable claims, they could have done so without the language 'in addition to arbitration.'" *Id.* at 1285.[10]   Importantly, the Ninth Circuit noted that it is rational for parties to include carveouts to permit *temporary*, but not permanent, equitable relief from courts despite a broad arbitration provision.  As the court explained, this is because "the Federal Arbitration Act, 9 U.S.C. § 3, provides a court with the ability to stay 'trial of [an] action until such arbitration has been had,' but it does not give a court the authority to issue equitable remedies, such as a temporary injunction, to maintain the status quo between the parties." *Comedy Club*, 553 F.3d at 1286.

This approach is consistent with rulings in other courts.  *See, e.g.*, *Davis v. SEVA Beauty LLC,* No. 17-CV-547 (TSZ), 2017 U.S. Dist. LEXIS 148434, at *9 (W.D. Wash. Sept. 13, 2017) (holding that an injunctive relief exception cannot be used to circumvent an arbitration clause; explaining that this interpretation ensures "harmony" between the clauses and "the federal policy favoring arbitration"); *Baldwin Tech. Co., Inc. v. Printers' Serv., Inc.*, No. 15 CIV. 07152 (GBD), 2016 WL 354914, at *3 (S.D.N.Y. Jan. 27, 2016) ("[W]here a contract has both a broad arbitration clause and a clause permitting the parties to seek injunctive relief before a court," an injunctive-relief carveout only permits parties to seek "*injunctive relief . . . in aid of arbitration*, rather than . . . transforming arbitrable claims into nonarbitrable ones[.]"); *DXP Enters. v. Goulds Pumps Inc.*, No. CIV.A. H-14-1112, 2014 WL 5682465, at *4 (S.D. Tex. Nov. 4, 2014) ("[A]greements that lack [ ] unambiguous language and simply state that parties can ask courts for injunctive

---

[10] *See also Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484-85 (9th Cir. 2020) (supporting narrow interpretation of injunctive relief provision stating that "any party to the arbitration may at any time seek injunctions . . . from any court"; holding that such a clause suggests that *arbitration* still applies to all disputes, but that parties may additionally pursue equitable relief in court *in aid of arbitration*).

relief notwithstanding an agreement to arbitrate do not sufficiently show that claims for permanent injunctive relief are nonarbitrable.").

The same rationale applies here. The injunctive relief provision in the Parties' Consulting Agreements is similar to that at issue in *Comedy Club*. Notably, here, the injunctive relief provision does not expressly *exclude* claims for injunctive relief from the purview of what the Parties' agreed to arbitrate. To the contrary, the Agreement states that "any party *may also* petition the court for injunctive relief." Consulting Agreement § 12.D. As in *Comedy Club*, this language indicates that seeking interim relief would be a supplement to, and not in lieu of, arbitrating claims. If all equitable claims were exempt from arbitration, this exception would swallow the rule. The Court should reject Swan's attempts to shoehorn its claims within this narrow provision and effectively nullify its broad arbitration agreement.

### 4. Arbitrability Must Be Decided by the Arbitrator.

In any event, any question of the arbitrability of Swan's claims, including with respect to the scope of the injunctive relief provision, must be put to the arbitrator. Under the FAA, parties are permitted to delegate this question of arbitrability to the arbitrator. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 78 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) (where "the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue"). That is precisely what the Consulting Agreements do here. Indeed, the arbitration provision state, in relevant part, that the parties agree to "ARBITRATE ANY AND ALL DISPUTES ARISING OUT OF OR RELATING TO THE INTERPRETATION OR APPLICATION OF THIS AGREEMENT TO ARBITRATE." Consulting Agreements § 12.A. Thus, to the extent there is any question as to the arbitration provision's scope, interpretation of the injunctive relief terms, and how they apply here, they must be resolved by an arbitrator in the first instance. *See, e.g., Bernal v. Sw. & Pac. Specialty Fin., Inc.*,

No. C 12-05797 SBA, 2014 WL 1868787, *2 (N.D. Cal. May 7, 2014).[11]

## 5. The Court Must Stay the Case Pending Arbitration.

The FAA requires the Court to stay this case because, for the reasons discussed above, those claims are subject to the arbitration provision. *See* 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) (holding that courts must issue a stay "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). This means that all proceedings (other than for provisional relief, which has already been denied) should be stayed, including filing a response to the Complaint and/or any decision thereon, merits-related motions and related motions, and trial. Such determinations are for the arbitrator, not the Court.

