# EXHIBIT H
## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

RYAN S. LANDES (State Bar No. 252642)
ryanlandes@quinnemanuel.com
 Quinn Emanuel Urquhart & Sullivan, LLP
865 S Figueroa Street, Floor 10
Los Angeles, CA 90017-5003
Telephone:   (213) 443-3145
Facsimile:    (213) 443-3100

STACYLYN M. DOORE (admitted *pro hac vice*)
stacylyndoore@quinnemanuel.com
 Quinn Emanuel Urquhart & Sullivan, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Telephone:   (617) 712-7100
Facsimile:    (617) 712-7200

RACHEL E. EPSTEIN (admitted *pro hac vice*)
rachelepstein@quinnemanuel.com
 Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
Telephone:   (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Plaintiff*
*ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PROTON MANAGEMENT LTD., a British Virgin Islands corporation; THOMAS PATRICK FURLONG; ILIOS CORP., a California corporation; MICHAEL ALEXANDER HOLMES; RAFAEL DIAS MONTELEONE; SANTHIRAN NAIDOO; ENRIQUE ROMUALDEZ; and LUCAS VASCONCELOS,<br><br>Defendants. | Case No. 2:24-cv-8280-MWC-E<br><br>**JOINT RULE 26(F) REPORT**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Scheduling Conference:  March 21, 2025 |

Plaintiff Electric Solidus, Inc. d/b/a Swan Bitcoin ("Swan") and Defendants Proton Management Ltd. ("Proton"), Ilios Corp. ("Ilios"), Michael Alexander Holmes, Thomas Patrick Furlong, Rafael Dias Monteleone, Santhiran Naidoo, Enrique Romualdez, and Lucas Vasconcelos (together with Ilios, the "Individual Defendants," and with Proton, the "Defendants"), by and through their attorneys of record, submit this Joint Rule 26(f) Report pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 26, and this Court's January 7, 2025 Order Setting Scheduling Conference (ECF No. 95) (the "January 7 Order"). The Parties' counsel held a conference pursuant to Federal Rule of Civil Procedure 26(f) on February 7, 2025, regarding case management, the nature of the Parties' claims and defenses, the discovery plan, and the remaining topics as outlined in the Court's January 7 Order.

### a.    <u>Statement of the Case</u>

<u>Swan's Position:</u>

Swan is an industry-leading Bitcoin financial services company. Dkt. 101 ("Amended Complaint" or "AC") ¶ 17. Before Defendants' misconduct, Swan was also a leader in the field of Bitcoin mining. *Id.* ¶¶ 17, 53-55. Each of the Individual Defendants was a paid consultant working on Swan's mining team. *Id.* ¶¶ 89-98.

This case arises from a coordinated scheme by Defendants to steal Swan's Bitcoin mining business. Over six weeks last summer, the Individual Defendants executed what they dubbed a "rain and hell fire" plan: (i) stealing over 1,300 documents related to Swan's mining business, including trade secrets underlying every aspect of that business's operations; (ii) orchestrating a "staged" resignation of 13 of Swan's key mining consultants and employees (virtually all of the mining team); and (iii) just prior to those resignations, forming a copycat company, Defendant Proton, to usurp Swan's mining business. In notes taken days before the resignations, the Individual Defendants recognized this conduct would "expose" them to breaches of their "Confidentiality and IP" obligations to Swan. *See* AC ¶ 8.

2

Defendants do not (and cannot) dispute that they stole over a thousand documents and raided Swan's mining business. Instead, and as also reflected in contemporaneous notes, they seek "legal cover from Tether," a crypto industry giant. Fulfilling its promise of "legal cover," Tether filed litigation in the United Kingdom seeking to enjoin this case—improperly claiming that an agreement between Swan and Tether for a joint venture ("2040 Energy") forecloses this action. But none of the Defendants here is a party to that agreement, which notably does not assign or license any Swan intellectual property to 2040 Energy or Tether. Indeed, the 2040 Energy agreement does not contain any IP rights provision at all, let alone allow for a non-party to the agreement to steal Swan's trade secrets.[1]

Defendants further claim that they were allowed to steal Swan's mining business because they are only using Swan's trade secrets to mine for 2040 Energy and were hired to mine for 2040 Energy, not Swan. *See* Dkt. 29-1 at 9. But none of the Individual Defendants' consulting agreements even references 2040 Energy. Rather, their agreements make clear that any intellectual property they developed was owned by Swan. *See* AC ¶¶ 80, 96-98. Swan's trade secrets and confidential information belong to Swan. Thus, Defendants are not permitted to use *Swan's* confidential information and trade secrets even within the confines of 2040 Energy to the exclusion of Swan. Regardless, Swan has uncovered new evidence since the Court ruled on Swan's request for a temporary restraining order (Dkt. 40), which indicates that Defendants are using Swan's trade secrets to mine Bitcoin *outside* of 2040 Energy: Defendants have stopped mining Bitcoin to wallets visible to Swan, ████████████████████████████████████████████████, and have inadvertently sent messages to Telegram channels that still include Swan regarding ongoing mining activity at prior Swan mining sites—only to later

---

[1]  Defendants intend to move to stay this case based on Tether's pending anti-suit injunction application in the United Kingdom. *See, e.g.*, Dkt. 108 at n.1. Before filing that motion, Defendants have awarded themselves a self-imposed stay.

delete those messages. *See* AC ¶¶ 181-201. As noted below, Swan proposes initial, targeted discovery to determine the scope of Defendants' mining activity outside of 2040 Energy. Finally, Defendants claim that nothing they did was nefarious but rather was driven by Swan's poor management—but their contemporaneous notes reflect they knew they were doing something wrong and they did it anyway.

Swan initiated this litigation on September 25, 2024 and filed the AC on January 27, 2025. The AC states claims for trade secret misappropriation under the Defend Trade Secrets Act, breach of contract, tortious interference with contractual relations, aiding and abetting breach of the duty of loyalty, unfair competition under the California Business & Professions Code, conversion, and civil conspiracy.[2] Swan intends to seek preliminary injunctive relief against all Defendants, following targeted discovery into the extent of their use of Swan's trade secrets; monetary relief against Proton; and further injunctive relief that discovery deems necessary.

Defendants' responses to the Amended Complaint are due on February 24th.

**Individual Defendants' Position:**

The Individual Defendants were independent consultants of Plaintiff, engaged solely to run the Bitcoin mining business of a separate entity called 2040 Energy—a joint venture between Plaintiff and a third party, Tether Investments Ltd., through one its subsidiaries ("Tether"). To create 2040 Energy, Plaintiff and Tether entered into a Shareholder's Agreement ("SHA"), which requires the parties ████████████████████████████████████████████████████████ ████████████████████████████████.[3] 2040 Energy and Tether sued Swan in the UK ("UK Litigation"), seeking relief in that matter regarding (*inter alia*) a threshold question of who owns the information that is at issue in this case, and whether Swan should be enjoined from prosecuting this litigation while the UK case is pending.

---

[2] The initial Complaint alleged the same claims.

[3] Swan's merits arguments regarding the SHA and Swan's and 2040 Energy's IP rights only reinforces that the issue should be resolved under the SHA in the UK.

4

While Plaintiff tells a tale of its alleged mining business being stolen by Tether and the Defendants, which the Individual Defendants vigorously dispute, the truth is that Swan had no mining business outside 2040 Energy,[4] and any information the Individual Defendants purportedly "stole" was either public information or the property of 2040 Energy. Indeed, 2040 Energy and Tether have asserted in the UK Litigation that all information relating to the mining operations was developed exclusively for, is the asset of, and is owned by the joint venture 2040 Energy. Despite Defendants' repeated requests, Swan failed for months to serve its Section 2019.210 disclosure or otherwise describe with particularity the alleged Swan trade secrets at issue in this case,[5] and why Swan believes it owns that information. In its complaints, Swan intentionally cherry-picks evidence to support is misleading narrative and omits the fact that the Individual Defendants resigned not with any nefarious intent, but because Swan was on the brink of financial collapse due to Swan's mismanagement. And contrary to Swan's false claims, 2040 continues to mine Bitcoin for the benefit of its shareholders, including Swan.

