1   RYAN S. LANDES (State Bar No. 252642)
    ryanlandes@quinnemanuel.com
2    Quinn Emanuel Urquhart & Sullivan, LLP
    865 S Figueroa Street, Floor 10
3   Los Angeles, CA 90017-5003
    Telephone:  (213) 443-3145
4   Facsimile:   (213) 443-3100

5   STACYLYN M. DOORE (admitted *pro hac vice*)
    stacylyndoore@quinnemanuel.com
6    Quinn Emanuel Urquhart & Sullivan, LLP
    111 Huntington Avenue, Suite 520
7   Boston, MA 02199
    Telephone:  (617) 712-7100
8   Facsimile:   (617) 712-7200

9   RACHEL E. EPSTEIN (admitted *pro hac vice*)
    rachelepstein@quinnemanuel.com
10   Quinn Emanuel Urquhart & Sullivan, LLP
    295 Fifth Avenue
11  New York, NY 10016
    Telephone:  (212) 849-7000
12  Facsimile:   (212) 849-7100

13  *[Additional counsel on signature page*]

14  *Attorneys for Plaintiff*
    *ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN*

15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

                **WESTERN DIVISION**

18

19  ELECTRIC SOLIDUS, INC. d/b/a          Case No. 2:24-cv-8280-MWC-E
    SWAN BITCOIN, a Delaware
20  corporation,                          **SWAN'S OPPOSITION TO
                                          PROTON'S MOTION TO
21              Plaintiff                 COMPEL ARBITRATION**

22          v.                            Hearing Date:    June 6, 2025
                                          Time:            1:30 P.M.
23  PROTON MANAGEMENT LTD., a             Place:           Courtroom 6A, 6th Fl.
    British Virgin Islands corporation;   Judge:           Hon. Michelle
24  THOMAS PATRICK FURLONG;                                Williams Court
    ILIOS CORP., a California corporation;
25  MICHAEL ALEXANDER HOLMES;
    RAFAEL DIAS MONTELEONE;               Complaint Filed:   Sept. 25, 2024
26  SANTHIRAN NAIDOO; ENRIQUE             Am. Compl. Filed:  Jan. 27, 2025
    ROMUALDEZ; and LUCAS                  Trial Date:        May 4, 2026
27  VASCONCELOS,

28              Defendants.

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.   BACKGROUND .......................................................................................2

    A.    Swan Initiates These Proceedings In September 2024 ........................2

    B.    Proton Litigates the Merits and Pursues Discovery in This Court ............................................................................................4

    C.    Proton's Motion to Compel Arbitration ..............................................9

III.  LEGAL STANDARD ...............................................................................9

IV.   ARGUMENT ..........................................................................................10

    A.    Proton Has Waived Any Right to Compel Arbitration .....................10

        1.    Proton Had Knowledge of Its Purported Right to Compel Arbitration in September 2024 (at the Latest). ..........10

    B.    Proton Cannot Invoke the Consulting or Employment Agreements' Arbitration Provisions ...................................................19

    C.    The Court Should Not Stay Any Claims. ...........................................23

V.    CONCLUSION .......................................................................................25

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Alvarez v. Sheraton Operating Corp.*,
    2022 WL 19767260 (C.D. Cal. July 12, 2022) ....................................11, 12, 15

*Banq, Inc. v. Purcell*,
    2024 WL 4164126 (9th Cir. Sept. 12, 2024)................................. 10, 15, 18, 19

*Bitstamp Ltd. v. Ripple Labs Inc.*,
    2015 WL 4692418 (N.D. Cal. Aug. 6, 2015).......................................................22

*Bold Ltd. v. Rocket Resume, Inc.*,
    2023 WL 4157626 (N.D. Cal. June 22, 2023) ..................................................24

*Breathe Techs., Inc. v. New Aera, Inc.*,
    2020 WL 4747896 (N.D. Cal. Aug. 17, 2020) ..................................................23

*Burgoon v. Narconon of N. California*,
    125 F. Supp. 3d 974 (N.D. Cal. 2015)................................................................10

*California Crane Sch., Inc. v. Google LLC*,
    621 F. Supp. 3d 1024 (N.D. Cal. 2022)..............................................................25

*Chan v. Panera, LLC*,
    2024 WL 4137332 (C.D. Cal. Sept. 3, 2024)..............................................15, 17

*Cisco Sys., Inc. v. Chung*,
    462 F. Supp. 3d 1024 (N.D. Cal. 2020)..........................................10, 19, 20, 21

*Cloudera, Inc. v. Databricks, Inc.*,
    2021 WL 3856697 (N.D. Cal. Aug. 30, 2021) ..................................................24

*Congdon v. Uber Techs., Inc.*,
    226 F. Supp. 3d 983 (N.D. Cal. 2016)..........................................................24, 25

*Dardashty v. Hyundai Motor Am.*,
    745 F. Supp. 3d 986 (C.D. Cal. 2024) ...............................................................11

*FBC Mortgage, LLC v. Skarg*,
    699 F.Supp.3d 837 (N.D. Cal. 2023).....................................................12, 13, 18

SWAN'S OPPOSITION TO PROTON'S MOTION TO COMPEL ARBITRATION

*FGI Indus., Inc. v. Tangshan Ayers Bath Equip. Co.*,
    2024 WL 1151675 (C.D. Cal. Feb. 13, 2024) ............................................ 12, 19

*Forbush v. City of Sparks*,
    2023 WL 5670693 (9th Cir. Sept. 1, 2023) ........................................................ 13

*Freaner v. Valle*,
    966 F. Supp. 2d 1068 (S.D. Cal. 2013) .............................................................. 16

*Freeney v. Bank of Am.*,
    2016 WL 5897773 (C.D. Cal. Aug. 4, 2016) .............................................. 14, 18

*Galaxia Elecs. Co. v. Luxmax, U.S.A.*,
    2018 WL 11421517 (C.D. Cal. June 6, 2018) ................................................... 13

*Ghazizadeh v. Coursera, Inc.*,
    737 F. Supp. 3d 911 (N.D. Cal. 2024) ........................................................ 12, 13

*Goldman v. KPMG, LLP*,
    173 Cal. App. 4th 209 (2009) ............................................................................ 22

*Hatefy v. Victory Auto. Grp.*,
    2023 WL 11876678 (N.D. Cal. Jan. 19, 2023) .................................................. 14

*Hill v. Xerox Bus. Servs., LLC*,
    59 F.4th 457 (9th Cir. 2023) .................................................................. 1, 14, 21

*Jefferson v. Beta Operating Co.*,
    2020 WL 4781644 (C.D. Cal. July 27, 2020) ................................................... 11

*Kater v. Churchill Downs Inc.*,
    2018 WL 5734656 (W.D. Wash. Nov. 2, 2018) ............................................... 12

*Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty.*,
    552 F. App'x 663 (9th Cir. 2014) ...................................................................... 17

*Martin v. Yasuda*,
    829 F.3d 1118 (9th Cir. 2016) ...................................................... 12, 13, 15, 17

*Mattson Tech., Inc. v. Applied Materials, Inc.*,
    96 Cal. App. 5th 1149 (2023) ............................................................... 19, 20, 22

*Murphy v. DirectV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ........................................................................... 10

iii

*Oren Enters., Inc. v. Stefanie Cove & Co.*,
   2017 WL 8220230 (C.D. Cal. June 2, 2017)......................................................21

*Plows v. Rockwell Collins, Inc.*,
   812 F. Supp. 2d 1063 (C.D. Cal. 2011).....................................................15, 16

