# EXHIBIT 6

**quinn emanuel** trial lawyers | boston

111 Huntington Avenue, Suite 520, Boston, Massachusetts 02199-7626 | TEL (617) 712-7100 FAX (617) 712-7200

WRITER'S DIRECT DIAL NO.
**(617) 712-7121**

WRITER'S EMAIL ADDRESS
**stacylyndoore@quinnemanuel.com**

April 7, 2025

**Via E-Mail**
dbergeson@be-law.com
rkaufman@be-law.com
jvenkatesan@be-law.com
atrigg@be-law.com

Daniel J. Bergeson
Rebecca Kaufman
Jaideep Venkatesan
Adam C. Trigg
BERGESON, LLP
111 N. Market Street, Suite 600
San Jose, CA 95113

Re:   *Electric Solidus, Inc. v. Proton Management Ltd. et al.*, No. 2:24-cv-08280

Counsel,

We write on behalf of Electric Solidus, Inc. d/b/a Swan Bitcoin ("Swan") regarding Proton's blanket objections to Swan's Second Sets of Requests for Production and Interrogatories to Proton, served February 26, 2025 (the "RFPs" and "Interrogatories").

Like Proton's responses to Swan's first sets of discovery requests, Proton's responses to the RFPs and Interrogatories consist almost entirely of boilerplate objections that do not engage with the substance of each RFP or Interrogatory. None of the overarching objections that Proton continues to press is valid. And as Swan explained to Proton in response to Proton's blanket objections to Swan's initial sets of discovery requests, "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also* Landes Mar. 18, 2025 Ltr. As we did with those prior objections, we first address the general objections upon which Proton relies, before turning to the substance of each RFP and Interrogatory.

If Proton will not drop its objections to producing the at-issue documents and information, please let us know when Proton is available to meet and confer pursuant to Local Rule 37-1. So

quinn emanuel urquhart & sullivan, llp
ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

that the parties can efficiently work through these requests during any forthcoming conferrals, prior to that call please identify in writing any requests to which Proton intends to withhold responsive documents or information *even if* the Court denies Defendants' pending motions and ultimately overrules any of the other general objections which Proton relies upon to refuse discovery.

**GENERAL OBJECTIONS**

Proton's general objections to the RFPs and Interrogatories indicate that Proton is still refusing to participate in any discovery on the basis of generalized objections that this Court has thrice rejected. *See* Dkt. 119 (Civil Trial Order, entering discovery schedule over objections related to personal jurisdiction that Proton raised in the Rule 26(f) Report); Dkt. 142 (denying Individual Defendants' *ex parte* motion for protective order, which was grounded in part on purported objections to the Court's jurisdiction over Proton); Dkt. 156 (directing Defendants to serve initial disclosures by no later than April 16, 2025). We have explained at length why Proton's (baseless) challenge to the Court's jurisdiction does not relieve it from participating in discovery. *See, e.g.*, Landes Mar. 18, 2025 Ltr. No discovery stay has been entered on the basis of Proton's jurisdictional challenge, nor has Proton even moved for one. *See NMS 1539, LLC v. City of Santa Monica*, 2022 WL 3575311, at *1 (C.D. Cal. July 26, 2022) ("The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending.") (cleaned up); *Williams v. Experian Information Solutions Inc.*, 2024 WL 739676, at *2 (D. Az. Feb. 23, 2024) ("the appropriate way to resist discovery on [the basis of a pending motion to compel] is to seek a judicial stay order"). And even if Proton had moved for a stay, Proton would nonetheless still be required to comply with its discovery obligations while that motion was pending. *See, e.g.*, *Nat'l Corp. Tax Credit Funds III v. Potashnik*, 2008 WL 11339608, at *1 (C.D. Cal. June 16, 2008) ("That defendants have sought a stay is insufficient to avoid their discovery obligations."). Proton cannot use its pending motion to dismiss to bar discovery into Swan's claims, as this Court has confirmed three times.

