DANIEL J. BERGESON, SBN 105439
dbergeson@be-law.com
JAIDEEP VENKATESAN SBN 211386
jvenkatesan@be-law.com
ADAM C. TRIGG, SBN 261498
atrigg@be-law.com
BERGESON, LLP
111 N. Market Street, Suite 600
San Jose, California 95113
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Defendant
PROTON MANAGEMENT LTD.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ELECTRIC SOLIDUS, INC. d/b/a SWAN BITCOIN, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PROTON MANAGEMENT LTD., a British Virgin Islands corporation; THOMAS PATRICK FURLONG; ILIOS CORP., a California corporation; MICHAEL ALEXANDER HOLMES; RAFAEL DIAS MONTELEONE; SANTHIRAN NAIDOO; ENRIQUE ROMUALDEZ; and LUCAS VASCONCELOS,<br><br>Defendants. | Case No. 2:24-cv-08280-MWC-E<br><br>**DEFENDANT PROTON MANAGEMENT LTD.'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO SWAN'S MOTION TO COMPEL**<br><br>Date:  July 18, 2025<br>Time:  9:30 a.m.<br>Place:  Courtroom 750, 7th Fl.<br>Judge:  Hon. Charles F. Eick<br><br>Discovery Cutoff:  Nov. 7, 2025<br>Pre-Trial Conf. Date:  April 26, 2026<br>Trial Date:  May 4, 2026 |

Pursuant to L.R. 37-2.3, Defendant Proton Management, Ltd. ("Defendant" or "Proton") submits this supplemental brief opposing Plaintiff Electric Solidus, Inc. d/b/a Swan Bitcoin's ("Plaintiff" or "Swan") Motion to Compel (ECF No. 243).

Despite the length of its disclosure, Swan continues to assert broad categories and vague concepts as purported trade secrets without specifying what actual information is protectable—let alone why it differs from what any other mining business already knows. *See Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826, 836 (2005). Defendants repeatedly tried to resolve these issues—including a detailed letter offering a proposed clarification of Swan's insufficient disclosure and repeated requests to amend its 2019.210 disclosure—but Swan has steadfastly refused, for months, to amend, supplement, or explain what it contends are its actual trade secrets. This refusal leaves Proton and the other Defendants unable to meaningfully evaluate Swan's claims or prepare a defense,[1] while simultaneously (i) allowing Swan to seek expansive discovery untethered to any defined trade secret, and (ii) giving it the ability to later redefine its claimed trade secrets upon receipt of discovery, both in violation of Section 2019.210 and this Court's Order.

Further, Swan's public disclosure of substantial parts of its disclosure further highlights the inadequacy of its disclosure. In at least two different court filings, Swan publicly disclosed materials it now claims contain trade secrets, including a letter from Individual Defendants identifying deficiencies in Swan's Trade Secret Identification (which Individual Defendants marked as AEO out of an abundance of caution but which Swan ignored) and a list of supposedly proprietary file names that Swan sought to redact in that same letter. (ECF Nos. 177-8; ECF No. 182-2 at 3-4.) Notably, Swan selectively sought to seal *other* documents as part of *these* same filings, but not these, leading Proton to believe these public filings were intentional. While Swan sought to seal the letter two months after publicly filing it (which Proton disputed should be sealed, ECF No. 239), a cursory review of its proposed redactions only highlight the absence of a particularized

---

[1] Swan has, in fact, refused access to its Trade Secret Identification, which it designated as Attorneys' Eyes Only, to Proton or any of its representatives.

identification. *See, e.g., M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.* ("*M/A-COM*"), 2019 WL 4284523, at *2 (C.D. Cal. June 11, 2019). Discovery should not proceed until Swan complies with its fundamental obligation to sufficiently identify its alleged trade secrets.

