UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | |
|---|---|---|
| Case No. | 2:24-8280 MWC (Ex) | Date: July 21, 2025 |
| Title | Electric Solidus, Inc. v. Proton Management LTD. *et al.* | |

Present: The Honorable:   Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (In Chambers) Order GRANTING Defendant Proton's Motion to Compel Arbitration (Dkt. 194) and STAYING the case as to Proton Management LTD.**

Before the Court is Proton Management Ltd.'s ("Proton") motion to compel arbitration. Dkt. # 194 ("*Mot.*"). Plaintiff Electric Solidus, Inc. d/b/a Swan Bitcoin ("Swan") opposed, Dkt. # 211 ("*Opp.*"), and Proton replied, Dkt. # 217 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving, opposing, and reply papers, the Court **GRANTS** Proton's motion to compel arbitration and **STAYS** the case as to Proton.

I.   Background

This action stems from an alleged coordinated effort by Proton Management Ltd. ("Proton") and the Individual Defendants[1]—former consultants of Swan—to steal Swan's entire Bitcoin mining business. *See* Dkt. # 101 ("*FAC*"). The Court has summarized the allegations underlying this case in a previous order, so it includes below only those allegations and background necessary for deciding the current motion. *See* Dkt. # 164 ("*Order*").

---

[1] The Individual Defendants include Thomas Patrick Furlong ("Furlong"), Ilios Corp., Michael Alexander Holmes ("Holmes"), Rafael Dias Monteleone ("Monteleone"), Santhiran Naidoo ("Naidoo"), Enrique Romualdez ("Romualdez"), and Lucas Vasconcelos ("Vasconcelos").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-8280 MWC (Ex)                                              Date: July 21, 2025

Title      <u>Electric Solidus, Inc. v. Proton Management LTD. *et al.*</u>

  In their involvement with 2040 Energy,[2] the Individual Defendants contracted with Swan to provide consulting services, pursuant to substantially similar consulting agreements (the "Consulting Agreements"). *FAC* ¶ 89; *see id.* Exs. A–F ("*Consulting Agreements*"). The Individual Defendants agreed to act as follows: Defendant Furlong as Investment Director for Swan; Defendant Holmes (who entered into a consulting agreement on behalf of Defendant Ilios Corp., the entity through which Defendant Holmes contracted to provide his consulting services) as Head of Business Development for Swan; Defendant Monteleone as an Investment Analyst for Swan; Defendant Naidoo as Investment Director for Swan; Defendant Romualdez as a Junior Investment Analyst for Swan; and Defendant Vasconcelos as a Software Engineer for Swan. *Id.* ¶¶ 90–95. The Consulting Agreements state that the Individual Defendants and Swan agreed to arbitrate "any and all controversies, claims, or disputes with [Swan], arising out of, relating to, or resulting from consultant's consulting or other relationship with the company or the termination of consultant's or other relationship with the company, including any breach of this agreement, shall be subject to binding arbitration pursuant to California law." *See Consulting Agreements* § 12(A). The Consulting Agreements provide that "except as provided by this agreement, arbitration shall be the sole, exclusive, and final remedy for any dispute between consultant and the company." *Id.* § 12(C). The Consulting Agreements then provide that "the parties agree that any party may also petition the court for injunctive relief where either party alleges or claims a violation of any agreement regarding intellectual property, confidential information or noninterference." *Id.* § 12(D).

  The Individual Defendants' conspirators constituted nearly all of Swan's mining personnel. *FAC* ¶ 117 n.11. As a condition of their employment, the non-party Co-Conspirators[3] signed "Confidentiality and Proprietary Information and Inventions

---

[2] 2040 Energy was a joint venture between Tether (a crypto currency company) and Swan that invested in Bitcoin mining opportunities. *FAC* ¶ 116.

