# EXHIBIT T

**From:** Kanny, Matthew P <MKanny@goodwinlaw.com>
**Sent:** Tuesday, October 7, 2025 11:47 AM
**To:** Stacylyn Doore <stacylyndoore@quinnemanuel.com>; Adam Trigg <atrigg@be-law.com>
**Cc:** Fondo, Grant P <GFondo@goodwinlaw.com>; Russo, Amanda <ARusso@goodwinlaw.com>
**Subject:** RE: Swan

**[EXTERNAL EMAIL from mkanny@goodwinlaw.com]**

Stacylyn,

Defendants are following up on several items discussed on our call on Thursday, September 25.  In that call, Swan advised that, after almost a year of actively litigating this action in federal court, Swan is now seeking  to dismiss it, pursuant to Rule 41(a)(ii) and in light of Swan's recent undertakings in the UK litigation (which we understand were entered into on the eve of the September 2025 trial on the ownership issues) in which Swan has agreed that the "Business Assets" are in fact owned exclusively by 2040 Energy (a position that Defendants in this action have taken since the outset), and not by Swan. also understand that, in the UK proceeding, Swan further agreed not to further litigate the ownership of the Business Assets in any forum, which means that all trade secret-related claims it brought against Defendants in this case are dead.  This is after Swan represented to the Court that, in opposing a short stay of the US litigation pending resolution of the ownership issue in the UK litigation, resolution of that issue in the UK would not resolve the parties' rights in this federal court litigation, a representation that now turns out to be (at best) inaccurate.

This is a remarkable and material about-face in this litigation.  Swan represented dozens of times in this federal court proceeding that it owned the disputed trade secrets and confidential information.  Swan even claimed that contracts it did not sign were nonetheless entered into by Swan and that Swan owned those, too.  Swan's apparent contention that it has made a tactical decision to drop these claims in favor of others is not credible, particularly after Swan's repeated representations that Defendants stole the "keys" to *its* mining business.  Swan has also vigorously and repeatedly opposed dropping the federal court litigation in favor of arbitration, the parties' chosen forum in their Consulting Agreements.  After almost a year of litigation, Swan has now agreed to proceed against the Defendants in arbitration only.

Why would Swan just drop these claims and proceed on other claims against Defendants in arbitration only?  Defendants believe the answer is obvious——Not only did Swan not own the Business Assets at issue, but Swan wanted to avoid an adverse ruling against it in the UK litigation and potential cross-examination of its witnesses.   But from our perspective, for almost a year, Defendants have been forced to expend significant time and incur substantial costs in defending against claims that Swan should never have brought in the first instance, and suffered reputational harm, including caused by statements to the press by Swan's CEO.

As discussed in our call, to fully evaluate our position regarding Swan's request regarding dismissal, we need the following clarifications/information:

1

1. We asked Swan to confirm that the "Business Assets," as that term is used in the undertakings, include each of the alleged trade secrets (and all related documents) claimed in Swan's 2019.210 Trade Secret Identification (ECF No. 111). You said you "thought" they were all included but indicated you would confirm and get back to us.

2. Relatedly, we asked whether, in light of Swan's undertakings, Swan would be willing to stipulate to dismiss with prejudice all trade secret-related claims in this federal court action. While you seemed willing to consider this, you have yet to advise whether Swan is in fact willing to do so.

3. We asked Swan to confirm that the "Business Assets," as that term is used in the undertakings, include all documents identified in Exhibit G to the Amended Complaint. You advised that you did not believe that all items in Exhibit G were "Business Assets." We asked for clarification regarding Swan's position, and to the extent Swan claims that any information in Exhibit G is not a Business Asset, we ask Swan to identify which ones are not included, and its reasoning for its position. We have yet to hear back from Swan on this issue.

4. We asked whether Swan contends that it owns or has rights to any Business Assets under U.S. law (as opposed to UK law). You did not provide a substantive response to that question in our call.

5. With respect to the pending appeal, we asked whether Swan would stipulate to the relief sought by the Individual Defendants in their motion to compel arbitration—that the injunction relief provision in the Consulting Agreements only permits temporary injunctive relief in aid of arbitration and any dispute about arbitrability (including the scope of the injunctive relief provision) should go to the arbitrator for a determination and not the court; and that "in aid of arbitration" is limited to maintaining the status quo pending appointment of an arbitrator and a decision by the arbitrator on the request for interim relief. We have not received a substantive response to this issue.

6. We asked Swan to disclose Swan's alleged intended claims in arbitration to evaluate whether any of these claims violates the undertakings. You indicated that you did not know the full scope of the claims yet and have not further responded to our request.

7. We requested Swan to produce all disclosures of documents or information made by any party in the UK litigation and provide us with continued access to any further disclosures exchanged by any party. You advised that you believe those documents are no longer confidential and could be disclosed and that you would confirm same.

8. We additionally requested Swan to produce the skeleton of arguments it submitted to the Court in the UK litigation (including at the February 2025 hearing) and access to any other non-public pleadings to which it can legally provide access.

The above information is necessary for us to evaluate and determine Defendants' position on whether

with or without prejudice, and whether Defendants are entitled to their attorneys' fees and costs incurred in this litigation.

To make our next call productive, we hereby request that you provide the above information before our call on Thursday.  Thank you for your immediate attention to this matter.  All rights reserved.

---

**From:** Stacylyn Doore <stacylyndoore@quinnemanuel.com>
**Sent:** Monday, October 6, 2025 3:06 PM
**To:** Kanny, Matthew P <MKanny@goodwinlaw.com>; Adam Trigg <atrigg@be-law.com>
**Subject:** RE: Swan

\*\*\*EXTERNAL\*\*\*
Thanks, Matt.  Yes, I'm available at 5 ET/2 PT on Thursday.  I can send a Zoom.

**Stacylyn Doore**
*Partner*
**Quinn Emanuel Urquhart & Sullivan, LLP**

111 Huntington Ave Suite 520
Boston, MA 02199
617-712-7121 Direct
617.712.7100 Main Office Number
617.712.7200 FAX
stacylyndoore@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Kanny, Matthew P <MKanny@goodwinlaw.com>
**Sent:** Saturday, October 4, 2025 5:27 PM
**To:** Stacylyn Doore <stacylyndoore@quinnemanuel.com>; Adam Trigg <atrigg@be-law.com>
**Subject:** RE: Swan

3

[EXTERNAL EMAIL from mkanny@goodwinlaw.com]

To be clear, these are PT times.

**From:** Kanny, Matthew P
**Sent:** Saturday, October 4, 2025 1:46 PM
**To:** Stacylyn Doore <stacylyndoore@quinnemanuel.com>; Adam Trigg <atrigg@be-law.com>
**Subject:** RE: Swan

Stacylyn, does Thursday between 1:30-3:30 work for you?

**From:** Stacylyn Doore <stacylyndoore@quinnemanuel.com>
**Sent:** Friday, October 3, 2025 1:29 PM
**To:** Adam Trigg <atrigg@be-law.com>; Kanny, Matthew P <MKanny@goodwinlaw.com>
**Subject:** Swan

***EXTERNAL***
Adam, Matt,

What's your availability mid-week next week to continue our discussion re: Swan?

Thanks,
Stacylyn


**Stacylyn Doore**
*Partner*
**Quinn Emanuel Urquhart & Sullivan, LLP**

111 Huntington Ave Suite 520
Boston, MA 02199
617-712-7121 Direct
617.712.7100 Main Office Number
617.712.7200 FAX
stacylyndoore@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.




******************************************************************
This message was sent from Goodwin Procter LLP and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

*****************************************************************

*****************************************************************