# EXHIBIT U

# Redacted Version of Document Proposed To Be Filed Under Seal

**quinn emanuel** trial lawyers | boston

111 Huntington Ave., Suite 520, Boston, MA 12199 | TEL (617) 712-7100 FAX (617) 712-7200

WRITER'S DIRECT DIAL NO.
**(617) 712-7121**

WRITER'S EMAIL ADDRESS
**stacylyndoore@quinnemanuel.com**

October 9, 2025

**VIA EMAIL**

Matthew P. Kanny
Goodwin Procter LLP
520 Broadway, Suite 500
Santa Monica, CA 90401-2449
MKanny@goodwinlaw.com

Re:    *Electric Solidus, Inc. d/b/a Swan Bitcoin v. Proton Management Ltd., et al.*, Case No.
2:24-cv-8280-MWC (C.D. Cal.)

Counsel:

We write in response to your October 7, 2025 email and to follow up on issues discussed during calls last week.

Your email either misunderstands or mischaracterizes the positions that Swan has taken in this action, recent events in the UK proceedings, and the key facts underlying Defendants' misconduct. As such, we do not believe that engaging with the "clarifications/information" identified in your October 7 email is a productive use of the parties' time, or that Defendants are entitled to the requested information—they are not. We will respond under separate cover with what we believe is a more productive path forward. However, the following points bear addressing.

*First*, your suggestion that Swan can no longer maintain or bring any trade secret-related claims against Defendants is false. In connection with the UK proceedings, Swan has undertaken not to pursue any suit involving a claim or seeking a remedy affecting or concerning control or ownership of the "Business Assets" other than in accordance with the Exclusive Jurisdiction Clause of the 2040 Energy Shareholders Agreement. This undertaking does not foreclose Swan from bringing trade-secret (or other) claims against Defendants for theft and misuse of Swan's confidential information that is not "Business Assets," including, but not limited to, in connection with Defendants' theft of the files listed on Exhibit G to the Amended Complaint. As Swan has made clear to counsel for Claimants in the UK proceedings, Exhibit G identifies a list of documents and files that the Individual Defendants and their co-conspirators stole at the time of their departure from Swan. That list is not coterminous with the "Business Assets" that are the subject of the undertakings in the UK, and Swan's undertakings do not foreclose Swan from bringing claims

**quinn emanuel urquhart & sullivan, llp**
ATLANTA | AUSTIN | BOSTON | BRUSSELS | CHICAGO | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM |
MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI |
SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

based on the theft of information listed on Exhibit G—or any other Swan information—which are not "Business Assets."

We take from your October 7 email asking Swan to identify which of the documents listed in Exhibit G are not "Business Assets" that you understand this distinction: Swan's proprietary trade secrets that were stolen, including but not limited to documents contained in Exhibit G, are not all "Business Assets." As you may be aware, "Business Assets" was never defined by the Claimants in the UK Proceedings—despite claims to exclusive ownership of proprietary information 2040 could not identify a single document that it actually claimed was its proprietary information. Simply put, the fact that the Claimants in the UK proceedings never defined the complete scope of "Business Assets" is a problem of their own creation, and certainly not a problem that Swan is required to solve for them. Suffice to say, Swan has made clear that "Business Assets" is not coterminous with the Swan trade secrets Defendants stole, and Swan has every right to continue to pursue trade secrets theft claims against Defendants.

*Second*, you are wrong to suggest that Swan agreed to these undertakings "to avoid an adverse ruling" or cross-examination of its witnesses in the UK proceedings. As the Judge in the UK proceedings acknowledged, "[t]he concession made here is expressed to be pragmatic, as concessions often are." As outlined further below, Defendants repeatedly claimed—including to the Court—that they were not mining Bitcoin outside of 2040. Were that true, Swan's trade secrets theft claims, including specifically with respect to damages, would arguably depend on Swan's claiming and proving an ownership interest in the trade secrets. Now that the claim that Defendants have solely mined for 2040 Energy has proven to be false, and in fact the plan all along was to mine outside of 2040 Energy, Swan can show significant harm (on the order of hundreds of millions of dollars), without needing to undertake the time or expense of proving that it had an ownership interest in the trade secrets. Defendants gutted the very joint venture that they told the Court they were "solely" working for—Swan intends to focus its efforts on prosecuting claims related to that theft. Indeed, the only defense Defendants previously raised to trade secret theft— that the trade secrets belonged to 2040 Energy—is no longer relevant.

