UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-08280-MWC-E                                    Date: May 28, 2026

Title:   Electric Solidus, Inc. v. Proton Management LTD., *et al.*

Present:  The Honorable Michelle Williams Court, United States District Judge

|  T. Jackson  |  Not Reported  |
| --- | --- |
| Deputy Clerk | Court Reporter / Recorder |

|  Attorneys Present for Plaintiffs:  |  Attorneys Present for Defendants:  |
| --- | --- |
| N/A | N/A |

**Proceedings:  (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST FOR JUDICIAL NOTICE (DKT. [276]-4), GRANTING PLAINTIFF'S MOTION TO VOLUNTARILY DISMISS THE CASE (DKT. [253]), DENYING DEFENDANTS' MOTION FOR RULE 11 SANCTIONS (DKT. [257]), DENYING AS MOOT DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. [263]), AND DISMISSING THIS ACTION WITHOUT PREJUDICE [JS-6]**

There are three (3) motions before the Court.  First, Plaintiff Electric Solidus, Inc. d/b/a Swan Bitcoin ("Plaintiff" or "Swan") has filed a Motion to Voluntarily Dismiss ("MVD") the case, brought pursuant to Federal Rule of Civil Procedure 41(a)(2).  Dkt. # 253 ("*MVD*").  Defendants opposed the MVD, Dkt. # 276 ("*Opp'n to MVD*"), and Plaintiff replied, Dkt. # 279 ("*Reply ISO MVD*"). Second, Defendants Proton Management, Ltd., Thomas Patrick Furlong, Ilios Corporation, Michael Alexander Holmes, Rafael Dias Monteleone, Santhiran Naidoo, Enrique Romualdez, and Lucas Vasconcelos (collectively, "Defendants")[1] filed a Motion for Rule 11 Sanctions ("Sanctions Motion").  Dkt. # 257 ("*Mot. for Sanctions*").  The Sanctions Motion is also fully briefed.  *See* Dkt. # 272 ("*Opp'n to Mot. for Sanctions*"); Dkt. # 281 ("*Reply ISO Mot. for Sanctions*"). And finally, the individual Defendants have filed a Motion for Judgment on the Pleadings ("MJOP"),

---

[1] The Court refers to Defendants Thomas Patrick Furlong, Ilios Corporation, Michael Alexander Holmes, Rafael Dias Monteleone, Santhiran Naidoo, Enrique Romualdez, and Lucas Vasconcelos as the "Individual Defendants" in this case.

---

CV-90 (03/15)                          Civil Minutes – General                          Page **1** of **17**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:24-cv-08280-MWC-E                                        Date: May 28, 2026

Title:      Electric Solidus, Inc. v. Proton Management LTD., *et al.*


brought pursuant to Rule 12(c).  Dkt. # 263 ("*MJOP*").  Plaintiff opposed the MJOP, Dkt. # 273 ("*Opp'n to MJOP*"); Dkt. # 282 ("*Reply ISO MJOP*").  The Court finds this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  After considering the papers, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Request for Judicial Notice (Dkt. # 276-4), **GRANTS** Plaintiff's Motion to Voluntarily Dismiss the Case (Dkt. # 253), **DENIES** Defendants' Motion for Rule 11 Sanctions (Dkt. # 257) and **DENIES AS MOOT** Defendants' Motion for Judgment on the Pleadings (Dkt. # 263).  This case is **DISMISSED WITHOUT PREJUDICE.**

I.       Background[2]


Swan is an "industry-leading Bitcoin financial services company that helps individuals and businesses purchase, save, and invest in Bitcoin through its platform."  First Am. Compl., Dkt. # 101 ("*FAC*") ¶ 17.  Prior to the "scheme" at the heart of this case, "Swan was also a leader in the field of Bitcoin mining."  *Id.*  This action arises after former Swan consultants "devised and executed a brazen . . . 'rain and hellfire'" scheme to "steal Swan's entire billion-dollar Bitcoin mining business." *Id.* ¶ 1.

On June 1, 2023, Cory Klippsten—Swan's founder and CEO, *id.* ¶¶ 46–47—learned of a Bitcoin mining site in Tasmania, Australia with "great potential." *Id.* ¶ 54.  Klippsten and Holmes discussed securing funding for the site and "agreed that Swan would work to source investment for the fundraise." *Id.*  The next day, the cryptocurrency company "Tether" agreed to provide funding for Swan to expand operations at the site, "with Swan managing the mining investment." *Id.* ¶ 54.  Swan and Tether then entered into a joint venture known as "2040 Energy," which "would govern the arrangement at that site, as memorialized in a Shareholders Agreement [('SHA')][.]" *Id.* ¶ 55.  Swan's then-Chief Investment Officer ("CIO"), Raphael Zagury, also led this operation. *Id.* ¶ 58.  The success of this joint venture resulted in Swan expanding its mining operation's capacity. *See id.* ¶ 115.