## B. Alternatively, Rule 12(B)(6) Requires Dismissal of Counts I-III, V-VII.

### 1. Swan Fails to State a Claim Under the DTSA (Count I).

Plaintiff's DTSA claim must be dismissed. To state a claim, Swan must allege that: (1) it owned a trade secret; (2) Defendants "acquired, disclosed, or used that trade secret through improper means"; and (3) Defendants' actions damaged it. *See Kellwood Apparel, LLC v. Protrend Ltd.*, No. CV 20-214-MWF (JPRX), 2020 WL 13302669, at *5 (C.D. Cal. Mar. 5, 2020) (citing 18 U.S.C. § 1836). But Swan fails to sufficiently identify any trade secret outside of matters of general knowledge, fails to adequately plead ownership of any trade secret, and cannot allege irreparable harm.

#### a. Swan Has Not Sufficiently Identified Its Trade Secrets.

Swan fails to adequately allege any protectable trade secret. It must allege "that (1) the information is not 'readily ascertainable through proper means,' (2) it 'derives independent economic value,' and that (3) it took 'reasonable measures to

---

[11] The Agreements also incorporate by reference the JAMS rules, which similarly delegate arbitrability to the arbitrator. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024); *see also* JAMS Rule 11(b) ("[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement … shall be submitted to" the Arbitrator").

keep such information secret.'" *Unified Grocers, Inc. v. VM Int'l, Inc.*, No. EDCV192365MWFSHKX, 2020 WL 5370621, at *3 (C.D. Cal. Apr. 8, 2020). *Id.* (quoting 18 U.S.C. § 1839(3)). Here, Swan asserts that the Individual Defendants (and Proton) conspired to steal its "highly proprietary" Bitcoin mining business, trade secrets, and property. Compl. ¶¶ 2, 125-136. But it casts generic bitcoin mining processes and open-source applications as "proprietary logic" (*id.* ¶ 126), without indication as to how they differ from what is "readily ascertainable" in the field. *Id.*

<u>First</u>, Swan fails to allege how its purported Bitcoin Network Operating Center ("BNOC") platform (*id.* ¶ 45) differs from what is already generally known. Indeed, it fails to allege sufficient facts to show how it is not merely a data aggregator for inputs that are widely tracked in the industry.[12] Moreover, data about "weather, [and the] price of Bitcoin" (*id.*) are necessarily data points that are "readily ascertainable through proper means." 18 U.S.C. § 1839(3)(B). And where "some of the information within the categories listed is publicly available," the Complaint "fails to provide the Court with a roadmap to distill what information may be a trade secret and what may not." *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1152 (S.D. Cal. 2022). Swan's remaining alleged data sources are too vague to be sufficient—*i.e.*, "*other data* concerning mining operations, including the *specific combinations* of *factors* that lead to the profitability of a specific mining location." Compl. ¶ 45. Swan does not allege what "other data," "specific combinations," or "factors" mean or how these broad categories are proprietary to Swan.

<u>Second</u>, Swan similarly fails to identify how its so-called hash-rate

---

[12] In fact, BNOC is a simple tool that obtains and displays data in a dashboard style front end – similar to other projects like "WARden," which is publicly available through GitHub. *GitHub – pcsocs/warden: WARden | Private Portfolio Tool,* GITHUB, https://github.com/pxsocs/warden (last visited Dec. 23, 2024); *see also* Foundry USA Pool Dashboard, https://foundryusapool.com/viewer?subaccount=cornerbigsky&coin=BTC&api_key=8ddf97c4-205f-4788-a50f-9e3b530d5683 (last visited Dec. 23, 2024). The Court may take judicial notice of the fact that this information is available to the public online. *Soundgarden v. UMG Recordings, Inc.*, No. LACV1905449JAKJPRX, 2020 WL 1815855, at *4 (C.D. Cal. Apr. 6, 2020) (finding information can be noticed to "indicate what was in the public realm at the time").