In retaliation, Swan commenced this action, improperly seeking broad injunctive relief in violation of the binding arbitration provisions in the parties' agreements. And while Swan has repeatedly described this matter as the "Tether Litigation" (*see, e.g.*, ECF No. 72, 1:17-18, 3:14-20), Swan did not name Tether as a party in this action—a blatant attempt to avoid the mandatory and exclusive ███ ███████████████████. But its attempt to avoid its contractual obligation is

---

[4] In fact, the SHA prevented Swan from competing with 2040 Energy, including in connection with 2040 Energy's Bitcoin mining operations, at any time during which Swan was a shareholder of 2040 Energy and for six months afterwards.

[5] After waiting months, Swan just advised that it is finally going to make a Section 2019.210 disclosure, and to serve targeted discovery, on February 13, 2025—the day before this Joint Report is due. Swan's claim that it has complied with the Court's standing order ignores the fact that this action was filed in September 2024, and Swan refused for months to provide any trade secret disclosures despite the Individual Defendants' repeated requests.

1   futile, as one of the threshold issues in this litigation—which party owns the alleged

2   property in dispute—is also the subject of litigation in the UK ████████████.

3   Indeed, 2040 Energy and Tether are seeking an anti-suit injunction in the UK to

4   prevent this action from proceeding until the threshold question of ownership is

5   decided there.

6          After filing its original complaint, Swan filed a series of emergency requests,

7   all of which were rejected.  On October 5, 2024, the Court denied Swan's *Ex Parte*

8   Application for a TRO and related request for expedited discovery.  ECF No. 40.

9   On October 9, Plaintiff again tried to obtain an order for expedited discovery, but

10  that request was denied.  *Id.* 43, 54.  On October 15, Plaintiff filed a "motion to

11  compel" the return of the Individual Defendant's laptops (*id.* 53), which the Court

12  denied.  *Id.* 63.  On October 18, Swan withdrew its preliminary injunction motion

13  *(id.* 55), and that hearing has never been rescheduled.  Months after filing this action,

14  Swan still has not sought any other relief; indeed, Swan has not even filed arbitration

15  demands, which are a prerequisite to obtaining temporary relief in aid of arbitration.

16  Swan's claim of new facts and threat of filing yet another preliminary injunction

17  motion rings hollow as Swan is plainly seeking to justify their significant delay in

18  prosecuting this case, which justifies denial of its yet-to-be filed renewed motion.

19  **Specially Appearing Defendant Proton's Statement of Case:**

20         This Court does not have personal jurisdiction over Specially Appearing

21  Defendant Proton Management Ltd. ("Proton"), a British Virgin Islands Business

22  Company with its headquarters in Tortola British Virgin Islands.  As alleged in the

23  Amended Complaint, Proton has no offices in California, and of the more than a

24  dozen individuals Swan has targeted in its Amended Complaint, only one is in

25  California; the rest are located outside of California and throughout the world.

26  Proton submits this Joint Report while explicitly reserving its right to challenge

27  personal jurisdiction, which it will do in its motion to dismiss Swan's Amended

28  Complaint, which will be filed on or before February 24, 2025.

This litigation is a selective action by Swan against the Individual Defendants and Proton to disparage Swan's former employees and contractors in order to gain leverage in its dispute with Tether, a respected cryptocurrency institution that provided all the funding for a separate entity called 2040 Energy Ltd. ("2040 Energy"). Amidst increasing mismanagement by Swan's executive team, which negatively impacted 2040 Energy's ongoing operations and future growth, resulting in mass layoffs, the Individual Defendants resigned from Swan in August 2024. After Swan failed to cure its defaults, Proton was engaged to maintain the operational and administrative functions of 2040 Energy, in which Swan owns a minority stake.

Swan does not have a mining business of its own. Rather, as Swan admits in its Amended Complaint and publicly, what Swan has called its mining business is really just the separate entity called 2040 Energy, which is fully funded by Tether, according to Swan's own allegations. 2040 Energy is not controlled by Swan, although, upon information and belief, Swan maintains a minority stake in the business. However, unrelated to the 2040 entity and its operations, Swan's financial position was so precarious that it had to conduct a large round of layoffs in July 2024. As further admitted in the Amended Complaint, the Individual Defendants left Swan in early August and began working on behalf of Proton, which was subsequently engaged to continue the 2040 Energy operations. That is, Proton is continuing to preserve and enhance the value of 2040 Energy, in which Swan has a minority financial stake. Far from damaging Swan, Proton is enhancing the value of its minority stake in 2040 Energy.

It is highly questionable whether any of the information identified in Swan's Complaint actually belongs to Swan as opposed to 2040 Energy, or even constitutes proprietary information and/or trade secrets. Rather, 2040 Energy is a joint venture between Swan and a third party, Tether, and 2040 Energy and Tether have asserted in the UK Litigation that all information relating to the mining operations was

JOINT RULE 26(F) REPORT

developed exclusively for, was the assets of, and was owned by 2040 Energy, and not Swan. Nevertheless, despite knowing of Proton's engagement to perform 2040 Energy's operational functions as early as August 13, 2024, Swan negotiated its dispute with Tether for more than six weeks. In an apparent attempt to gain leverage in those negotiations, Swan filed this action on September 25, 2024. The issue of ownership of the information Swan identifies as its trade secrets is now the subject of litigation between Swan, Tether, and 2040 Energy in the United Kingdom.

### b.    <u>Subject Matter Jurisdiction</u>

Plaintiff alleges that this Court has subject matter jurisdiction because the litigation arises under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et sq*., and that this Court also has supplemental jurisdiction over Swan's state law claims, pursuant to 28 U.S.C. § 1367, because they are related to, and arise from, a common nucleus of operative facts with Swan's federal claims [6]

### c.    <u>Legal Issues</u>

The key points of law in this case include:

**Swan's Position:**

- Whether Defendants can issue a self-imposed stay of discovery;
- Whether the arbitration provisions in the Individual Defendants' Consulting Agreements limit seeking preliminary injunctive relief in court to relief "in aid of arbitration" when such language does not appear anywhere in the Individual Defendants' Consulting Agreements;
- Whether the Individual Defendants can limit discovery in this case to discovery "in aid of arbitration" when that language does not appear anywhere in the Individual Defendants' Consulting Agreements;

---

[6] As discussed, the Individual Defendants contend that this litigation is subject to binding arbitration, except for temporary injunctive relief in aid of arbitration only, and should be stayed in favor of arbitration and/or pending resolution of a threshold issue in the UK Litigation, and reserve all rights relating to same.