*San Francisco Unified Sch. Dist. v. Keenan & Assocs.*,
   2007 WL 1417419 (Cal. Ct. App. May 15, 2007) ...........................................24

*Slaten v. Experian Info. Sols., Inc.*,
   2023 WL 6890757 (C.D. Cal. Sept. 6, 2023)..............................................10, 15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
   Pracs., & Prods. Liab. Litig.*,
   838 F. Supp. 2d 967 (C.D. Cal. 2012)..............................................................18

*Turing Video Tech., Inc. v. AGI7 Inc.*,
   2025 WL 579190 (N.D. Cal. Feb. 21, 2025)....................................................21

*Uptown Drug Co., Inc. v. CVS Caremark Corp.*,
   962 F. Supp. 2d 1172 (N.D. Cal. 2013)......................................................20, 21

*Waymo LLC v. Uber Techs., Inc.*,
   252 F. Supp. 3d 934 (N.D. Cal.), *aff'd*, 870 F.3d 1342 (Fed. Cir.
   2017) ........................................................................................19, 20, 21

*Whole Body Rsch., LLC v. Dig. MD, LLC*,
   2018 WL 3830902 (C.D. Cal. July 3, 2018) ...................................................20

*Young v. ByteDance Inc.*,
   700 F. Supp. 3d 808 (N.D. Cal. 2023).............................................................23

iv

# I.    <u>PRELIMINARY STATEMENT</u>

Proton has waived any right to compel arbitration.  Among other activities, Proton has opposed Swan's initial motion for a temporary restraining order, moved to dismiss twice (including for failure to state a claim), served 27 document requests and 19 interrogatories, answered discovery, joined other motions seeking relief from the Court, and served a motion to compel a further trade secret disclosure that it could not obtain in arbitration.  Proton never argued in any of its earlier filings that the case should be in arbitration.  Instead, Proton did precisely what courts have held defendants cannot do: actively litigate the case and participate in discovery in ways that suit it, but then move to compel arbitration when it later decides federal court is no longer its best option.  Now that the Court has rejected all of Proton's prior attempts to stonewall producing documents in this case, Proton has decided it wants to restart in arbitration.  That is not allowed.

Before this Motion, Proton twice tried to dismiss Swan's claims, including *on the merits*, neither time raising that the case should be in arbitration.  On April 9, the Court largely denied Proton's second motion to dismiss, as well as the Individual Defendants' motion to compel arbitration.  Even though Proton's instant Motion relies upon the exact same provisions at issue in the Individual Defendants' prior motion, Proton did not argue then that Swan's claims against it were arbitrable.  Nor did Proton join that portion of the Individual Defendants' motion, even though Proton *did* join other motions where the Individual Defendants sought different affirmative relief.  Instead, Proton held this Motion in strategic reserve, waiting to see how the Court ruled on Defendants' motions to dismiss on the merits, or to stay pending foreign litigation.  That kind of "heads I win, tails you lose" gamesmanship is not permitted.  *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 477 (9th Cir. 2023).

Worse, in the weeks after the Court largely denied Defendants' dispositive motions, Proton ramped up its discovery efforts.  Proton served dozens of discovery requests on Swan.  And it served Swan with a motion seeking to narrow Swan's

1

trade secret identification, relief Proton could not get in arbitration. Proton further represented to the Court that it would produce documents and information in response to Swan's discovery, telling Swan it would do so by the week of April 28.

But then Proton pulled a bait-and-switch. Proton is now refusing to produce any documents, confer with Swan on basic matters, or otherwise participate in this case unless Swan agrees that such acts—which Proton has been engaging in for months—do not waive any right Proton might have had to compel arbitration. Swan will not agree to forego arguments supported by the law—so Proton has reneged on its representations to this Court and is back to "stonewalling." Dkt. 164 at 13. Nevertheless, Proton's prior conduct reflects a strategic decision to litigate in this Court, until Proton lost on motions again and again. The Court should deny this Motion for that reason alone.

Proton's request to compel arbitration via equitable estoppel fails on the merits too. Swan is not seeking to enforce the contracts that contain arbitration provisions *against Proton*, nor do Swan's claims rely on those contracts. Proton makes much of the fact that Swan's trade secret claim against it is bolstered by contracts between Swan and its former contractors and employees, because the contract language is clear that the trade secrets those contractors and employees developed for Swan belong to Swan. But Swan can satisfy all of the elements of that claim without those contracts. The fact that Swan's claims are strengthened by the contract language does not implicate the fairness concerns that the doctrine of equitable estoppel is meant to address. The Court should deny Proton's Motion.

## II.   BACKGROUND

### A.   Swan Initiates These Proceedings In September 2024

Swan filed its original Complaint over seven months ago, on September 25, 2024. *See* Dkt. 1. Swan alleges that Defendant Proton Management Ltd. ("Proton"), six former independent contractors of Swan (the Individual Defendants), and other former employees of Swan (referred to in Proton's Motion

as the "Nonparty Former Employees") engaged in what they dubbed a "rain and hell fire" raid of Swan's Bitcoin mining business—including stealing the valuable Swan trade secrets underlying that business. *See* Dkt. 25-1 (original Complaint) ¶¶ 1-2; Dkt. 100-1 ("Amended Complaint" or "AC") ¶ 8. Defendants' theft was both brazen and extensive, and involved stealing over 1,300 documents, including confidential Swan information and source code files that, taken together, provide a blueprint to the success of Swan's Bitcoin mining business. *See* Dkt. 164 (order on Defendants' prior dispositive motions, or "April 9 Order") at 2-7.

The trade secrets at issue consist of proprietary Bitcoin mining operations, techniques, data, and source code that the Individual Defendants and the Nonparty Former Employees developed at Swan. *See, e.g.*, AC ¶¶ 76, 80. Swan alleges (and will prove) that it possessed these trade secrets at the time of Defendants' theft. *See id.* ¶ 209. Indeed, the Individual Defendants and Nonparty Former Employees (along with other third-party conspirators) acknowledged prior to their theft that the trade secrets were Swan's. *See id.* ¶¶ 77, 81-83 (non-exhaustive examples). Swan protected these trade secrets through a variety of measures, such as protective policies and extensive technical security. *Id.* ¶¶ 101-107. Further, in the arrangement between Swan and the cryptocurrency company Tether to pursue a joint venture that used Swan's mining practices—under which Tether agreed Swan "would run the entirety of the business from end to end," with Tether "rely[ing] solely upon the collective efforts and expertise of Swan" (Ex. A (Dec. 5, 2023 email from Tether))—Swan ensured that its IP was protected. *See* AC ¶ 108.

Swan's original Complaint acknowledged that the Individual Defendants entered into consulting agreements with Swan in connection with their work for Swan's Bitcoin mining business ("Consulting Agreements"), which permit Swan to seek injunctive relief in federal court. *See* Dkt. 25-1 n.1; *see also* AC Exs. A-F (agreements). That Complaint also alleged that Proton had tortiously interfered with employment contracts that the Nonparty Former Employees—including

SWAN'S OPPOSITION TO PROTON'S MOTION TO COMPEL ARBITRATION

Proton's current CEO—entered into with Swan ("Employment Agreements").  *See* Dkt. 25-1 ¶¶ 148-60.  When it filed its original Complaint, Swan also moved for a temporary restraining order ("TRO") and for expedited discovery, *see* Dkts. 8, 9, appending copies of the Consulting Agreements to those papers,  *see* Dkt. 25-5.