We understand from Proton's objections that it is also refusing to participate in any discovery based on purported concerns about Swan's Identification of Asserted Trade Secrets (Dkt. 111-1). *See, e.g.*, Proton Resps. to RFPs at 2 (General Objection 2). Proton's objections do not explain why it believes Swan's Identification is inadequate. To the extent that Proton's purported concerns mirror those expressed only recently in other correspondence to Swan, we have explained during conferrals why we believe those concerns are misplaced. We recognize that the parties' discussions of Swan's Identification remain ongoing, and we will not take the time to outline those discussions here. Regardless, Proton's attempt to avoid ***any discovery***—even that unrelated to Swan's or Proton's trade secrets—is improper, as is clear from the Court's January 7 Order Setting Scheduling Conference. *See* Dkt. 95 at 7 ("Discovery into trade secrets shall not commence until the identification has been served and filed, but the plaintiff may commence discovery on any other subject prior to the identification."). Proton's refusal to engage with requests that do not involve discovery into Swan's or Proton's trade secrets is particularly unjustifiable.

Finally, while not repeated in response to every discovery request, Proton frequently objects to discovery on the grounds that the parties have yet to agree on an order governing

2

confidentiality in this action. *See, e.g.*, Proton Resps. to RFPs at 9 (RFP 5). Swan has repeatedly suggested that the parties agree to treat any document productions that the producing party designates as either "Confidential" or "Attorneys' Eyes Only" pursuant to the agreed-to procedures of the draft Protective Order the parties are negotiating. *See* Gorman Mar. 3, 2025 Email; Gorman Mar. 20, 2025 Email. Defendants have either ignored or refused those requests. Proton's objections on this point continue to ring hollow.

**INDIVIDUAL REQUESTS**

Turning to the specific RFPs and Interrogatories at issue, each seeks nonprivileged documents and information that is relevant to the claim and defenses at issue in this action, and each are proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). And while Proton frequently asserts without explanation that the requests or interrogatories are overbroad, vague, or seek irrelevant information, those assertions are both wrong and fail to explain Proton's purported issues with each request.

Taking the RFPs and Interrogatories in turn:

- **RFP 5.** This request seeks "Documents sufficient to show Proton's corporate structure, including but not limited to Documents sufficient to identify Proton's parents, subsidiaries, and affiliates, as well as the identities of Proton's board of directors, officers, and managers." This is a standard discovery request that seeks basic information about a party. It should be simple for Proton to locate and produce these documents, which should not implicate confidentiality concerns nor touch upon any alleged trade secret information.

- **RFP 6.** This request seeks "[o]rganizational charts for Proton's employees and consultants, including names, titles, and reporting lines." Like the documents sought by RFP 5, documents of these kind are regularly produced in discovery. Proton's objections do not explain why these documents are irrelevant or identify any other reason why it would be difficult or unreasonable for Proton to produce them (it would not be).

- **RFP 7.** This request seeks "Documents and Communications concerning Proton's formation and registration, including but not limited to Documents and Communications concerning who caused Proton's incorporation and on which date that person did so, as well as all communications San Naidoo and Alex Holmes exchanged with anyone regarding Proton's formation and registration." Documents and communications reflecting when the decision to form Proton was made, why Proton was formed, and who was involved in Proton's formation are relevant to, at least, Swan's allegations that the Individual Defendants and their conspirators acted as Proton's agents when engaging in the misconduct at issue. *See, e.g.*, Dkt. 100 (Amended Complaint) ("AC") ¶¶ 18, 33-34, 118.

- **RFPs 8-10.** These requests mirror RFPs 5-7, but seek information related to Elektron's corporate structure, organization, and formation, rather than that of Proton. Swan has alleged that Proton is likely engaged in Bitcoin mining under the name "Elektron Energy,"

3

and likely using Swan's trade secrets to do so. *See, e.g.*, AC ¶ 18 n.8. Discovery into basic information concerning Elektron is self-evidently relevant to those allegations.

- **RFP 11.** This request seeks "Documents sufficient to identify all persons who have been or are engaged to do work on Your behalf related to Bitcoin mining." The identities of any such persons, as well as information concerning their roles and responsibilities and the dates of their engagements by Proton, are at least relevant to ascertaining the extent of Proton's sharing and use of Swan's trade secrets.

- **RFP 12.** This request seeks "agreements and Communications related to agreements between You and any other person concerning Bitcoin mining, as well as any drafts, term sheets, or amendments related to same, as well as Communications related to the negotiation or execution of same." Such agreements and communications are at least relevant to ascertaining to whom Proton may be providing services using Swan's trade secrets. Such documents are also relevant to Swan's claims for damages against Proton.