I. **SWAN FAILS TO IDENTIFY ANY ALLEGED TRADE SECRETS WITH THE REQUISITE PARTICULARITY.**

As discussed at length in the Joint Stipulation, each of Swan's purported trade secrets fail to sufficiently identify with any particularity what Swan claims to own. Indeed, Swan fails to identify specifically what information makes up each trade secret, so as to allow Proton to distinguish it from what is public or generally known. *See Alta Devices*, 2019 WL 176261, at *2 (emphases in original) (internal citation omitted) (plaintiff must include "adequate detail to allow the *defendant* to *investigate* how [each asserted trade secret] might differ from matters already known and to allow the court to craft relevant discovery"). For example, Swan vaguely claims ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as a trade secret (TS 1), but this refers only to any number of general, well-known Bitcoin mining *concepts* without any particularity as to what specifically Swan claims is proprietary to it.[2] As another example, Swan generally refers to wholesale contractual agreements (many of which are more than twenty to thirty pages long) as trade secrets without identifying any particular terms of the agreements it believes are protectable. (ECF No. 111-1 at 12, 13-14, 14-15, 16-17, 19- 22.) It is even more problematic given that ▓▓▓▓▓▓▓▓▓▓ are regularly made public by bitcoin mining companies—some of which contain similar terms. *Compare, e.g.,* ECF No. 176-9 at § 8.2 (profit share provision in hosting agreement) with Ex. A[3] (Term Sheet describing similar profit share provision; ECF No. 176-9 at § 12 (assignment) with Ex. A (assignment); 176-9 at § 15 (warranties) and Ex. A

---

[2] *E.g.*, Ex. B (BITCOIN MINING HANDBOOK at 42 (describing overclocking), 78 (electricity price), and 82 (infrastructure value) (Braiins 2022), https://braiins.com/books/bitcoin-mining-handbook); Ex. C (*Optimizations for Bitcoin Mining with Intermittent Energy Sources*, BRAIINS (Jul. 7, 2021), https://braiins.com/blog/optimizations-bitcoin-mining-intermittent-energy (describing curtailment).

[3] SEC filing publicly available at https://www.sec.gov/Archives/edgar/data/1819989/000095012321003679/filename3.htm

(representations and warranties); ECF No. 179-9 at § 17 (termination) and Ex. A (termination rights); ECF No. 179-9 at § 18 (force majeure) and Ex. A (force majeure); ECF No. 179-9 at § 19 (governing law) and Ex. A (governing law). These examples are illustrative of similar problems that permeate all of the claimed trade secrets:

- Trade Secrets 1, 2, 4-13, 14, 17, and 20 do not specify any specific ▇▇▇▇ as elements of those trade secrets, leaving Proton to guess as to what the claimed trade secret actually is. *See, e.g., Calendar Rsch. LLC, v. StubHub, Inc.*, 2020 U.S. Dist. LEXIS 112361, at *15 (C. D. Cal. May 13, 2020) ("Trade secrets cannot be vague concepts, and Plaintiff fails to identify the specific set of 'methods, techniques, processes, procedures, programs, or codes'" that could establish the trade secret.).
- Trade Secrets 2, 3, 15, 18, and 20 rely on improper catchall language to explain elements of the trade secrets (e.g., "including"). *See, e.g., Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *4 (N.D. Cal. May 8, 2018).
- Trade Secrets 1, 2, 4-13, 15, 16, 17, 18, 19, and 20 purport to be reflected in ▇▇▇▇ ▇▇▇▇ But Swan cannot simply rely wholesale on document references, particularly general document categories, to avoid a sufficient disclosure. *See, e.g., Perlan*, 178 Cal. App. 4th at 1351 (disclosure was insufficient that required defendant to "cull through the documents and guess"); *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 176261, at *3 (N.D. Cal. Jan. 10, 2019) ("[Plaintiff] must amend its disclosure to identify these trade secrets with reasonable particularity, with or without reference to a separate document.").

And the list goes on. Courts reject such a vague, non-descriptive approach to trade secret identification. *See, e.g., Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998). The Court should do the same here.[4]

## II. DEFENDANTS IN GOOD FAITH SOUGHT CLARIFICATION ON SWAN'S TRADE SECRET IDENTIFICATION, BUT SWAN REFUSED.

On April 15, 2025, Defendants sent a detailed letter to Swan identifying ambiguities in and attempting, in good faith, to parse Swan's obscure Trade Secret Identification. *See*

---

[4] The redactions contained herein are based solely on Swan's designations in the Joint Stipulation, but even these demonstrate how vague their designations are here (e.g., ▇▇▇▇).