[3] Defendants' conspirators constituted nearly all of Swan's mining personnel, including Zagury ("Zagury") (Swan's then-Chief Investment Officer), Bill Belitsky ("Belitsky") (Swan's then General Counsel), Brett Hiley ("Hiley") (Swan's then-Vice President of Institutional Operations & Research), Tyler Effertz (Swan's then-Financial Controller), Kartheek Sola (Swan's then-Technical Researcher), and Aleksander Dozic ("Dozic") (Swan's then-Accountant). *Id.* ¶ 117 n.11. For purposes of this motion, Proton defines the "Co-Conspirators" as Zagury, Belitsky, Dozik, and Hiley (collectively, the "Co-Conspirators"). *Mot.* 2:12 n.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-8280 MWC (Ex)                                                                 Date: July 21, 2025

Title   <u>Electric Solidus, Inc. v. Proton Management LTD. *et al.*</u>

Agreements" with Swan ("Employee Confidentiality Agreements"). *Id.* ¶ 234. The Employee Confidentiality Agreements state that "acceptance of this offer is contingent upon your execution" of both the confidentiality and arbitration agreements and have an integration clause requiring both agreements to be considered one and the same. Dkt. # 194-3, Exs. 1-4 ("*N&D Letters*"), Ex. 1 ("*Employee Confidentiality Agreements*") ¶¶ 7, 9, 11. The Employee Confidentiality Agreements provide in relevant part:

> 8.1. Binding Arbitration.  I agree that any and all claims or disputes arising from or relating to this Agreement shall be subject to and be resolved by binding arbitration in accordance with the Company's Alternative Dispute Resolution (ADR) Policy and Agreement.

*Employee Confidentiality Agreements*, Ex. A; *see also id.*, Ex. B. The Employee Confidentiality Agreements are governed by the law of each signatory's state: Florida (Zagury), Pennsylvania (Dozic), Washington (Hiley), and Indiana (Belitsky). *FAC* ¶ 229. According to Swan, the Co-Conspirators are not defendants in this action because their agreements with Swan—unlike the Individual Defendants' Consulting Agreements—provide for a different dispute resolution procedure. *Id.* ¶ 117 n.11. Thus, Swan is currently pursuing claims against those individuals consistent with their agreements. *Id.* Those claims include: (1) Trade Secret Misappropriation under the Defend Trade Secrets Act ("DTSA") (18 U.S.C. §§ 1836 *et seq.*); (2) State Trade Secret Misappropriation; (3) Copyright Infringement; (4) Breach of Contract; (5) Tortious Interference with Contractual Relations; (6) Breach of Fiduciary Duties; (7) Unfair Competition; (8) Conversion; (9) Unjust Enrichment; and (10) Civil Conspiracy. *See N&D Letters.*

      On September 25, 2024, Swan filed its original complaint against Proton and the Individual Defendants. Dkt. # 1. At the same time, Swan filed an application for a temporary restraining order ("TRO") seeking to enjoin Proton and the Individual Defendants from, among other things, disclosing or using any Swan proprietary and confidential material or trade secrets. Dkt. # 8. Notably, in their opposition to the TRO, Proton and the Individual Defendants represented that, to the extent they were using Swan's proprietary information and trade secrets, they were using that information "solely for the benefit of 2040 Energy . . . and no others." Dkt. # 29-1, 4:26–28. The Court denied Swan's request for relief on October 4, 2024, but nonetheless set a briefing schedule for preliminary injunction for November 8, 2024. Dkts. # 40, 41. On October 18, 2024, Swan withdrew its request for preliminary injunction without prejudice to being refiled after additional discovery. Dkt. # 55.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-8280 MWC (Ex)                                        Date: July 21, 2025

Title   <u>Electric Solidus, Inc. v. Proton Management LTD. *et al.*</u>

    On January 27, 2025, Swan filed its first amended complaint ("FAC"). *FAC*. Swan alleges the following causes of actions: (1) Trade Secret Misappropriation under the DTSA (18 U.S.C. §§ 1836 *et seq.*) against Proton and the Individual Defendants; (2) Breach of Contract against the Individual Defendants; (3) Tortious Interference with Contractual Relations against Defendants Proton, Holmes, and Naidoo; (4) Aiding and Abetting Breach of Duty of Loyalty against Proton; (5) Unfair Competition (California Business & Professions Code § 17200) against Proton and the Individual Defendants; (6) Conversion against the Individual Defendants; and (7) Civil Conspiracy against Proton and the Individual Defendants. *See id.* Swan seeks preliminary relief against the Individual Defendants pursuant to the executed Consulting Agreements and preliminary and permanent injunction against Proton. *See id.*