*Third*, your suggestion that Swan intends to pursue claims against Defendants "in arbitration only" ignores the possibility that Swan may pursue claims on a derivative basis, on behalf of 2040 Energy, against Defendants for their misappropriation of any trade secrets that belong to 2040 Energy (or other causes of action which 2040 Energy may have against Defendants). The undertakings to which Swan has agreed in the UK proceedings do not prevent Swan from doing so, and Swan is free to—and intends to—use the documents that the UK Claimants have produced to Swan in prosecuting those claims.

*Fourth*, Swan's proposal to dismiss this action pursuant to Federal Rule 41(a)(1)(A)(ii) is not driven by any developments in the UK proceedings. In July, the Court granted Proton's motion to compel the majority of Swan's claims against it to arbitration. *See* Dkt. 250. After evaluating its options and considering the likely trajectory of this case, including the time it would take to resolve any appeal of that decision, Swan has determined that its time and resources are better spent, and its rights more likely to be expeditiously vindicated, pursuing other avenues of relief— such as arbitrations against the Individual Defendants and Proton, as well as (per above) potential derivative claims against Defendants on behalf of 2040 Energy. Swan has consistently maintained, and continues to maintain, that it has a legal basis to pursue its pending federal claims against Defendants regardless of the outcome of the ownership dispute in the UK proceedings. *See, e.g.*,

2

Dkt. 134 at 17 ("Even if the UK Court were to find that 2040 Energy *also* had an ownership or possessory interest in the trade secrets, and even if that finding were somehow binding in this action, that still would not defeat Swan's trade secret claims because Swan owns a stake in 2040 Energy."). Your assumptions about Swan's motives are thus unfounded and inaccurate.

*Finally*, as previewed above, your assertion that *Defendants* are the ones who have somehow been forced to expend unnecessary time and resources during this litigation is sorely misplaced. Throughout this case, Defendants have done everything in their power to delay discovery and prolong resolution of key issues in dispute—including misrepresenting key facts related to those issues in an attempt to forestall the forward progress of the proceedings. In fact, the very clients you represent, the Individual Defendants, never produced a single document.

At the outset of this case, Defendants represented to the Court that, to the extent the Individual Defendants were using the information that they stole upon their departures from Swan, they were doing so only for the benefit of 2040 Energy. This representation was a core defense that you and your clients raised in opposing Swan's initial request for temporary injunctive relief. *See* Dkt. 29-1 at 4 ("[T]o the extent any information from Swan is being used by any of the Defendants, it is being used solely for the benefit of 2040 Energy (in which Swan is a minority shareholder), and no others."); Dkt. 29-1 at 12 ("Proton and the Individual Defendants are working only for 2040 Energy. Therefore, to the extent the Individual Defendants are using purported trade secrets, it is for the sole benefit of 2040 Energy—and thus Swan too. Therefore, there is no actual, let alone irreparable, harm to Swan.").

The documents that Defendants finally produced, after being ordered to do so by the Court, confirm that the representations you and your clients made to the Court in September 2024, and failed to correct for months following that date, were false. The documents make clear that



PROTON00000978.   These documents also demonstrate that Defendants ███████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████ *See id.* (listing operations and revenue from a web of different entities or projects, with names like ███████████████████████████████████ and similar).