However, in the summer of 2024, Defendants began devising a scheme to, among other things, (1) download "all of Swan's confidential and proprietary business information

---

[2] The Court briefly summarizes the facts of this case only as relevant to the instant motions.  For a more thorough and detailed recitation of the facts, *see* Dkt. # 164 at 2–7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:24-cv-08280-MWC-E                                    Date: May 28, 2026

Title:      Electric Solidus, Inc. v. Proton Management LTD., *et al.*


and trade secrets necessary to operate Swan's Bitcoin mining business"; (2) create a new company called "Proton Management Ltd." ("Proton"), which Zagury would operate as CEO alongside Swan's "then-Investment Director Defendant Naidoo as CIO, and which would employ other Defendants and Swan conspirators"; and (3) solicit "legal cover" from Tether to claim that following the employees' departure, Swan "could no longer manage mining for 2040 Energy," requiring Tether to "push Swan out of its joint venture with Tether, and insert Defendant Proton as Swan's replacement." *Id.* ¶ 118(a)–(c); *see also id.* ¶ 122 ("Defendants ultimately opted to steal Swan's mining business outright, and cut Swan out entirely."). The First Amended Complaint ("FAC") alleges that individual Defendants Holmes, Naidoo, Zagury, and Lyons contacted "other Swan consultants and employees to recruit them into the scheme." *Id.* ¶ 126. The FAC also alleges that in July 2024, Defendants downloaded Swan's source code and highly confidential documents from Swan's Google Drive account, registered the website domain "Elektron-Energy.com," and filed documents to incorporate Proton in the British Virgin Islands. *See id.* ¶¶ 129–33. Further, in August 2024, Proton allegedly "filed a Certification of Incorporation in the British Virgin Islands," exported confidential business data off Swan's "Notion" platform, downloaded "highly confidential monthly mining performance data, proprietary financial records, and earnings reports" from Swan's Google Drive, cloned Swan's BNOC source code, and "downloaded approximately 1,750 files from Swan's computer systems to an external hard drive[.]" *See id.* ¶¶ 134–39. On August 8, 2024, Swan employees resigned *en masse*. *Id.* ¶ 141.

II.      Procedural History

On September 25, 2024, Plaintiff initiated this action and on that same date, filed an *ex parte* Application for Temporary Restraining Order ("TRO"). *See* Dkts. # 1 & 8. The next day, Plaintiff filed an *ex parte* Application for Order for Expedited Discovery. Dkt. # 9. On October 4, 2024, U.S. District Judge Wesley L. Hsu denied Plaintiff's Applications for a TRO and an Order for Expedited Discovery, and set the matter for hearing on a preliminary injunction. Dkts. # 40 & 41. Plaintiff filed a renewed *ex parte* Application for Order for Expedited Discovery on October 9, 2024, Dkt. # 43, and on October 16, 2024, Judge Hsu again denied Plaintiff's request, Dkt. # 54. On October 15, 2024, Plaintiff moved for an Order Compelling the Individual Defendants to Return Plaintiff's Laptop Computers. Dkt. # 53. As Plaintiff failed to sufficiently demonstrate that the laptops were Swan's property, the Court denied Plaintiff's motion. Dkt. # 63. On November 20, 2024, this case was transferred to this Court. Dkt. # 65.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-08280-MWC-E                              Date: May 28, 2026

Title:     Electric Solidus, Inc. v. Proton Management LTD., *et al.*

On January 27, 2025 Plaintiff filed the operative FAC, asserting seven (7) causes of action against Defendants for: (1) Trade Secret Misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq.*; (2) breach of contract; (3) tortious interference with contractual relations; (4) aiding and abetting breach of duty of loyalty; (5) unfair competition under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (6) conversion; and (7) civil conspiracy.  *See FAC* at 79–90.  On February 24, 2025 and February 25, 2025, respectively, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative, Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss"), Dkt. # 121; a Motion to Compel Arbitration and Stay the Case, or in the alternative, Motion to Dismiss Amended Complaint ("Motion to Compel"), Dkt. # 122; and a Motion to Stay Case pending Determination of Threshold Issues in related proceedings in the United Kingdom ("Motion to Stay"), Dkt. # 124.  The Court took the motions under submission, Dkt. # 160, and issued an Order on April 9, 2025 denying in substantial part each motion.  Dkt. # 164.  In that Order, the Court granted the Individual Defendants' Motion to Compel only as to Swan's conversion claim, *see id.* at 12–14; denied Defendants' Motion to Dismiss for lack of personal jurisdiction, *id.* at 21; dismissed only Plaintiff's seventh claim for civil conspiracy against Defendant Proton alone, *see id.* at 29; and denied the Motion to Stay, *id.* at 33.

The Individual Defendants filed a Notice of Appeal to the Ninth Circuit on April 25, 2025, Dkt. # 180, and in light of the appeal, filed both a Motion to Stay Case Pending Appeal and an *ex parte* Application to Stay Case Pending Appeal Date and Briefing Schedule on May 16, 2025, Dkts. # 207 & 208.  On May 2, 2025, Defendant Proton filed a Motion to Compel Arbitration, Dkt. # 194, and on May 16, 2025, filed a Motion to Stay Case Pending Appeal, Dkt. # 206.  On May 27, 2025, the Court stayed this case as to both the Individual Defendants and Defendant Proton.  Dkt. # 218.  Plaintiff thereafter filed an *ex parte* Application for a TRO on June 11, 2025, Dkt. # 222, and on June 17, 2025, the Court denied Plaintiff's TRO request, but nonetheless lifted the discretionary stay as to Defendant Proton, Dkt. # 235.  The Court then rescheduled Defendant Proton's Motion to Compel Arbitration, Dkt. # 194, and subsequently granted the Motion to Compel and stayed the case as to Defendant Proton on July 21, 2025.  Dkt. # 250.  In light of the stay, the Court vacated the Final Pretrial Conference and trial date scheduled in this case.  Dkt. # 252.  On November 12, 2025, the Ninth Circuit granted the parties' stipulated motion to dismiss the appeal.  Dkt. # 251.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:24-cv-08280-MWC-E                              Date: May 28, 2026