optimization techniques (Compl. ¶ 47) were created by Swan and are unique and proprietary. For example, "overclocking and underclocking" (*id.* ¶ 48) techniques are already known in the industry to improve performance or longevity by increasing (overclocking) or decreasing (underclocking) a machine's memory so as to compute at higher or lower speeds, respectively, at certain times. Swan offers no explanation as to how its purported techniques differ. Swan's "[o]ther optimization techniques"— *i.e.*, its alleged "proprietary methods for selecting optimal mining locations," "strategies to reduce network latency and improve mining efficiency," "cooling and software optimizations for mining hardware and software," and "internal tools that analyze mining 'pool' performance metrics to select the most profitable and reliable pools"—are not only vague but fail to allege, even at a high level, how Swan's strategies differ from the voluminous data and instruction available in the public domain and through third-party vendors.[13] *Id.*

Third, Swan similarly fails to allege even in the most general terms how alleged "financial modeling, data analytics, and financial monitoring tools" are anything other than standardized formulas or third-party tools accessible to anyone in the field. Compl. ¶ 49. It describes only what those tools generally do (*id.*)*,* and not how the tools are different from what is already known in the industry.

Swan's vague "descriptions" fall short of alleging any trade secret that is not "readily ascertainable through proper means" and should be rejected by the Court. *See, e.g.*, *Haliburton Int'l Foods, Inc. v. Marasco*, No. EDCV201069JGBSHKX,

---

[13] Indeed, Bitcoin miners routinely employ third-party software to perform these functions, and Swan does not allege how its so-called hash-rate optimization techniques are unique from publicly available software. *See, e.g.*, TeraWulf Inc., TeraWulf Announces March 2024 Production and Operations Update, https://investors.terawulf.com/news-events/press-releases/detail/72/terawulf-announces-march-2024-production-and-operations (last visited Dec. 22, 2024); CleanSpark,, Inc., CleanSpark Releases December 2023 Bitcoin Mining Update, https://investors.cleanspark.com/news/news-details/2024/CleanSpark-Releases-December-2023-Bitcoin-Mining-Update/default.aspx (last visited Dec. 22, 2024); Marathon Digital Holdings Inc., Marathon Digital Holdings Releases Industry-Leading Bitcoin Mining Firmware and Control Board, https://ir.mara.com/investors/news-events/press-releases/detail/1348/marathon-digital-holdings-releases-industry-leading-bitcoin-mining-firmware-and-control-board (last visited Dec. 22, 2024).

2020 WL 7872124, at *3 (C.D. Cal. Nov. 4, 2020); *see also Veronica Foods Co. v. Ecklin*, No. 16-CV-07223-JCS, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017).

**b.    Swan Fails to Plead It Owns the Claimed Trade Secrets.**

Even if any trade secrets were identified, Swan fails to allege it owns such trade secrets, as opposed to 2040 Energy, which funded the entire operation.  Under the DTSA, only the trade secret "owner" may bring a misappropriation claim.[14] Thus, Swan must adequately plead it has rightful legal or equitable title to, or license in, the alleged trade secrets.  *See Kellwood Apparel, LLC*, No. CV 20-214-MWF (JPRX), 2020 WL 13302669, at *5 (C.D. Cal. Mar. 5, 2020); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019).  It fails to do so.

The Complaint is silent as to Swan's ownership of either the identified "hash-rate optimization" or "financial modeling" trade secrets, and provides no support for the conclusory assertion that it owns BNOC, exclusively or otherwise.  Nowhere does Swan assert it has "rightful legal or equitable title to, or license in," any of those trade secrets.  While the Complaint refers to the alleged trade secrets as "Swan's," it alleges no facts supporting actual *ownership*.   Threadbare assertions that Swan "owns BNOC" are inadequate without further detail.  *See, e.g.*, *Focused Impressions, Inc. v. Sourcing Grp., LLC*, No. 19-CV-11307-ADB, 2020 WL 1892062, at *4 (D. Mass. Apr. 16, 2020) (allegation that plaintiff "created and maintained trade secret information" was inadequate to state DTSA ownership).  Nor does merely stating that "Swan *possesses* trade secrets related to its Bitcoin mining business" (Compl. ¶ 125) suffice to allege ownership under the DTSA.  *See* 18 U.S.C. § 1839(4).

Not only does Swan fail to allege it owns the alleged trade secrets, the Complaint actually suggests the opposite.  Swan alleges that the "*trade secrets* drove [third-party entity] *2040 Energy* to its recent ten-figure valuation."  Compl. ¶ 130 (emphasis added).  The only reasonable explanation for that would be that the alleged

---

[14] "Owner" is defined as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. § 1839(4).

trade secrets are assets on *2040 Energy's* balance sheet—not Swan's. Indeed, Individual Defendants, while at Swan, were working with and for 2040 Energy, so any alleged trade secrets belong to 2040 Energy, not Swan.