- Whether Defendants should be permitted to withhold discovery in this case pending a UK litigation between other parties involving an agreement to which Defendants are not parties;

- Whether Swan is entitled to a preliminary injunction against Defendants to enjoin further misappropriation of Swan's trade secrets;

- Whether Swan is entitled to a preliminary injunction against the Individual Defendants to enjoin further breaches of their consulting agreements through their retaining, using, and disclosing Swan's confidential information;

- Whether Swan is entitled to a preliminary injunction against Defendants to enjoin them from engaging in further unfair business practices in connection with their disruption of Swan's Bitcoin mining business;

- Whether Swan is entitled to a preliminary injunction against Defendants Proton, Holmes, and Naidoo to enjoin further tortious interference with Swan's Employee Confidentiality Agreements (AC ¶¶ 234-242);

- Whether Defendant Proton misappropriated Swan's trade secrets;

- Whether Defendant Proton intentionally interfered with the Employee Confidentiality Agreements through wrongful conduct;

- Whether Defendant Proton knowingly and intentionally induced Swan employees to breach their Employment Agreements, including non-solicitation and confidentiality obligations within those agreements;

- Whether Defendant Proton employed unfair business practices in order to disrupt Swan's Bitcoin mining business;

- Whether the Individual Defendants have retained possession over Swan's property;

- Whether Defendants have spoliated evidence, including by deleting messages sent through messaging applications such as Telegram.

**<u>Individual Defendants' Position:</u>**

Pursuant to broad arbitration provisions in Swan's and the Individual Defendants' Consulting Agreements (discussed further below in Section j. of this Joint Report), the Individual Defendants contend that all merits-related proceedings, including any response to the Amended Complaint, this Rule 26 conference, merits-related discovery, dispositive motions, and trial, should be compelled to arbitration and the action stayed pending arbitration. The Individual Defendants further assert that no discovery should proceed in this action or, in the alternative, if any discovery is allowed, it should be limited to discovery in aid of arbitration. On December 23, 2024, the Individual Defendants filed their Motion to Compel Arbitration and Stay All Merits-Relative Proceedings ("Motion to Compel/Stay"). ECF No. 82-1. In response and in lieu of filing an Opposition, Plaintiff filed its amended complaint, which limited the relief sought against the Individual Defendants to preliminary injunctive relief only (i.e., Plaintiffs dropped its demand for a permanent injunction against the Individual Defendants, effectively conceding the merits of the Individual Defendants' Motion to Compel/Stay). ECF No. 101. The Court then took the Individual Defendants' motion off-calendar. ECF No. 107. The Individual Defendants intend to refile its Motion to Compel/Stay on or before February 24, 2025. *See* ECF No. 109.

The Individual Defendants also contend that this action should be stayed pending the resolution of a threshold issue in a dispute filed in the UK: whether Swan owns the alleged trade secrets/confidential information in dispute, or whether that information is owned by 2040 Energy. ██████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████ and because 2040 Energy and Tether filed suit in the UK regarding the ownership of certain alleged property Swan claims it owns, the Individual Defendants

respectfully submit that this issue should be resolved first in the pending UK Litigation, ███████████████████████████████████.

Finally, in addition to the above, and should any of this case move forward in this Court, the legal issues known at this time are whether Swan identified its alleged trade secrets with particularity, whether the disclosed alleged trade secrets constitute trade secrets under applicable law, whether Plaintiff owns the trade secrets and/or confidential information, whether the Individual Defendants have allegedly misappropriated any such trade secrets and/or confidential information, whether Swan was damaged by the Individual Defendants' alleged conduct, whether Swan suffered irreparable harm as a result of the Individual Defendants' conduct, whether legal remedies are adequate, whether specific performance of the Consulting Agreements is an appropriate remedy, whether temporary injunctive relief is an appropriate remedy for Plaintiff's claim for tortious interference of contracts, whether Swan owns the laptops at issue in this litigation, whether a request to return the laptops is an appropriate remedy under Plaintiff's conversation claim, and whether the economic loss rule bars Swan's tort claims.

**Specially Appearing Defendant Proton's Contentions:**

Specially Appearing Defendant Proton is not subject to the Court's jurisdiction, as Swan has not pled facts sufficient show either general or personal jurisdiction over Proton. As alleged in the Amended Complaint, Proton is incorporated in the British Virgin Islands with no place of business or operations in California other than a lone affiliated individual, and the rest of the individuals targeted by Swan in its Amended Complaint are outside of California and throughout the world. On December 23, 2024, the Proton filed its Motion to Dismiss due to lack of personal jurisdiction pursuant to FRCP 12(b)(1). ECF No. 79. In lieu of filing an Opposition, Plaintiffs filed its amended complaint. ECF No. 101. In response to the filing of an amended complaint, the Court took the motion

off-calendar.  ECF No. 107.  Proton intends on refiling its Motion to Dismiss on or

before February 24, 2025.  *See* ECF No. 108.

      Proton respectfully requests that the Court not set a trial date or case schedule

at this time, but set a further scheduling conference after the multiple motions

addressing this Court's jurisdiction and the pleadings have been resolved, and

require the Parties to submit a revised Joint Rule 26(f) report prior to the further

scheduling conference.  To the extent that this action proceeds against Proton,

Proton contends that this action should be stayed pending the resolution of a

threshold issue in a dispute filed by Tether and 2040 Energy in the UK against

Swan:  whether Swan owns the alleged trade secrets or confidential information in

dispute, or whether that information is owned by 2040 Energy. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮, and a dispute has arisen regarding the ownership of certain alleged

property Swan claims it owns, Proton respectfully submits that this issue should be

resolved first in the pending UK Litigation, ▮▮▮▮▮▮▮▮▮, before any action

against Proton in this Court.  In addition, should the Court grant the Individual

Defendants' motions to compel arbitration and find that the Court has personal

jurisdiction over Proton, Proton will move the Court to compel arbitration of Swan's

claims against Proton on the grounds that Swan's claims against Proton are

intimately founded in and intertwined with its claims against the Individual

Defendants, and should be compelled to arbitration under the doctrine of equitable

estoppel.

      Identification of the legal issues is dependent upon the parties and claims that

remain after the aforementioned motions are resolved, and Proton respectfully asks

that the Court require the parties to submit a revised Joint Rule 26(f) report at that

time.  The additional legal issues known at this time are whether Swan identified its

alleged trade secrets with particularity, whether the disclosed alleged trade secrets constitute trade secrets under applicable law, whether Swan owns the alleged trade secrets and/or confidential information at issue, whether Proton has misappropriated any alleged trade secrets and/or confidential information, whether Swan was damaged as a result of any actions by Proton, whether Swan suffered irreparable harm as a result of any actions by Proton, whether legal remedies are adequate, whether injunctive relief is an appropriate remedy for Swan's claim for tortious interference of contracts, and whether the economic loss rule bars Swan's tort claims.

### d.    Damages

**Swan's Position:**

Defendants have improperly acquired, used, and disclosed Swan's trade secrets both inside and outside of the 2040 Energy mining operation. As a result of this misconduct, Swan has suffered and continues to suffer irreparable harm, particularly with respect to the ongoing threat of further use and disclosure of its trade secrets in connection with the Defendants' mining activities outside of 2040 Energy. Swan thus seeks a preliminary injunction against all Defendants. Swan also seeks damages from Proton in the form of restitution, actual and punitive damages, and attorneys' fees costs, as well as a permanent injunction. At this time, Swan has not completed its damages analysis, which depends in large part on documents and information that are only available to Defendants. Swan estimates, however, that provable damages may exceed $1,000,000,000. For example, and as laid out in more detail in Swan's Amended Complaint, just prior to the Individual Defendants' mass resignations from Swan, Swan's Chief Investment Officer—who is now Proton's Chief Executive Officer—valued Swan's financial interest in the mining business Defendants stole at over ████████. *See* AC ¶ 87.

**Individual Defendants' Position:**

The Individual Defendants contend that Plaintiff has not suffered any harm or damage in connection with the Defendants' alleged conduct.