### B.    Proton Litigates the Merits and Pursues Discovery in This Court

In the over seven months that passed between Swan filing this case and Proton filing this Motion, Proton twice sought to dismiss this case, including under Rule 12(b)(6), sought party and third-party discovery in this action (including through procedural mechanisms not available in arbitration), and sought other affirmative relief.  With one limited exception, Proton never indicated before seeking to confer on this Motion that it believed these claims were arbitrable.  Proton's course of conduct included:

*First*, on October 3, Proton opposed Swan's request for a TRO and expedited discovery, including arguing that Swan's requests should be denied on the merits.  *See* Dkt. 36.  Proton did not argue that the claims against it belonged in arbitration.

*Second*, on October 14, Proton again opposed expedited discovery by arguing the merits.  *See* Dkt. 46.  Proton again did not argue that the claims against it belonged in arbitration.

*Third*, on December 23, Proton moved to dismiss Swan's original Complaint for lack of personal jurisdiction.  Proton nowhere suggested it believed the claims against it were arbitrable.  *See generally* Dkt. 79-1.

*Fourth*, that same day, the Individual Defendants moved to compel the claims against them to arbitration, relying upon the same arbitration provisions which Proton now invokes.  *See* Dkt. 80.  Proton did not join that motion or indicate it would rely upon those provisions.

*Fifth*, on February 7, 2025, after Swan filed its Amended Complaint (which includes further details of Defendants' wrongdoing, but asserts the same claims as the initial Complaint), the parties conferred pursuant to Rule 26(f).  At no point did

4

Proton suggest that the claims against it belonged in arbitration.

**Sixth**, between February 7 and 14, the parties exchanged multiple emails regarding a Joint Rule 26(f) Report, during which Proton proposed a case schedule with a jury trial in February 2027. *See, e.g.*, Ex. B at 3.

**Seventh**, on February 14, the parties filed their Joint Rule 26(f) Report. *See* Dkt. 114-1. In that report, Proton mentioned for the first time that "should the Court grant the Individual Defendants' motions to compel arbitration and find that the Court has personal jurisdiction over Proton, Proton will move the Court to compel arbitration of Swan's claims against Proton … under the doctrine of equitable estoppel." *Id.* at 12; *see also id.* at 22 (similar). Proton never said that it would move to compel arbitration if the Court *denied* the Individual Defendants' motion (which the Court largely did). *See* April 9 Order at 13-14.

**Eighth**, on February 21, Defendants failed to serve initial disclosures under Rule 26(a), instead serving one-page "objections." *See* Dkt. 129-5 (Proton's objections). While Proton asserted (incorrectly) that the Court did not have jurisdiction over it, Proton did not say that it believed the claims against it should be sent to arbitration. *See id.* Swan was forced to move to compel initial disclosures (Dkt. 129), a motion that Defendants opposed on the grounds that the Court lacked jurisdiction over Proton and that Swan's claims against the Individual Defendants belonged in arbitration. *See generally* Dkt. 129-1 (joint stipulation). Proton again did not argue that the claims against it were arbitrable.

**Ninth**, on February 24, Proton moved to dismiss the Amended Complaint, arguing that the Court lacked personal jurisdiction over it, and that Swan had failed to state any claims under Rule 12(b)(6). *See* Dkt. 121-1 at 19-25. Nowhere in that brief, nor in Proton's reply brief (Dkt. 149), did Proton argue that the claims against it belonged in arbitration.

**Tenth**, at the same time, the Individual Defendants moved to compel arbitration, again based on the Consulting Agreements that Proton seeks to invoke

5

now.  *See* Dkt. 122.  Proton did not join in that request or otherwise state its intent to rely upon those agreements—but Proton ***did*** incorporate and rely upon arguments raised by the Individual Defendants under Rule 12(b)(6).  *See* Dkt. 121-1 at 20.

***Eleventh***, also on February 24, the Individual Defendants moved to stay the case pending resolution of a suit in the United Kingdom.  *See* Dkt. 124.  Proton did join that motion (Dkt. 126), but did not argue that the case should be stayed because the claims against it should be arbitrated.

***Twelfth***, in February and March, Proton engaged in negotiations with Swan over a protective order governing confidential information.  *See, e.g.*, Dkt. 167-5 (Venkatesan Mar. 4, 2025 Email).  Proton sought a protective order that (i) would have allowed it to share Swan documents broadly, including with adverse third parties in the UK proceedings, and (ii) limited the obligation to log certain communications withheld for privilege.  *See generally* Dkt. 167-1 (joint stipulation).  The parties sought relief from the Court, which rejected the provisions Proton requested regarding sharing Swan's documents, but ordered Proton's preferred language regarding limitations to privilege logs.  *See* Dkt. 171.

***Thirteenth***, on March 11, the Individual Defendants applied *ex parte* to prevent Swan from receiving documents from third-party subpoena recipients.  *See* Dkt. 140.  Proton effectively joined that application (*see id.* at 7 n.5), which argued that the Court lacked jurisdiction over Proton.  *See id.* at 12-13.  Defendants did not argue that the claims against Proton belonged in arbitration.  The Court denied Defendants' application.  *See* Dkt. 142.  Defendants subsequently demanded that Swan produce to them documents produced pursuant to the subpoenas.  Ex. C at 2.

***Fourteenth***, on March 17, Proton served objections to Swan's first, targeted discovery requests. Proton generally refused to produce documents or information—but not on the basis of any right to arbitration.  *See* Exs. D & E.

***Fifteenth***, on March 26, the Individual Defendants sent a letter outlining purported concerns with Swan's Identification of Asserted Trade Secrets (Dkt.

111-1).  The parties, including Proton, conferred regarding that letter on April 3.

**Sixteenth**, on March 28, Proton served responses and objections to Swan's second sets of document requests and interrogatories.  *See* Exs. F & G.  Proton did not object to any document request or interrogatory on the basis of any purported right to arbitration, but continued to refuse to produce documents or information on the basis of its pending motion to dismiss.  Shortly thereafter, on April 9, the Court denied in substantial part Proton's second motion to dismiss, the Individual Defendants' motion to compel arbitration and to dismiss, and Defendants' motion to stay.  *See* Dkt. 164.  The Court dismissed Swan's conspiracy claim, but otherwise rejected all of the Rule 12(b)(6) arguments that Proton had made in its own motion or expressly incorporated from the Individual Defendants' motion.

**Seventeenth**, on April 11, Swan served Defendants with a motion to compel responses to Swan's targeted discovery.  *See* Dkt. 176-1.  In response, Defendants abruptly reversed course on their previous refusal to provide discovery, and claimed to "have agreed to produce responsive documents" (though they have yet to produce a single document).  *See* Dkt. 176-1 at 5, 54; Dkt. 177-17.  Because Defendants still objected to Swan's Trade Secret Identification and maintained other objections (*unrelated to* any arguments about the arbitrability of Proton's claims), Swan's motion to compel remained live.  *See* Dkt. 177-17 at 4.

**Eighteenth**, on April 15, Proton sent Swan another letter demanding Swan amend and narrow its Trade Secret Identification, raising arguments beyond the ones from the Individual Defendants' prior letter.  *See* Dkt. 176-8.

**Nineteenth**, on April 16, Proton served objections to Swan's third set of document requests.  *See* Ex. H.  Proton did not object on the basis of any purported right to arbitration.