- **RFPs 13-15.** These requests seek information concerning the employment and hiring of the Individual Defendants and their co-conspirators (RFPs 13 & 14), as well as any other individuals that Proton has hired or engaged to work in roles related to Bitcoin mining (RFP 15). The circumstances of Proton's hiring the Individual Defendants and their co-conspirators is sharply in dispute. *See* Dkt. 114-1 at 7 (arguing that Swan's former employees and contractors resigned from Swan and joined Proton due to issues at Swan unrelated to their theft of trade secrets). Documents concerning those circumstances—as well as the circumstances of any other personnel's joining Proton—are relevant to confirming Swan's allegations that Proton was formed effectively as a copycat company, for the sole purpose of stealing Swan's Bitcoin mining business. *See, e.g.*, AC ¶ 255.

- **RFP 16.** This request seeks "Documents and Communications concerning Your assuming, taking over, being engaged to work on or otherwise working on responsibilities and/or roles related to Bitcoin mining that were previously maintained or held by Swan." Such documents are self-evidently relevant to Swan's allegations that Proton usurped operation of Swan's mining sites and mining business from Swan, using Swan's trade secrets to do so.

- **RFP 17.** This request seeks "Documents and Communications concerning the specific methods, tools models, or techniques that you use to select sites for, manage, operate, monitor, or otherwise oversee Bitcoin mining operations." Swan alleges that Proton is using its trade secrets methods, models, and techniques to select sites for, manage, operate, monitor, or otherwise oversee Bitcoin mining operations. *See, e.g.*, AC ¶ 61. Discovery into the methods that Proton is using is necessary to confirm those allegations, and test any defenses Proton is likely to raise regarding the novelty or lack of novelty in the methods it deploys. *See* Dkt. 121-1 at 20 (arguing generally that the techniques at issue involve "generic bitcoin mining operation techniques and processes and open-source applications").

4

- **RFP 18.** This request seeks "Documents sufficient to identify all Mining Sites at which You manage, operate, or otherwise oversee Bitcoin mining operations." This request largely overlaps with RFP 2 regarding Proton's mining sites. We understand based on prior conferrals that Proton is generally not opposed to providing this information, assuming the Court overrules its general objections. *See* Gorman Mar. 26, 2025 Email. Assuming the Court does so, we expect Proton will produce documents responsive to RFP 18, to the extent such documents are not covered by RFP 2.

- **RFP 19.** This requests seeks "Documents sufficient to show Bitcoin mining operations that You considered or planned to manage, operate, or otherwise oversee, or that any other Person asked, suggested, or discussed Your managing, operating, or otherwise overseeing, including Documents and Communications concerning the specific methods, tools, models, or techniques that you considered or planned to use in connection with such mining operations." Such documents are at least relevant to Swan's claims for damages, as they are probative of how widely Proton intended to use Swan's trade secrets and the potential value Proton placed on those trade secrets. Such documents are similarly relevant to the scope of Proton's misappropriation of those trade secrets.

- **RFP 20.** This request seeks "Documents and Communications concerning the decrease or cessation of Bitcoin mining operations at any Mining Sites that Swan previously managed, operated, or otherwise engaged with, including but not limited to Communications and Documents regarding the removal of Bitcoin mining hardware, such as ASICs, power supply systems, and cooling systems, from those sites." Such documents and communications are at least relevant to Swan's allegations that Proton has redirected Bitcoin mining activities that Swan previously managed for its and 2040 Energy's benefit, and is now using Swan's trade secrets to mine for the benefit of unidentified third parties. *See, e.g.*, AC ¶¶ 183-85; *see also id.* ¶¶ 194-98 (discussing value of purchasing ASICs to mine Bitcoin).

- **RFPs 21-22.** These requests seek documents and communications concerning Proton's recruitment or attempted recruitment of Swan employees. Swan alleges that Proton has tortiously interfered with the non-solicitation obligations that former Swan employees owe Swan. *See, e.g.*, AC ¶¶ 236-42. Swan understands that Defendants dispute this, *see, e.g.*, Kanny Mar. 5, 2025 Email, and presume that Proton will contest these allegations. Documents responsive to these requests are at least relevant to Swan's claim against Proton for tortious interference.