ECF No. 242-3 (the "April 15 Letter"). Defendants' April 15 Letter sought clarity from Swan as to what it claimed to be protectable based on what could be reasonably inferred through *other* statements made by Swan in *other* Swan documents in a good faith attempt to resolve this dispute. To be sure, the Court required Swan to specifically identify the "Trade Secret Elements" of each of its alleged trade secrets, as well as certain background information in the Trade Secret Identification. (ECF No. 95 at 6).[5] Plainly recognizing that its Trade Secret Elements were far too broad and non-descript, in its first motion to compel discovery, Swan attempted to cherry-pick portions of its background sections to add specificity when describing them.[6] The April 15 Letter was simply an effort by Proton to confirm that Swan's trade secrets were actually as confined as Swan had represented them to the Court. Swan rejected this effort. Ex. 11. Swan now tries to claim that this April 15 Letter demonstrates Defendants' understanding of its alleged trade secrets. That is non-sensical. The very purpose of the April 15 Letter was to gain clarity on what exactly Swan claims as trade secret, but Swan only responded with the blanket statement that it disagreed with Defendants' characterizations, leaving Defendants in the dark. The April 15 Letter *highlights* Defendants' inability to understand the trade secrets—not the opposite.

### III. SWAN'S PUBLIC FILINGS DEMONSTRATE THE INSUFFICIENCY OF ITS TRADE SECRET DISCLOSURE

Further, Swan's public filing of a letter quoting the elements section for *each of the twenty trade secrets it claims* undermines the sufficiency of its disclosure. ECF No. 177-8. While Swan has now attempted to undo that public disclosure (months too late), a review of those elements—which have been public for more than two months—demonstrates that

---

[5] Again, Swan is wrong that the Court has already ruled on the adequacy of its Trade Secret Identification (Mot. at 53-54).

[6] Swan continues to supplement its disclosure through the instant motion—details not originally in the elements of its Identification. *See, e.g.*, Mot. at 34 (purporting that some portion of spreadsheet shows how Swan opted to curtail as example of conditions and operations of a curtailment model); *id.* at 30-31 (specifying that deployment strategies are found in Trade Secrets 4-13). This further confuses the bounds of the identified trade secrets and evidences the "shifting sands" strategy that courts forbid. *See generally Alphonso Inc. v. Tremor Video, Inc.*, 2022 WL 17968081, at *3 (N.D. Cal. Oct. 31, 2022).

those specific portions of Swan's disclosure were plainly not "specific enough" to be deemed confidential trade secrets. *See, e.g.*, *M/A-COM*, 2019 WL 4284523, at *2.[7] For example, the letter quoted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which Swan identifies as the elements of Trade Secret 15. ECF No. 177-8 at 9. That phrase identifies no information that "tends to disclose" any idea or fact that confers value on Swan by virtue of its secrecy. *See Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 59, 171 Cal. Rptr. 3d 714, 741 (2014) (disclosure that "does not designate information" but rather describes features, functions, or characteristics does not identify a trade secret). Swan also vaguely refers to document file names and claims those are trade secrets. *See, e.g.*, ECF No. 111-1 at 25 (▮▮▮▮▮▮▮▮▮▮▮▮), 25 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), and 27 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). But Swan also separately publicly filed a list of these file names. ECF No. 182-2 at 3-4. Swan's own treatment of this alleged trade secret information only further highlights the lack of specificity in its disclosure.

## IV.  THE COURT'S RULING ON PROTON'S MOTION TO COMPEL ARBITRATION WILL DETERMINE HOW THIS CASE PROCEEDS

Finally, the Court has stayed this action against Individual Defendants pending an interlocutory appeal of the Court's denying their Motion to Compel Arbitration, as required by *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023). Proton filed a similar Motion to Compel Arbitration which is set to be heard on July 25, 2025. It is Proton's position that this issue should be decided by an arbitrator, not this Court. Therefore, if this Court is inclined to grant Swan's Motion to Compel, Proton requests that any production of documents be ordered for not less than two weeks after a ruling on Proton's Motion to Compel Arbitration or the resolution of any subsequent appeal regarding the same.

## V.  CONCLUSION

For the foregoing reasons, the Court should deny Swan's Motion to Compel.

---

[7] Proton had no reason to believe the filing of this document was inadvertent given that Swan expressly sought to seal other documents in the same filing, not including this letter.

Dated: July 3, 2025          BERGESON, LLP

By:    /s/ Adam C. Trigg
       Adam C. Trigg

Attorneys for Defendant
PROTON MANAGEMENT LTD.