    In late February 2025, the Individual Defendants filed (1) a motion to compel arbitration or, in the alternative, motion to dismiss for failure to state a claim; and (2) a motion to stay pending "determination of threshold issues" in the UK proceeding. Dkts. # 122, 124. Proton filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, motion to dismiss for failure to state a claim. Dkt. # 121. On March 28, 2025, the Court issued an order ("Order") addressing each motion. *See Order*. Specifically, the Court granted Individual Defendants' motion to compel arbitration as to the conversion claim but denied the motion to compel arbitration as to the remaining claims on the basis that those claims did not raise any question of arbitrability because Swan had tailored its claims to pray for pure interim relief. *See id.* The Court denied Individual Defendants' motion to dismiss for failure to state a claim. *See id.* The Court denied Proton's motion to dismiss for lack of personal jurisdiction and denied Proton's motion to dismiss for failure to state a claim as to all claims except civil conspiracy. *See id.* The Court denied Individual Defendants' motion to stay. *See id.*

    On April 25, 2025, pursuant to 9 U.S.C. § 16(a), the Individual Defendants appealed from the Order denying in substantial part the Motion to Compel Arbitration.[4] Dkt. # 180. On May 27, 2025, the Court stayed the case as to the Individual Defendants pending appeal of the Order. Dkt # 218.

---

[4] The Ninth Circuit ordered that the opening brief was due June 18, 2025; the answering brief is due July 18, 2025; and the optional reply brief is due August 8, 2025. Dkt. # 216. The Ninth Circuit further ordered that the case will be assigned to the next available panel upon the completion of briefing. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-8280 MWC (Ex)                                           Date: July 21, 2025

Title        Electric Solidus, Inc. v. Proton Management LTD. *et al.*

II.   Legal Standard

The Federal Arbitration Act ("FAA") "governs arbitration agreements in contracts evincing 'a transaction involving commerce.'" *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021) (quoting 9 U.S.C. § 2).  It "declares 'a liberal federal policy favoring arbitration' and provides that such agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Id.* (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) and 9 U.S.C. § 2).

The FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  A district court's role is "limited to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'"  *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the answer to both questions is yes, then the FAA requires a court 'to enforce the arbitration agreement in accordance with its terms.' " Id. (quoting *Chiron Corp.*, 207 F.3d at 1130).  "In construing an arbitration agreement, courts must 'apply ordinary state-law principles that govern the formation of contracts.'" *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  "[A]mbiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Applicable here, "[t]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632 (2009)).

III.   Discussion

Proton contends that it may compel arbitration because the Consulting Agreements and the Employee Confidentiality Agreements form the basis of Swan's claims.  *Mot.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:24-8280 MWC (Ex) | Date: July 21, 2025 |
| Title | Electric Solidus, Inc. v. Proton Management LTD. *et al.* | |

8:23–17:7.  Swan counters that Proton has waived any right to compel arbitration, *Opp.* 10:20–18:20, and that—even if Proton did not waive its right—Proton cannot invoke the underlying contracts, *id.* 19:1–23:17.  As set forth below, the Court finds that Proton did not waive its right to compel arbitration and that arbitration is appropriate under the Employee Confidentiality Agreements.

    A.    <u>Waiver of the Right to Compel Arbitration</u>

Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022).  Swan, as the party asserting waiver, must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that right.  *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. Feb. 3, 2023).  Proton does not dispute Swan's contentions that Proton was aware of its purported rights to compel arbitration under the Consulting Agreements and Employment Agreements by no later than September 2024.  *See Opp.* 10:23–11:12; *see generally Reply*.  Thus, the Court will focus on whether Swan establishes the second element: whether Proton acted inconsistently with its right to arbitrate.

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate."  *Alvarez v. Sheraton Operating Corp.*, No. 22-55749, 2023 WL 2491279, at *1 (9th Cir. Mar. 14, 2023) (quoting *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016)).  Rather, courts analyze the totality of the parties' actions using a "holistic approach." *Id.*  "[P]rejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." *Morgan*, 596 U.S. at 417.