Discovery in the UK proceedings has confirmed that this was Defendants' scheme all along—including before you and your clients represented otherwise to the Court in September of last year. For example, on July 30, 2024, Alex Holmes, San Naidoo, and other conspirators circulated a slide deck that Raphael Zagury referred to as an "updated business plan," which laid bare their plan to move the mining operations outside of 2040 Energy:



To be clear, this document predates and squarely contradicts your and your client's subsequent representations to the Court that Defendants were working solely for the benefit of 2040 Energy.  We note that, pursuant to the September 9, 2025 Order of Judge Henshaw in the UK proceedings, Swan has the express permission of that court to use these documents for purposes other than the UK proceedings.

You have since admitted—as you must given these documents—that the Defendants have mined Bitcoin outside of 2040.  During prior conversations regarding these misrepresentations, you have sought to excuse you and your clients' September 2024 misrepresentations to the Court by claiming that they were "true when made" or otherwise minimize what you believe to be a singular misrepresentation.  Based on just the limited discovery Swan has received in the various actions related to parties' dispute, we strongly believe that your September 2024 representations to the Court were not "true when made."  At the very least, it defies belief that those representations were made "to the best of [your] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances."  Fed. R. Civ. P. 11(b).  Even a cursory investigation at the time should have revealed that those representations did not "have evidentiary support" nor were "likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery."  *Id.*  Ultimately, it is no less a misrepresentation to the Court to omit from such

statements that the Defendants planned to mine outside of 2040 in the days after the requested order was denied should they prevail.

And this was not the only time Defendants misrepresented that the Defendants were only mining for 2040. Swan spent months asking Defendants to confirm whether this representation was true at the time and remained true as the case progressed. As late as February 5, 2025, you stated that Defendants "stand by [their] prior representations to the Court." Kanny Feb. 5, 2025 Email. The aforementioned documents that Proton produced in July make clear that ███████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Had Defendants told the truth in January, February, or March 2025, when Swan repeatedly asked for it, proceedings in the federal action would have been substantially streamlined and focused on what Swan has repeatedly identified as a key issue in this case—Defendants' use of the trade secrets and confidential information at issue outside of 2040 Energy. Critically, you complain about attorney resources being spent but ignore that Swan offered to drop the injunction request against your clients if they would stipulate to their prior representation to the Court and agree only to mine on behalf of 2040. Gorman March 3, 2025 Email. Had the representation been true, and continued to be true such that the Individual Defendants agreed to stand by it—the federal action against your clients would have ended long ago.

Moreover, during the parties' March 28 hearing on Defendants' motions to dismiss and compel arbitration, Swan put these representations squarely before the Court. *See, e.g.*, Mar. 28, 2025 Hr'g Tr. 51:4-16 ("Proton came to court in September and made a representation that they were only mining on behalf of 2040, the JV. So we asked them that, we asked them that on multiple meet and confer calls, we asked them if they would stipulate, if they would self-enjoin, just tell us, if you're -- if it's true that you're only mining on behalf of 2040, tell us that and that way we can all decide that the scope of this case can go one way or another. But they won't. They won't, despite the fact that they represented to the Court in September that they were only mining for 2040, and despite the fact that we lay out again starting at paragraph 181 of the amended complaint, the evidence suggests that's not true, that actually in fact they are mining outside of 2040."). You stood silent, and the Court ultimately credited Defendants' misrepresentations when resolving those pending motions. *See* Dkt. 164 at 7-8 (Apr. 9, 2025 Order) ("Notably, in their opposition to the TRO, Proton and the Individual Defendants represented that, to the extent they were using Swan's proprietary information and trade secrets, they were using that information "solely for the benefit of 2040 Energy . . . and no others."). All told, Defendants' misrepresentations to the Court concerning their mining activities outside of 2040 Energy are striking, and have forced the parties to expend significant resources on discovery and motion practice that should not have been necessary.

What's worse, those are not the only instances in which Defendants have misrepresented key facts in dispute. For example, after documents that Swan received from third party ACDC indicated that Defendants had established a separate, related entity to which Defendants intended to transfer 2040 Energy's mining operations ("Strange-Quark Systems, LLC"), counsel for Proton represented to the Court that "Strange-Quark is not an affiliated entity of Proton or the Elektron entities." June 13, 2025 Hr'g Tr. 21:15-16. Documents that Proton produced less than a month later reveal that statement to have been false, listing "Strange Quark" among Elektron's mining sites:

5



PROTON00000978.