Title:     Electric Solidus, Inc. v. Proton Management LTD., *et al.*


    A.      UK Litigation


On January 10, 2025, Tether and 2040 Energy sought declaratory and injunctive relief in the High Court of Justice Business and Property Courts of England Wales King's Bench Division Commercial Court ("UK Court") (Claim No. CL-2025-000016).  *See* Ex. G to *MVD*, Dkt. # 253-9 ("*Particulars of Claim*") at 3–4, 26–28.  First, they sought, among other things, a declaration that "(i) 2040 Energy is the beneficial owner of the BitGo Accounts and their contents"[3] and "that the Business Assets currently held by the Swan Employees and Proton, are beneficially owned by 2040 Energy[.]"[4]  *Id.* ¶¶ 5.1.1–5.1.2. Second, they sought a "final injunction compelling Swan to transfer/deliver up the assets in the BitGo Accounts[.]"  *Id.* ¶ 5.1.3.

On February 26, 2025, the UK Court issued an Order declining Tether and 2040 Energy's application for an injunction related to the Business Assets.  Ex. D to *Mot. for Sanctions*, Dkt. # 257-7 at 4.  In that same Order, the UK Court scheduled a September 2025 trial to determine ownership of the Business Assets, *id.* at 5, and further ordered that Swan shall not "file any summary judgment motion in the California Proceedings," seek a preliminary injunction in this case, nor "use the Business Assets . . . to exploit business opportunities otherwise than in accordance with the SHA[.]"  *Id.* at 6.

Swan then represents that in August 2025, it entered "into a stipulation in the UK litigation" to agree "that the Business Assets were owned by 2040 Energy," and that it would separately "initiate arbitrations against Holmes, Zagury, and others."  *MVD* at 19. As a result, on September 9, 2025, the UK Court issued an Order declaring that the "Business Assets are exclusively owned by and/or exclusively for use by or with the

---

[3] 2040 Energy held several Bitcoin wallets, which "collected the Bitcoin earned by the business of 2040 Energy."  *Particulars of Claim* ¶ 40.1.  Those wallets were held with the cryptocurrency exchange provider, BitGo Inc. ("BitGo") and "were made up of collection and treasury wallets." *Id.*  2040 Energy had accounts with BitGo "which contained USD fiat amounts and Tether tokens," and are collectively referred to as "BitGo Accounts."  *Id.*

[4] The "Business Assets" refer to the "proprietary" aspects of 2040 Energy, including, a "Bitcoin Network Operating Center" ("BNOC"), "a bitcoin mining monitoring platform, . . . financial modelling, data analytics and monitoring tools necessary" for the Bitcoin mining business. *Particulars of Claim* ¶ 23.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:24-cv-08280-MWC-E                                    Date: May 28, 2026

Title:     Electric Solidus, Inc. v. Proton Management LTD., *et al.*


consent of the Second Claimant."[5]  Ex. S to *MVD*, Dkt. # 253-21 at 3.  The UK Court further ordered that Swan "will not, now or in the future . . . pursue or prosecute any of its existing claims in respect of the Business Assets currently being pursued in the California Proceedings," and concluded that Swan was indeed "required to dismiss or withdraw the California Proceedings . . . without prejudice[.]" *Id.* at 5.

Now pending are Plaintiff's Motion to Voluntarily Dismiss the Case, brought pursuant to Rule 41(a)(2), Dkt. # 253, and Defendants' Sanctions Motion, Dkt. # 257, and Motion for Judgment on the Pleadings, Dkt. # 263.  The motions are all fully briefed and ripe for consideration and disposition.

III.    Legal Standards

A.     Rule 41(a)(2)

Federal Rule of Civil Procedure 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2); *see Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1279 n.4 (9th Cir. 2023).  "Generally, Rule 41(a)(2) grants a district court discretion to dismiss a case with or without prejudice."  *Kamal*, 88 F.4th at 1279 (footnote and citations omitted); *Hargis v. Foster*, 312 F.3d 404, 412 (9th Cir. 2002) ("That broad grant of discretion does not contain a preference for one kind of dismissal or another.").  "[W]here the request is to dismiss without prejudice, a District Court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result."  *Kamal*, 88 F.4th at 1279–80 (cleaned up) (internal quotation marks and citations omitted).  "Legal prejudice" is a "term of art," meaning "prejudice to some legal interest, some legal claim, [or] some legal argument."  *Id.* at 1280 (internal quotation marks omitted).  Legal prejudice is not "uncertainty because a dispute remains unresolved," and indeed, "the threat of future litigation which causes uncertainty is insufficient to establish plain legal prejudice[.]" *Id.* (internal quotation marks and citation omitted).  "Additionally, the mere inconvenience of defending another lawsuit does not constitute plain legal prejudice, . . . and plain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a

---

[5] The "Second Claimant" refers to 2040 Energy.  *See* Ex. G to *MVD*, Dkt. # 253-9 at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-08280-MWC-E                                      Date: May 28, 2026

Title:      Electric Solidus, Inc. v. Proton Management LTD., *et al.*

tactical advantage by that dismissal[.]" *Id.* (internal quotation marks and citation omitted); *see also Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996).

IV.    Discussion

   A.    Plaintiff's Motion for Voluntary Dismissal ("MVD") (Dkt. # 253)[6]

   In compliance with the UK Court's Order, Plaintiff now moves to voluntarily dismiss this case pursuant to Rule 41(a)(2).  Before turning to the merits of the motion, the Court first addresses Defendants' Request for Judicial Notice (Dkt. # 276), attached to their Opposition.

      i.    *Defendants' RJN (Dkt. # 276-4)*

   Attached to their Opposition to Plaintiff's MVD, Defendants request that the Court judicially notice: (1) several court filings in the UK Litigation, found in Exhibits B through F accompanying their MJOP, Dkts. # 263-5–263-9; and (2) two of Mr. Klippsten's posts on the social media platform "X" (formerly known as "Twitter").  *See* Dkt. # 276-4 ("*Defs.' RJN*") at 3–7.  Plaintiff does not oppose Defendants' requests.  *See Pl.'s Reply to MVD*.

   Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Regarding Defendants' first request, Defendants ask the Court to judicially notice certain UK Court documents, such as the UK Claimants' Amended Particulars of Claim, and various UK Court Orders.  *See Defs.' RJN* at 2–3.  It is well-established that the Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *e.g.*, *Color Switch LLC v. Fortafay Games DMCC*, 377 F. Supp. 3d 1075, 1089 n.6

---

[6] Though the Court set January 30, 2026 as the last date to hear motions in this case, *see* Dkt. # 119 at 3, and that deadline has long passed, the Court exercises its discretion to hear Plaintiff's motion. *See, e.g.*, *Thacker v. AT&T Corp.*, No. 2:20-cv-00255-KJM-CKD PS, 2021 WL 3206202, at *1 (E.D. Cal. July 29, 2021) (entertaining Rule 41(a)(2) motion to voluntarily dismiss case even after "dispositive motion deadline" had passed), *F. & R. adopted*, 2021 WL 4168533 (E.D. Cal. Sept. 14, 2021).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:24-cv-08280-MWC-E                                    Date: May 28, 2026

Title:      Electric Solidus, Inc. v. Proton Management LTD., *et al.*


(E.D. Cal. 2019) (judicially noticing "foreign court documents" before the Court of Dubai);
*Tahaya Misr Inv., Inc. v. Helwan Cement S.A.E.*, No. 2:16-cv-01001-CAS(AFMx), 2016
WL 4072332, at *1 n.3 (C.D. Cal. July 27, 2016) (taking judicial notice of "various
pleadings and court orders filed in the Egyptian Action" because "foreign court documents
are properly the subject of judicial notice").   The Court **GRANTS** Defendants' request for
judicial notice of the filings and Orders coming from the UK Litigation.

As to the second request, Defendants ask the Court to judicially notice two (2) of
Cory Klippsten's "X" (formerly known as "Twitter") posts from November 2025.  *See* Exs.
1 & 2 to *Opp'n to MVD*, Dkts. # 276-2 & 276-3.  Though normally, Defendants are correct
that courts usually take judicial notice of "publicly accessible webpages" such as "X" social
media posts, *see, e.g.*, *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 869 (N.D. Cal. 2022);
*Napear v. Bonneville Int'l Corp.*, 669 F. Supp. 3d 948, 959 (E.D. Cal. 2023), "even if
matters sought to be proved are not subject to reasonable dispute, judicial notice of those
matters is not appropriate if those matters are not relevant to the issues in the case." *Umeda
v. Tesla Inc.*, No. 20-cv-02926-SVK, 2020 WL 5653496, at *2 (N.D. Cal. Sept. 23, 2020)
(citation omitted).  In other words, the Court finds that "it is not necessary for the Court to
consider either document in determining the outcome of this Motion." *Otano v. Ocean*,
No. CV 13-01605 RSWL (JJCx), 2013 WL 2370724, at *2 (C.D. Cal. May 30, 2013).  As
such, the Court **DENIES** Defendants' request for judicial notice of Klippsten's "X" posts.

> ### ii.      Merits of MVD

In compliance with the UK Court's Order requiring Plaintiff to voluntarily dismiss
this action without prejudice, Plaintiff moves to dismiss this case under Rule 41(a)(2).  In
doing so, Plaintiff insists that Defendants will not suffer any legal prejudice from a
dismissal *without* prejudice, and maintains that Defendants' request for legal fees does not
amount to prejudice.  *See MVD* at 23.  Plaintiff further maintains Defendants will not suffer
legal prejudice because "Swan is not seeking to avoid a 'near-certain' adverse ruling," is
"not improperly trying to avoid discovery," "[d]ismissal will not lead to inconsistent
rulings, and Swan has not been dilatory in seeking voluntary dismissal[.]"  *Id.* at 24.
Accordingly, Plaintiff asks that the Court dismiss this case without prejudice and not award
Defendants costs or attorneys' fees.  *See id.* at 26.  Defendants oppose at every turn and
request for dismissal *with* prejudice.  *See Opp'n to MVD*.  The Court addresses each of
Defendants' arguments in turn.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-08280-MWC-E                                    Date: May 28, 2026