### c.    Swan Cannot Plead Irreparable Harm

Swan also fails to sufficiently allege it has suffered irreparable harm to justify injunctive relief (the only relief available to it in this Court).[15] Swan actually concedes it would be satisfied by monetary remedies. Specifically, it alleges that, after discovering the alleged breach, it requested "that the board of 2040 immediately notify [Defendant] Proton Management to seek proper licenses to any intellectual property that may belong to Swan." Compl. ¶ 112. This admission is fatal to Swan's injunctive relief request where monetary damages, such as licensing royalties, would, in fact, be available and an adequate remedy for use of the alleged trade secrets.

### 2.    Swan Breach of Contract Claim (Count II) Fails.

Swan's contract claim is inadequately pled. Swan alleges that the Individual Defendants breached their Consulting Agreements by "stealing Swan's confidential and proprietary information . . . to use for Defendant Proton's benefit." Compl. ¶ 145. But, as with the DTSA claim, Swan fails to identify specifically what, if any, confidential and proprietary information was allegedly taken, and to sufficiently allege that Swan owned such information, as opposed to 2040 Energy. *See, e.g.*, *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-CV-02965 SC, 2013 WL 5770542, at *12 (N.D. Cal. Oct. 24, 2013) (dismissing claim for breach of a confidentiality clause in part because the confidential information was not adequately identified).

Swan also has not sufficiently alleged that it is entitled to the relief requested. Requiring compliance with the Consulting Agreement qualifies as specific performance—a disfavored remedy under California law. *See Delux Pub. Charter, LLC v. Cnty. of Orange*, No. SACV202344JVSKESX, 2022 WL 3574442, at *13

---

[15] The Parties do not dispute that claims for damages must be submitted to arbitration. They dispute the *scope* of the *injunctive relief* that can be sought.

(C.D. Cal. July 29, 2022).  In any event, Swan fails to allege "the inadequacy of [the] legal remedy" for the reasons above.  *Warner Bros. Int'l Television Dist. v. Golden Channels & Co.*, No. CV0209326MMMSHSX, 2003 WL 27384425, at *24 (C.D. Cal. Mar. 31, 2003) (finding that specific performance of returning the underlying materials was unwarranted where licensing fees were adequate legal remedy).

### 3.     Swan Fails to State a Claim for Tortious Interference of Contractual Relations (Count III).

To state a claim for tortious interference with contractual relations, Swan must allege (1) "a valid contract between plaintiff and a third party"; (2) knowledge of the contract; (3) intentional acts designed to induce a "breach or disruption"; (4) "actual breach or disruption"; and (5) "resulting damage." *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1203 (C.D. Cal. 2001) (citing *Quelimane Co. Inc. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998)).  It fails to do so.

<u>First</u>, tortious interference with an at will contract requires the allegation of an independently wrongful act to induce a breach.[16] *Id.*; *see also Ixchel Pharma, LLC v. Biogen, Inc.*, 930 F.3d 1031, 1037 (9th Cir. 2019).  An "independently wrongful act" is an act "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard" that induced a breach of the at will contract. *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152–53 (2004).  Here, however, Swan alleges, in a conclusory fashion, only that Holmes and Naidoo intentionally interfered by conspiring with former employees "to compete with Swan [during their employment] and solicit Swan's employees and contractors to work for Proton."  Compl. ¶¶ 154, 157.  It identifies no predicate "unlawful act."[17]  This is fatal to its claim.

<u>Second</u>, to the extent Swan asserts that Holmes and Naidoo purportedly

---

[16] In California, employment contracts are presumed to be at will (*Tipton v. Airport Terminal Servs., Inc.,* No. CV1809503ABJEMX, 2019 WL 4231235, at *3 (C.D. Cal. June 25, 2019)), and Swan does not assert otherwise.

[17] Swan does not allege that Holmes or Naidoo, *e.g.*, breached their own agreements or violated other legal standards in connection with the alleged interference.

induced unidentified former employees to breach a non-compete clause (Compl. ¶¶ 149, 151, 152), this also fails. For one, Swan does not allege that Holmes and Naidoo knew of any specific contracts or contractual provisions that they allegedly interfered with. Moreover, there are no plausible allegations that the former employees competed in violation of their contracts. As Swan's own Complaint states, the purported non-compete obligation lasted only during the term of their employment at Swan (Compl. ¶ 151). Swan's conclusory allegations are insufficient.