**Specially Appearing Defendant Proton's Contentions:**

Specially Appearing Defendant Proton contends that Swan has not suffered any harm or damage in connection with the conduct alleged in the complaint. To the contrary, Swan has benefited from Proton's work on the 2040 Energy joint venture with Tether, which Swan mismanaged leading to a disruption in its relationship with Tether and the resulting lawsuit filed by Tether against Swan in the UK. Swan is a minority shareholder in 2040 Energy and stands to benefit from that investment without any further expenditures by it. Any damages that Swan may be entitled to, which Proton denies, should be offset by the benefits Swan has reaped from the continued operations of 2040 Energy.

e.    **Parties, Evidence, etc.**

**Swan's Position:**

**Parties:**

The Parties in this matter are as follows: Plaintiff Electric Solidus, Inc. d/b/a Swan Bitcoin; and Defendants Proton Management Ltd., Thomas Patrick Furlong, Ilios Corp., Michael Alexander Holmes, Rafael Dias Monteleone, Santhiran Naidoo, Enrique Romualdez, and Lucas Vasconcelos.

**Witnesses:**

Swan intends to have one or more corporate representatives appear as witnesses and each may call one or more corporate representatives of the other Parties. In addition, Swan will likely call witnesses related to the question of misappropriation of trade secrets and other claims. The identity of certain other fact witnesses is currently unknown, and depends on further discovery. Swan also expects to call expert witnesses regarding liability and damages.

The following persons are likely to have discoverable information concerning Swan's claims and/or Defendants' defenses:

1. Defendant Naidoo;

2. Defendant Furlong;

3. Defendant Holmes

4. Defendant Monteleone;

5. Defendant Romualdez;

6. Defendant Vasconcelos;

7. Defendant Proton;

8. Elektron Energy, to the extent that entity differs from Defendant Proton;[7]

9. Defendant Ilios;

10. Aleksander Dozic;

11. Kartheek Sola;

12. Brett Hiley;

13. Max Berg;

14. Tyler Effertz;

15. Bill Belitsky;

16. Raphael Zagury;

17. Cory Klippsten;

18. Yan Pritzker;

---

[7] At the time it filed the Amended Complaint, it was unclear to Swan whether "Elektron Energy"—a brand that the Individual Defendants and their conspirators use to provide Bitcoin mining services and engage with Swan mining sites—was a distinct entity from Proton, or if Elektron Energy was a trade name that Proton uses. *See* AC n.3. On February 13, 2025, Defendant Proton revealed that Proton has a subsidiary named Elektron Management LLC. As noted below, some of the targeted discovery Swan seeks aims to elucidate the relationship between Proton, Elektron Energy, and the Individual Defendants, including the extent to which Defendants are using Elektron Energy to further their tortious conduct.

15

19. Scott Kisser;

20. João Vasconcelos;

21. Zachary Lyons;

22. Marlin Capital Partners;

23. Tether Investments Ltd.;

24. Giancarlo Devasini;

25. Jean-Louis van der Velde;

26. Natural persons and/or entities operating the Bitcoin mining sites that Defendants have used or are currently using;

27. Natural persons and/or entities providing services to Defendants related to Bitcoin mining in connection with Defendants' Bitcoin mining operations (*e.g.*, vendors);

28. Natural persons and/or entities who have engaged Defendants to provide services related to Bitcoin mining.

**Evidence:**

Key documents relevant to the main issues in the case include:

- Documents downloaded and accessed by the Individual Defendants before their resignations from Swan;

- Documents regarding and evidencing Defendants' use of Swan's trade secrets and confidential information, including but not limited to investment memoranda, operational data, source code, models, analyses, and other documentation utilized for Bitcoin mining operations;

- Documents regarding and evidencing Defendants' coordination of their resignations and their efforts to steal Swan material;

- Documents regarding and evidencing solicitation of Swan employees;

- Contractual agreements between Swan and third parties related to Swan's mining operations (*e.g.*, hosting agreements for Bitcoin mining sites; contractual agreements with vendors);

- Communications between Swan and third parties related to Swan's mining operations;

- Contractual agreements between Defendants and third parties related to Defendants' mining operations (*e.g.*, hosting agreements for Bitcoin mining sites; contractual agreements with vendors; agreements compensating Defendants' for services related to Bitcoin mining);

16

- Communications between Defendants and third parties related to Defendants' mining operations;

- Financial records related to Swan's and Defendants' Bitcoin mining operations;

- The Individual Defendants' and former Swan employees' employment and consulting agreements;

- Communications between the Individual Defendants and others regarding the formation of Proton;

- Communications by Defendants regarding their mining for 2040 Energy;

- Communications by Defendants regarding their mining outside of 2040 Energy;

- Forensic data from the Individual Defendants' Swan-issued laptops; and

- Documents related to damages.

Other key documents and evidence are currently unknown but will likely include documents related to the question of misappropriation of trade secrets and other claims.

**Individual Defendants' Position:**

Subject to and without waiving their arguments regarding arbitration and a stay pending arbitration and/or resolution of the UK action, the Individual Defendants' percipient witnesses may include:

1.  Thomas Patrick Furlong

2.  Ilios Corporation

3.  Michael Alexander Holmes

4.  Rafael Dias Monteleone

5.  Santhiran Naidoo

6.  Enrique Romualdez

7.  Lucas Vasconcelos

8.  Raphael Zagury

9.  Cory Klippsten

10.  Yan Pritzker

11.   Representatives of Tether

12.   Individuals with knowledge of the formation of 2040 Energy Ltd. and all Investment Memos.

13.   Individuals with knowledge of the development of all or any part of the alleged trade secrets in dispute in this case.

14.   Individuals with knowledge of Swan's alleged confidential information.

15.   Individuals with knowledge of Swan's ownership of Swan's alleged trade secrets and/or confidential information.

16.   Individuals with knowledge of Swan's efforts to maintain the confidentiality of Swan's alleged trade secrets and/or confidential information.

17.   Individuals regarding Swan's mining business outside of 2040, if any.

18.   Individuals with knowledge of Swan's financial condition in 2024 and efforts to raise capital.

19.   Individuals with knowledge of Swan's communications with Tether and/or 2040.

20.   Individuals with knowledge of Swan's dealings with Ripple Labs, Inc. ("Ripple"), including any communications and agreements with Ripple.

21.   Individuals with knowledge of Swan's management of Swan's business.

22.   Individuals with knowledge of Swan's alleged management of 2040.

23.   Individuals with knowledge of the business practices of 2040.

24.   Individuals with knowledge of communications with Swan and the Individual Defendants and other consultants and employees who worked with or for 2040.

25. Individuals with knowledge of communications with Swan regarding breaches of the SHA, and Swan's response to same.

26. Individuals with knowledge of Swan's communications about its so-called mining business.

27. Individuals with knowledge of Swan's layoffs in summer of 2024 and decision to shut down its managed mining business.

28. Individuals with knowledge of Swan's valuation of its company for purposes of raising capital.

29. Individuals with knowledge of Swan's alleged irreparable harm and/or alleged damages.

30. Individuals with knowledge of Swan's allegations in its Amended Complaint.

31. Individuals with knowledge of Swan's ongoing operations and plans, including whether Swan intends on pursuing bitcoin mining.

The Individual Defendants key documents may include:

• The SHA.

• Documents and communications relating to the SHA.

• All 2040 Investment Memos.

• Documents and communications relating to all 2040 Investment Memos.

• Documents and communications relating to the Individual Defendants work and/or employment with Swan including the Consulting Agreements.

• Documents and communications relating to Swan's alleged trade secrets and/or confidential information.

• Documents and communications relating to the Individual Defendants and/or Proton's alleged use of Swan's alleged trade secrets and/or confidential information.