**Twentieth**, on April 18, Defendants served Swan with a motion to compel Swan to amend its Trade Secret Identification.  This motion was an almost word-for-word copy of Defendants' opposition to Swan's motion to compel targeted

7

discovery, which they served that same day. *See* Ex. I (service email);  Dkt. 193-3 (redline comparison). Defendants urged in opposition to Swan's motion that it was important that ***they*** be the moving parties seeking relief from the Court, not Swan. *See* Dkt. 176-1 at 7 n.6.  Neither Defendants' motion nor their opposition to Swan's motion argued that the claims against Proton were arbitrable. *See id.* at 47-85.

*Twenty-first*, that same day, Swan and Proton conferred regarding Proton's responses to Swan's second sets of discovery requests. Proton confirmed beforehand that, while it objected to certain requests on the basis of Swan's Trade Secret Identification, Proton would produce documents in response to 19 other requests. *See* Ex. J at 1.  Proton did not raise any purported right to arbitration.

*Twenty-second*, also on April 18, Proton served Swan with supplemental responses to Swan's targeted discovery. *See* Dkts. 176-4, -5. Proton gave substantive answers to some but not all of Swan's interrogatories, and said again that it would produce documents and information, saying nothing about arbitration.

*Twenty-third*, on April 22, Defendants requested an extension of time to file their Answers to the Amended Complaint, indicating that Proton intended to file an Answer, notwithstanding this (as of then, unfiled) Motion. *See* Ex. K.  The parties negotiated and filed a stipulation that extended that deadline. *See* Dkt. 174.

*Twenty-fourth*, on April 24, Defendants emailed Swan demanding immediate production of documents related to Swan's claims. *See* Ex. L; *see also id.* at 2 (counsel for Proton reiterating demands several days later).

*Twenty-fifth*, later that day, Proton served Swan with 27 requests for production and 19 interrogatories. *See* Dkt. 194-9.

*Twenty-sixth*, on April 25, Proton served supplemental responses to Swan's second sets of requests for production and interrogatories. *See* Dkt. 195-3, -5.  In those responses, Proton agreed to produce documents in response to 6 requests to which it had initially objected, in addition to the 19 to which it had already agreed. Again, these supplements did not mention any purported right to arbitration.

***Twenty-seventh***, on April 30, Proton Answered the Amended Complaint. *See* Dkt. 187.  While Proton included reference to this (still unfiled) Motion, Proton otherwise answered Swan's allegations and asserted 29 affirmative defenses. Proton filed the instant Motion later that week.

Meanwhile, last December, Swan engaged four of the Nonparty Former Employees in mediation, pursuant to their Employment Agreements.  Until recently, each of those four Nonparty Former Employees was represented by Proton's counsel in this action (and three of the four still are).  Due to the Nonparty Former Employees' (and Proton's counsel's) delays, the parties did not engage in (an unsuccessful) mediation until April 2.  At no point did Proton's counsel suggest that Swan was required to pursue mediation or arbitration against Proton under the Employment Agreements.  Proton's instant Motion was the first time it ever asserted that it could seek arbitration on the basis of the Employment Agreements.

### C.    Proton's Motion to Compel Arbitration.

The parties conferred regarding Proton's planned motion to compel arbitration on April 18.  During that conferral, Proton offered no explanation or authority for how the litigation conduct discussed above would not constitute waiver.  Proton filed this Motion on May 2, and is now refusing to provide the documents and responses it had agreed to provide—and told the Court it would provide weeks ago—unless Swan would agree not to argue that Proton's discovery conduct supported waiver of its arbitration rights.  *See* Exs. M, N, O.  Proton is similarly stonewalling on other basic conferrals about discovery or administrative topics such as document preservation. *See* Ex. P.  However, Proton has not withdrawn the dozens of discovery requests that it served upon Swan, *See* Mot.  20, and Swan has produced documents in response to that discovery.

## III.    LEGAL STANDARD

A party may waive its right to arbitration.  Waiver requires: "(1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with

9

that existing right." *Banq, Inc. v. Purcell*, 2024 WL 4164126, at *1 (9th Cir. Sept. 12, 2024).[1]  "There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate…. [T]he Court considers the totality of the parties' actions." *Id.*  "Although the party opposing arbitration still bears the burden of showing waiver, the burden is no longer heavy." *Slaten v. Experian Info. Sols., Inc.*, 2023 WL 6890757, at *4 (C.D. Cal. Sept. 6, 2023).

"Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel []in this context is narrowly confined." *Murphy v. DirectTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).  The "inequities that the doctrine of equitable estoppel is designed to address" are those present when a signatory "seek[s] to simultaneously invoke the duties and obligations of [a non-signatory] under [an agreement]…while seeking to avoid arbitration." *Id.* at 1131.  Where "the statutory and tort claims asserted" "do not depend on the obligations (or even the existence) of the contract," "there is no inequity to remedy." *Burgoon v. Narconon of N. California*, 125 F. Supp. 3d 974, 993 (N.D. Cal. 2015).  "As a general matter, a plaintiff need not identify an agreement to state a trade secrets misappropriation claim." *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (denying motion to compel).

## IV.  ARGUMENT

### A.  Proton Has Waived Any Right to Compel Arbitration

#### 1.  Proton Had Knowledge of Its Purported Right to Compel Arbitration in September 2024 (at the Latest).

Proton has been aware of the arbitration agreements that it seeks to invoke here since September 2024 at the latest, when Swan cited those agreements in its original Complaint and filed them in support of its request for a TRO.  *See* Dkt. 25-1

---

[1] Unless otherwise noted, all emphasis is added and internal quotations and citations are omitted from case citations.

n.1, Dkt. 25-5.  Proton was thus aware of its purported rights to compel arbitration under the Consulting Agreements by no later than September 25, 2024.  *See, e.g.*, *Dardashty v. Hyundai Motor Am.*, 745 F. Supp. 3d 986, 998 (C.D. Cal. 2024) (agreement attached to complaint provided notice).

Proton was similarly aware of the Employment Agreements, which the original Complaint also expressly references.  *See* Dkt. 25-1 ¶¶ 148-60.  Moreover, each of the Nonparty Former Employees that is mentioned in the original Complaint works for Proton; one of them—Raphael Zagury—is Proton's CEO.  *See, e.g.*, *id.* ¶¶ 98-100, 116.  Proton employees' knowledge of their agreements, and the arbitration provisions within them, is imputed to Proton.  *See, e.g.*, *Alvarez v. Sheraton Operating Corp.*, 2022 WL 19767260, at *2 (C.D. Cal. July 12, 2022) (for purposes of waiver, "an agent's knowledge is imputed to her corporate principal").  In any event, on December 13, 2024, Swan sent letters to four former employees—care of Proton's counsel—seeking to mediate pursuant to dispute resolution provisions in those same agreements.  *See* Mot. Exs. 1-4.  Proton Acted Inconsistently with Any Rights to Arbitration.

Proton's conduct in this Court is inconsistent with any right to arbitrate and constitutes waiver.  "[T]here is no bright line test to determine waiver. Instead, the Ninth Circuit affords this Court discretion in determining when a particular party has acted inconsistently with its right to arbitrate." *Jefferson v. Beta Operating Co.*, 2020 WL 4781644, at *4 (C.D. Cal. July 27, 2020).  Courts look to whether the moving party has (i) litigated the merits of the claims against it in federal court; (ii) engaged in discovery or other litigation conduct; and (iii) otherwise remained silent and delayed in moving for arbitration.  Each of those factors is here in spades.