- **RFP 23.** This request seeks "Documents or Communications concerning or referencing Swan's Trade Secrets, including Documents and Communications concerning Your actual, considered, or planned use of Swan's Trade Secrets." Such documents and communications are self-evidently relevant to the scope and extent of Proton's sharing and use of Swan's trade secrets.

- **RFPs 24-25.** These requests seek documents and communications concerning Proton employees' and agents' downloading of Swan's confidential information and trade secrets. Such documents are relevant to the scope of Proton's theft of Swan's trade secrets, as well

5

as the scope of Proton's continued use of those trade secrets, and will presumably be relevant to Proton's defenses to misappropriation, including assertions Proton has already made concerning its relationship with these individuals while they downloaded the information and documents at issue. *See generally* Dkt. 121-1 (Proton disputing having an agency relationship with Swan employees and consultants at the time of their theft).

- **RFP 26.** This request seeks "Documents and Communications concerning any Proton employee, consultant, or other agent's obligations or potential obligations to Swan, including but not limited to those arising from such persons' employment or consulting agreements with Swan." Swan alleges that Proton was aware of such obligations, and induced former Swan employees to breach them. *See, e.g.*, AC ¶¶ 236-42. Such documents and communications are relevant to those allegations and any defenses to same that Proton presumably will bring.

- **RFP 27.** This request seeks "Documents and Communications sufficient to show any former or current Swan employee or consultant's job offer from Proton or Elektron (or an offer from a company that became Proton or Elektron), including all forms of compensation and benefits or promises thereof." Like RFPs 13-15, this request seeks basic information concerning the employment and hiring of the Individual Defendants and their co-conspirators, including the circumstances under which those individuals left Swan to work for Proton.

- **RFP 28.** This request seeks "Documents and Communications concerning any former or current Swan employee, consultant, or agent's development of Swan's Trade Secrets." Proton presumably intends to argue that some or all of the trade secrets at issue utilize techniques other than those that Proton's employees and agents developed and used while at Swan. *See, e.g.*, Dkt. 121-1 at 20 (arguing generally that the techniques at issue involve "generic bitcoin mining operation techniques and processes and open-source applications"). Swan disputes this, *see, e.g.*, AC ¶¶ 60-80, and documents and communications responsive to this request are relevant to both Swan's allegations and Proton's likely defenses on this point.

- **RFPs 29-30.** These requests seek documents and communications concerning Proton's financial investment in and projections related to its Bitcoin mining business—a business which Swan alleges Proton unlawfully usurped from Swan, and are using Swan's trade secrets to continue to develop. The sought-after documents and communications are at least relevant to Swan's claims for damages against Proton.

- **RFP 31.** This request seeks "Documents and Communications concerning Your actual, planned, or attempted development or use of any dashboard or monitoring system related to Bitcoin mining operations." Swan alleges that Proton employees and agents unlawfully misappropriated Swan's monitoring system (Swan's BNOC), including the trade secrets underlying that system. *See, e.g.*, AC ¶¶ 73-79. While Defendants have attacked BNOC's status as a trade secret, they have yet to explain how whatever dashboard they are using is purportedly different from BNOC. *See generally* Dkt. 122-1. The sought-after documents and communications are at least relevant to Swan's allegations that Proton misappropriated

6

Swan's BNOC, and to test any defenses Proton may raise concerning whatever dashboard it claims to be using.

- **RFPs 32-33.**  These requests seek documents and communications concerning any comparisons between the methods, techniques, dashboard, and other tools that Proton uses to provide Bitcoin mining services and Swan's trade secrets (including Swan's BNOC). Such documents are self-evidently relevant to Swan's allegations of misappropriation and Proton's likely defenses against those allegations.

- **RFP 34.**  This request seeks "Documents and Communications concerning Your efforts to keep the techniques, methods, or tools You use to manage, operate, or otherwise engage in Bitcoin mining activities secret or confidential."  Swan alleges that Proton is using its trade secrets to manage, operate, or otherwise engage in Bitcoin mining activities.  *See, e.g.*, AC ¶¶ 181-201.  Proton has already claimed that those methods are commonplace.  *See* Dkt. 121-1 at 20.  The sought-after documents and communications are at least probative of whether Proton believes that those methods are in fact commonplace and publicly-known, or whether they are worthy of protection.