Swan argues that Proton acted inconsistently in the following ways.  Proton litigated the merits twice, including moving to dismiss each of Swan's claims in its entirety under Rule 12(b)(6) and obtaining that relief as to one of Swan's claims.  *Opp.* 11:25–13:4.  Proton engaged in discovery and other litigation conduct, including (i) seeking discovery from Swan (including serving dozens of requests) and making informal demands for document production from Swan and from third parties; (ii) serving nine sets of discovery responses, none of which mentioned any right to arbitration; (iii) informing the Court that it would be providing more discovery; (iv) submitting a Joint Rule 26(f) Report with a schedule, (v) filing an answer; (vi) negotiating a protective order; (vii) engaging in unsuccessful motion practice aimed at permitting broad sharing of Swan's confidential information with third parties, and successful motion practice to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-8280 MWC (Ex)                                                                                     Date: July 21, 2025

Title        Electric Solidus, Inc. v. Proton Management LTD. *et al.*

limit logging of privileged communications; (vii) joined in multiple motions to stay the case and limit third-party discovery—all for reasons other than purported arbitrability of the claims against Proton; and (ix) seeking to narrow Swan's trade secret claims pursuant to procedural rules that do not exist in arbitration. *Id.* 14:11–15:25. Proton also sought to compel from Swan a more detailed trade secret identification. *Id.* 16:1–5. Furthermore, Proton invoked a "nonsense" excuse that it ceased to engage in discovery once it realized that Swan would argue waiver. *Id.* 16:13–7:6. In its Rule 26(f) Report, Proton informed the Court that it would move to compel arbitration if the Court found personal jurisdiction against Proton and granted the Individual Defendants' motion to compel arbitration—which is not what happened. *Id.* 17:7–24. Finally, Proton's seven-plus month delay in compelling arbitration suggests waiver. *Id.* 18:1–14.

The Court finds that, under the totality of the circumstances, Swan has failed to demonstrate that Proton waived its right to arbitrate. First, the fact that Proton moved to dismiss under 12(b)(2) and 12(b)(6) does not constitute a waiver. *See Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 920-921 (N.D. Cal. 2024) ("[Defendant's] first basis for dismissal in its pending motion to dismiss is the threshold jurisdictional issue that Plaintiff lacks Article III standing. Although [Defendant] has also moved to dismiss on substantive grounds, it was required to present all arguments—jurisdictional and merit-based—under Rule 12(g) or risk waiving Rule 12 defenses."); *Galaxia Elecs. Co. v. Luxmax, U.S.A.*, No. LA CV16-05144 JAK (GJSx), 2018 WL 11421517, at *11 (C.D. Cal. June 6, 2018) ("[T]he principal basis for the motion to dismiss the FAC was lack of personal jurisdiction and improper venue. Although the Moving Defendants sought alternative relief by moving to dismiss for a failure to state a claim, the filing of a motion to dismiss standing alone 'will not be sufficient to constitute a waiver of the right to compel arbitration.'" (internal citations omitted)). While "[n]othing prevented [Proton] from filing a motion to compel arbitration immediately," *FBC Mortg., LLC v. Skarg*, 699 F. Supp. 3d 837, 842 (N.D. Cal. 2023), Proton's actions were not per se inconsistent merely because it moved to dismiss for lack of personal jurisdiction (and did not risk waiving its 12(b) defenses).[5] Indeed, it is telling that Proton did not solely move to

---

[5] Proton argues that filing a motion to compel arbitration would have waived any objections to personal jurisdiction. Reply 4:18–5:7 (citing *Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, No. 1:15–cv–00582–JAM–EPG, 2015 WL 6689572, at *2 (E.D. Cal. Oct. 30, 2015)). Not so. Although *Nationwide* states that it cannot rule on a motion to compel arbitration filed by defendant without having personal jurisdiction over defendant, *Nationwide*, 2015 WL 6689572, at *2, that statement is incorrect as the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:24-8280 MWC (Ex) | Date: July 21, 2025 |
| Title | Electric Solidus, Inc. v. Proton Management LTD. *et al.* | |

dismiss on the merits, and Proton's initial motion to dismiss to Swan's initial complaint focused solely on the lack of personal jurisdiction. *See* Dkt. # 79. *Cf. Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (holding that defendants engaged in conduct inconsistent with their right to arbitrate where they filed a motion to dismiss on a key merits issue); *Alvarez v. Sheraton Operating Corp.*, No. CV 20-03608 TJH (JCx), 2022 WL 19767260, at *3–4 (C.D. Cal. July 12, 2022) (finding waiver where defendants removed the case and moved to dismiss for failure to state a claim, then proceeded to litigate the merits of the case for 13 months after the motion to dismiss was granted in part). The Court also notes that Proton's lack of personal jurisdiction arguments did not necessarily lack merit. *See Order* at 14–21.