As another example, in January 2025, counsel for Proton represented that Bill Belitsky, Swan's former General Counsel, was not providing legal services to Defendants related to Swan's claims. *See* Trigg Jan. 8, 2025 Ltr. to Wollmuth. This too turned out to be false. After retaining separate counsel, Mr. Belitsky produced a PowerPoint presentation in which Mr. Belitsky provided legal analysis of Swan's claims in this lawsuit. Mr. Belitsky clawed back that document as privileged.

Given this pattern of obfuscation and misrepresentation, your email's thinly-veiled threat to seek attorneys' fees is both not well taken and lacks any justifiable basis. Swan's ultimate agreement in the UK proceedings that the "Business Assets" are exclusively owned by 2040 Energy does not change that that was a complicated, contested legal issue. A request for fees based on that acknowledgement would fail. *See, e.g., Stevedoring Servs. of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 922 (9th Cir. 1989) (affirming denial of costs and fees where voluntary dismissal followed resolution of close legal question). Moreover, one of the core allegations underlying Swan's claims—that Defendants have used the information at issue outside of 2040 Energy—has proven to be true. *See, e.g., Santa Rosa Mem'l Hosp. v. Kent*, 688 F. App'x 492, 494 (9th Cir. 2017) (finding "district court's decision [not to award costs and fees] is justified by its consideration of the legitimate factor of the merit of the Plaintiffs' claims"). Any request for fees is especially inappropriate where substantial proceedings in this case could have been avoided had Defendants refrained from or promptly corrected their prior misrepresentations to the Court. *See, e.g., Madsen v. Buffum*, 2013 WL 12140168, at *3 (C.D. Cal. Aug. 27, 2013) (denying request for fees in part because "Defendants themselves delayed litigation at various points"). If anything, it is Defendants' repeated factual misrepresentations to the Court which have unjustifiably wasted Swan's resources, for which *Swan* is entitled to relief. *Cf.* Fed. R. Civ. P. 11(c)(2).

Make no mistake, Defendants will be held to account for these misrepresentations, and the underlying conduct they have sought to conceal. Swan's non-trade secret claims against Defendants have only grown stronger as this case has progressed. There can be no real dispute that the Individual Defendants and their co-conspirators breached their contractual obligations to Swan, violated California's prohibition on unfair and unlawful competition, and that Proton, Mr. Holmes, and Mr. Naidoo tortiously interfered with former Swan employees' contractual and fiduciary

6

duties to Swan. Indeed, it has been clear from the outset of this case that Defendants planned and then orchestrated what they dubbed a "rain and hellfire" plan to decimate Swan's Bitcoin mining operations. They knew at the time that this conspiracy would "expose" them and they would be in violation of their "Confidentiality and IP" obligations to Swan. None of the subsequent developments in this case or the UK proceedings makes that admission any less damning. Dismissal of Swan's trade secret claims also will not change or excuse Mr. Holmes and Mr. Naidoo's attempt to fraudulently transfer assets to escape liability for their misdeeds—of which there is clear-cut, unrebutted evidence:



Regardless of whether Swan pursues claims in federal court, arbitration, or in another forum, these facts will not change and these documents will not go away.

\* \* \*

7

Given the above, Defendants' current refusal to stipulate to dismissal of this case under Federal Rule 41(a)(1)(A)(ii) is puzzling.  We do not understand what Defendants believe they have to gain from keeping Swan's claims against them in federal court—which leaves us to wonder whether Defendants' supposed hesitance to stipulate is nothing more than an opportunistic attempt to extract information or substantive concessions (*e.g.*, #5 in your October 7 email) to which they are not entitled.

We will send you a proposal regarding next steps in this action under separate cover.

Swan reserves all rights.


Very truly yours,

Stacylyn Doore