Title:     Electric Solidus, Inc. v. Proton Management LTD., *et al.*

a.      "Near-Certain" Adverse Ruling

Defendants represent that they "will suffer legal prejudice on the ground that Swan filed this motion to avoid near-certain adverse ruling on Defendants' Rule 12(c) Motion." *Opp'n to MVD* at 19.   Defendants briefly raise five (5) arguments in support of this assertion.  First, Defendants complain that previously, Swan "admitted" that the "Business Assets" at issue in the UK Litigation encompassed "all of the Alleged Trade Secrets or Confidential Information at issue here," but now, Defendants posit that Plaintiff has changed course. *See id.*  Relatedly, Defendants disagree with Plaintiff's understanding that the September 2025 UK Order "does not preclude or estop its claims here because DTSA and California law differ from English law." *Id.* at 20.  From Defendants' view, neither state nor federal law "governs the ownership question differently" and the UK Litigation disposed of the ownership question. *See id.*  To this point, Defendants third put forth that Plaintiff's contract claims are not broader than its trade secret claims, and thus do not "survive the UK Court Order[.]" *Id.*  Fourth, Defendants dispute Plaintiff's interpretation of the September 2025 UK Court Order, and instead, believe that the Order's language regarding dismissal without prejudice "preserves only claims that are not inconsistent with the Undertakings." *Id.* at 21.  Thus, Defendants insist "[t]his does **not** permit survival of any existing claims relating to the Business Assets or any other claims concerning control or ownership of the Business Assets." *Id.* (emphasis in original).  Finally, Defendants proffer that "the filing circumstances of Swan's [MVD] itself underscore that it knows the Rule 12(c) Motion is likely to be granted" because Plaintiff knew Defendants intended on filing their Sanctions Motion and MJOP and thus preemptively filed its MVD. *Id.*  None of Defendants arguments have merit, and indeed, none of Defendants arguments address either legal prejudice or the existence of a "near-certain" adverse ruling.

"A district court may consider whether the plaintiff is requesting a voluntary dismissal only to avoid a near-certain adverse ruling." *Maxum Indem. Ins. Co. v. A-1 All Am. Roofing Co.*, 299 F. App'x 664, 666 (9th Cir. 2008) (citing *Terrovona v. Kincheloe*, 852 F.2d 424, 429 (9th Cir. 1988)).  For instance, in *Terrovona*, the Ninth Circuit affirmed the district court's denial of Plaintiff's motion to voluntarily dismiss the case without prejudice.  852 F.2d at 430.  There, the plaintiff "filed his Rule 41 motion three months *after* the motion for summary judgment had been filed" and the magistrate judge had issued a Report and Recommendation, recommending disposition on the pending summary judgment motion. *Id.* (emphasis added).  The Ninth Circuit held that in light of the timing of the motions (*i.e.*, dispositive motion filed before Rule 41(a)(2) motion), and because the

CV-90 (03/15)                          Civil Minutes – General                          Page **9** of **17**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-08280-MWC-E                                   Date: May 28, 2026

Title:     Electric Solidus, Inc. v. Proton Management LTD., *et al.*

magistrate judge had recommended disposition of the dispositive motion, the district court did not abuse its discretion by refusing to dismiss the action under Rule 41. *See id.*

Similarly, in *Maxum Indemnity Insurance Company*, the Ninth Circuit upheld the district court's decision to deny the plaintiff's Rule 41(a)(2) motion to voluntarily dismiss a third-party claim without prejudice. 299 F. App'x at 665–66. Instead, the district court granted the third-party's motion for summary judgment on her counterclaim. *See id.* at 665. Because "the district court had indicated to both parties how it planned to rule on [plaintiff's] claim against" the third-party, the Court found that plaintiff filed its Rule 41 motion "only to avoid a near-certain adverse ruling." *Id.* at 666.

Thus, taking *Maxum Indemnity* and *Terrovona* together, the Court must assess both (1) the timing of the Rule 41 motion in relation to the MJOP; and (2) whether there was any likelihood or prior indicia that the Court would grant Defendants' MJOP prior to assessing Plaintiff's MVD. *See Terrovona*, 852 F.2d at 430; *Maxum Indem. Ins. Co.*, 299 F. App'x at 665–66; *see also Hepp v. Conoco, Inc.*, 97 F. App'x 124, 125 (9th Cir. 2004) ("Because there is nothing in the record establishing that Conoco was entitled to have either [its motion *in limine* or its motion for summary judgment] granted in its favor, the district court did not abuse its discretion in granting the Hepps' motion for voluntary dismissal."); *contra Greenmount LLC v. Cleanline Mgmt. LLC*, No. 2:23-CV-10376-MRA-RAO, 2025 WL 1288960, at *9 (C.D. Cal. Apr. 11, 2025) ("Plaintiff admits that it seeks to avoid an adverse ruling on Defendants' MJOP, expressly stating that 'the proper course is *not to adjudicate* the merits through a Rule 12(c) motion, but rather to dismiss the action without prejudice' . . . The timing of Plaintiff's MVD—approximately five months after the Court issued its PI Order and a month after Defendants' MJOP—is telling.") (emphasis in original); *Coupa Software Inc. v. DCR Workforce, Inc.*, No. 3:23-cv-03102-EMC, 2023 WL 6247252, at *4 (N.D. Cal. Sept. 22, 2023) (finding plaintiff moved to dismiss case to avoid near-certain adverse ruling because by the time plaintiff filed its motion for voluntary dismissal the Court had "indicated that it would be denying" plaintiff's motion for preliminary injunction and defendant had filed a motion for judgment on the pleadings).

Defendants' arguments thus fail for several reasons. First, there can be no dispute that Plaintiff filed its MVD *before* Defendants filed their MJOP. Indeed, Plaintiff filed the instant motion on April 21, 2026, Dkt. # 253, while Defendants filed their MJOP three days later, on April 24, 2026, Dkt. # 263. Defendants suggest that Plaintiff only filed the pending MVD because it knew Defendants were planning on filing their Sanctions Motion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-08280-MWC-E                                    Date: May 28, 2026

Title:    Electric Solidus, Inc. v. Proton Management LTD., *et al.*

and MJOP.  *Opp'n to MVD* at 21.  But this is of little import.  The Court is tasked with assessing whether Plaintiff knew, with "near certainty," that the Court would *grant* Defendants' MJOP prior to filing its MVD.  The record simply cannot establish that fact. Nor is the Court persuaded by Defendants' contention that Plaintiff failed to meet and confer prior to filing its MVD.  *Id.*  Plaintiff's Notice of Motion represents that the motion "is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 14, 2026."  Dkt. # 253 at 2.  And Plaintiff has offered the Declaration of Stacylyn M. Doore representing the same.  *See* Decl. of Stacylyn M. Doore ISO Pl.'s Opp'n to Mot. for Sanctions, Dkt. # 274 ("*Doore Decl.*") ¶ 10.   Defendant has not proffered any countervailing evidence to indicate that this conference did not occur.  In any event, that Plaintiff filed its MVD at 3:43 a.m. P.T. is simply not relevant.  *Opp'n to MVD* at 8.  The record indisputably reflects that Plaintiff filed its MVD *before* Defendants filed their MJOP.