Third, any claim that Holmes and Naidoo purportedly caused a breach of a non-solicit provision in the former employee contracts fails. Non-solicitation clauses like the one that was allegedly interfered with here have been found to be unenforceable and thus cannot serve as the basis for a breach. *See Race Winning Brands, Inc. v. Gearhart*, No. SACV 22-1446-FWS-DFM, 2023 WL 4681539, at *12 (C.D. Cal. Apr. 21, 2023) (holding non-solicitation clause unenforceable).

Fourth, for reasons already discussed, Swan also has not plausibly alleged any irreparable harm entitling it to the only available remedy here (injunctive relief). In any event, it would be impossible to issue an injunction to prevent Holmes and Naidoo from interfering with contracts that were *already* terminated upon those employees' resignations. *See* Compl. ¶ 151. Nor has Swan alleged continuing violations. The only possible remedy could be damages, which is reserved for the arbitrator. *Cf., e.g.*, *Freecyclesunnyvale v. Freecycle Network, Inc.,* No. C 06-00324CW, 2006 WL 870688, at *7 (N.D. Cal. Apr. 4, 2006) (injunctive relief is not appropriate where liability for past solicitation under a tortious interference theory can be remedied by money damages).[18]

#### 4.    Swan's UCL Claim (Count V) Must Be Dismissed.

The Court must also dismiss Swan's UCL claim. For one, it is entirely

---

[18] Swan's Prayer for Relief only seeks, in relevant part, a "*permanent* injunction" from soliciting its employees. Prayer for Relief at ¶ D (emphasis added). But Swan cannot seek forward-looking relief for some future, unknown interference with unidentified contracts and unknown terms where it fails to allege any threatened conduct or imminent harm.

derivative of Swan's other claims and thus fails as those claims do.  *See, e.g.*, *Uber Techs. Pricing Cases*, 46 Cal. App. 5th 963, 979 (2020); *Sevier v. Real Time Resols., Inc.*, No. 22-CV-06693-JSW, 2024 WL 68555, at *6 (N.D. Cal. Jan. 5, 2024).

Additionally, Swan does not sufficiently allege any "injury in fact" and "lost money or property," as required under California law.  *See Beasley v. Tootsie Roll Industries, Inc.*, No. RG21086723, 2021 WL 2719295, at *2 (Cal. Super. June 29, 2021) (explaining that an "injury in fact" must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical").  Here, Swan fails to allege lost property as it fails to sufficiently allege any cognizable trade secrets or confidential information or that it (rather than 2040 Energy) owned the information it claims was taken, as discussed above (*see* Section V.B.1., *supra*).  Swan further fails to allege any other injury in fact or lost money.  It admits it is out of mining business with no alleged plans to reenter and, notably, continues to be a shareholder in 2040 Energy, entitling it to share in the economic benefits.  Nor does it plausibly allege any lost business opportunity.  While Swan hypothetically alleges its ability to attract potential investors was impaired (Compl. ¶ 121), it nowhere alleges that any committed investor walked away as a result.  *Cf. Lee v. Luxottica Retail N.A.*, Inc., 65 Cal. App. 5th 793, 803, 807 (Cal. App. 1st Dist. 2021) ("[P]laintiff[s] cannot recover anticipated but unearned, future income under the UCL" where it lacks "a legally enforceable right to that stream of future income[.]").  Swan's failure to allege any concrete, non-speculative injury requires dismissal.[19]

**5.    Swan Fails to State a Claim for Conversion (Count VI).**

To state a claim for conversion, a plaintiff must allege "(1) its ownership or right to possession of property, (2) defendant's wrongful disposition of the property right, and (3) damages." *Longo v. Longo*, No. 8:20-CV-00829-AB-RAO, 2020 WL 7774925, at *8 (C.D. Cal. Nov. 12, 2020).  Swan's claim fails on the first prong.