19

- Documents and communications relating to Swan's financial condition in 2023 and 2024.
- Documents and communications relating to Swan's efforts to raise capital and capital raised in 2023 and 2024.
- Documents and communications relating to payments and/or investments made by Tether and/or 2040 to Swan or Swan-related entities.
- Documents and communications relating to Swan's communications with the Individual Defendants, Proton, Tether, Ripple, and potential investors.
- Documents and communications supporting, evidencing, or relating to Swan's allegations in the Amended Complaint.
- Documents and communications supporting, evidencing, or relating to Swan's alleged damages.
- Documents and communications supporting, evidencing, or relating to Swan's contention that it suffered irreparable harm.
- Documents and communications to rebut any evidence that Swan puts forth on issues for which Swan bears the burden of proof.

**Specially Appearing Defendant Proton:**

Without waiving its objections to this Court's jurisdiction, Specially Appearing Defendant Proton states as follows:  Proton has a subsidiary named Elektron Management LLC.  Neither Proton nor its subsidiary are incorporated in California.  Swan's claims are based on allegations that former Swan consultants left Swan and work for Proton, only one of which does Swan allege resides in California.  There is therefore no basis for jurisdiction over Proton.

To the extent that this case proceeds against Proton, and without waiving its objection to this Court's jurisdiction, Proton incorporates by reference herein the parties and evidence identified by the Individual Defendants.

**f.    Insurance**

No Party is aware of any relevant insurance coverage.

**g.    Manual for Complex Litigation**

**Swan's Position:**

Swan believes that this case does not require utilization of the procedures specified in the Manual for Complex Litigation.

**The Individual Defendants' Position:**

Reserving all rights, the Individual Defendants incorporate by reference herein Special Appearing Defendant Proton's position regarding utilization of the procedures specified in the Manual for Complex Litigation.

**Specially Appearing Defendant Proton's Position**

Specially Appearing Defendant Proton contends that this case should be dismissed due to the lack of personal jurisdiction over Proton, or in the alternative stayed because of Tether's UK litigation and/or Swan's requirement to submit its claims against the Individual Defendants, and claims against Proton that are intimately founded in and intertwined with its claims against the Individual Defendant, to arbitration.  Therefore, the Manual of Complex Litigation should be inapplicable.   To the extent this case proceeds otherwise, Proton respectfully requests that the Court to order a revised Joint 26(f) report and consideration of the Manual for Complex Litigation.

**h.    Motions**

There are currently no motions pending.  The Parties reserve the right to file such other motions as appropriate and warranted.

**Swan's Position:**

At this time, Swan does not anticipate requiring a motion to amend adding any additional claims to its properly filed Amended Complaint, but reserves the right to seek to add additional claims or parties based on discovery.  Swan proposes

a deadline of May 30, 2025, or 21 days after the Court resolves any pleading motions, whichever is later, for any further amendment of pleadings.

**Individual Defendants' Position:**

The Individual Defendants intend to file a motion to compel arbitration and stay all merits-based proceedings, a motion to stay action pending resolution of the threshold issue of ownership in the UK Litigation, and an alternative motion to dismiss under Fed. R. Civ. P. 12(b)(6). Should this matter proceed, the Individual Defendants anticipate filing a motion for summary judgment or partial summary judgment and reserves the right to file discovery motions.

**Specially Appearing Defendant Proton:**

Specially appearing Defendant Proton intends to bring a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) or in the alternative under Fed. R. Civ. P. 12(b)(6) on or before February 24, 2025. To the extent that this case proceeds against Proton, and without waiving its objection to this Court's jurisdiction, Proton anticipates joining the Individual Defendants' motion to stay action pending resolution of the threshold issue of ownership in the UK Litigation. Should Swan proceed to file claims in arbitration against the Individual Defendants, Proton intends to file a motion to compel arbitration and/or stay this action as Swan's claims against Proton are intimately founded in and intertwined with the claims against the Individual Defendants and should be compelled to arbitration under the doctrine of equitable estoppel. If this case proceeds against Proton, Proton anticipates a motion for summary judgment or partial summary judgment.

### i.   **Dispositive Motions**

**Swan's Position:**

Swan will file any such motion for summary judgment, or motion for partial summary judgment, as is appropriate based on the outcome of discovery.

Swan also reserves the right to file any motion(s) to dismiss should the Defendants file any counterclaim(s) in their forthcoming answer(s).

Swan understands the Individual Defendants intend to move to dismiss and to compel arbitration, and that Proton will move to dismiss for lack of personal jurisdiction. Swan will oppose these motions. The Individual Defendants' Consulting Agreements with Swan state clearly that Swan is permitted to seek injunctive relief in this Court. And Defendant Proton is effectively a shell company, created by a California resident (Defendant Holmes) for the purposes of stealing the trade secrets of another California resident (Swan).

**Individual Defendants' Position:**

The Individual Defendants contend that dispositive motions in Federal Court are not contemplated by the parties' agreement to arbitrate all disputes. To the extent that this case proceeds against the Individual Defendants, and reserving all rights, the Individual Defendants anticipate filing a motion for summary judgment or partial summary judgment.

**Specially Appearing Defendant Proton:**

Specially appearing Defendant Proton intends to bring a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) or in the alternative under Fed. R. Civ. P. 12(b)(6) on or before February 24, 2025. To the extent that this case proceeds against Proton, and without waiving its objection to this Court's jurisdiction, Proton anticipates filing a motion for summary judgment or partial summary judgment.

### j.    Status of Discovery

No discovery has yet occurred. The Parties consent going forward to electronic service of discovery under Federal Rule of Civil Procedure 5(b)(2)(E).

**Swan's Position:**

Swan anticipates needing to file a motion to compel Defendants to engage in discovery. The Parties have met and conferred several times regarding the scope of discovery in this case. Swan previewed its initial, targeted discovery requests to Defendants on January 22, 2025. Swan attempted to serve those requests on

February 13, 2025, less than a week after the parties' Rule 26(f) Conference. Defendants have refused Swan's request that Defendants keep those requests confidential, and Swan has thus been unable to serve Defendants with unredacted versions of those requests. Swan will do so once Defendants agree to keep those unredacted copies confidential. Defendants have indicated both before and during the Parties' Rule 26(f) conference that they will not proceed with any discovery until the resolution of their yet to be filed motions to dismiss, motions to compel arbitration, and/or motions to stay pending a ruling in the United Kingdom (which is scheduled for an initial hearing on February 25-26, 2025). But "[t]he Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *NMS 1539, LLC v. City of Santa Monica*, No. 2:20-cv-11318-FLA (JPRx), 2022 WL 3575311, at *1 (C.D. Cal. July 26, 2022) (internal quotation marks omitted); *see also Nat'l Corp. Tax Credit Funds III v. Potashnik,* No. 07-3528 PSG (FMOx), 2008 WL 11339608, at *1 (C.D. Cal. June 16, 2008) ("That defendants have sought a stay is insufficient to avoid their discovery obligations."). And U.S. Courts frequently reject motions to stay U.S. proceedings in favor of foreign litigation, especially where foreign litigation is in early stages. *See Farhang v. Indian Institute of Technology, Kharagpur*, No. 3:08-cv-02658-WHO, 2010 WL 2228936, at *3 (N.D. Cal. June 1, 2010) (denying motion to stay); *I.J.A., Inc. v. Marine Holdings, Ltd. Inc.*, No. 81-2480, 524 F. Supp. 197, 199 (E.D. Pa. 1981) ("Furthermore, the American lawsuit involves defendants not named as parties in Canada. Where foreign litigation is in its incipiency, motions to stay the domestic action are properly denied."). Moreover, as the Individual Defendants acknowledge, their Consulting Agreements with Swan expressly provide that Swan may seek injunctive relief in this Court. The targeted discovery Swan seeks is made in connection with Swan's request for such (preliminary) injunctive relief. Defendants' self-imposed stay also contravenes this Court's January 7, 2025 Order, which encouraged the parties to "begin to conduct

discovery actively before the Scheduling Conference" and "obtain and produce most of what would be produced in the early stages of discovery" prior to the Schedule Conference. Dkt. 95 at 2.