***First***, Proton litigated the merits by twice moving to dismiss Swan's claims, including by asking the Court to dismiss each of Swan's claims in its entirety under Rule 12(b)(6), and ***obtaining*** that relief as to one of Swan's claims.  *See* Dkt. 121-1 at 19-25.  Proton's decision to seek a ruling on the merits in federal court weighs

strongly in favor of waiver. *See, e.g.*, *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) ("seeking a decision on the merits of an issue may satisfy this element"); *Alvarez*, 2022 WL 19767260, at *3 (where defendants "moved to dismiss []complaint based on, *inter alia*, failure to state a claim…they are seeking a ruling on the merits"); *Kater v. Churchill Downs Inc.*, 2018 WL 5734656, at *4 (W.D. Wash. Nov. 2, 2018) ("Churchill Downs made extensive use of the federal judicial system to determine its liability … [its] 28-page motion requested that the court dismiss Kater's claims with prejudice, and self-admittedly addressed the key issue in this case."); *FGI Indus., Inc. v. Tangshan Ayers Bath Equip. Co.*, 2024 WL 1151675, at *7 (C.D. Cal. Feb. 13, 2024) (finding waiver where party filed multiple motions to dismiss, including based on lack of jurisdiction and under Rule 12(b)(6)); *FBC Mortgage, LLC v. Skarg*, 699 F.Supp.3d 837, 842 (N.D. Cal. 2023) ("The motion to dismiss is significant.").

Proton tries to excuse its attempt to litigate the merits of Swan's claims by emphasizing that Proton also challenged personal jurisdiction. *See* Mot. 20. Proton's claim that it was "required to assert its FRCP 12(b)(6) defenses" in its second motion to dismiss is wrong, and belied by the fact that it did not include any such arguments in its first motion to dismiss. *See* Dkt. 79-1; *see also* Fed. R. Civ. P. 12(h)(1) (a party "waives any defense listed in Rule 12(b)*(2)-(5)* by… omitting it from a motion in the circumstances described in Rule 12(g)(2)"). Regardless, Proton is wrong that a party who moves to dismiss on personal jurisdiction grounds is excused from waiver. The cases that Proton cites do not hold otherwise and are distinguishable. In *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024), the court declined to find waiver where, unlike here, the plaintiff moved to dismiss only once, "[n]o discovery ha[d] been exchanged, and the Court ha[d] not ruled on the pending motion to dismiss." *Id.* at 921. And in *Galaxia Elecs. Co. v. Luxmax, U.S.A.*, 2018 WL 11421517 (C.D. Cal. June 6, 2018), the district court relied on a bright-line rule—that "the filing of a motion to dismiss standing alone"

is not sufficient to find waiver—which is both irrelevant on these facts and contrary to Ninth Circuit law.  *See Martin*, 829 F.3d at 1126 ("[A]lthough filing a motion to dismiss ***that does not address the merits of the case*** is not sufficient[,] seeking a decision on the merits of an issue may satisfy this element.").

Proton's decision not to move to compel arbitration until now was a tactical one; Proton certainly could have brought this motion with all of Defendants' other pleadings motions and saved the parties and the Court considerable time and resources.  *See, e.g.*, *FBC*, 699 F. Supp. 3d at 842 ("Nothing prevented the Individual Defendants from filing a motion to compel arbitration immediately."); *cf. Forbush v. City of Sparks*, 2023 WL 5670693, at *1 (9th Cir. Sept. 1, 2023) (no waiver where defendant "fil[ed] a combined motion to dismiss and motion to compel arbitration" and "never addressed the legal merits of [plaintiff's] claims"). But Proton instead chose to further  Defendants' now-obvious strategy of endless delay, so  Proton waited to see how the Court ruled on Defendants' various other motions, and then sequenced this motion to come later so that Proton could introduce a whole new round of briefing and a whole new excuse to stonewall.

Proton effectively admitted its plan in the parties' Rule 26(f) Joint Report: "[S]hould the Court grant the Individual Defendants' motions to compel arbitration and find that the Court has personal jurisdiction over Proton, Proton will move the Court to compel arbitration of Swan's claims against Proton."  Dkt. 114-1 at 12. And no matter that the Court ***denied*** the Individual Defendants' motions to compel arbitration; Proton is deploying its strategy all the same.  As the Ninth Circuit has explained, the waiver doctrine forecloses this sort of gamesmanship.  "[N]ow that [Proton's] strategic choice to litigate in federal court has failed to pan out, [the Court should] not endorse its attempt to play a game of 'heads I win, tails you lose' by belatedly seeking refuge in arbitration for the resolution of those same claims." *Hill*, 59 F.4th at 477; *see Freeney v. Bank of Am.*, 2016 WL 5897773, at *8 (C.D. Cal. Aug. 4, 2016) (waiver where defendants "waited to file their Motion to Compel

13

Arbitration until after they litigated Plaintiffs' claims on the merits and received an unfavorable ruling preserving many of Plaintiffs' claims"). Proton "cannot wait to exercise [its] right to compel arbitration until the parties have expended a significant amount of time and money to litigate that dispute in federal court." *Freeney*, 2016 WL 5897773, at \*8; *see also Hatefy v. Victory Auto. Grp.*, 2023 WL 11876678, at \*4 (N.D. Cal. Jan. 19, 2023) ("[T]he loss of time and legal fees due to Defendants' dilatory actions further weighs in favor of waiver."). Proton's strategy of staging multiple motions—while improperly using those pending motions as cover to avoid producing documents—appears to be aimed at increasing the time and money Swan must spend to litigate this dispute.[2] Proton's conduct constitutes waiver.

**Second**, Proton's discovery and other litigation conduct is also inconsistent with a request for arbitration. Among other things, Proton has (i) sought discovery from Swan, including serving dozens of requests (Dkt. 194-9), and making informal demands for document productions from Swan and from third parties (Ex. L); (ii) served nine sets of discovery responses, none of which mentioned any right to arbitration (Exs. D-H; Dkts. 176-4, -5; Dkts. 195-3, -5); (iii) told the Court it would be providing more discovery (Dkt. 176-1 at 54); (iv) submitted a Joint Rule 26(f) Report with a schedule (Dkt. 114-1); (v) filed an Answer (Dkt. 187); (vi) negotiated a Protective Order; (vii) engaged in unsuccessful motion practice aimed at permitting broad sharing of Swan's confidential information with third parties, and successful motion practice to limit logging of privileged communications (Dkts. 167-1, 171); (viii) joined in multiple motions to stay the case and limit third-party

---

[2] Any argument that Swan is responsible for delays—e.g., because it has not instituted arbitrations against the Individual Defendants or moved for a preliminary injunction in this Court—is baseless. As the Court has recognized, Swan has been "pursuing targeted discovery to aid the Court to analyze a forthcoming renewed TRO, but Proton and the Individual Defendants have stonewalled that discovery." Dkt. 164 at 13. Since then, Defendants' stonewalling has only intensified, and they have yet to produce a single document. *See, e.g.*, Dkt. 177; Dkt. 205.

14

discovery—all for reasons *other* than purported arbitrability of the claims against Proton (Dkt. 126; Dkt. 140 n.5); and (ix) sought to narrow Swan's trade secret claims pursuant to procedural rules that do not exist in arbitration (Dkt. 176-8; Ex. I; Dkt. 193-3).