- **RFP 35.**  This request seeks "Documents and Communications concerning any actual or considered indemnification of You and/or Your employees, consultants, or other agents concerning activities related to Bitcoin mining."  Swan alleges that third parties, such as Marlin Capital Partners, had a hand in coordinating Proton's theft of Swan's Bitcoin mining business.  Documents and communications concerning any actual or considered indemnification of Proton's agents are relevant to ascertain the extent of third-party involvement in Proton's raid of Swan's mining business.

- **RFP 36-37.**  These requests seek documents sufficient to identify the interests that any persons or entities may hold in Proton, as well as any interest that Proton may hold in any other entities.  Swan alleges that Proton is essentially a copycat company, formed solely to steal Swan's mining business.  *See, e.g.*, AC ¶ 255.  Proton has also put the identity of shareholders and owners at issue.  *See* Dkt. 121-2 (Declaration of San Naidoo). Identification of any interests that persons or entities hold in Proton, and any that Proton holds in other entities, is at least relevant to ascertaining the extent of third-party involvement in Proton's formation, and to Swan's claims for damages against Proton.

- **RFPs 38-40.**  These requests seek documents and communications related to the value that Proton and/or third parties placed on Proton's Bitcoin mining operations.  Swan alleges that those operations rely upon Swan's trade secrets, and that Proton's business derives its value from the usage of those trade secrets.  Documents and communications responsive to these requests are at least relevant to Swan's claims for damages.

- **RFP 41.**  This request seeks "[a]ll Communications between You and persons associated with the Mining Sites You manage, operate, or otherwise engage with related to Bitcoin mining activities, including but not limited to all Communications exchanged via Signal, Telegram, and WhatsApp."  Swan alleges that Proton is using Swan's trade secrets to direct, manage, and monitor operations at Bitcoin mining sites, including those that former

7

> Swan employees and consultants managed while at Swan. *See, e.g.*, AC ¶¶ 181-201. Communications between Proton employees and agents and those mining sites are relevant to the scope of such usage.
>
> - **RFPs 42-43.** These requests seek documents and communications concerning potential spoliation of relevant evidence. Swan's Amended Complaint alleges multiple instances of attempted or actual spoliation, as well as attempts by former Swan employees and consultants to utilize ephemeral means of communication, likely to avoid leaving behind evidence of their scheming. *See, e.g.*, AC ¶¶ 126, 190. Documents and communications responsive to these requests are at least relevant to spoliation issues, and to test any defense Proton raises against Swan's allegations.
>
> - **RFP 44.** This request seeks "Documents and Communications concerning Your involvement in the actual, planned, or attempted sale of ASICs or other hardware or infrastructure related to Bitcoin mining." Swan alleges that Proton has assisted third-party purchases of ASICs, for the purposes of mining Bitcoin, likely outside of 2040 Energy. *See, e.g.*, AC ¶¶ 194-99. Documents and communication responsive to this request are relevant to those allegations, and probative of whether Proton is engaged in Bitcoin mining outside of 2040 Energy.
>
> - **RFPs 45-46.** These requests seek documents and communications concerning whether Proton, its employees, or other of its agents have taken steps to limit Swan's ability to recover monetary damages in this action (RFP 45), as well as documents concerning the amount and location of assets held by Proton, its employees, or other agents (RFP 46). These documents are at least relevant to Swan's claims for damages and Swan's ability to recover such damages from Proton.
>
> - **RFPs 47-50.** These requests concern statements that Proton's employees or agents may have made to customers, vendors, business partners, or other third parties concerning the former Swan consultants' and employees' switching roles and responsibilities from Swan to Proton. Such documents and communications are relevant to Swan's allegations that Proton has sought to whitewash its misconduct by trading on Swan's name, *see, e.g.*, AC ¶ 173, and probative of whether Proton represented to third parties that it would continue Swan's mining operations without interruption (*i.e.*, using Swan's trade secrets).
>
> - **RFPs 51-52.** These requests seek documents and communications concerning Proton's employees' and agents' leaving Swan to work for Proton, including documents concerning the reasons why they left Swan. The circumstances of those departures are hotly disputed, and Proton's employees and agents have already put the reasons for their leaving Swan at issue in this suit. *See* Dkt. 114-1 at 7. Documents and communications responsive to these requests are at least relevant to those allegations and Proton's likely defenses to same.
>
> - **RFP 53.** This request seeks "[a]ll Communications between You and Marlin Capital, including but not limited to Communications between You and Zachary Lyons." Swan alleges and has put forward evidence that Marlin Capital may have been involved in the formation of Proton and the scheme to steal Swan's Bitcoin mining business for Proton's

8

benefit. *See, e.g.*, AC ¶¶ 122-23, 125, 142-44. The sought-after communications are relevant to those allegations.