Second, as to Swan's contention that Proton's seven-plus month delay suggests waiver, Proton was not an ordinary litigant availing itself of federal court, and it never wavered from the view that it had a right to arbitration. On February 24, 2025, Proton informed the Court in the Parties' Rule 26(f) Report of its arbitration right. Dkt. # 114-1. On April 14, 2025, Proton requested that Swan submit its claims to arbitration. Dkt. # 194-5. The parties met and conferred on April 18, 2025, and Swan stated that it would not agree to arbitration. Dkt. # 194-1 ¶ 6. On April 30, 2025, Proton asserted arbitration as an affirmative defense in its Answer, Dkt. # 187. *See Ashirwad v. Charter Commc'ns, LLC*, No. 21-CV-02101-AJB-DDL, 2023 WL 3564938, at *3 (S.D. Cal. Mar. 20, 2023) (finding that defendants did not waive by filing motion to compel 8 months after the case was filed and raising arbitration as affirmative defense in their answer). Swan argues that Proton is changing its strategy despite its statement in the Rule 26(f) Report that expressly stated that "it would move to compel arbitration if the Court found personal jurisdiction ***and*** granted the Individual Defendants' motion to compel arbitration." *Opp.* 17:7–24 (emphasis in original). That argument is a red herring. Though the Court acknowledges the conjunctive language used in the Rule 26(f) Report, such language does not bar Proton from filing a motion to compel arbitration considering its conduct over the course of this case.

Third, Proton has defended itself against Swan's aggressive litigation approach. The Court recognizes that Swan is free to choose its litigation strategy, but its strategy

---

only needs personal jurisdiction over the non-moving party to compel arbitration. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007); *In re Boon Glob., Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (holding courts must have personal jurisdiction "over each individual third-party entity" before compelling them to arbitrate).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-8280 MWC (Ex)                                                             Date: July 21, 2025

Title   Electric Solidus, Inc. v. Proton Management LTD. *et al.*

should not imperil Proton's arbitration rights.  That is, Proton's litigation conduct does not constitute waiver considering that Swan seeks a preliminary injunction against the Individual Defendants and Proton, and the fact that the case is not currently stayed against Proton.  It would defy logic for Proton to not engage in discovery given the nature of this litigation.  Indeed, Proton recently ceasing to engage in discovery shortly after it became clear that Swan would argue waiver further bolsters Proton's position.  Courts have rejected the assertion that a party's actions to protect itself in litigation constitutes waiver.  *See, e.g.*, *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1016 (9th Cir. 2023) (holding that the defendant's limited discovery requests, which included serving five interrogatories and requiring the plaintiff to produce twenty-eight pages of documents, "did not evince a decision to take advantage of the judicial forum"); *Palmer v. Omni Hotel Mgmt. Corp.,* No. 15-cv-1527-JM-MDD, 2016 WL 816017, at *4 (S.D. Cal. Mar. 1, 2016) (finding that the party's "litigation activity, which includes opposing a motion to transfer venue, engaging in written discovery related to class certification, and taking a deposition," was insufficient to establish a waiver); *Hill v. Xerox Bus. Servs., LLC*, No. C12-0717-JCC, 2020 WL 5095453, at *4 (W.D. Wash. Aug. 28, 2020) ("[E]ngaging in limited, non-merits discovery for a few months and moving to stay a lawsuit is 'not so inconsistent with a right to arbitrate that [the party seeking arbitration] can be held to have waived any such right.'" (internal citations omitted)), *aff'd,* 59 F.4th 457 (9th Cir. 2023)).

Accordingly, Proton has not waived its arbitration rights.