Further, Defendants' position that the September 2025 UK Court Order "preclude[s] or estop[s]" Plaintiff's DTSA and contract claims is simply duplicative of its MJOP. *Compare Opp'n to MVD* at 20, *with MJOP* at 18–31.  Defendants needed to demonstrate that the Court—either in a previous ruling, a tentative Order, an oral decision, a magistrate judge's Report and Recommendation, etc.—had previously indicated to the *parties* (and more importantly, to Plaintiff) that it would very likely rule in Defendants' favor in resolving the MJOP.  Defendants filed their MJOP in light of the UK Court's decision, and thus the MJOP principally argues that Plaintiff's claims are judicially estopped and that issue preclusion requires dismissal of Plaintiff's claims.  *See MJOP* at 18–31.  Thus far, none of the Court's prior decisions have provided *any* indication as to how it would rule on Defendants' MJOP.  Even the Court's previous Order substantially denying Defendants' Motion to Dismiss (Dkt. # 164) did not have an opportunity to weigh in on such arguments, particularly because the Court issued its April 2025 Order before the UK Court's September 2025 decision.

Accordingly, because Plaintiff filed its MVD three days before Defendants filed their MJOP and because there is no evidence or indicia in the record to suggest that the Court had indicated how it would rule on Defendants' MJOP—let alone that it was "near certain" that it would rule in Defendants' favor—the Court cannot find legal prejudice exists on this basis to dismiss the case with prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-08280-MWC-E                                    Date: May 28, 2026

Title:      Electric Solidus, Inc. v. Proton Management LTD., *et al.*

### b.    Prevailing Party Status

Next, Defendants suggest that they would suffer legal prejudice if the Court dismisses the action without prejudice because they would not be able to recover "fees and costs as a prevailing party on Swan's claims." *Opp'n to MVD* at 23.  In bringing this argument, Defendants principally rely on the Ninth Circuit's unpublished decision in *United States v. Ito*, 472 F. App'x 841 (9th Cir. 2012). *Id.*  There, in a brief, three-paragraph memorandum disposition, the Court vacated the district court's dismissal without prejudice after the district court failed to "recognize that dismissal without prejudice precludes prevailing party status," and therefore prevented the prevailing parties from bringing "their attorney's fees motion under the Civil Asset Forfeiture Reform Act[.]"  *Id.* at 842.  Defendants posit that in light of Swan's admission in the UK Litigation that it does not own the Business Assets, "Defendants are necessarily the prevailing parties on Swan's claims and entitled to reasonable attorneys' fees under the Individual Defendants' Consulting Agreements and/or under the DTSA." *Opp'n to MVD* at 23–24.

The attorneys' fees provision of the DTSA provides that "a court may, . . . if a claim of [trade secret] misappropriation is made in bad faith, which may be established by circumstantial evidence, a motion to terminate an injunction is made or opposed in bad faith, or the trade secret was willfully and maliciously appropriated, award reasonable attorney's fees to the prevailing party." 18 U.S.C. § 1836(b)(3)(D); *Physician's Surrogacy, Inc v. German*, 311 F. Supp. 3d 1190, 1195–96 (S.D. Cal. 2018).  "Prevailing party status requires that a party received a judgment on the merits, or obtained a court-ordered consent decree." *Physician's Surrogacy*, 311 F. Supp. 3d at 1196 (quoting *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).  "In addition, such relief must create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* (citation omitted).  Meanwhile, upon review of the Individual Defendants' Consulting Agreements, they agreements provide that a prevailing party seeking to enforce or interpret provisions of the agreement is entitled to "reasonable attorneys' fees." *See, e.g.*, Dkt. # 25-5 at 71.

Thus, Defendants' arguments fail for three reasons.  First, the September 2025 UK Court Order does not find that Plaintiff brought its misappropriation claim in bad faith, nor have Defendants directed the Court to any stipulation or document noting as so. *See* 18 U.S.C. § 1836(b)(3)(D).  Even so, Defendants have not prevailed in *this* case; indeed, Plaintiff does not stipulate that resolution of the "Business Assets" in the UK Litigation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:24-cv-08280-MWC-E                                    Date: May 28, 2026