Swan's conversion claim is focused exclusively on seeking the return of

---

[19] In any event, any such damage could not be properly remedied by an injunction.

supposed "Swan-issued" laptops through a permanent injunction. But Swan fails to allege sufficient facts, if any, to establish ownership of, or even a possessory interest in, the laptops. The Court already acknowledged that fact—based on a more complete record—by denying Swan's motion to compel the return of these laptops. *See* ECF No. 53. Indeed, Swan merely asserts that the laptops are Swan "issued" (Compl. ¶¶ 109, 113, 173), without information about how *it* issued those laptops or circumstances of its purported ownership of them. And it certainly does not allege ownership on an individualized basis for each Individual Defendant. Such conclusory allegations are insufficient. *See, e.g.*, *Destfino v. Kennedy*, No. CVF081269LJODLB, 2009 WL 63566, at *8 (E.D. Cal. Jan. 8, 2009), *aff'd sub nom. Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) (explaining that generalized allegations toward groups of parties were insufficient).

In addition, what Swan seeks (*i.e.*, the return of property through injunctive relief) is not a proper remedy for a conversion claim. Cal. Code Civ. Proc., §§ 525 *et seq.*; *Voorhies v. Greene*, 139 Cal. App. 3d 989, 996 (Cal. Ct. App. 1983) ("[N]or is [injunctive relief] a proper remedy for recovering possession of personal property"). In any event, as with its other claims, Swan fails to allege it would even be entitled to this injunctive relief. While summarily alleging "irreparable harm," it fails to plausibly allege *how* it suffered harm or *why* money damages to replace the laptops would be insufficient.

Finally, Swan's conversion claim is barred by the economic loss rule as it solely arises from contract and not an independent tort law duty. *See, e.g.*, *Baggett v. Hewlett-Packard Co*, No. SACV070667AGRNBX, 2009 WL 3178066, at *2 (C.D. Cal. Sept. 29, 2009) (conversion claim barred by economic loss rule); *McGehee v. Coe Newnes/McGehee ULC*, No. C 03-5145 MJJ, 2004 WL 2452855, at *2 (N.D. Cal. Feb. 10, 2004) ("[C]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law."). Under the economic loss rule, "[a] person may not ordinarily recover in tort for the

breach of duties that merely restate contractual obligations." *See Expedited Packages, LLC v. Beavex Inc.*, No. CV1500721MMMAGRX, 2015 WL 13357436, at *2 (C.D. Cal. Sept. 10, 2015). Here, the only alleged basis for the conversion claim is that Swan owns the laptops by virtue of the Individual Defendants' consulting agreements. Compl. ¶ 109. No extra-contractual duty is alleged vis-à-vis the laptops. This claim is thus barred.

### 6. Swan's Civil Conspiracy "Claim" (Count VII) Fails.

Swan's civil conspiracy "claim" also fails. California does not recognize civil conspiracy as a standalone cause of action. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). Thus, this claim cannot survive. But even if it could, Swan fails to adequately plead any underlying tort—a pre-requisite for liability. *See id.* at 511. Here, Swan's claim is purportedly based on "a design to injure Swan" by "violating Swan's contractual, statutory, and common-law rights," as alleged in the other claims. But, as discussed above, these claims independently fail for the reasons discussed above. *See* Sections V.B.3, V.B.5, *supra*. Moreover, Swan's attempt to foist its contract and statutory claims into some broader conspiracy are improper in any event as they are not *tort* claims. Accordingly, this conspiratorial liability theory should be rejected.[20]

### VI. CONCLUSION

For the foregoing reasons, the Court should compel arbitration and stay the case pending arbitration. In the alternative, the Court should dismiss the Complaint for failure to state a claim.

Respectfully submitted,

Dated: December 23, 2024

By: */s/ Grant P. Fondo*
MATTHEW P. KANNY (SBN 167118)
*MKanny@goodwinlaw.com*

---

[20] To the extent the conspiracy claim is based on the aiding and abetting a breach of the duty of loyalty claim, this claim is directed only at Proton. Regardless, it is inadequately pled because it does not allege the existence of an extra-contractual fiduciary duty to Swan under any theory. *See AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 941 (2018).

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
AMANDA H. RUSSO (SBN 319617)
*ARusso@goodwinlaw.com*
AARON S. THOMPSON (SBN 272391)
*AThompson@goodwinlaw.com*
**GOODWIN PROCTER LLP**

*Attorneys for Specially Appearing Defendants Thomas Patrick Furlong, Ilios Corp., Michael Alexander Holmes, Rafael Dias Monteleone, Santhiran Naidoo, Enrique Romualdez, and Lucas Vasconcelos*

INDIVIDUAL DEFENDANTS' MEMORANDUM ISO MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

-26-