Swan described its targeted initial discovery requests on January 22, 2025. During the Parties' February 7, 2025 Rule 26(f) conference, Defendants demanded that they be given thirty days to formally respond to these discovery requests, despite having said prior to and during that conference that they will not participate in any discovery until resolution of their pleading motions in this case and resolution of the proceedings in the United Kingdom. Swan attempted to serve its formal requests on February 13, but anticipates that Defendants will not respond to those requests other than serving objections (as they have already said they would do), and that Defendants' request for time to respond is an attempt to forestall discovery further when it is clear the Parties are already at an impasse on the threshold issue of whether discovery can proceed at all. Swan thus anticipates the need to file a motion to compel prior to the March 21, 2025 Scheduling Conference. Swan also anticipates filing a motion for a preliminary injunction following completion of the targeted discovery outlined below.

Swan served and filed its identification of trade secrets pursuant to the Court's January 7 Order on February 14. *See* Dkt. 95 at 7 (requiring identification akin to the disclosure required by Cal. Civ. Proc. Code § 2019.210 by no later than March 10).

Swan also anticipates it will need to move for relief in connection with Defendants' potential spoliation of evidence, including Defendants' deleting messages sent through messaging applications such as Telegram.

**Individual Defendants' Position:**

In September and October 2024, Swan sought expedited discovery, twice, which were both denied by the Court. For several months, Swan has not sought any relief or discovery in this matter. Contrary to Swan's incorrect claims (see fn. 1,

supra), the Individual Defendants have not "awarded themselves to a self-imposed stay." Rather, Swan has sat on its hands and has done nothing for months. There is no one to blame for Swan's delays except Swan.

Most recently, Swan asked for the Individual Defendants to agree to treat the discovery *requests* (which Swan claims it attempted to serve on February 13, 2025) as "confidential." The Individual Defendants are agreeable to meet and confer with Swan on an appropriate protective order and have nonetheless agreed, without waiving any rights, not to oppose the filing of the discovery requests under seal for the purposes of this Joint Report.

The Individual Defendants contend that discovery under the Federal Rules of Civil Procedure is not contemplated by or permitted under Swan's Consulting Agreements with the Individual Defendants and is in breach of their Arbitration Agreement. See AC Exs. A-F, § 12(C) ("EXCEPT AS PROVIDED BY THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE, AND FINAL REMEDY FOR ANY DISPUTE BETWEEN CONSULTANT AND THE COMPANY"); see also id. §12 (D) (citing one exception to the broad arbitration provision as a party's right to "PETITION THE COURT FOR INJUNCTIVE RELIEF WHERE EITHER PARTY ALLEGES OR CLAIMS A VIOLATION OF ANY AGREEMENT REGARDING INTELLECTUAL PROPERTY, CONFIDENTIAL INFORMATION OR NONINTERFERENCE.") There is no reference in the Consulting Agreements to discovery outside of arbitration, and relevant case authority limits injunctive relief in similar contexts to temporary relief in aid of arbitration only.). Simply, discovery in Federal Court, let alone expedited discovery, is not contemplated by the Consulting Agreements. Moreover, pursuant to the Consulting Agreements, § 12(B), JAMS provides the appropriate venue to pursue discovery. See, e.g., JAMS Employment Arbitration Rules & Procedures Rule 17, https://www.jamsadr.com/rules-employment-arbitration/english#Rule-17 (last accessed on Feb. 12, 2025).

To the extent any discovery is allowed, it should be limited to discovery in aid of arbitration only.  Because Swan has yet to file an arbitration against the Individual Defendants, Swan cannot meet its burden to demonstrate that discovery in aid of arbitration.  Further, the discovery vaguely referenced by Swan is objectionable on numerous additional grounds, is not relevant to Swan's yet-to-be filed second preliminary injunction motion, and is in fact nothing more than a mere fishing expedition because it has no basis for its frivolous claims.

In addition, the Individual Defendants alternatively intend to file a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), which they believe will resolve the case on the merits, if the case (in whole or in part) is allowed to proceed, and thus discovery should be stayed pending resolution of that motion.

The Individual Defendants further contend that discovery in Federal Court should be stayed in this action pending arbitration and/or resolution of the threshold issue of ownership in the UK.

Should any discovery proceed as against or on behalf of the Individual Defendants, and reserving all rights, the Individual Defendants incorporate by reference Specially Appearing Defendant Proton's position on discovery.

**Specially Appearing Defendant Proton's Position:**

Specially Appearing Defendant Proton contends that discovery at this time is not appropriate because this case should be dismissed due to the lack of personal jurisdiction over Proton, or in the alternative stayed because of the UK litigation and/or Swan's requirement to submit to arbitration its claims against the Individual Defendants and claims against Proton that are intimately founded in and intertwined with its claims against the Individual Defendant.  Swan filed ex parte applications for expedited discovery in this action, which were denied by the Court.

### k.        Discovery Plan

**Swan's Discovery Plan:**

Swan's position is that the Parties will exchange initial disclosures on February 21, 2025, in accordance with Rule 26(a)(1)(C).

Swan has proposed (i) initial, targeted discovery to which Defendants should be able to respond quickly; and (ii) general plenary discovery, as set forth in Exhibit A. The initial, targeted discovery relates to Defendants' use of Swan's trade secrets outside of 2040 Energy, in connection with Swan's forthcoming request for a preliminary injunction. *See* Exhibits B & C (targeted discovery requests). Such discovery consists of four requests for production and five interrogatories to be completed no later than three weeks after the Scheduling Conference. These discovery requests do not require email searching, and the relevant time period for the requests is six months.

Targeted, prompt initial discovery into Defendants' Bitcoin mining activities outside of 2040 Energy is appropriate and reasonable. In opposing Swan's previous request for a temporary restraining order, Defendants were conspicuously silent on whether they were using Swan's trade secrets. Instead, Defendants argued that such use was not harming Swan, claiming that "Proton and the Individual Defendants are working only for 2040 Energy." Dkt. 29-1 at 12; *see also id.* at 9.

But shortly following the Court's denial of Swan's request for a temporary restraining order, ███████████████████████████ ████████████████████ *See* AC ¶¶ 183-86. ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████ *Id.* ¶ 183. █████████████████████ *Id.* ¶ 184. Defendants have not stopped mining Bitcoin—they have simply stopped mining into wallets visible to Swan. Even the limited evidence Swan has uncovered, without discovery, since that time indicates that Defendants continue to

mine Bitcoin, including from mining sites that the Individual Defendants previously operated for Swan. *See id.* ¶¶ 187-93. For example, Defendants have inadvertently sent Telegram messages directing mining operations at sites developed by Swan. On January 17, 2025, a member of the Proton team sent a Telegram message to one of the former Swan sites. *See id.* ¶ 190. The Proton team member appears to have deleted that message shortly after sending it, likely in an attempt to conceal from Swan the Defendants' continued mining operations, and to destroy evidence that is probative of Swan's claims. *See id.*

It defies belief that the Defendants continued those operations—in Defendant Holmes's words, without "skip[ping] a beat," *id.* ¶ 11—without using the hundreds of confidential documents they stole in the hours before their departures. The mining proceeds are simply no longer going to 2040 Energy or to Swan.

Additionally, ███████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████ *See id.* ¶¶ 194-99. The most logical inference is that Defendants are using those ASICs to mine Bitcoin outside of 2040 Energy, notwithstanding their prior representations that the Defendants were working solely for 2040 Energy.