Courts have repeatedly held that such conduct constitutes waiver. *See, e.g.*, *Slaten*, 2023 WL 6890757, at *5 (defendant, *inter alia*, "joined a motion for a protective order…, responded to written discovery, produced documents, participated in discovery conferences, and submitted a Joint Rule 26(f) Report"); *Chan v. Panera, LLC*, 2024 WL 4137332, at *3 (C.D. Cal. Sept. 3, 2024) (defendant engaged in "multiple meet-and-confer efforts, three informal discovery conferences, responses to formal discovery requests, and then supplemental responses," and stipulated to a protective order, all without mentioning arbitration); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1067 (C.D. Cal. 2011) ("participating in meetings and scheduling conferences to establish case management dates, and[] negotiating and entering into a protective order" are inconsistent with a demand for arbitration); *Martin*, 829 F.3d at 1126 (defendants waived right to arbitrate by, *inter alia*, "devoting 'considerable time and effort'" to negotiating a joint scheduling stipulation and protective order, and answering discovery); *Alvarez*, 2022 WL 19767260, at *3 (defendant "continued to litigate the merits of this case" after order on motion to dismiss, including by "fil[ing] its answer, and then engag[ing] in discovery," such as by serving interrogatories and RFPs); *Banq*, 2024 WL 4164126, at *2 (defendants "participated in discovery proceedings before the district court by submitting an amended joint Rule 26(f) report, a discovery plan and scheduling order, a stipulated protective order, and a stipulation regarding documents and electronically stored information").[3]

---

[3] While Proton styled its discovery requests as "targeted" ones, nominally limited to Swan's request for a preliminary injunction, they are not. *See, e.g.*, Dkt. 194-9 at 31-32 (Interrogs. 13-15, contention interrogatories regarding elements of Swan's

On top of all of this, Proton sought to compel *from Swan* a more detailed trade secret identification. *See* Dkt. 176-8; Ex. I; Dkt. 193-3. Proton's attempt to "litigate[] certain discovery disputes before the Magistrate Judge" is yet more evidence that it "participated actively in the discovery process." *Freaner v. Valle*, 966 F. Supp. 2d 1068, 1086 (S.D. Cal. 2013). Proton's purported basis for that motion (which it withdrew just hours before Swan's opposition was due) was the Court's January 7 Order (Dkt. 95), which imposes disclosure requirements on trade secret plaintiffs, drawn from California procedural law, that are absent from the JAMS Employment Arbitration Rules & Procedures that would apply in any arbitration. This further weighs in favor of waiver. *See, e.g.*, *Plows*, 812 F. Supp. 2d at 1067 (waiver where defendant "pursued discovery that would have been impermissible in arbitration").

In its more recent refusals to engage in discovery, Proton has suggested that it engaged in earlier litigation conduct on the assumption that Swan would not later argue waiver, and that Proton ceased engaging in discovery once it became clear that was not the case. But that argument is belied by the fact that Proton continued to engage in discovery—including serving discovery requests, and responding to discovery without asserting any objection on the basis of arbitrability—*after* the parties' April 18 conferral on this Motion, during which Swan notified Proton that it intended to argue waiver. *See* Dkt. 194-9 (Proton's discovery requests, served April 24); Dkts. 195-3, -5 (Proton's discovery responses). Proton was thus not relying on some tacit concession that Swan would not argue waiver—Swan made very clear that it would. Rather, Proton strategically held its motion to compel arbitration in reserve while it dragged out this case with other unsuccessful challenges, and is now pivoting to a new excuse to avoid producing discovery and

---

trade secret claims); *id.* at 13 (RFP 7, seeking "all Documents relating to Swan's allegations of misappropriation"; RFP 9, seeking "all Documents supporting any allegation that the alleged Trade Secrets are not generally known").

16

"to evade future [discovery] rulings of a federal judge which it fears will be unfavorable." *Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty.*, 552 F. App'x 663, 664 (9th Cir. 2014) (finding waiver). The notion that Swan should be expected or obligated to forgo arguments of waiver is nonsense. Proton has no one to blame but itself that its strategic decisions over the last seven months foreclose this latest gambit.

Proton also tries to defend its gamesmanship by mischaracterizing a statement in the parties' Rule 26(f) Report, where it suggested it would move to compel arbitration at an indefinite later date. *See* Mot. 19 (noting that "just over two weeks after Swan filed its FAC" Proton "informed the Court in the Parties' February 14, 2025 Rule 26(f) report that it intended to move to compel arbitration if the Court found that it was subject to the Court's jurisdiction"). Proton actually stated it would move to compel arbitration if the Court found personal jurisdiction *and* granted the Individual Defendants' motion to compel arbitration. *See* Dkt. 114-1 at 12. That is not what happened; so now Proton attempts to rewrite history.[4] More importantly, a mere "statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Martin*, 829 F.3d at 1125; *Chan*, 2024 WL 4137332, at *4 (finding waiver due to discovery conduct even where defendant "raised the possibility of compelled arbitration in the Joint Rule 26(f) Report"). Similarly here, after Proton made this statement in the Rule 26(f) Report, it proceeded to move to dismiss Swan's claims on the merits and spent months engaging in discovery. Proton's affirmative defense in its Answer (Mot. 19) is similarly insufficient. *See, e.g.*, *FBC*, 699 F. Supp. 3d at 843 (affirmative defense insufficient to defeat waiver).

---

[4] Another mischaracterization by Proton: the relevant "delay" here is not the "two weeks" (Mot. 19) between when Swan filed its Amended Complaint and the Rule 26(f) Report. It is the time between when Proton had knowledge of its purported rights to arbitration (September 2024) and when it filed this Motion (May 2025).

17

Proton also suggests that its seven-plus month delay in moving to compel arbitration is not long enough to establish waiver. Mot. 19-20. But there is no hard rule about timing, and courts have found waiver under similar circumstances and after similar (and shorter) delays. *See, e.g.*, *Banq*, 2024 WL 4164126, at *2 ("[F]ive months constitutes a prolonged delay under the totality of the circumstances in this case because Defendants actively litigated the merits of the case and engaged in discovery proceedings during that period."); *FBC*, 699 F. Supp. 3d at 842 (waiver where defendants "waited over eight months, and a month and a half after receiving an adverse ruling on their motion to dismiss, before they moved to compel arbitration"); *cf. Freeney*, 2016 WL 5897773, at *5, 7 (waiver after ten-month delay, "emphasiz[ing] that Defendants did not seek to compel arbitration as an alternative to dismissal of the SAC" but instead "made a strategic decision to delay moving to compel arbitration until they could ascertain how the case was going in federal district court"). Proton's delay here is more than sufficient to establish waiver.

Because Proton has waived any rights to compel arbitration that it may have had, the Court need not reach whether the claims against it are arbitrable.[5] *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 838 F. Supp. 2d 967, 980 (C.D. Cal. 2012) (not reaching issue of equitable estoppel as to defendants the court found had waived right to compel arbitration); *FGI*, 2024 WL 1151675, at *6-7 (same).

---

[5] Swan anticipates that should Proton lose this Motion, it will, like the Individual Defendants, file a notice of appeal and seek to stay the litigation as yet another stall tactic. Such a stay is inappropriate where, as here, the Motion can be decided without determining whether the claims are arbitrable, and particularly where, as here, the plaintiff intends to seek preliminary injunctive relief. *See* Dkt. 182.

**B.**     **Proton Cannot Invoke the Consulting or Employment Agreements' Arbitration Provisions**

Even if the Court reaches the merits, Proton fails there too.  There are two grounds for equitable estoppel: (1) where a party "must rely" on the underlying contracts, or (2) where the claims allege "interdependent and concerted misconduct" founded in the obligations of the underlying contracts.  *Chung*, 462 F. Supp. 3d at 1040.  Neither applies here.  Swan is not seeking to impose or enforce the obligations of the Consulting or Employment Agreements against Proton—thus the fairness concerns underpinning the doctrine do not apply.