- **RFPs 54-56.** These requests seek documents and communications concerning Proton's connections to the United States and California (RFP 54); its relationship with a California-based defendant in this action, Ilios Corp. (RFP 55); and its interactions with United States, California, and Wyoming government agencies (RFP 56). These documents and communications are relevant to Proton's defense that this Court lacks jurisdiction over it. *See generally* Dkt. 121-1. RFPs 54 and 56 are also relevant to understanding the sequence of events leading up to Proton's formation, as well as any representations that may have been made to other entities regarding such formation (and the purported purpose of Proton and/or its affiliates more generally). RFP 55 also seeks basic, relevant discovery concerning the relationship between two defendants in this action, Ilios Corp. and Proton.

- **RFPs 57-58.** These requests seek documents and communications concerning Proton's use of GitHub to store source code related to its Bitcoin mining operations, including documents and communications concerning repositories that Proton's employees and agents used to exfiltrate Swan's trade secrets. *See* AC ¶¶ 132, 138, 147, 168-70. Such documents and communications are at least relevant to the scope of Proton employees' and agents' theft, retention, and use of Swan's trade secrets.

- **Interrogatory 6.** This interrogatory asks Proton to "[i]dentify and describe all dashboards or monitoring systems that You use in connection with Your Bitcoin mining operations, including stating the basis for any contention that those systems differ from Swan's BNOC or were independently developed or created." The extent to which those dashboards do or do not differ from Swan's trade secrets are relevant to Swan's allegations of misappropriation and Proton's likely defenses to same.

- **Interrogatory 7.** This interrogatory asks Proton to "[i]dentify all persons who have been or are engaged to do work on Your behalf related to Bitcoin mining, including identifying (i) the name of each person; (ii) each person's title, roles, and responsibilities; (iii) where each person resides; and (iv) dates during which that person has been engaged by You." Like documents responsive to RFP 11, responsive information concerning such persons is at least relevant to ascertaining the extent of Proton's sharing and use of Swan's trade secrets.

- **Interrogatory 8.** This interrogatory asks Proton, "[f]or every occasion in which You and/or Your employees, consultants, or agents have accessed, disclosed, and/or used any Document reflecting or incorporating Swan's Trade Secrets, [to] identify the date, time, method of access, disclosure, and/or use, and specific material accessed, disclosed, and/or used." Such information is self-evidently relevant to the scope and extent of Proton's theft, sharing, and use of Swan's trade secrets.

- **Interrogatory 9.** This interrogatory asks Proton to "[d]escribe how You came to be in possession of any Swan Trade Secret, including by identifying any Documents or Communications providing possession." Such information is self-evidently relevant to the

9

scope and extent of Proton's theft of Swan's trade secrets, including when Proton came to possess those trade secrets.

- **Interrogatory 10.** This interrogatory asks Proton to "[d]escribe all devices and all ephemeral messaging applications on those devices (including, but not limited to, Signal, Telegram, and WhatsApp) that You or any of Your employees, consultants, or agents uses or has used to discuss Bitcoin mining operations that You manage, operate, monitor, or otherwise oversee." The information sought by this interrogatory is at least relevant to spoliation issues, *see, e.g.*, AC ¶¶ 126, 190, as well as ascertaining where relevant communications may exist in Proton's possession, custody, or control.

\* \* \*

Please confirm that Proton will drop its objections to the RFPs and Interrogatories, or else let us know when Proton is available to meet and confer regarding these matters as soon as possible, pursuant to Local Rule 37-1. As stated above, we request that Proton identify before any conferral the RFPs or Interrogatories to which it will continue to withhold documents and information even if the Court denies Defendants' pending motions and ultimately finds Swan's Identification of Asserted Trade Secrets sufficient.

Should the parties be unable to reach agreement on these issues, Swan intends to move to compel pursuant to Local Rule 37-2.

We look forward to your prompt response. Swan reserves all rights.

Very truly yours,

Stacylyn M. Doore

10