B.   <u>Compelling Arbitration Through Equitable Estoppel</u>

"The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer*, 705 F.3d at 1128 (citing *Carlisle*, 556 U.S. at 632).  Under the applicable law to the Employee Confidentiality Agreements, equitable estoppel allows a non-signatory to an arbitration agreement to compel a signatory to that agreement to arbitration.[6]  *See Fla. Woman Care LLC v.*

---

[6] Because the arbitrability of the Consulting Agreements is currently before the Ninth Circuit, the Court will not address arbitrability under the Consulting Agreements at this juncture.  In any event, the Court does not need to consider the Consulting Agreements because, as discussed below, it compels arbitration pursuant to the Employee

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:24-8280 MWC (Ex) | Date: July 21, 2025 |
| Title | Electric Solidus, Inc. v. Proton Management LTD. *et al.* | |

*Nguyen*, 329 So. 3d 146, 150 (Fla. Dist. Ct. App. 2021); *Main St. Bus. Funding, LLC v. Goldner*, No. 1544 EDA 2017, 2018 WL 6191066, at *4 (Pa. Super. Ct. Nov. 28, 2018); *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836, 838-841 (1981); *David Terry Invs., LLC-PRC v. Headwaters Dev. Grp., LLC,* 13 Wn. App. 2d 159, 171 (2020). Because the applicability of equitable estoppel is similar in each state at issue here and there is no apparent conflict, the Court engages in one analysis based on California law, as the parties have done in their briefs.

Compelling the arbitration for claims against a non-signatory is proper under the following two circumstances:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract; and

> (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

*Kramer*, 705 F.3d at 1128–29 (internal citations omitted).

The Court focuses its analysis on the second basis, whether Swan's claims allege "interdependent and concerted misconduct"—it does. *Kramer*, 705 F.3d at 1128–29. Swan argues that "'mere allegations of collusive behavior … are not enough … It is the relationship of the claims [to the contract], not merely the collusive behavior of the signatory and nonsignatory parties, that is key.'" *Opp.* 21:16–19 (quoting *Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934 (N.D. Cal.), *aff'd*, 870 F.3d 1342 (Fed. Cir. 2017)). That proposition, however, is not applicable here. While Swan argues that it does not have to rely on the agreements to prove its DTSA claim against Proton, *Opp.* 19:25–20:19, it is clear that Proton will dispute any ownership based on the agreements themselves. For instance, Proton contends:

---

Confidentiality Agreements. Notably, Swan does not take issue with Proton invoking separate arbitration provisions.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:24-8280 MWC (Ex) | Date: July 21, 2025 |
| Title | Electric Solidus, Inc. v. Proton Management LTD. *et al.* | |

[T]hat the alleged trade secrets were created or possessed by Swan's former consultants and employees begs the question of the competing claims between Swan and 2040 Energy, as the alleged trade secrets were created for the latter and under the Shareholder Agreement that created 2040 Energy. Swan needs the agreements to even attempt to argue that it, and only it, owns the alleged trade secrets). That is why it repeatedly points to the agreements to assert its claim to ownership. Swan's assertion that other individuals referred to the alleged trade secrets is clearly insufficient to claim ownership. A person claiming to own a house cannot rely on a statement by a neighbor to that effect; they have to produce the deed.

*Reply* 9:5–20. Swan claims its former employees and consultants created the alleged trade secrets while bound by agreements requiring arbitration and used the alleged trade secrets in violation of duty to disclose in the agreements, all while acting in concert with Proton. *See generally FAC*. The Court finds that Swan's claims against Proton are "based on the same facts and are inherently inseparable to those against" the Co-Conspirators, which has a clear nexus to the Employee Confidentiality Agreements and 2040 Energy—not just mere collusive allegations. *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 954–55 (N.D. Cal. 2023) (internal quotation marks and citations omitted). *Cf. Ford Motor Warranty Cases*, No. S279969, 2025 WL 1830882, at *1 (Cal. July 3, 2025) ("Ford seeks to invoke an arbitration clause in a dispute flowing, not from the contract where the arbitration clause appears, but from obligations imposed by statute or conventional fraud duties."). Indeed, Swan's allegations of misconduct against Proton are like those against other non-signatory defendants where courts have found substantially interdependent and concerted misconduct. *See, e.g., Turing Video Tech., Inc. v. AGI7 Inc.*, No. 24-CV-04606-EKL, 2025 WL 579190, at *5 (N.D. Cal. Feb. 21, 2025) (finding the second basis for equitable estoppel was met where plaintiff alleged that non-signatory defendant knowingly misappropriated trade secrets where the signatory—a non-party and the CEO and founder of the non-signatory defendant—acted at the direction of and for the benefit of non-signatory defendant); *Oren Enters., Inc. v. Stefanie Cove & Co.*, No. CV 17-3619 PA (AFMX), 2017 WL 8220230, at *1, *4 (C.D. Cal. June 2, 2017) (finding both equitable estoppel bases were met where, among other things, "[p]laintiffs allege[d] that while still working at Oren Enterprises, Cove stole trade secrets and confidential information, including client contact and vendor information, for the benefit of SCC" and later "Cove, Shell, and SCC have used this stolen information to solicit Oren Enterprises' clients").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   2:24-8280 MWC (Ex)                                                                 Date: July 21, 2025