Title:   Electric Solidus, Inc. v. Proton Management LTD., *et al.*


resolves all outstanding trade secret claims in this case.  *See, e.g.*, *Reply ISO MVD* at 7–8.  In any event, the Court has not issued a judgment on the merits in favor of Defendant, nor have Defendants obtained "a court-ordered consent decree" in this case, where the DTSA applies.  18 U.S.C. § 1836(b)(3)(D); *Physician's Surrogacy*, 311 F. Supp. 3d at 1196.  For the same reason, the Court cannot find that Defendants are the prevailing party in this case under the Consulting Agreements, as they have not prevailed in defending the enforcement or interpretation of the agreements.  If Defendants believe that in light of the September 2025 UK Court Order that they are prevailing parties, they may seek attorneys' fees in that forum.  Finally, the Ninth Circuit has stated in no uncertain terms that "the expense incurred in defending against a lawsuit does not amount to legal prejudice."  *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996); *Meridian Rapid Def. Grp. LLC v. Delta Sci. Corp.*, No. CV 23-7222-GW-PDx, 2025 WL 504487, at *1 n.1 (C.D. Cal. Jan. 9, 2025).  "Simply put, Defendants' attorneys'-fees claims are far too speculative to amount to legal prejudice."  *Segal v. Segel*, No. 20-cv-1382-BAS-JLB, 2022 WL 848324, at *4 (S.D. Cal. Mar. 22, 2022).  Accordingly, here too, the Court does not find that a dismissal without prejudice will amount to legal prejudice on Defendants.  The Court moves to Defendants' remaining arguments.

c.   <u>Remaining Arguments</u>

Defendants also request dismissal with prejudice because, in their view, Plaintiff lacked diligence and delayed in dismissing the case when it "did or should have known that it did not own the Alleged Trade Secrets and Confidential Information when it filed this lawsuit in September 2024" because the SHA "made clear that the Business Assets belonged to 2040 Energy," not Swan.  *Opp'n to MVD* at 24.  Defendants also take issue with Plaintiff's "decision to concede the ownership issue and abandon its direct claims arising from the Business Assets" when they stipulated to this fact in the UK Litigation.  *See id.* at 25–26.

To begin, the Court agrees with Plaintiff that the Ninth Circuit has outright "rejected" the argument that a plaintiff's "excessive delay and lack of diligence" amounts to legal prejudice.  *See Kamal*, 88 F.4th at 1282.  Indeed, "Defendants do not explain how [undue delay] amounts to *legal* prejudice, as opposed to inconvenience, and no legal prejudice is apparent to the Court."  *Segal*, 2022 WL 848324, at *3 (emphasis in original).  In any event, the Court does not find the presence of any delay in either the prosecution of this case or in the prompt dismissal of this action.  Plaintiff represents that after the September 2025 UK Order, it repeatedly met and conferred with Defense counsel to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:24-cv-08280-MWC-E                                      Date: May 28, 2026

Title:      Electric Solidus, Inc. v. Proton Management LTD., *et al.*


stipulate to dismissal without prejudice of this action.  *See, e.g.*, *Reply ISO MVD* at 9–10.
Those conferences failed, resulting in this April 2026 motion.  Plaintiff "could have sought
dismissal sooner than [it] did, but [it] [was] not dilatory."  *Westlands*, 100 F.3d at 97.

The same logic applies to Defendants' contention regarding Plaintiff's change in
litigation strategy.  That Plaintiff ultimately conceded to the ownership of the Business
Assets in the UK Litigation does not now amount to legal prejudice to Defendants.  *Cf.
Kamal*, 88 F.4th at 1280 ("Legal prejudice . . . means prejudice to some legal interest, some
legal claim, some legal argument.").  Defendants have failed to demonstrate legal
prejudice, and indeed, Defendants' authority is inapposite.  *See Opp'n to MVD* at 26.  For
instance, Defendants rely on *Gonzalez v. FCA US LLC*, No. EDCV 24-2239-KK-DTB,
2025 WL 1928087, at *2 (C.D. Cal. July 11, 2025) to support their contention that
Plaintiff's concession amounts to prejudice.  But in *Gonzalez*, the court found dismissal
with prejudice was warranted because Plaintiff "abandoned his claims" by failing to either
appear for his deposition or oppose Defendant's motion for summary judgment, and for his
"continued lack of responsiveness to his counsel."  *See id.*  None of that is present here,
and indeed, Plaintiff does not understand its concession to the Business Assets as an
outright abandonment of its claims.  The Court fails to find legal prejudice exists on this
basis either.

> iii.      *Attorneys' Fees & Costs*

Finally, Defendants request that if the Court does grant Plaintiff's MVD that the
Court award "reasonable fees and costs."  *Opp'n to MVD* at 26.  In support of their request,
Defendants proffer that "Swan's case lacks merit," that it faces a risk of future litigation
expense—*e.g.*, "Swan's pursuit and threats of counterclaims in the UK, derivative litigation
in the British Virgin Islands (BVI), and multiple arbitration proceedings"—that Defendants
have undertaken extensive efforts to defend against "baseless" claims, that Plaintiff was
not diligent, in part, because it waited "18 months after first filing this litigation" before
seeking dismissal, and finally, that Plaintiff litigated in bad faith.  *See id.* at 26–31.  The
Court denies this request.

The Court may "award costs and attorney's fees as a condition of dismissal without
prejudice under Rule 41(a)(2)."  *Kamal*, 88 F.4th at 1286.  "Imposition of costs and fees as
a condition for dismissing without prejudice is not mandatory, however, [ ], and a defendant
is entitled only to recover, as a condition of dismissal, attorney's fees or costs for work that

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-08280-MWC-E                                      Date: May 28, 2026

Title:      Electric Solidus, Inc. v. Proton Management LTD., *et al.*

is not useful in continuing litigation between the parties[.]" *Id.* (cleaned up) (internal quotation marks and citation omitted).  To the extent that Defendants are correct that Plaintiff intends to pursue counterclaims in the UK, derivative litigation in the BVI, and "multiple arbitration proceedings" in other forums, then this suggests that all of Defendants' work here, including all of the discovery proceedings that occurred here, will prove useful in future litigation between the parties. *See Opp'n to MVD* at 28; *Kamal*, 88 F.4th at 1286.  That would significantly weigh against awarding fees or costs. *See Kamal*, 88 F.4th at 1286.  Even so, the Court is not convinced by any of Defendants' other arguments.  The Court does not find any indicia of bad faith on Plaintiff's part, nor does the Court find that Plaintiff's claims are "baseless" or that Plaintiff was not diligent in prosecuting this case.  If anything, the Courts Orders, including those by the Magistrate Judge, have indicated the opposite.  The Court denies Defendants' request for attorneys' fees and costs.