Targeted, prompt initial discovery aimed at Defendants' use of Swan's trade secrets outside of 2040 Energy is thus appropriate for several reasons. *First*, the targeted discovery is highly relevant to Swan's forthcoming request for preliminary injunctive relief. One of Defendants' main defenses to Swan's prior request for a temporary restraining order was that they were mining Bitcoin only for 2040 Energy. *See, e.g.*, Dkt. 29-1 at 9, 12. Defendants did not (and have not) denied using Swan's trade secrets, but have instead claimed that the dispositive question is for whom Proton is mining. *Second*, the requested discovery consists of four requests for production and five interrogatories. *See* Exs. B & C. The requests for production are limited to documents sufficient to show for whom Defendants are

mining Bitcoin and whether they are continuing to operate existing or new Bitcoin mining sites using Swan's trade secrets. Responding to these requests will not require broad searches of email communications. The interrogatories seek related information and are directed collectively to all Defendants. One request for production and one interrogatory seek information concerning Defendants' relationship with "Elektron Energy," a brand that the Individual Defendants and their co-conspirators have used to engage with Swan's former mining sites since resigning from Swan, *see* AC ¶¶ 131-32, 147, 188, 190, n.3, and which Swan presumes refers to Elektron Management LLC—a Proton subsidiary that Defendant Proton revealed existed on February 13, 2025. This targeted discovery will assist the Parties and the Court in focusing the issues prior to any proceedings for a preliminary injunction.

To ensure the orderly progression of this case, Swan intends to pursue plenary discovery simultaneously. Given the number of Swan employees or consultants who resigned to join Proton (13), as well as the need to take discovery from third-party mining operators, vendors, and conspirators of Defendant Proton, Swan proposes that each side be permitted to take 20 depositions. *See, e.g.*, *Mintz v. Mark Bartelstein & Associates, Inc.*, No. 2:12-02554 SVW (SSx), 2012 WL 12886492 (C.D. Cal. 2012) (allowing thirty depositions in case involving allegations of solicitation and trade secret theft).

**Individual Defendants' Discovery Plan:**

As discussed, discovery should be stayed in this action pending arbitration and/or resolution of the threshold issue of ownership in the UK Litigation. Swan's extensive discussion on discovery includes several factual allegations that are incorrect and irrelevant, and which the Individual Defendants deny. The Individual Defendants reserve all rights to object to Swan's discovery, if and when Swan decides to serve any, and to oppose any motion to compel, if necessary.

**Specially Appearing Defendant Proton's Discovery Plan:**

Specially Appearing Defendant Proton contends that discovery at this time is not appropriate because this case should be dismissed due to the lack of personal jurisdiction over Proton, or in the alternative stayed because of Tether's UK litigation and/or Swan's requirement to submit its claims against the Individual Defendants, and claims against Proton that are intimately founded in and intertwined with its claims against the Individual Defendant, to arbitration. Swan respectfully requests that the Court schedule a further scheduling conference and require the parties to submit a revised Joint 26(f) report after the aforementioned motions are resolved.

Swan's position on a Discovery Plan includes several factual allegations that are irrelevant to discovery issues, and which Proton denies.

**l.    Expert Discovery**

**Swan's Position**

Swan provided Defendants with its proposed case schedule, as set forth in Exhibit A, on January 30, 2025. In the lead-up to the Parties' February 7, 2025 Rule 26(f) Conference, Swan requested that the Defendants provide their positions on that case schedule, or any counter-schedule, prior to the Parties' conference. Defendants did not, and Defendant Proton did not provide Swan with its proposed case schedule until the evening of February 13. In response, and pursuant to the Court's instruction that the Parties "make every effort to agree on dates" in the case schedule, *see* Ex. A, Swan proposed a compromise schedule, with deadlines roughly halfway between Swan's proposed deadlines and those in Proton's schedule. Proton refused that compromise schedule, and did not offer a proposal in response.

As outlined in Exhibit A, Swan has proposed the following deadlines for expert discovery pursuant to Rule 26(a)(2):

- Initial Expert Disclosures:  October 3, 2025
- Rebuttal Expert Disclosures:  October 17, 2025

31

- Expert Discovery Cut-Off:  November 7, 20205

**Individual Defendants' Position**

The Individual Defendants do not believe that expert discovery is appropriate in light of their respective arbitration agreements with Plaintiff. Should any discovery proceed as against or on behalf of the Individual Defendants, and reserving all rights, the Individual Defendants incorporate by reference Specially Appearing Defendant Proton's position on discovery.

**Specially Appearing Defendant Proton's Position:**

Specially Appearing Defendant Proton contends that expert discovery is not appropriate because this case should be dismissed due to the lack of personal jurisdiction over Proton, or in the alternative stayed because of Tether's UK litigation and/or Swan's requirement to submit to arbitration its claims against the Individual Defendants and claims against Proton that are intimately founded in and intertwined with its claims against the Individual Defendant.  Accordingly, Proton respectfully requests that the Court schedule a further scheduling conference and require the parties to submit a revised Joint Rule 26(f) Report that addresses expert discovery.

To the extent that the Court sets a trial date and case schedule at this time, and without waiving its objection to the Court's jurisdiction, Proton proposes the following deadlines.  Proton provided its proposal to Swan in meet and confer prior to the filing of this statement, as well as its request for a further scheduling conference after the motions being filed were addressed.  Swan raised concerns about certain deadlines proposed, and in meet and confer Proton made a proposal to address those concerns (contrary to the statement in Swan's position), which Swan rejected.

- Initial Expert Disclosures:  July 23, 2026
- Rebuttal Expert Disclosures:  August 14, 2026
- Expert Discovery Cut-Off:  August 28, 2026

### m.    Settlement/Alternative Dispute Resolution (ADR)

**Swan's Position:**

No settlement discussions have occurred since this action was filed, and Swan prefers private mediation for any future mediation.

**Individual Defendants' Position:**

Reserving all rights, the Individual Defendants are amenable to private mediation at the appropriate time.

**Specially Appearing Defendant Proton's Position:**

Reserving all rights, Proton is amenable to private mediation.  Separate from this action, Swan has sent demand letters to its former employees or consultants, Raphael Zagury, Bill Belitsky, Aleksandar Dozic, and Brett Hiley, asserting claims identical to those in the Amended Complaint.  Pursuant to Swan's ADR Agreements with these individuals, Swan has demanded that they participate in private mediation, which is anticipated to take place on March 31, 2025.

### n.    Pretrial Conference And Trial

**Swan's Position:**

Swan proposes that a jury trial be set to begin on May 4, 2026, and that a Final Pretrial Conference be set for April 10, 2026.

**Individual Defendants' Position:**

The Individual Defendants contend that no pretrial conference or trial should go forward as against the Individual Defendants given Plaintiff's and the Individual Defendants' agreement to arbitrate all disputes.  Plaintiff concedes this point by amending its complaint to seek preliminary injunctive relief only against the Individual Defendants.  Should any trial proceed as against the Individual Defendants, and reserving all rights, the Individual Defendants incorporate by reference Specially Appearing Defendant Proton's position on trial.

**Specially Appearing Defendant Proton:**

Specially Appearing Defendant Proton contends that setting a trial date and pretrial conference at this time is not appropriate because this case should be dismissed due to the lack of personal jurisdiction over Proton, or in the alternative stayed because of Tether's UK litigation and/or Swan's requirement to submit to arbitration its claims against the Individual Defendants and claims against Proton that are intimately founded in and intertwined with its claims against the Individual Defendant. Accordingly, Proton respectfully requests that the Court schedule a further scheduling conference and require the parties to submit a revised Joint Rule 26(f) Report that addresses the trial date and pretrial conference. To the extent that the Court sets a trial date and pretrial conference at this time, and without waiving its objection to the Court's jurisdiction, Proton proposes a trial date of February 1, 2027 and a Final Pretrial Conference of January 8, 2027, in order to provide sufficient time for the aforementioned motions to be resolved and procedural posture of the case is set.