***Swan's Trade Secret Claim.***  Proton cannot invoke equitable estoppel to compel Swan's trade secret claims to arbitration.  Far from a "textbook example[]" of a claim that "must be arbitrated" (Mot. 2), Courts have repeatedly rejected application of equitable estoppel to compel arbitration in cases involving trade secrets theft.  *See, e.g.*, *Mattson Tech., Inc. v. Applied Materials, Inc.*, 96 Cal. App. 5th 1149, 1157-58 (2023); *Chung*, 462 F. Supp. 3d at 1042; *Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934, 938 (N.D. Cal.), *aff'd*, 870 F.3d 1342 (Fed. Cir. 2017).  That makes sense, because trade secrets claims do not require any contractual agreement, and thus trade secrets plaintiffs need not ***rely*** on any agreement to prove their claims.  *Mattson*, 96 Cal. App. 5th at 1157 ("That statutory claim exists without regard to [defendant's] contractual obligations to [plaintiff]"); *Chung*, 462 F. Supp. 3d at 1042 ("[a]s a general matter, a plaintiff need not identify an agreement to state a trade secrets misappropriation claim").

The same is true here.  The provisions in the Consulting and Employment Agreements that govern IP rights are not necessary to Swan's trade secret claim—and thus are not a basis to compel arbitration of that claim.  For example, Swan can prove that it owns these trade secrets by pointing to, among other things, the fact those trade secrets were created by Swan's employees and consultants while they worked at Swan (AC ¶¶ 76, 80); Swan possessed the trade secrets prior to and at the

19

time of Defendants' theft (*id.* ¶ 209); and statements by the Individual Defendants, Nonparty Former Employees, and representatives of Tether—including Tether's Giancarlo Devasini—acknowledging that Swan owned the trade secrets at issue (*id.* ¶¶ 77, 81-83). Swan need not rely on any agreements. *See, e.g.*, *Whole Body Rsch., LLC v. Dig. MD, LLC*, 2018 WL 3830902, at *6 (C.D. Cal. July 3, 2018) (no equitable estoppel where plaintiffs "could likely establish ownership over the protected material independent of the Agreement"). Similarly, Swan can prove that it took reasonable measures to protect its trade secrets without reference to those agreements (Mot. 12-13), by pointing to technical measures (AC ¶¶ 103-107); Swan's employee and contractor policies and procedures (*id.* ¶¶ 101-102); and contractual protections Swan employed in agreements with third parties, including Tether (*id.* ¶ 108). *See Mattson*, 96 Cal. App. 5th at 1157 ("the complaint refers to [plaintiff's] employment contracts (among other policies and safeguards) to demonstrate its efforts to maintain secrecy, but the claim against [defendant] does not rely on the contracts"). And Swan can establish misappropriation by showing that Proton's agents violated duties of loyalty they owed Swan under California law. *See, e.g.*, *Mattson*, 96 Cal. App. 5th at 1157 (noting that the "same obligations [within employer-employee confidentiality provisions] arise from statutory and common law").

Swan's reference to the Consulting and Employment Agreements as an additional fact further supporting its claims is an insufficient basis to invoke equitable estoppel. *See Chung*, 462 F. Supp. 3d at 1042 ("[H]elping to substantiate a required element is different than being necessary to substantiate such an element."); *Waymo*, 252 F. Supp. 3d at 938 ("Waymo need not rely on the terms of its written agreements merely because it makes reference to such agreements."). The cases upon which Proton relies (Mot. 10-11) are distinguishable, and do not hold that a plaintiff cannot reference contracts to bolster its claims. *Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172 (N.D. Cal. 2013), did not

involve an employer-employee relationship or related duties; the court found the plaintiff's trade secret claim was "dependent" upon plaintiff's establishing a violation of the underlying contract that contained an arbitration clause. *See id.* at *1185 ("Uptown ***must establish*** that Caremark's use of that information exceeded the scope of use permitted under the Provider Agreement."). Proton's other cited cases fare no better. *See Turing Video Tech., Inc. v. AGI7 Inc.*, 2025 WL 579190, at *3 (N.D. Cal. Feb. 21, 2025) (determining that a mutual release, which had an arbitration agreement, "contain[ed] necessary information regarding" plaintiff's claims); *Oren Enters., Inc. v. Stefanie Cove & Co.*, 2017 WL 8220230, at *4 (C.D. Cal. June 2, 2017) (determining that "federal trade secret claim …***requires*** [plaintiff] to rely on the terms of the employment agreements").

Proton's argument as to the second prong of the equitable estoppel test (whether Swan's claims allege "interdependent and concerted misconduct") similarly fails. The relevant question is not, as Proton suggests (Mot. 15-16), whether Swan alleges that Proton and other wrongdoers worked collectively to advance their scheme.[6] "[M]ere allegations of collusive behavior … are not enough … It is the relationship ***of the claims [to the contract]***, not merely the collusive behavior of the signatory and nonsignatory parties, that is key." *Waymo*, 252 F. Supp. 3d at 939 (alteration in original). Since Swan can prove its trade secret claims without reference to the Consulting and Employment Agreements, "[t]he inequities that equitable estoppel is designed to address are simply not present." *Id.*; *see also Chung*, 462 F. Supp. 3d at 1042 (finding defendant failed to satisfy both prongs of equitable estoppel test where the claims against the defendant "d[id] not depend

---

[6] In another instance of "heads I win, tails you lose" (*Hill*, 59 F. 4th at 477), Proton is now embracing its collusion with the Individual Defendants and arguing that it necessitates arbitration. Before, Proton demanded dismissal on the grounds that there was supposedly no "agency between Proton and the alleged bad actors." Dkt. 149 at 1; Dkt. 121-1 at 8-10 (arguing that Individual Defendants were not acting as Proton's agent at time of theft).

upon" the agreements).  Proton's argument "would be tantamount to holding that any company that hired any person who signed an arbitration agreement with his or her former employer could selectively and defensively assert the arbitration agreement to deny access to the courts by an aggrieved party who seeks to vindicate their statutory rights."  *Mattson*, 96 Cal. App. 5th at 1158.  That is not the law.

**Swan's Tortious Interference Claim.**  Proton similarly cannot use equitable estoppel to compel Swan's claim for tortious interference to arbitration.  The cases upon which Proton relies are inapposite.  In *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209 (2009), the court **denied** the defendant's motion to compel arbitration, emphasizing that the fact plaintiff's claim would not exist "but for" the agreement containing an arbitration provision "does not satisfy the requirement that the allegations of concerted misconduct be founded in or inextricably bound up with the terms and obligations of the operating agreements."  *Id.* at 232-33.  Proton's attempt to ignore that holding by latching onto dicta in a footnote in *Goldman* is unavailing.[7]  Moreover, Proton's assertion that Swan "agrees that this claim must be arbitrated as to Naidoo and Holmes, who are also non-signatories to the agreements they are alleged to have disrupted" (Mot. 14 n.6) is a red herring.  The Consulting Agreements to which Defendants Naidoo and Holmes are parties provide that disputes "arising out of, relating to, or resulting from [Naidoo and Holmes's] consulting or other relationship with" Swan are arbitrable (except claims seeking injunctive relief).  *See* AC, Exs. A & C, ¶ 12(A).  Swan has never agreed that Naidoo or Holmes can invoke the arbitration provisions in the Employment Agreements that they interfered with.