Title   <u>Electric Solidus, Inc. v. Proton Management LTD. *et al.*</u>

Swan also raises public policy concerns, *Opp.* 22:1–5, but those concerns miss the mark as the Court's finding is not "tantamount to holding that any company that hired any person who signed an arbitration agreement with his or her former employer could selectively and defensively assert the arbitration agreement to deny access to the courts by an aggrieved party who seeks to vindicate their [trade secret] rights." *Mattson Tech., Inc. v. Applied Materials, Inc.*, 96 Cal. App. 5th 1149, 1158 (2023) (stating such where the trade secret claim did not rely on the employment contract).

In sum, Proton has demonstrated a basis for invoking equitable estoppel here as to Swan's trade secret claim. The Court refrains from analyzing the remaining claims (i.e., tortious interference with contractual relations and unfair competition) as it follows that those claims also satisfy the second basis for equitable estoppel considering that Swan is currently invoking those claims against the Co-Conspirators in arbitration and the evident overlap with Proton's alleged involvement. Accordingly, the Court **GRANTS** Proton's motion to compel arbitration and a stay is issued as to the arbitrable claims. *See* 9 U.S.C. § 3 (a court "shall on application of one of the parties stay the trial of the action until [the] arbitration has been had in accordance with the terms of the agreement").

C.   <u>*Stay as to the Aiding & Abetting Claim*</u>

The parties agree that Swan's aiding and abetting claim against Proton is non-arbitrable against a non-signatory. Proton requests that the aiding and abetting claim be stayed. *Mot.* 17:8–19:2. For the reasons discussed below, the Court finds that a stay is warranted.

Where there is a non-arbitrable claim, it is "within a district court's discretion whether to stay" or proceed with the litigation on that claim. *See Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 989–990 (N.D. Cal. 2016). "Permissible bases for exercising discretion to stay all claims include: (1) the economy and efficiency that result from avoiding duplication of effort; (2) how suited the dispute is to the arbitration process; and (3) the interdependence of the arbitrable claims and the non-arbitrable claims." *Gray v. Conseco, Inc.*, No. SA CV 00-322DOC(EEX), 2000 WL 1480273, at *8 (C.D. Cal. Sept. 29, 2000) (citations omitted).

In this case, nearly all claims against Proton are arbitrable and the non-arbitrable claim is based on the same facts and issues as the arbitrable claims. The Court recognizes the issue that the aiding and abetting claim is premised on Proton's alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No.  2:24-8280 MWC (Ex) | Date: July 21, 2025 |
| Title  Electric Solidus, Inc. v. Proton Management LTD. *et al.* | |

involvement with both the Individual Defendants and Co-Conspirators.  However, the outcome of the aiding and abetting claim is dependent upon the arbitrator's decision to the extent it relates to Proton's alleged involvement with the Co-Conspirators.  That said, the arbitrator's findings (and discovery) will nonetheless overlap with Proton's involvement with the Individual Defendants.  To the extent that Proton's involvement with the Individual Defendants is not covered by the arbitrator, the Court will revisit the issue once the stay is lifted—if necessary.  Therefore, to promote judicial economy and efficiency, the Court stays the aiding and abetting claim pending the outcome of arbitration.  To clarify, the Court's stay is limited to Proton and does not affect the Individual Defendants.

IV.     Conclusion

For the reasons set forth above, the Court **GRANTS** Proton's motion to compel arbitration.  The Court **STAYS** both the arbitrable and non-arbitrable claims, meaning that this case is stayed as to Proton pending the outcome of arbitration.  The parties shall immediately notify the Court when the arbitration has concluded.

**IT IS SO ORDERED.**

:

**Initials of Preparer**   TJ