Taken together, the Court finds that Defendants will suffer no legal prejudice resulting from the dismissal of this action without prejudice.  Finding no risk of legal prejudice to Defendants, the Court **GRANTS** Plaintiff's Motion for Voluntary Dismissal Without Prejudice (Dkt. # 253) and **DISMISSES** this action **WITHOUT PREJUDICE**. Defendants' Motion for Judgment on the Pleadings (Dkt. # 263) is **DENIED AS MOOT**.

B.      Defendants' Sanctions Motion (Dkt. # 257)

Finally, the Court addresses Defendants' Sanctions Motion.  Dkt. # 257.  Defendants insist that Plaintiff has violated Rule 11 by bringing "frivolous claims predicated on false ownership to harass and annoy Defendants . . . all while knowing that none of the Alleged Trade Secrets or confidential information alleged in this action belonged to it." *Mot. for Sanctions* at 22.  The Court finds several flaws fatal to Defendants' motion.

First, Defendants' motion is simply untimely.  The Court's Civil Trial Order set January 30, 2026 as the last date to hear motions. *See* Dkt. # 119 at 3.  Though this case was previously stayed, Defendants never requested to lift the stay and impose a new, amended Civil Trial Order after dismissing their appeal on November 12, 2025.  Dkt. # 251.  After the dismissal of their appeal, Defendants could have sought a new Civil Trial Order with an extended motions deadline.  But they never did.  In any event, to hear this sanctions motion, the Court would first need to modify the Scheduling Order to extend the deadline to hear motions. *See, e.g.*, *Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC*,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-08280-MWC-E                                        Date: May 28, 2026

Title:   Electric Solidus, Inc. v. Proton Management LTD., *et al.*

No. 2:24-cv-04546-SB-AGR, 2025 WL 2427837, at *4 (C.D. Cal. July 11, 2025).  Yet Defendants have failed to demonstrate that any good cause exists to do so and the Court declines to do so on its own.

Similarly, a Rule 11 motion "should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." *Holgate v. Baldwin*, 425 F.3d 671, 679 (9th Cir. 2005).  Defendants aver that "[f]rom the beginning, the heart of Swan's claims hinged on its purported ownership of the 'Business Assets,'" and that "Defendants flagged this ownership issue at the outset, at the TRO stage and many times thereafter," yet Plaintiff "reiterated the same false premise in multiple briefs and open court." *Mot. for Sanctions* at 24.  If Defendants credibly believed that Plaintiff's allegations were in violation of Rule 11 from the inception of this case in September 2024, then they should have "promptly" served a motion for sanctions long ago instead of waiting over a year and a half before doing so.  By the same token, the instant motion is also untimely. *Holgate*, 425 F.3d at 679.

Finally, even if the Court *did* exercise its discretion to entertain the merits of the motion for sanctions, the Court agrees with Plaintiff that in light of dismissing this case without prejudice, the motion is procedurally barred.  *See Opp'n to Mot. for Sanctions* at 22.  Federal Rule of Civil Procedure 11(c)(2) prescribes that a motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Plaintiff's counsel represents that "starting in September 2025, [she] repeatedly sought to obtain Defendants' agreement to stipulate to dismissal of all claims in this action without prejudice." *Doore Decl.* ¶ 5.  The parties continued to confer on a stipulation for dismissal even during this motion's pre-filing conference pursuant to C.D. Cal. Local Rule 7-3.  *See id.* ¶ 9.  Thus, the Court finds that Plaintiff repeatedly attempted to "withdraw" this action both before and after Defendants served Plaintiff with their Sanctions Motion.  *See Westerkamp v. Mueller*, No. CV-21-02088-PHX-DWL, 2023 WL 3792739, at *4 (D. Ariz. June 2, 2023) ("When made during a Rule 11 safe harbor period, a motion to voluntarily dismiss a case is tantamount to a withdrawal of the operative complaint because withdrawal must be permitted.").  As such, Rule 11(c)(2)'s safe-harbor provision bars entertaining the instant Sanctions Motion any further.  Defendants' Motion for Sanctions (Dkt. # 257) is **DENIED**.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-08280-MWC-E                          Date: May 28, 2026

Title:    Electric Solidus, Inc. v. Proton Management LTD., *et al.*

V.     Conclusion

For the foregoing reasons, the Court **ORDERS** as follows:

1.     Defendants' Request for Judicial Notice (Dkt. # 276-4) is **GRANTED IN PART AND DENIED IN PART**.

2.     Plaintiff's Motion to Voluntarily Dismiss the Case (Dkt. # 253) is **GRANTED**.  Defendant's Motion for Judgment on the Pleadings (Dkt. # 257) is **DENIED AS MOOT**.

3.     Defendants' Motion for Rule 11 Sanctions is **DENIED**.

4.     The May 29, 2026 hearing is **VACATED**.

5.     This case is **DISMISSED WITHOUT PREJUDICE [JS-6]**.

**IT IS SO ORDERED.**

                                                                    :

                                            **Initials of Preparer**    TJ