      **o.**      **Trial Estimate**

**Swan's Position**

Given the number of trade secrets and claims at issue, Swan anticipates that trial will be an 8-day jury trial.

Swan anticipates calling between 15-20 witnesses.

**Individual Defendants' Position:**

The Individual Defendants contend that no trial should go forward as against the Individual Defendants given Plaintiff's and the Individual Defendants' agreement to arbitrate all disputes. Plaintiff concedes this point by amending its complaint to seek preliminary injunctive relief only against the Individual Defendants. Should a trial proceed as against the Individual Defendants, and reserving all rights, the Individual Defendants incorporate by reference Specially Appearing Defendant Proton's position on trial.

**Specially Appearing Defendant Proton:**

Specially Appearing Defendant Proton contends that a trial estimate at this time is not appropriate because the pleadings and parties at issue in the case have not been set. Proton contends that this case should be dismissed due to the lack of personal jurisdiction over Proton, or in the alternative stayed because of Tether's UK litigation and/or Swan's requirement to submit to arbitration its claims against the Individual Defendants and claims against Proton that are intimately founded in and intertwined with its claims against the Individual Defendant. Accordingly, Proton respectfully requests that the Court schedule a further scheduling conference and require the parties to submit a revised Joint Rule 26(f) Report that addresses a trial estimate.

To the extent that the Court sets a trial date and case schedule at this time, and without waiving its objection to the Court's jurisdiction, Proton proposes an estimate of 5-10 days for trial.

**p.    Trial Counsel**

**Swan's Position:**

Swan expects that the attorneys trying this case on its behalf will be Ryan Landes, Stacylyn Doore, Rachel Epstein, and other attorneys of Quinn Emanuel Urquhart & Sullivan LLP (lead counsel for Swan).

**Individual Defendants' Position:**

The Individual Defendants contend that no trial should go forward given Plaintiff's and the Individual Defendants' agreement to arbitrate all disputes. Should any trial proceed as against the Individual Defendants, and reserving all rights, trial counsel for the Individual Defendants are Grant Fondo and Matthew Kanny of Goodwin Procter LLP.

**Specially Appearing Defendant Proton:**

Specially Appearing Defendant Proton contends that no trial should go forward because this case should be dismissed due to the lack of personal

jurisdiction over Proton, or in the alternative stayed because of Tether's UK litigation and/or Swan's requirement to submit to arbitration its claims against the Individual Defendants and claims against Proton that are intimately founded in and intertwined with its claims against the Individual Defendant.  Should any trial proceed as against the Individual Defendants, and reserving all rights and without waiving its objection to the Court's jurisdiction, Proton identifies the following trial counsel: Daniel J. Bergeson, Jaideep Venkatesan, and Adam Trigg of Bergeson, LLP.

### q.    **Magistrate Judge**

The Parties do not consent to have a magistrate judge preside over all proceedings.

### r.    **Independent Expert or Master**

At this time, no Party anticipates the need for a master pursuant to Rule 53 or an independent scientific expert.

### s.    **Schedule Worksheet**

The Parties propose dates in **Exhibit "A,"** titled Schedule of Pretrial and Trial Dates Worksheet.[8] [9]

---

[8]   As noted above, Swan provided Defendants with its proposed case schedule, as set forth in Exhibit A, on January 30, 2025.  In the lead-up to the Parties' February 7, 2025 Rule 26(f) Conference, Swan requested that the Defendants provide their positions on that case schedule, or any counter-schedule, prior to the Parties' conference.  Defendants did not, and Defendant Proton did not provide Swan with its proposed case schedule until the evening of February 13.  In response, and pursuant to the Court's instruction that the Parties "make every effort to agree on dates" in the case schedule, Swan proposed a compromise schedule, with deadlines roughly halfway between Swan's proposed deadlines and those in Proton's schedule.  Proton refused that compromise schedule, and did not offer a proposal in response.

[9] Proton respectfully requests that the Court schedule a further scheduling conference and require the parties to submit a revised Joint Rule 26(f) Report with a revised Exhibit A.  Proton provided its alternative proposal to Swan in meet and

**t.    Other Issues**

The Parties expect they will present a stipulation for a Protective Order Regarding Confidential Information to the Court, but do not anticipate any other issues affecting the status or management of this case, and, at this time and with Defendants reserving all rights, do not expect to make proposals concerning severance, bifurcation, or other ordering of proof.

---

confer prior to the filing of this statement, as well as its request for a further scheduling conference after the motions being filed were addressed. Swan raised concerns about certain deadlines proposed, and in meet and confer Proton made a proposal to address those concerns (contrary to the statement in Swan's position), which Swan rejected.

Respectfully submitted,

February 14, 2025

/s/  Ryan S. Landes

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

RYAN S. LANDES (State Bar No. 252642)
ryanlandes@quinnemanuel.com
865 S Figueroa Street, Floor 10
Los Angeles, CA 90017-5003
Telephone:  (213) 443-3145
Facsimile:   (213) 443-3100

STACYLYN M. DOORE (*pro hac vice*)
stacylyndoore@quinnemanuel.com
111 Huntington Avenue, Suite 520
Boston, MA 02199
Telephone:  (617) 712-7100
Facsimile:   (617) 712-7200

RACHEL E. EPSTEIN (*pro hac vice* )
rachelepstein@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Telephone:  (212) 849-7000
Facsimile:   (212) 849-7100

*Attorneys for Plaintiff*
*ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN*

JOINT RULE 26(F) REPORT

*/s/  Grant P. Fondo*
**GOODWIN PROCTER LLP**
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
MATTHEW P. KANNY (SBN 167118)
*MKanny@goodwinlaw.com*
AARON S. THOMPSON (SBN 272391)
*AThompson@goodwinlaw.com*

*Attorneys for Specially Appearing Defendants*
*THOMAS PATRICK FURLONG, ILIOS*
*CORP., MICHAEL ALEXANDER HOLMES,*
*RAFAEL DIAS MONTELEONE,*
*SANTHIRAN NAIDOO, ENRIQUE*
*ROMUALDEZ, and LUCAS VASCONCELOS*

*/s/  Daniel J. Bergeson*
**BERGESON, LLP**
DANIEL J. BERGESON (SBN 105439)
*dbergeson@be-law.com*
ADAM C. TRIGG (SBN 261498)
*atrigg@be-law.com*
JAIDEEP VENKATESAN (SBN 211386)
*jvenkatesan@be-law.com*
REBECCA KAUFMAN (SBN 199534)
*rkaufman@be-law.com*

*Attorneys for Specially Appearing Defendant*
*PROTON MANAGEMENT LTD.*

39

## ATTORNEY ATTESTATION

Pursuant to Local Rule 5-4.3.4, I hereby attest that all other signatories listed and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


*/s/ Ryan S. Landes*
RYAN S. LANDES

1    **<u>CERTIFICATE OF SERVICE</u>**

2        I hereby certify that I electronically filed the foregoing with the Clerk of the

3    Court for the United States District Court for the Central District of California by

4    using the CM/ECF system on **February 14, 2025**. I further certify that all

5    participants in the case are registered CM/ ECF users and that service will be

6    accomplished by the CM/ECF system.

7        I certify under penalty of perjury that the foregoing is true and correct.

8    Executed on **February 14, 2025**.

9

10

11                                */s/ RYAN S. LANDES*

12                                RYAN S. LANDES

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28