**Swan's UCL Claim.**  Proton incorrectly argues that because Swan's UCL claim is derivative of its other claims, the arbitrability of this claim depends on the

---

[7] In the other case that Proton cites, *Bitstamp Ltd. v. Ripple Labs Inc.*, 2015 WL 4692418 (N.D. Cal. Aug. 6, 2015), the court relied upon the same footnote in *Goldman*, but did not cast doubt on its holding.  *See id.* at *6.

arbitrability of any claims from which it derives.  Mot. 15.  Neither of the cases Proton cites hold this.[8]  Swan does not need to rely on the Consulting or Employment Agreements to succeed on its UCL claim.  *See* AC ¶¶ 254-55 (alleging that Proton used "Swan's stolen technology, resources, and trade secret techniques and methods to usurp its mining business").  In any event, because the Court should deny Proton's request to compel Swan's other claims to arbitration, the Court should do the same as to the UCL claim, as Proton offers no independent basis to compel that claim to arbitration.

Even if the claims in Count I, III, and V are arbitrable (they are not) and even if Proton has not waived its right to compel arbitration (it has), Swan is permitted to seek preliminary injunctive relief as to those claims in this Court, and engage in related discovery.  Proton's Motion relies upon arbitration provisions in the Individual Defendants' Consulting Agreements, which the Court already held "explicitly allow Swan to petition this Court for preliminary injunctive relief … and, by extension, allow for limited discovery in this forum."  Dkt. 164 at 13; *see* Mot. 19-20 (acknowledging this point).  Accordingly, in no circumstance should this Court countenance Proton's ongoing effort to use this Motion to block discovery.

## C.    The Court Should Not Stay Any Claims.

Even if the Court compels some of Swan's claims against Proton to arbitration, the Court should not stay any remaining non-arbitrable claims.  In ruling on Proton's request, "the [C]ourt should weigh the competing interests that will be

---

[8]  In *Breathe Techs., Inc. v. New Aera, Inc.*, 2020 WL 4747896 (N.D. Cal. Aug. 17, 2020), the UCL claim centered upon the defendant's misrepresentation that it owned legal rights to certain patents.  *See id.* *5.  The plaintiff had to use a contract (with an arbitration provision) to show defendant was lying.  And *Young v. ByteDance Inc.*, 700 F. Supp. 3d 808 (N.D. Cal. 2023), involved a claim against TikTok arising from mistreatment by an employer with whom the plaintiff had signed an arbitration agreement, and whom TikTok in turn had engaged to provide the services at issue.  *Id.* at 814.

23

affected, including: the possible damage which may result from granting the stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 990 (N.D. Cal. 2016). Proton concedes that at least one claim—aiding and abetting Zagury's and Belitsky's breach of fiduciary duties to Swan—is not subject to arbitration. Mot. 18. But Proton never addresses the factors the Court should weigh before entering a stay. Instead, Proton simply asserts there is a "risk of inconsistent rulings," pointing to Swan's tortious interference claim. *Id.* This is insufficient.

First, Proton fails to establish there is any risk of inconsistent rulings—the elements of Swan's causes of action for tortious interference and aiding and abetting breaches of fiduciary duty are distinct. *Cf. San Francisco Unified Sch. Dist. v. Keenan & Assocs.*, 2007 WL 1417419, at *10 (Cal. Ct. App. May 15, 2007) (fiduciary duty claim was not arbitrable as fiduciary duties arise under California law rather than contract). Second, whatever risk of inconsistent rulings may exist is outweighed by the ongoing harm that Proton's misconduct has caused and is causing Swan. *See, e.g.*, *Bold Ltd. v. Rocket Resume, Inc.*, 2023 WL 4157626, at *8 (N.D. Cal. June 22, 2023) (denying request for stay, finding that "indefinite" delay in plaintiff's ability to pursue non-arbitrable claim outweighed risk of inconsistent rulings).[9] Proton cites no case ordering a stay under similar circumstances. *See* Mot. 18-19. In fact, courts **denied** the defendants' requests for stays in Proton's other cited cases. *See Congdon*, 226 F. Supp. 3d at 991 (stay not warranted where defendant failed to establish prejudice, noting that "potential for

---

[9] This is especially true if the Court finds that Swan's trade secret claims are not arbitrable. *See, e.g.*, *Cloudera, Inc. v. Databricks, Inc.*, 2021 WL 3856697, at *3 (N.D. Cal. Aug. 30, 2021) (in case with non-arbitrable trade secret claim, denying request for stay where plaintiffs alleged ongoing harm from misappropriation).

24

inconsistent results in this forum is insufficient to overcome" plaintiffs' right to
pursue non-arbitrable claim in federal court); *California Crane Sch., Inc. v. Google
LLC*, 621 F. Supp. 3d 1024, 1033–34 (N.D. Cal. 2022) (because parties "will
presumably need to eventually litigate the remaining non-arbitrable claims …,
staying the non-arbitrable claims would only serve to needlessly delay their
resolution"). The Court should deny Proton's request.[10]

## V.    <u>CONCLUSION</u>

The Court should deny Proton's Motion, without needing to reach the merits
or any question of arbitrability, because Proton waived any right to arbitration it
may have had. If the Court does reach the merits, it should deny the Motion on
those grounds as well.

---

[10]    Proton also asserts that the Individual Defendants' appeal of this Court's April
9 Order somehow justifies a stay of Swan's claims against Proton. Mot. 18-19. But
as Swan has already explained (Dkt. 182) there is no stay as to the claims against
the Individual Defendants (*see also* Dkt. 205), much less the claims against Proton,
nor must any stay enter given the Court's basis for denying their motion. Proton
cites no authority otherwise.

1    DATED:  May 16, 2025          QUINN EMANUEL URQUHART &
2                                  SULLIVAN, LLP

3                                  By:    /s/ Ryan S. Landes
4                                        RYAN S. LANDES (State Bar No. 252642)
                                         ryanlandes@quinnemanuel.com
5                                        865 S Figueroa Street, Floor 10
                                         Los Angeles, CA 90017-5003
6                                        Telephone: (213) 443-3145
                                         Facsimile: (213) 443-3100
7

8                                        STACYLYN M. DOORE (admitted *pro hac vice*)
                                         stacylyndoore@quinnemanuel.com
9                                        111 Huntington Avenue, Suite 520
                                         Boston, MA 02199
10                                       Telephone: (617) 712-7100
                                         Facsimile: (617) 712-7200
11

12                                       RACHEL E. EPSTEIN (admitted *pro hac vice*)
                                         rachelepstein@quinnemanuel.com
13                                       295 Fifth Avenue
                                         New York, NY 10016
14                                       Telephone: (212) 849-7000
                                         Facsimile: (212) 849-7100
15

16                                       JEFFREY WILLIAM NARDINELLI (State Bar
                                         No. 295932)
17                                       jeffnardinelli@quinnemanuel.com
18                                       50 California Street 22nd Floor
                                         San Francisco, CA 94111
19                                       Telephone:  415-875-6600
                                         Facsimile: 415-875-6700
20

21                                       AUSTIN BUSCHER (State Bar No. 346456)
                                         austinbuscher@quinnemanuel.com
22                                       555 Twin Dolphin St., Fifth Floor
                                         Redwood Shores, CA 94065
23                                       Telephone:  (650) 801-5000
                                         Facsimile:  (650) 801-5100
24

25                                       *Attorneys for Plaintiff*
                                         *ELECTRIC SOLIDUS, INC. d/b/a SWAN*
26                                       *BITCOIN*

27

28

                                        26
_____
SWAN'S OPPOSITION TO PROTON'S MOTION TO COMPEL ARBITRATION